UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

Cassie Cordell Trueblood, next friend of Ara Badayos, an incapacitated person; The Snohomish County Public Defender Association, a non-profit corporation;

Plaintiffs,

v.

The Washington State Department of Social and Human Services; Western State Hospital; Kevin W. Quigley, Secretary of the Department of Social and Human Services, in his personal and official capacity; Ron Alder, Chief Executive Officer of Western State Hospital, in his personal and official capacity; Dr. Brian Waiblinger, Medical Director of Western State Hospital, in his personal and official capacity;

Defendants.

No.

**COMPLAINT**

BENCH TRIAL DEMANDED



Braden Cyrus Pence
Snohomish County Public Defender Association
2722 Colby Avenue, Suite 200
Everett,WA 98201

INTRODUCTION

1. This is a civil action seeking declaratory and injunctive relief against Defendants for allowing legally incompetent criminal defendants (hereinafter "patients") to languish for months in county jails rather than promptly transporting them to a state-run mental health treatment facility for competency restoration treatment as required by court orders, state statutes, and the constitutions of the United States and Washington State.

2. Because of Defendants' acts and omissions, Ms. Ara Badayos has been confined for the past 33 days (as of August 4) in solitary confinement in Snohomish County Jail (without any of the legally and medically necessary treatment) rather than at Western State Hospital (WSH) or an analogous facility where she would have spent the same period of time receiving professional care.

3. The maximum allowable time for Defendants to attempt restoration for Ms. Badayos is 45 days.

4. Defendants official position (as indicated in sworn testimony and legal filings at various Show Cause hearings in the underlying criminal actions) is that the 45 day period does not begin until Ms. Badayos is transported to WSH, and that there is no timeline whatsoever for transporting her.

5. Thus, Defendants' sincerely believe that there is no deadline whatsoever for transporting Ms. Badayos, and that she could lawfully be held indefinitely.

6. Plaintiffs, who are advocates for Ms. Badayos and similarly situated persons, have attempted to obtain Defendant's compliance with the law by repeatedly filing motions in the state trial court.

7. The state trial courts, in piecemeal fashion, occasionally order Defendants to transport these patients and rarely dismiss the criminal actions for governmental mismanagement, but have declined to issue a general order requiring Defendants to

transport competency restoration patients within a specific time period.

8. The most-recent information (dated August 1) from Defendants admit that (in addition to Ms. Badayos) "approximately 100" other competency restoration patients are waiting in county jails to be transported to WSH; and that the average wait-time for each of these persons is 51 days (just under two months). See Exhibit 3 to Declaration of Trueblood at para. 3.

9. This inhumane treatment of mentally ill individuals is an ongoing crisis. Without immediate intervention, Ms. Badayos and at least 100 other similarly situated persons will continue to be unlawfully and indefinitely held in harmful circumstances and without legally and medically necessary treatment.

## JURISDICTION

10. This Court has federal question jurisdiction under 28 U.S.C. §§1331 and 1343 because this is an action arising under the Fifth, Sixth, Eighth, and Fourteenth amendments to the United States Constitution.

11. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over related claims arising under state law, namely sections Three, Ten, Twelve, Fourteen, and Twenty Two of the Washington State Constitution, and a variety of Washington State statutes.

12. The Court has jurisdiction to award declaratory and injunctive relief pursuant to 42 U.S.C. §1983.

13. Venue is appropriate in this Court under 28 U.S.C. §1391(b)(2) because the events giving rise to this complaint occurred in Snohomish County in the Western District of Washington.

## PARTIES

THE PLAINTIFFS

14. Ms. Ara Badayos is a 27year-old U.S. citizen domiciled in Washington State. Though she is "the real party in interest," she lacks capacity to stand trial due to severe mental illness and cannot serve as Plaintiff in this action. She has no legal guardian and no known family members.

15. Because Ms. Badayos is incapacitated and otherwise without representation and because of the emergent nature of these claims, Plaintiff Cassie Cordell Trueblood brings this suit as Ms. Badayos' "next friend"[1], pursuant to FRCP 17 (c)(2). Ms. Trueblood is the duly appointed criminal defense attorney representing Ms. Badayos on a criminal charge underlying this civil suit. Ms. Trueblood practices law in Snohomish County, Washington.

16. Ms. Trueblood requests the Court appoint a Guardian Ad Litem for Ms. Badayos, pursuant to FRCP 17 (c)(2).

17. Ms. Trueblood also brings suit on her own behalf for frustration of mission and injury to resources available to represent other clients.

18. Plaintiff Snohomish County Public Defender Association (SCPDA) is a non-profit corporation whose purpose and function is to represent indigent people facing criminal prosecution in Snohomish County, Washington. SCPDA employs Plaintiff Cassie Trueblood as a trial attorney. SCPDA brings this action on its own behalf for frustration of its mission and injury to the organization.

19. Because Ms. Trueblood's and SCPDA's incompetent in-custody clients face significant obstacles to asserting their own rights (including imminent mootness of individual claims due to transport to WSH during the pendency of the case, and their

---

[1] Ms. Trueblood is the only apparent advocate for Ms. Badayos. Ms. Trueblood is professionally and ethically bound to advance every lawful and proper argument for Ms. Badayos. Ms. Trueblood and Ms. Badayos have a sufficiently close relationship to permit Ms. Trueblood to effectively advance the pertinent claims. Ms. Trueblood is uniquely qualified, by virtue of the confidential attorney-client relationship to litigate the unconstitutionality of Defendants' acts and omissions.

impaired mental condition), Plaintiffs also brings this action on behalf of clients – past, present, and future – who suffer injury as a result of Defendants' acts and omissions. Are not only responsible for advancing every lawful defense and argument for its clients, but also have a "special public duty to improve the overall quality and efficiency of the criminal justice system," rendering them well-suited to litigate the claims of their clients.

DEFENDANTS

20. Defendant Washington State Department of Social and Human Services (DSHS) is the governmental entity that oversees a variety of social welfare programs, including Defendant Western State Hospital (WSH).

21. Defendant WSH is one of two state-run psychiatric hospitals (the other is Eastern State Hospital), and serves the mentally ill population in the western half of the state. WSH is the facility to which mentally ill criminal defendants are committed for all purposes related to a criminal proceeding, including those (like Ms. Badayos) in need of competency restoration prior to facing prosecution.

22. Defendant Kevin W. Quigley is the Secretary of Defendant Washington State Department of Social and Human Services (DSHS). Mr. Quigley is responsible for DSHS's mental health program (including Western and Eastern State Hospitals) and their compliance with state and federal law. Mr. Quigley, for all purposes relevant to this suit, has acted under color of law.

23. Defendant Ron Alder is the Certified Executive Officer of Defendant WSH. In his professional capacity, Mr. Alder is responsible for WSH (including its duty to transport people for restoration of legal competence) and its compliance with state and federal law. Mr. Alder, for all purposes relevant to this suit, has acted under color of law.

24. Defendant Dr. Brian Waiblinger is the Medical Director for Defendant WSH. In his professional capacity, Dr. Waiblinger is responsible for supervising the

transportation of patients to the hospital, scheduling admissions, and developing the prioritization algorithm for the admissions waitlist. Mr. Waiblinger, for all purposes relevant to this suit, has acted under color of law.

## STANDING

25. SCPDA has standing to sue on its own behalf, for injuries suffered as a result of Defendants' practice of delay in admitting criminal defendants represented by SCPDA to WSH for needed restorative mental health treatment. SCPDA will demonstrate that its ability to represent its clients' interests is being impaired by Defendants' refusal to accept custody, and that it is expending additional resources to effectively represent such clients and to advocate for a just and fair criminal justice system. On that basis, this Court should find that SCPDA has organizational standing. See Oregon v. Mink, 322 F.3d 1101, 1108-09 (9th Cir. 2002); Havens Realty Corp. v. Coleman, 455 U.S. 368, 379 (1982).

## FACTUAL ALLEGATIONS

26. Ms. Badayos is extremely mentally ill. She is currently subject to a civil commitment order under the "presents a likelihood of serious harm or is gravely disabled" standard, as provided by RCW 71.05.

27. She has also been found to be legally incompetent (meaning that she does not have the mental ability to understand the criminal process and aid in the defense, as provided by RCW 10.77). In the Forensic Mental Health Report of Ms. Badayos, the Defendant described her as in a "severely agitated and decompensated state." See Exhibit 1 to Declaration of Trueblood at .pdf pg. 10, document pg. 8. On August 1, after indicating her agreement to come to court, she removed all of her clothing, made court-inappropriate gestures, and then indicated her refusal to come to court.

28. Ms. Badayos is held in solitary confinement in the Snohomish County Jail on a criminal charge of Assault in the Third Degree for allegedly slapping a police officer.[2] (Plaintiff Cassie Trueblood, who is employed by Plaintiff SCPDA, is the duly appointed public defender representing Ms. Badayos on this charge.)

29. Because Ms. Badayos is legally incompetent, the prosecution is stayed indefinitely pending restoration of competence (in which case, prosecution would resume) or a determination that competence is unlikely (in which case, the charge would be dismissed).

30. On July 2, the state trial court ordered Defendants to transport Ms. Badayos to WSH to attempt restoration of legal competence for a period not to exceed 45 days. See Exhibit 2 to Declaration of Trueblood at para. A.

31. On August 1, Plaintiff Cassie Trueblood moved the trial court to order WSH to show cause why it failed to transport Ms. Badayos, to pay sanctions for contempt of the trial court's July 2 order, and to transport to Ms. Badayos to WSH for treatment immediately. The trial court denied all of these motions, instead ordering Defendants to

[2] A summary of the procedural posture of the underlying criminal case: Ms. Badayos has been in- and out-of-custody on the Assault 3 charge since March 14, when the incident allegedly occurred. Ms. Badayos was held on bail in what is called a "felony-expedited" process, which was not to exceed 14 days during which time she was not officially charged. On March 25, Ms. Badayos was charged with Assault in the Third degree. On March 26, bail was set at $2,500. On March 28, she was arraigned and a plea of not guilty was entered on her behalf. At that time she was released on the charge, but was not actually released until jail staff evaluated her for mental health issues. On April 11, she appeared for an in-custody scheduling hearing. On April 14, she was released so that she could be admitted to Providence Hospital in Everett for civil commitment. On May 8, she appeared at an out-of-custody scheduling hearing and the case was continued. On May 30, Ms. Badayos was back in-custody and the trial court ordered Western State Hospital (WSH) to perform an initial evaluation of Ms. Badayos' legal competence to stand trial. On June 12, defense counsel noted a motion that WSH show cause why it had failed to perform evaluation. On June 13, WSH submitted the evaluation, concluding that Ms. Badayos is legally incompetent. On July 1, an incident between Ms. Badayos and a nurse at the residential treatment facility resulted in Ms. Badayos' re-incarceration. Back in custody on July 2, the trial court ordered WSH to attempt restoration of Ms. Badayos's legal competence within a 45 day period. When nothing happened, Defense counsel noted a motion for August 1 demanding that WSH show cause for its failure to transport Ms. Badayos for restoration of competence.

evaluate Ms. Badayos for expedited transportation to WSH under a "medical emergency" exception[3] to Defendant's plainly unconstitutional practice of refusing to transport incarcerated patients.

32. The trial court ordered Defendants to perform this "medical emergency" evaluation on Monday, August 4 by 5 p.m. Immediately after the hearing, through their counsel, Defendants indicated to Ms. Trueblood (and not to the trial court) their intent to again violate the trial court's order by not evaluating Ms. Badayos until Tuesday, August 5.

33. Since July 2, Defendants have done nothing to comply with the order to transport and treat Ms. Badayos. As of today, August 4, Ms. Badayos is still waiting in solitary confinement.

34. In response to Ms. Trueblood's demand that WSH show cause for its failure to transport Ms. Badayos, Defendant Dr. Brian Waiblinger (WSH's Medical Director) submitted a sworn declaration (dated July 30). The declaration states that the current waitlist for transportation to WSH is "approximately 100 [patients]," and that the average wait is "51 days." The declaration also states that WSH anticipates transporting Ms. Badayos "by the third week in August." See Exhibit 3 to Declaration of Trueblood at para. 4. Dr. Waiblinger also testified on the record at the August 1 hearing that he could give a "date certain" for Ms. Badayos's transport of August 22.

35. Defendant's explanation for this comprehensive refusal to comply with court orders, constitutional and statutory law, and basic human decency is that WSH does not

[3] To Plaintiffs' knowledge, Defendants have never before offered or even hinted at this "medical emergency" exception, and there is no authority in statute or administrative materials suggesting such an option. This appears to have been a last-ditch effort to prevent the trial court from ordering sanctions. While in the opinion of Plaintiffs, Ms. Badayos certainly should qualify for this exception, such an option is entirely beside the point that Defendants continually fial to promptly transport all legally incompetent patients, medical emergency or no.

have enough physical bed space to promptly treat every patient.

36. However, state statute provides Defendants with an alternative to the resource-scarce WSH: “some other facility as determined by the [Defendants] for … treatment.” RCW 10.77.086(1)(a)(ii). Defendants have apparently never even attempted to make such an alternate available to handle the additional demand on its system.

37. Defendants also claim that the “performance targets” (enacted in 2012 in response to a similar waitlist problem at WSH) providing that competency restoration patients should be transported to WSH within seven days are non-binding and therefore can be ignored. See RCW 10.77.068.

38. Based upon a hair-splitting interpretation, Defendants claim that the statute specifically providing that “[c]onfinement in a county jail or other local facility while awaiting either placement in a treatment program or a court hearing pursuant to this chapter is permitted for no more than seven days” only pertains to other categories of mentally ill individuals (who are held “pursuant to this chapter”), and not competency restoration patients (who are Defendants claim are only held pursuant to their criminal charge). RCW 10.77.220. It is Defendant’s practice to transport NGRI persons within three days.

39. In this apparent belief in the total lack of any timeline, Defendants have developed an “algorithm” to determine which patients should be transported first. Defendants concede that this system is not on a first-come, first-served basis. The algorithm always prioritizes other categories of criminally-involved patients over individuals requiring competency restoration. These categories include those patients who have been found Not Guilty by Reason of Insanity (NGRI) and “criminal conversion” patients (meaning they are civilly committed after their criminal action has been dismissed).

40. Defendants' algorithm also places certain categories of restoration patients before others.[4] Ms. Badayos' category, arbitrarily, is located towards the end of this prioritization scheme. In any event, Defendants confidently assert that they are under no deadline whatsoever to transport any felony restoration patient.

41. Defendant's algorithm, in prosecutorial fashion, perversely benefits those who have admitted the acts underlying their criminal conduct over those who have an unconditional right to dispute their charges. In this respect, Defendant's system incentivizes Plaintiffs to put their clients through the NGRI process rather than having those clients evaluated for basic legal competence to understand the criminal process.

42. It is undisputed that, were Ms. Badayos an NGRI patient, WSH would have made room for her, and she would have been transported to the hospital within seven days of July 2. It is further undisputed that, were the case dismissed, Ms. Badayos would be sent to a treatment facility in three days by a county designated mental health professional and would receive treatment.

43. The wait for available beds at WSH is getting worse while Ms. Badayos and similarly situated individuals languish in jail. On July 2 (when Defendants were ordered to

4 . The maximum period for restoring patients held on misdemeanor charges is 14 days. RCW 10.77.088. The maximum *initial* period for restoring patients held on non-serious felony charges is 45 days (the initial period is 90 days for "serious" felony offenses), while *second* and *third* restoration periods for all felonies are 90 days each. RCW 10.77.088. The algorithm places those patients on 14 day misdemeanor restoration orders and those on the *third* 90 day felony restoration order before all *initial* 45 day felony restoration orders. Those on *second* 90 restoration orders are last. See Exhibit 5 to Declaration of Trueblood at pg. 4, ln. 7 through pg. 5, ln. 1. Thus, Ms. Badayos, with an *initial* 45 day order, is located behind all misdemeanor patients, all felony patients on their last restoration period, and—of course behind those felony patients in the same category as her who were placed on the list before her. Defendants' explanation for this convoluted system is their belief that state statute requires them to transport NGRI patients within seven days, criminal conversion patients within three days, and misdemeanor restoration patients within a "reasonable time." The rest of the prioritization scheme is simply Defendants' policy. It may be that Defendants transport other patients before competency restoration patients because of the risk that other patients will be released otherwise. Defendants need not be concerned that felony restoration patients will be released. Because Defendants are confident Ms. Badayos will stay in jail until she is transported, she must wait for months while other patients are admitted ahead of her.

take custody of Ms. Badayos), there were approximately 72 patients on the waitlist. On July 25, when Dr. Waiblinger testified in an almost identical scenario in a different case in Snohomish County, he indicated the waitlist had grown to 84 patients. When Dr. Waiblinger testified on August 1, the waitlist was 100 incarcerated, mentally ill people.

44. This 100 person waitlist does not include in-custody patients awaiting for Defendants to perform the initial evaluation on competency.

45. This 100 person figure does not include competency restoration patients waiting for admission to Eastern State Hospital (the waitlist for which is rumored to be similarly long).

46. Defendants caused similar injuries to competency restoration patients in 2012. Law suits were prepared but not filed. A legislative fix was attempted, resulting in the “performance targets” of RCW 10.77.068. Unfortunately, the problem has surfaced again, and Defendants only point to the section of RCW 10.77.068 for the proposition that the targets are non-binding.

47. Snohomish County Jail records independently corroborate Defendant’s admissions. As of July 30, 2014, 14 mentally ill individuals were subject to a WSH transport order from that jail alone. Those people had waited an average of 38 days before WSH provided the court-ordered transportation and treatment. One individual waited 56 days. See exhibit __ to Plaintiff’s Motion for Preliminary Injunction.

48. Given the virtual certainty that some, if not all, of these in-custody mentally ill people qualify for a public defender, they are likely constituents of Plaintiff SCPDA. Unfortunately, there has not been an opportunity prior to the filing of this suit to individually identify and contact these individuals regarding participating in this suit as plaintiffs.

49. Plaintiffs Ms. Trueblood and SCPDA have been repeatedly forced to file

briefing, attending hearings, and otherwise expend significant efforts to force Defendants to comply with the law, taking away from Plaintiffs' resources to effectively advocate for all of their clients on issues more directly related to the substance of criminal prosecution.

50. Furthermore, Defendants place Plaintiffs in an ethical quandary. When Plaintiffs reasonably believe that their clients suffer from diminished capacity, RPC 1.14 requires the lawyer to take protective action to protect their clients. On the other hand, RPC 1.2 obligates Plaintiffs to abide by their client's objectives, which universally include avoiding unnecessary incarceration. Raising concerns about a client's legal competence knowing that doing so will subject the client to injury at the hands of the Defendants creates a real dilemma for conscientious attorneys.

51. County jails are neither designed nor prepared to house (let alone treat) mentally ill individuals.[5] Jails control inmates through discipline. Such system is ineffective for mentally ill persons, and, in fact, harmful to them.

52. The Snohomish County Jail is a particularly inappropriate place to house the mentally ill because of the Jails' demonstrated inability to care for that population. The U.S. Justice Department (in response to multiple recent inmate deaths at the Jail) investigated the facility, finding that "treatment for mental illness is very limited beyond medications, and treatment planning is inadequate for the number of inmates who have or who likely have a diagnosable mental illness. . . . There is virtually no regular individual or group mental health treatment provided to the inmates." Exhibit ___ to Plaintiff's Motion

[5] The Jail can provide medication management for people who are willing to take medications, but cannot administer medication involuntarily, except in a life-threatening emergency. When resources permit, treatment for "unfit to proceed" defendants may possibly include basic clinical psychiatry and intervention. Such treatment is designed to stabilize the inmate. However, some inmates, particularly those with mental illness, refuse or do not respond to medication, and do not otherwise respond to the treatment the jails can provide. Jails tend to segregate the mentally ill. Conversely, WSH provides housing for persons found unfit to proceed is staffed by full-time psychiatrists, psychologists, mental health specialists, recreation counselors, social workers, mental health technicians, and nurses.

for Preliminary Injunction at page 62.

53. County jails are punitive environments—not restorative. They do not provide adequate, if any, services for the mentally ill. The Justice Department's report also notes that "prisons and jails, which tend to be environments that exacerbate the symptoms of mental illness, inmates with mental illness are especially at risk of harming themselves or others." Exhibit ___ to Plaintiff's Motion for Preliminary Injunction at page 56.

54. On August 1, when asked by jail staff, Ms. Badayos initially indicated she would come to court for the show cause hearing against Defendants. When, staff went to her cell to pick her up, she was entirely naked, made obscene anatomical gestures toward jail staff, and then indicated her unwillingness to come to court. The extended isolation in solitary confinement has obviously caused additional damage to her mental state. She has apparently not washed herself for some time. Jail staff were overheard to say that they wished they had a way to remotely flush the toilet in her cell prior to opening the door.

55. She is, and has been, isolated in this 8' by 10' cell for 23 hours per day for the past 33 days. The cell contains a granite slab for a bed with a ¼" thick piece of rubber padding, a blanket, a fixed, backless stool, concrete bench, and an aluminum toilet. She is allowed out of her cell for one hour a day. During that hour she remains in hand and leg restraints unless she chooses to shower, which she rarely does. Jail staff will not remove her from the cell even to meet with her attorney; Ms. Trueblood is forced to communicate with Ms. Badayos through a closed, locked metal door with a small plexiglass window and hole for a food tray.

56. Were she not involved in Washington State's criminal justice system, Ms. Badayos would be in a community-based in-patient professional mental health facility

receiving treatment, pursuant to the civil commitment order.

CAUSES OF ACTION

57. Plaintiffs hereby incorporate all allegations contained in the preceding paragraphs for purposes of the following causes of action.

58. Plaintiffs, Ms. Badayos, and all similarly situated persons have no complete and adequate remedy at law.

59. Plaintiffs, on behalf of Ms. Badayos and all similarly situated persons, assert the following causes of action:

VIOLATION OF SUBSTANTIVE DUE PROCESS

60. Due process under the federal and state constitutions require that the nature and duration of confinement bear reasonable relation to the purpose for which the individual is committed.

61. Once Ms. Badayos and similarly situated persons are found to be legally incompetent, the only lawful purpose for confinement is to attempt to restore legal competency.

62. Delay in transportation and treatment delays Ms. Badayos's return to court, when requests to reduce bail (if her competence is restored) or to dismiss criminal charge (if she is not restorable) could be made.

63. Legally incompetent individuals have a constitutional right to individualized treatment to provide a realistic opportunity to be cured or to improve their mental condition.

64. County jails do not have the capacity to provide the restorative mental health treatment required by the State and Federal Constitution.

65. Defendants' acts and omission done under color of law directly and

proximately caused unnecessarily extended confinement, additional injury to the mental state of these individuals, and violation of the constitutional rights to physical freedom and medical treatment.

66. Federal and state constitutions and related laws guarantee the right to a fair and speedy trial.

67. Defendants' willful acts and omissions done under color of law directly and proximately caused unnecessary delay to an otherwise speedy trial process, harmful delay in interviewing witnesses and preparing an adequate defense, and violation the constitutional rights to a speedy and fair trial.

VIOLATION OF EQUAL PROTECTION

68. Federal and state Constitutions guarantee equal protection of the law, free from discrimination.

69. Ms. Badayos and similarly situated individuals are members of a protected class of individuals who suffer from mental illness.

70. Ms. Badayos and similarly situated individuals are incarcerated while awaiting lengthy delays in admission to WSH.

71. Unlike other criminal defendants who may be held pretrial pursuant to a bail setting order while awaiting trial, Ms. Badayos and similarly situated individuals are being held without a speedy trial date, without the ability to consult with counsel, and without the constitutionally mandated medical regime to restore them to competency. Because of her mental illness, Ms. Badayos is being held at the jail.

72. Defendants' willful acts and omissions done under color of law directly and proximately caused unnecessary incarceration because of Ms. Badayos mental illness and lack of capacity.

CRUEL AND UNUSAL PUNISHMENT

73. Federal and state Constitutions guarantee freedom from cruel and unusual punishment.

74. Defendants knew or should have known that legally incompetent persons remanded to their custody were temporarily housed in county jails, and knew or should have known that such institutions do not maintain staff or facilities qualified or adequate to provide mental health care and restorative treatment for such persons.

75. Because Ms. Badayos is going without treatment, her mental health is further deteriorating. The additional damage to her mental state will likely require additional detention time to accomplish restoration.

76. Incarcerating Ms. Badayos for an indefinite period of time without essential psychotropic medication is a form of cruel and unusual punishment.

AFFECTIVE ASSISTANCE OF COUNSEL

77. Plaintiff SCPDA is constitutionally and contractually mandated to provide affective assistance of counsel to all indigent defendants to whom they are appointed.

78. To provide affective assistance of counsel within state-mandated and contractual guidelines, SCPDA monitors the number of clients assigned to individual attorneys, represents individuals in court in pretrial, trial, and post-trial proceedings.

79. In the last 10 months SCPDA attorneys have filed numerous motions seeking Defendants' compliance with court orders and the constitution. These motions have resulted in extensive hours of work and litigation above and beyond the attorneys' normal workloads. Every hour devoted to Ms. Badayos and similarly situated individuals is time taken from other clients who the agency is contractually and constitutionally bound

to represent in an affective manner.

80. Defendants' willful and continued acts and omissions done under color of law directly and proximately caused a surge in hours worked by attorneys seeking compliance by Defendants on behalf of their clients. This surge frustrates the agency's mission to affectively assist other clients.

## JURY DEMAND

81. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, a jury trial is demanded on all causes of action.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs, on behalf of Ms. Badayos, and all similarly situated persons, respectfully request this Court to enter judgment against Defendants and grant the following relief:

A. Temporary, preliminary, and permanent injunctive relief requiring Defendants to promptly transport and treat Ms. Badayos and all other similarly situated persons to WSH or another adequate professional mental health treatment facility within a reasonable period of time, but no more than seven (7) days;

B. Issue declaratory judgment that Defendants must comply with constitutional requirements by transporting and treating Ms. Badayos and similarly situated individuals within a reasonable time after entry of an order to restore, but no more than seven (7) days;

C. Award nominal money damages in the amount of $1;

D. Award reasonable attorneys fees and costs, pursuant to 42 U.S.C. §1988;

and

E. All such other relief as this honorable Court deems just and proper.

This ___ day of August, 2014.

______________________________

Braden Cyrus Pence, WSBA# 43495
Snohomish County Public Defender Association
2722 Colby Avenue, Ste. 200
ATTORNEY FOR PLAINTIFFS