1

2

3

4

5

6

7

8

9                          UNITED STATES DISTRICT COURT

10                    FOR THE WESTERN DISTRICT OF WASHINGTON

11

12    Cassie Cordell Trueblood, next friend of
      Ara Badayos, an incapacitated person;
      and The Snohomish County Public              No. 2:14-cv-01178
13    Defender Association, a non-profit
      corporation; on behalf of themselves,        **FIRST AMENDED**
14    Ara Badayos, and approximately 100           **CLASS ACTION COMPLAINT**
      other persons similarly situated to Ara
15    Badayos;
                                                   BENCH TRIAL DEMANDED
16                          Plaintiffs,

17    v.

18    The Washington State Department of
      Social and Health Services; Western
19    State Hospital; Kevin W. Quigley,
      Secretary of the Department of Social
20    and Human Services, in his personal
      and official capacity; Ron Adler, Chief
21    Executive Officer of Western State
      Hospital, in his personal and official
22    capacity; Dr. Brian Waiblinger, Medical
      Director of Western State Hospital, in
23    his personal and official capacity;

24                          Defendants.

25    _____

26    **COMPLAINT** - PAGE 1

27                                                            Braden Cyrus Pence
                                                   Snohomish County Public Defender Association
28                                                         2722 Colby Avenue, Suite 200
                                                             Everett, WA 98201

1        INTRODUCTION

2    1.      This is a Class action seeking declaratory and injunctive relief against

3    Defendants for allowing a Class of legally incompetent criminal defendants to wait in

4    county jails for more than seven days before providing transportation to the to a state-

5    run mental health treatment facility for competency restoration treatment. In

6    contravention of court orders, state statutes, and the constitutions of the United States

7    and Washington State, Defendants have allowed many members of the Class to

8    languish for months in solitary confinement without any treatment.

9    2.      Because of Defendants' acts and omissions, Ms. Ara Badayos, a an

10   incompetent criminal defendant and representative member of the Class, has been

11   confined for the past 36 days (as of August 7) in solitary confinement in Snohomish

12   County Jail (without any of the legally and medically necessary treatment) rather than at

13   Western State Hospital (WSH) or an analogous treatment facility where she would have

14   spent the same period of time receiving professional care.

15   3.      The maximum allowable time for Defendants to attempt restoration for Ms.

16   Badayos under the relevant state statute is 45 days.

17   4.      Defendants official position (as indicated in sworn testimony and legal

18   filings at various Show Cause hearings in the underlying criminal actions) is that the 45

19   day period does not begin until Ms. Badayos is transported to WSH, and that there is no

20   timeline whatsoever for transporting her.

21   5.      Thus, Defendants' sincerely believe that there is no deadline whatsoever

22   for transporting Ms. Badayos, and that she could lawfully be held indefinitely.

23   6.      Plaintiffs, who are advocates for Ms. Badayos and other members of the

24   Class, have attempted to obtain Defendant's compliance with the law by repeatedly

25   filing motions in state trial court.

26

2 - COMPLAINT

27

28

1    7.    State trial courts, in piecemeal fashion, occasionally grant Plaintiffs'

2    motions to order transport and treatment for these patients, but have not issued a

3    general order requiring Defendants to transport all such patients within a specific time

4    period.

5    8.    The most-recent information (dated August 1) from Defendants admit that

6    (in addition to Ms. Badayos) "approximately 100" other competency restoration patients

7    are currently waiting in county jails to be transported to WSH (not to mention untold

8    numbers of patients who have previously and will certainly in the future be subject to the

9    same conditions). Defendants admit that the current average wait-time for each of these

10   persons is 51 days (just under two months). See Exhibit 3 to Declaration of Trueblood at

11   para. 3.

12   9.    This inhumane treatment of mentally ill individuals is, in the words of

13   Defendant Dr. Waiblinger an ongoing "crisis." See Exhibit 5 to Declaration of Trueblood

14   at pg. 13, ln. 7. Without immediate intervention, Ms. Badayos and at least 100 other

15   similarly situated persons will continue to be unlawfully and indefinitely held in harmful

16   circumstances and without legally and medically necessary treatment.

17                                JURISDICTION

18   10.   This Court has federal question jurisdiction under 28 U.S.C. §§1331 and

19   1343 because this is an action arising under the Fifth, Sixth, Eighth, and Fourteenth

20   amendments to the United States Constitution.

21   11.   Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction

22   over related claims arising under state law, namely sections Three, Ten, Twelve,

23   Fourteen, and Twenty Two of the Washington State Constitution, and a variety of

24   Washington State statutes.

25   12.   The Court has jurisdiction to award declaratory and injunctive relief

26

27   3 - COMPLAINT

28

1    pursuant to 42 U.S.C. §1983.

2        13.    Venue is appropriate in this Court under 28 U.S.C. §1391(b)(2) because

3    the events giving rise to this complaint occurred in Snohomish County in the Western

4    District of Washington.

5                        PARTIES

6    THE PLAINTIFFS

7        14.    Ms. Ara Badayos is a 27year-old U.S. citizen domiciled in Washington

8    State. Though she is "the real party in interest," she lacks capacity to stand trial due to

9    severe mental illness and cannot serve as Plaintiff in this action. She has no legal

10    guardian and no known family members.

11        15.    Ms. Badayos is a representative member of a Class of approximately 100

12    other individuals who are also legally incompetent, have also had their criminal actions

13    stayed, are also held in county jails pending competency restoration, and have also

14    waited more than seven days for Defendants to provide transportation to a mental

15    health treatment facility and competency restoration treatment.

16        16.    Because Ms. Badayos is incapacitated and otherwise without

17    representation and because of the emergent nature of these claims, Plaintiff Cassie

18    Cordell Trueblood brings this suit as Ms. Badayos' "next friend"[1], pursuant to FRCP 17

19    (c)(2). Ms. Trueblood is the duly appointed criminal defense attorney representing Ms.

20    Badayos on a criminal charge underlying this civil suit.

21        17.    Ms. Trueblood requests the Court appoint a Guardian Ad Litem for Ms.

22    Badayos, pursuant to FRCP 17 (c)(2).

23    ———————————

24    [1] Ms. Trueblood is the only apparent advocate for Ms. Badayos. Ms. Trueblood is professionally and ethically bound to advance every lawful and proper argument for Ms. Badayos. Ms. Trueblood and Ms. Badayos have a sufficiently close relationship to permit Ms. Trueblood to effectively advance the pertinent

25    claims. Ms. Trueblood is uniquely qualified, by virtue of the confidential attorney-client relationship to litigate the unconstitutionality of Defendants' acts and omissions.

26

    4 - COMPLAINT

27

28

1    18.    Ms. Trueblood also brings suit on her own behalf for frustration of mission

2    and injury to resources available to represent other clients.

3    19.    Plaintiff Snohomish County Public Defender Association (SCPDA) is a

4    non-profit corporation whose purpose and function is to represent indigent people facing

5    criminal prosecution in Snohomish County, Washington. SCPDA employs Plaintiff

6    Cassie Trueblood as a trial attorney. SCPDA brings this action on its own behalf for

7    frustration of its mission and injury to the organization.

8    20.    Because Plaintiffs' incompetent in-custody clients face significant

9    obstacles to asserting their own rights (including imminent mootness of individual claims

10   due to transport to WSH during the pendency of the case, and their impaired mental

11   condition), Plaintiffs also brings this action on behalf of their clients – past, present, and

12   future – who suffer injury as a result of Defendants' acts and omissions. Plaintiffs are

13   not only responsible for advancing every lawful defense and argument for their clients,

14   but also have a "special public duty to improve the overall quality and efficiency of the

15   criminal justice system," rendering them well-suited to litigate the claims of their clients.

16   21.    Plaintiffs also bring this action on behalf of the Class of all persons

17   similarly situated to Ms. Badayos, that is: persons found to be legally incompetent, who

18   are subject to a trial court order for competency restoration treatment, and who have

19   waited more than seven days for Defendants to provide restoration treatment.

20   DEFENDANTS

21   22.    Defendant Washington State Department of Social and Health Services

22   (DSHS) is the governmental entity that oversees a variety of social welfare programs,

23   including Defendant Western State Hospital (WSH).

24   23.    Defendant WSH is one of two state-run psychiatric hospitals (the other is

25   Eastern State Hospital), and serves the mentally ill population in the western half of the

26

27   5 - COMPLAINT

28

1    state. WSH is the facility to which mentally ill criminal defendants are committed for all

2    purposes related to a criminal proceeding, including those (like Ms. Badayos) in need of

3    competency restoration prior to facing prosecution.

4         24.    Defendant Kevin W. Quigley is the Secretary of Defendant Washington

5    State Department of Social and Human Services (DSHS). Mr. Quigley is responsible for

6    DSHS's mental health program (including Western and Eastern State Hospitals) and

7    their compliance with state and federal law. Mr. Quigley, for all purposes relevant to this

8    suit, has acted under color of law.

9         25.    Defendant Ron Adler is the Certified Executive Officer of Defendant WSH.

10   In his professional capacity, Mr. Adler is responsible for WSH (including its duty to

11   transport people for restoration of legal competence) and its compliance with state and

12   federal law. Mr. Adler, for all purposes relevant to this suit, has acted under color of law.

13        26.    Defendant Dr. Brian Waiblinger is the Medical Director for Defendant

14   WSH. In his professional capacity, Dr. Waiblinger is responsible for supervising the

15   transportation of patients to the hospital, scheduling admissions, and developing the

16   prioritization algorithm for the admissions waitlist. Mr. Waiblinger, for all purposes

17   relevant to this suit, has acted under color of law.

18

19                              STANDING

20        27.    Plaintiffs, as the "next friend" and representatives of Ms. Badayos have

21   standing to sue on her behalf. But for her incapacity to serve as a plaintiff herself, Ms.

22   Badayos would have standing to sue as a Class representative for similarly situated

23   persons. Plaintiffs, who stand in Ms. Badayos' shoes, also have standing to sue on

24   behalf of the Class. The Class is believed to be approximately 100 other similarly

25   situated persons.

26

     6 - COMPLAINT

27

28

1      28.      Plaintiffs have standing to sue on their own behalf, and on behalf of past

2    and future clients, for injuries suffered as a result of Defendants' practice of unjustifiably

3    delayed transportation and treatment of legally incompetent criminal defendants to WSH for

4    needed restorative mental health treatment. Plaintiffs can demonstrate that their ability to

5    represent all of its clients is being impaired by Defendants' acts and omissions, and that

6    Plaintiffs are expending extraordinary additional resources (including filing this lawsuit) to

7    effectively represent such clients and to advocate for a just and fair criminal justice system.

8    On that basis, this Court should find that SCPDA has organizational standing. See

9    Oregon v. Mink, 322 F.3d 1101, 1108-09 (9th Cir. 2002); Havens Realty Corp. v.

10   Coleman, 455 U.S. 368, 379 (1982).

11                                    MOOTNESS

12      29.      While any particular legally incompetent person's claims might become

13   moot during the pendency of this action, given Defendants' admission that this is a

14   wide-spread and on-going problem, the constitutional violations herein alleged are

15   certain to reoccur for foreseeable future. Given the number of legally incompetent

16   clients that are subject to Defendants' restoration process, there is no risk of the

17   mootness of these claims. See Oregon v. Mink, 322 F.3d 1101, 1108-09 (9th Cir. 2002).

18                               FACTUAL ALLEGATIONS

19      30.      Ms. Badayos is extremely mentally ill. She is currently subject to a civil

20   commitment (meaning that she "presents a likelihood of serious harm or is gravely

21   disabled," as provided by RCW 71.05).

22      31.      She has also been found to be legally incompetent (meaning that she

23   does not have the mental ability to understand the criminal process and aid in the

24   defense, as provided by RCW 10.77). In the Forensic Mental Health Report of Ms.

25   Badayos, the Defendant described her as in a "severely agitated and decompensated

26

27   7 - COMPLAINT

28

1    state." See Exhibit 1 to Declaration of Trueblood at .pdf pg. 10, document pg. 8. On

2    August 1, after indicating her agreement to come to court, she removed all of her

3    clothing, made court-inappropriate gestures, and then indicated her refusal to come to

4    court.

5         32.     Ms. Badayos is held in solitary confinement in the Snohomish County Jail

6    on a criminal charge of Assault in the Third Degree for allegedly slapping a police

7    officer.[2] (Plaintiff Cassie Trueblood, who is employed by Plaintiff SCPDA, is the duly

8    appointed public defender representing Ms. Badayos on this charge.)

9         33.     Because Ms. Badayos is legally incompetent, the prosecution is stayed

10   indefinitely pending restoration of competence (in which case, prosecution would

11   resume) or a determination that competence is unlikely (in which case, the charge

12   would be dismissed).

13        34.     On July 2, the state trial court ordered Defendants to transport Ms.

14   Badayos to WSH to attempt restoration of legal competence for a period not to exceed

15   45 days. See Exhibit 2 to Declaration of Trueblood at para. A.

16

17   _____

     [2] A summary of the procedural posture of the underlying criminal case: Ms. Badayos has been in- and

18   out-of-custody on the Assault 3 charge since March 14, when the incident allegedly occurred. Ms.
     Badayos was held on bail in what is called a "felony-expedited" process, which was not to exceed 14

19   days during which time she was not officially charged. On March 25, Ms. Badayos was charged with
     Assault in the Third degree. On March 26, bail was set at $2,500. On March 28, she was arraigned and a
     plea of not guilty was entered on her behalf. At that time she was released on the charge, but was not

20   actually released until jail staff evaluated her for mental health issues. On April 11, she appeared for an
     in-custody scheduling hearing. On April 14, she was released so that she could be admitted to

21   Providence Hospital in Everett for civil commitment. On May 8, she appeared at an out-of-custody
     scheduling hearing and the case was continued. On May 30, Ms. Badayos was back in-custody and the

22   trial court ordered Western State Hospital (WSH) to perform an initial evaluation of Ms. Badayos' legal
     competence to stand trial. On June 12, defense counsel noted a motion that WSH show cause why it had

23   failed to perform evaluation. On June 13, WSH submitted the evaluation, concluding that Ms. Badayos is
     legally incompetent. On July 1, an incident between Ms. Badayos and a nurse at the residential treatment

24   facility resulted in Ms. Badayos' re-incarceration. Back in custody on July 2, the trial court ordered WSH to
     attempt restoration of Ms. Badayos's legal competence within a 45 day period. When nothing happened,

25   Defense counsel noted a motion for August 1 demanding that WSH show cause for its failure to transport
     Ms. Badayos for restoration of competence.

26

     8 - COMPLAINT

27

28

1   35.    On August 1, Plaintiff Cassie Trueblood moved the trial court to order

2   WSH to show cause why it failed to transport Ms. Badayos, to pay sanctions for

3   contempt of the trial court's July 2 order, and to transport to Ms. Badayos to WSH for

4   treatment immediately. The trial court denied all of these motions, instead ordering

5   Defendants to evaluate Ms. Badayos for expedited transportation to WSH under a

6   "medical emergency" exception[3] to Defendant's plainly unconstitutional practice of

7   refusing to transport incarcerated patients.

8   36.    The trial court ordered Defendants to perform this "medical emergency"

9   evaluation on Monday, August 4 by 5 p.m. Immediately after the hearing, through their

10  counsel, Defendants indicated to Ms. Trueblood (and not to the trial court) their intent to

11  again violate the trial court's order by not evaluating Ms. Badayos until Tuesday, August

12  5.

13  37.    Since July 2, Defendants have done nothing to comply with the order to

14  transport and treat Ms. Badayos. As of today, August 4, Ms. Badayos is still waiting in

15  solitary confinement.

16  38.    In response to Ms. Trueblood's demand that WSH show cause for its

17  failure to transport Ms. Badayos, Defendant Dr. Brian Waiblinger (WSH's Medical

18  Director) submitted a sworn declaration (dated July 30). The declaration states that the

19  current waitlist for transportation to WSH is "approximately 100 [patients]," and that the

20  average wait is "51 days." The declaration also states that WSH anticipates transporting

21  Ms. Badayos "by the third week in August." See Exhibit 3 to Declaration of Trueblood at

22

23  [3] To Plaintiffs' knowledge, Defendants have never before offered or even hinted at this "medical
    emergency" exception, and there is no authority in statute or administrative materials suggesting such an
24  option. This appears to have been a last-ditch effort to prevent the trial court from ordering sanctions.
    While in the opinion of Plaintiffs, Ms. Badayos certainly should qualify for this exception, such an option is
25  entirely beside the point that Defendants continually fial to promptly transport all legally incompetent
    patients, medical emergency or no.

26

9 - COMPLAINT

27

28

1   para. 4. Dr. Waiblinger also testified on the record at the August 1 hearing that he could

2   give a "date certain" for Ms. Badayos's transport of August 22.

3        39.    Because Defendants receive competency restoration orders from the trial

4   courts referring incompetent persons, Defendants are in possession of all necessary

5   information for identifying these 100 people (who will undoubtedly be a revolving Class,

6   given that those at the head of the list eventually transported and treated will be

7   replaced at the end of the list by new competence restoration referrals).

8        40.    Disability Rights Washington (DRW, a non-profit organization operating

9   under a federal mandate to advocate on behalf of all disabled persons in Washington

10  State), has obtained up-to-date statistics regarding the waitlists for getting into Western

11  State Hospital. See Exhibit 1 to Declaration of Pence. DRW has indicated to

12  undersigned counsel its interest in joining this lawsuit as a plaintiff. See Declaration of

13  Pence at para. 6.

14       41.    Defendants' explanation for this comprehensive refusal to comply with

15  court orders, constitutional and statutory law, and basic human decency is that WSH

16  does not have enough physical bed space to promptly treat every patient.

17       42.    However, state statute provides Defendants with an alternative to the

18  resource-scarce WSH: "some other facility as determined by the [Defendants] for …

19  treatment." RCW 10.77.086(1)(a)(ii). Defendants have apparently never even attempted

20  to make such an alternate available to handle the additional demand on its system.

21       43.    Defendants also claim that the "performance targets" (enacted in 2012 in

22  response to a similar waitlist problem at WSH) providing that competency restoration

23  patients should be transported to WSH within seven days are non-binding and therefore

24  can be ignored. See RCW 10.77.068.

25       44.    Based upon a hair-splitting interpretation, Defendants claim that the

26

27  10 - COMPLAINT

28

1    statute specifically providing that "[c]onfinement in a county jail or other local facility

2    while awaiting either placement in a treatment program or a court hearing pursuant to

3    this chapter is permitted for no more than seven days" only pertains to other categories

4    of mentally ill individuals (who are held "pursuant to this chapter"), and not competency

5    restoration patients (who are Defendants claim are only held pursuant to their criminal

6    charge). RCW 10.77.220. It is Defendant's practice to transport NGRI persons within

7    three days, despite this alleged crisis regarding lack of space for competency

8    restoration.

9         45.    In lieu of their recognition of a strict and prompt deadline for

10   transportation, Defendants have developed an "algorithm" to determine which patients

11   should be transported first. Defendants concede that this system is not on a first-come,

12   first-served basis. The algorithm always prioritizes other categories of criminally-

13   involved patients over individuals requiring competency restoration. These categories

14   include those patients who have been found Not Guilty by Reason of Insanity (NGRI)

15   and "criminal conversion" patients (meaning they are civilly committed after their

16   criminal action has been dismissed).

17        46.    Defendants' algorithm also places certain categories of restoration

18   patients before others.[4] Ms. Badayos' category, arbitrarily, is located towards the end of

19   _____

20   4 . The maximum period for restoring patients held on misdemeanor charges is 14 days. RCW 10.77.088.
     The maximum *initial* period for restoring patients held on non-serious felony charges is 45 days (the initial
21   period is 90 days for "serious" felony offenses), while *second* and *third* restoration periods for all felonies
     are 90 days each. RCW 10.77.088. The algorithm places those patients on 14 day misdemeanor
22   restoration orders and those on the *third* 90 day felony restoration order before all *initial* 45 day felony
     restoration orders. Those on *second* 90 restoration orders are last. See Exhibit 5 to Declaration of
23   Trueblood at pg. 4, ln. 7 through pg. 5, ln. 1. Thus, Ms. Badayos, with an *initial* 45 day order, is located
     behind all misdemeanor patients, all felony patients on their last restoration period, and—of course
24   behind those felony patients in the same category as her who were placed on the list before her.
     Defendants' explanation for this convoluted system is their belief that state statute requires them to
25   transport NGRI patients within seven days, criminal conversion patients within three days, and
     misdemeanor restoration patients within a "reasonable time." The rest of the prioritization scheme is
26   simply Defendants' policy. It may be that Defendants transport other patients before competency

27   11 - COMPLAINT

28

1  this prioritization scheme. In any event, Defendants confidently assert that they are

2  under no deadline whatsoever to transport any felony restoration patient.

3      47.    Defendant's algorithm, in prosecutorial fashion, perversely benefits those

4  who have admitted the acts underlying their criminal conduct over those who have an

5  unconditional right to dispute their charges. In this respect, Defendant's system

6  incentivizes defense counsel to put clients through the NGRI process rather than having

7  those clients evaluated for basic legal competence to understand the criminal process.

8      48.    It is undisputed that, were Ms. Badayos an NGRI patient, WSH would

9  have made room for her, and she would have been transported to the hospital within

10  seven days of July 2. It is further undisputed that, were the case dismissed, Ms.

11  Badayos would be sent to a treatment facility in three days by a county designated

12  mental health professional and would receive treatment.

13      49.    The wait for available beds at WSH is getting worse while Ms. Badayos

14  and the Class of similarly situated individuals languish in jail. On July 2 (when

15  Defendants were ordered to take custody of Ms. Badayos), there were approximately 72

16  patients on the waitlist. On July 25, when Dr. Waiblinger testified in an almost identical

17  scenario in a different case in Snohomish County, he indicated the waitlist had grown to

18  84 patients. When Dr. Waiblinger testified on August 1, the waitlist had jumped to 100

19  incarcerated, mentally ill people.

20      50.    This 100 person waitlist does not include in-custody patients awaiting for

21  Defendants to perform the initial evaluation on competency.

22      51.    This 100 person figure does not include competency restoration patients

23  

24  restoration patients because of the risk that other patients will be released otherwise. Defendants need
    not be concerned that felony restoration patients will be released. Because Defendants are confident Ms.

25  Badayos will stay in jail until she is transported, she must wait for months while other patients are
    admitted ahead of her.

26  

12 - COMPLAINT

27  

28

1   waiting for admission to Eastern State Hospital (the waitlist for which is rumored to be

2   similarly long).

3       52.     Defendants caused similar injuries to competency restoration patients in

4   2012. A legislative fix was attempted, resulting in the "performance targets" of RCW

5   10.77.068. Unfortunately, the problem has surfaced again, and Defendants only point to

6   the section of RCW 10.77.068 that provides that the targets are non-binding.

7       53.     Snohomish County Jail records independently corroborate Defendant's

8   admissions. As of July 30, 2014, 14 mentally ill individuals were subject to a WSH

9   transport order from that jail alone. Those people had waited an average of 38 days

10  before WSH provided the court-ordered transportation and treatment. One individual

11  waited 56 days. See Exhibit 6 to Declaration of Trueblood.

12      54.     Given the virtual certainty that some, if not all, of the mentally ill people

13  held at the Snohomish County Jail qualify for a public defender, they are likely

14  constituents of Plaintiff SCPDA. Unfortunately, there has not been an opportunity prior

15  to the filing of this suit to individually identify and contact these individuals regarding

16  participating in this suit as plaintiffs. However, they are members of the Class of

17  similarly situated persons.

18      55.     Plaintiffs have been repeatedly forced to file briefing, attending hearings,

19  and otherwise expend significant efforts to force Defendants to comply with the law,

20  taking away from Plaintiffs' resources to effectively advocate for all of their clients on

21  issues more directly related to the substance of criminal prosecution.

22      56.     Furthermore, Defendants place Plaintiffs in an ethical quandary. When

23  Plaintiffs reasonably believe that their clients suffer from diminished capacity, RPC 1.14

24  requires the lawyer to take protective action to protect their clients. On the other hand,

25  RPC 1.2 obligates Plaintiffs to abide by their client's objectives, which universally

26

27  13 - COMPLAINT

28

1   include avoiding unnecessary incarceration. Raising concerns about a client's legal

2   competence knowing that doing so will subject the client to injury at the hands of the

3   Defendants creates a real dilemma for conscientious attorneys.

4       57.     County jails are neither designed nor prepared to house (let alone treat)

5   mentally ill individuals.[5] Jails control inmates through discipline. Such system is

6   ineffective for mentally ill persons, and, in fact, harmful to them.

7       58.     The Snohomish County Jail is a particularly inappropriate place to house

8   the mentally ill because of the Jails' demonstrated inability to care for that population.

9   The U.S. Justice Department (in response to multiple recent inmate deaths at the Jail)

10  investigated the facility, finding that "treatment for mental illness is very limited beyond

11  medications, and treatment planning is inadequate for the number of inmates who have

12  or who likely have a diagnosable mental illness. . . . There is virtually no regular

13  individual or group mental health treatment provided to the inmates." Exhibit 4 to

14  Declaration of Trueblood at page 62.

15      59.     County jails are punitive environments—not restorative. They do not

16  provide adequate, if any, services for the mentally ill. The Justice Department's report

17  also notes that "prisons and jails, which tend to be environments that exacerbate the

18  symptoms of mental illness, inmates with mental illness are especially at risk of harming

19  themselves or others." Exhibit 4 to Declaration of Trueblood at page 56.

20      60.     On August 1, when asked by jail staff, Ms. Badayos initially indicated she

21

22  [5] The Jail can provide medication management for people who are willing to take medications, but cannot
    administer medication involuntarily, except in a life-threatening emergency.   When resources permit,

23  treatment for "unfit to proceed" defendants may possibly include basic clinical psychiatry and intervention.
    Such treatment is designed to stabilize the inmate.   However, some inmates, particularly those with

24  mental illness, refuse or do not respond to medication, and do not otherwise respond to the treatment the
    jails can provide. Jails tend to segregate the mentally ill. Conversely, WSH provides housing for persons

25  found unfit to proceed is staffed by full-time psychiatrists, psychologists, mental health specialists,
    recreation counselors, social workers, mental health technicians, and nurses.

26

    14 - COMPLAINT

27

28

1    would come to court for the show cause hearing against Defendants. When, staff went

2    to her cell to pick her up, she was entirely naked, made obscene anatomical gestures

3    toward jail staff, and then indicated her unwillingness to come to court. The extended

4    isolation in solitary confinement has obviously caused additional damage to her mental

5    state. She has apparently not washed herself for some time. Jail staff were overheard to

6    say that they wished they had a way to remotely flush the toilet in her cell prior to

7    opening the door.

8         61.     She is, and has been, isolated in this 8' by 10' cell for 23 hours per day for

9    the past 33 days. The cell contains a granite slab for a bed with a ¼" thick piece of

10   rubber padding, a blanket, a fixed, backless stool, concrete bench, and an aluminum

11   toilet. She is allowed out of her cell for one hour a day. During that hour she remains in

12   hand and leg restraints unless she chooses to shower, which she rarely does. Jail staff

13   will not remove her from the cell even to meet with her attorney; Ms. Trueblood is forced

14   to communicate with Ms. Badayos through a closed, locked metal door with a small

15   plexiglass window and hole for a food tray.

16        62.     Were she not involved in Washington State's criminal justice system, Ms.

17   Badayos would be in a community-based in-patient professional mental health facility

18   receiving treatment, pursuant to the civil commitment order.

19        63.     Plaintiffs are aware of at least one additional SCPDA client (previously

20   represented by undersigned counsel) also located in the Snohomish County Jail

21   awaiting transportation and treatment. His name is Joseph Bauman, a 34 year old U.S.

22   citizen. He is alleged to have a DV No-Contact Order. The misdemeanor restoration

23   statute limits the restoration period to 14 days. Joseph has been waiting for treatment

24   since June 24 (45 days as of today).

25

26

     15 - COMPLAINT

27

28

## CLASS ACTION ALLEGATIONS

64.     The Washington Class that Plaintiffs seek to represent is defined as follows:

> All incarcerated persons who are subject to a court order directing Defendants to attempt competency restoration under RCW 10.77 who waited longer than seven days for transportation and/or treatment.

65.     **Numerosity/Impracticability of Joinder.**   On information and belief, the proposed Class consists of approximately 100 individuals making individual joinder of all proposed members of the Class impractical.

66.     **Commonality and Predominance.**   All members of the proposed Class share a united interest in the fair, just, and consistent determination of the questions of law and fact necessary to the adjudication of Defendants' liability.   All members of the proposed Class share a common interest in the determination of all factual and legal issues pertinent to the constitutionality of Defendants' acts and omissions.   All members of the proposed Class also share a common interest in obtaining treatment in a timely manner.

67.     **Typicality.**   Plaintiffs' claims on behalf of Ms. Badayos and similarly situated clients are typical of the claims and defenses of the proposed Class because Defendants have uniformly refused to provide timely treatment to legally incompetent in-custody clients.

68.     **Adequacy.**   Plaintiffs and their counsel will fairly and adequately assert and protect the interests of all members of the proposed Class.   Plaintiffs are committed to the vigorous prosecution of this action and are competent in systemic challenges to violations of the rights of criminal defendants.   Plaintiffs have no interests adverse to those of any absent members of the Class with respect to the key common

16 - COMPLAINT

1   issues of Defendants' misconduct.

2                                 CAUSES OF ACTION

3

4   69.     Plaintiffs hereby incorporate all allegations contained in the preceding

5   paragraphs for purposes of the following causes of action.

6   70.     Plaintiffs, Ms. Badayos, and the Class of similarly situated persons have

7   no complete and adequate remedy at law.

8   71.     Plaintiffs, on behalf of Ms. Badayos and the Class of similarly situated

9   persons, assert the following causes of action:

10  VIOLATION OF SUBSTANTIVE DUE PROCESS

11  72.     Due process under the federal and state constitutions require that the

12  nature and duration of confinement bear reasonable relation to the purpose for which

13  the individual is committed.

14  73.     Once Ms. Badayos and similarly situated persons are found to be legally

15  incompetent, the only lawful purpose for confinement is to attempt to restore legal

16  competency.

17  74.     Delay in transportation and treatment delays Class members' return to

18  court, when requests to reduce bail (if her competence is restored) or to dismiss

19  criminal charge (if she is not restorable) could be made.

20  75.     Legally incompetent individuals have a constitutional right to individualized

21  treatment to provide a realistic opportunity to be cured or to improve their mental

22  condition.

23  76.     County jails do not have the capacity to provide the restorative mental

24  health treatment required by the State and Federal Constitution.

25  77.     Defendants' acts and omission done under color of law directly and

26

27  17 - COMPLAINT

28

1   proximately caused unnecessarily extended confinement, additional injury to the mental

2   state of these individuals, and violation of the constitutional rights to physical freedom

3   and medical treatment.

4        78.    Federal and state constitutions and related laws guarantee the right to a

5   fair and speedy trial.

6        79.    Defendants' willful acts and omissions done under color of law directly and

7   proximately caused unnecessary delay to an otherwise speedy trial process, harmful

8   delay in interviewing witnesses and preparing an adequate defense, and violation the

9   constitutional rights to a speedy and fair trial.

10   VIOLATION OF EQUAL PROTECTION

11       80.    Federal and state Constitutions guarantee equal protection of the law, free

12   from discrimination.

13       81.    Disabled persons (including the mentally ill people like Class members)

14   are a constitutionally protected class.

15       82.    Ms. Badayos and similarly situated individuals are incarcerated while

16   awaiting lengthy delays in admission to WSH.

17       83.    Unlike competent criminal defendants who may be held pretrial pursuant

18   to a bail setting order while awaiting trial, Ms. Badayos and other members of the Class

19   are being held without a speedy trial date, without the ability to consult with counsel,

20   and without the constitutionally mandated medical regime to restore them to

21   competency. Because of her mental illness, Ms. Badayos is being held at the jail.

22       84.    Defendants' willful acts and omissions done under color of law directly and

23   proximately caused unnecessary incarceration because of mental illness.

24   CRUEL AND UNUSAL PUNISHMENT

25       85.    Federal and state Constitutions guarantee freedom from cruel and

26

   18 - COMPLAINT

27

28

1   unusual punishment.

2   86.   Defendants knew or should have known that legally incompetent persons

3   remanded to their custody were temporarily housed in county jails, and knew or should

4   have known that such institutions do not maintain staff or facilities qualified or adequate

5   to provide mental health care and restorative treatment for such persons.

6   87.   Because Class members are going without treatment, their mental health

7   is further deteriorating. The additional damage to her mental state will likely require

8   additional detention time to accomplish restoration.

9   88.   Incarcerating Class members for an indefinite period of time without

10   essential psychotropic medication is a form of cruel and unusual punishment.

11   89.   Incarcerating Class members for an indefinite period of time without cause

12   is a form of cruel and unusual punishment.

13   AFFECTIVE ASSISTANCE OF COUNSEL

14   90.   Plaintiff SCPDA is constitutionally and contractually mandated to provide

15   affective assistance of counsel to all indigent defendants to whom they are appointed.

16   91.   To provide affective assistance of counsel within state-mandated and

17   contractual guidelines, SCPDA monitors the number of clients assigned to individual

18   attorneys, represents individuals in court in pretrial, trial, and post-trial proceedings.

19   92.   In the last 10 months SCPDA attorneys have filed numerous motions

20   seeking Defendants' compliance with court orders and the constitution. These motions

21   have resulted in extensive hours of work and litigation above and beyond the attorneys'

22   normal workloads. Every hour devoted to litigating Defendants' inexcusable violation of

23   the law is time taken from other clients who SCPDA is contractually and constitutionally

24   bound to represent in an effective manner.

25   93.   Defendants' willful and continued acts and omissions done under color of

26

27   19 - COMPLAINT

28

1  law directly and proximately caused a surge in hours worked by attorneys seeking

2  compliance by Defendants on behalf of their clients. This surge frustrates the agency's

3  mission to affectively assist other clients.

4                                            PRAYER FOR RELIEF

5  Based on the foregoing, Plaintiffs, on behalf of Ms. Badayos, and a Class of

6  approximately 100 similarly situated persons, respectfully request this Court to enter

7  judgment against Defendants and grant the following relief:

8           A.      Temporary, preliminary, and permanent injunctive relief requiring

9  Defendants to promptly transport and treat all Class members to WSH or an equivalent

10  professional mental health treatment facility within a reasonable period of time not to

11  exceed seven (7) days;

12          B.      Issue declaratory judgment that Defendants must comply with

13  constitutional requirements by transporting and treating Ms. Badayos and similarly

14  situated individuals within a reasonable time after entry of an order to restore not to

15  exceed seven (7) days;

16          C.      Provide for substantial sanctions in the event of a violation of any of this

17  Court's orders in the amount of $600 per person, per day;

18          D.      Award nominal money damages in the amount of $1;

19          E.      Award reasonable attorneys fees and costs, pursuant to 42 U.S.C. §1988;

20  and

21          F.      All such other relief as this honorable Court deems just and proper.

22

23  This 7th day of August, 2014.

24

25

26

     20 - COMPLAINT
27

28

1

2          __/s Braden Pence_____

3          Braden Cyrus Pence, WSBA# 43495
           Snohomish County Public Defender Association
4          2722 Colby Avenue, Ste. 200
           ATTORNEY FOR PLAINTIFFS
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
     21 - COMPLAINT
27

28