The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.B., by and through her next friend Cassie Cordell Trueblood; D.D., by and through his next friend Andrea Crumpler; K.R., by and through his next friend Marilyn Roberts; Q.M., by and through his next friend Kathryn McCormick; all others similarly situated; and Disability Rights Washington;<br><br>     Plaintiffs,<br>  vs.<br><br>Washington State Department of Social and Health Services; Kevin Quigley, in his official capacity as Secretary of the Department of Social and Health Services; Western State Hospital; Ron Adler in his official capacity as Chief Executive Officer of Western State Hospital; Eastern State Hospital; and Dorothy Sawyer in her official capacity as Chief Executive Officer of Eastern State Hospital,<br><br>     Defendants. | No. 14-cv-01178-MJP<br><br>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br><br>NOTE ON MOTION CALENDAR: OCTOBER 6, 2014<br>[NOTE FOR OCTOBER 31, 2014 IF NOT HEARD WITH MOTION FOR TRO/PI]<br><br><br>ORAL ARGUMENT REQUESTED |

## I.  INTRODUCTION

Plaintiffs bring this action to challenge Defendants' failure to timely provide evaluation and restoration services to individuals with mental disabilities whose competence to assist in their own defense in criminal proceedings is called into question.  As shown in detail below, Defendants' failure to timely provide evaluation and restoration services to individuals who are suspected or found to be incompetent to stand trial violates the Fourteenth Amendment of the

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

1   United States Constitution. As a result, individuals with mental disabilities with pending criminal

2   proceedings, often for low-level crimes, suffer extended detention in county and city jails, often

3   in solitary confinement, for weeks and months without adequate mental health treatment.  In

4   many cases, these individuals spend more time in jail waiting for Defendants to provide court-

5   ordered competency evaluation or restoration than they would had they been convicted of the

6   crimes of which they are accused.

7        Because jails are, by their nature, punitive, they are ill equipped to handle the wide range

8   of needs of individuals with mental disabilities.  For example, individuals with mental

9   disabilities are frequently placed in solitary confinement where extreme restrictions on their

10  liberty, freedom of movement, and social interaction exacerbate their mental conditions and

11  make it more difficult for competency to be restored.  Combined with repeated delays by

12  Defendants in providing court-ordered competency evaluation and restoration, individuals

13  waiting in jails for such services often lose hope and suffer irreparable harm.

14        Against this backdrop, this case presents a question of law that is appropriate for class

15  treatment.  Pursuant to Rules 23(a) 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs

16  respectfully move this Court to certify the following class with all named Plaintiffs being

17  appointed class representatives:

18        All persons who are now, or will be in the future, charged with a
       crime in the State of Washington, and: (a) who are ordered by a court
19       to either be evaluated for competency or to receive competency
       restoration services; and (b) who have waited in jail for court-
20       ordered competency evaluation or restoration services for seven or
       more days from the date on which the court order was entered.

21  Plaintiffs seek certification of this class in order to obtain declaratory and injunctive relief,

22  requiring that Defendants timely provide competency evaluation and restoration services to

23  Plaintiffs and all other similarly situated individuals.  Certification of this class is appropriate

24

**PLAINTIFFS' MOTION FOR CLASS**
**CERTIFICATION -- 14-cv-01178-MJP** - Page 2



315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

under Rule 23(a) and (b)(2).  The Class is so numerous that joinder of all members is impracticable.  The claims of the named Plaintiffs and Class members are based on a common course of conduct—Defendants' failure to timely provide competency evaluation or restoration services, resulting in individuals with acute mental illness waiting in city and county jails for seven or more days—and this common course of conduct raises issues of fact and law that can be resolved on a Class-wide basis.  Plaintiffs' claims are typical of the claims of the Class because all claims arise from the same practices and are based on the same legal and equitable theories. Plaintiffs and their counsel will adequately represent the interests of the Class.  Finally, Defendants have acted or refused to act on grounds that apply generally to the Class, making final injunctive relief or declaratory relief appropriate to the Class as a whole.

## II.      BACKGROUND

A.      **Plaintiffs and Class Members Suffer Serious Harms as a Result of Defendants' Failure to Timely Provide Competency Evaluation and Restoration Services.**

1.      <u>State Law Places Responsibility for Competency Evaluations and Restoration Services on Defendants.</u>

A fundamental tenet of the American criminal justice system is that an individual may be prosecuted only if she is competent to have an understanding of the charges against her and to assist her attorney in her own defense.  *Dusky v. United States*, 362 U.S. 402 (1960).  *See also* Wash. Rev. Code § 10.77.050 (prohibiting an incompetent person from being "tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues").  To that end, Washington state law charges Defendants with overseeing competency evaluation and restoration services for adult individuals charged with crimes under state law.  Wash. Rev. Code §§ 10.77 *et. seq.* (2014).  Whenever there is reason to doubt that an adult individual with mental disabilities is competent to stand trial, the court orders an evaluation to determine competency. *Id.* § 10.77.060.  Whenever an individual with mental disabilities is found to be incompetent to

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

stand trial, the criminal proceedings are stayed while Defendants attempt to restore an individual

to competency. *Id.* §§ 10.77.084, -.086, -0.88.  In recognition of the important liberty interests

and constitutional rights implicated by the timeliness of competency evaluations and restoration,

state law sets a target deadline of seven days for Defendants to complete competency evaluations

and restorations for individuals detained in jails. *Id.* §§ 10.77.068.

       2.    <u>Defendants Have Consistently Failed to Timely Evaluate and Provide Restoration Services to Adult Individuals in Jails to Competency.</u>

Delays in the provision of evaluation and restoration services are a notorious and long-

standing problem that Defendants have long been aware of.  Decl. of Daron Morris ("Morris

Decl."), Ex. A; Decl. of Gordon Karlsson ("Karlsson Decl.") ¶ 4; Decl. of Kari Reardon

("Reardon Decl.") ¶¶ 4-5.  By Defendant Department of Social and Human Services's ("DSHS")

own admission, Defendants have failed to timely provide evaluation and restoration services to

individuals in jails and have in fact maintained a waitlist for evaluation and restoration services

for the last fifteen years.  Decl. of Emily Cooper ("Cooper Decl."), Ex. A-C, J at 37.  For years,

stakeholders, including state court judges, criminal defense attorneys, law enforcement officers,

jail staff, mental health providers, and disability and civil rights advocates such as Plaintiff

Disability Rights Washington, have attempted to work with Defendants to reduce waitlists and

the length of delays for competency evaluation and restoration through policy and legislative

means.  Morris Decl. ¶ 8, Ex. B.  The legislature responded by enacting Senate Bill 6492 in

2012.  At the time Senate Bill 6492 was under consideration, the average wait time for admission

to Defendant WSH or Defendant ESH for court-ordered competency evaluation was forty-one

days.  Final Bill Report, S.S.B. 6492, 61st Leg., Reg. Sess. (Wash. 2012).  Senate Bill 6492

created a seven-day target deadline for completing competency evaluations and restorations for

individuals detained in jails.  *See* Wash. Rev. Code § 10.77.068.

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -- 14-cv-01178-MJP** - Page 4

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

1   These attempts at legislative reform have failed to remedy the waitlists and delays in

2   competency evaluations and restoration services for individuals in jails.  The independent Joint

3   Legislative Audit and Review Committee ("JLARC") issued two separate reports on December

4   2, 2012 and April 23, 2014, finding that Defendant WSH and Defendant ESH were failing to

5   meet the statutory guidelines passed by the legislature regarding providing timely competency

6   evaluation and restoration treatment.  Decl. of Judy Snow ("Snow Decl."), Exs. M-N.  According

7   to JLARC: "DSHS is not consistently meeting the performance targets for competency services,

8   as intended by statute.  DSHS is also not consistently meeting its assumed evaluator staffing and

9   productivity levels."  Snow Decl., Ex. N at 2.  Further, "DSHS has not completed basic planning

10  and analysis necessary to identify the best approach to meet the targets."  *Id.*  From November 1,

11  2012 to April 30, 2013, only 14% of individuals in need of evaluation, and 30% of individuals in

12  need of restoration services, were admitted to Defendant WSH within seven days.  Snow Decl.,

13  Ex. N at 7.  Defendant ESH provides evaluations within seven days 11% of the time and

14  restoration services 35% of the time.  *Id.*  During that period, individuals waited in jail on

15  average twenty-nine days for evaluation and fifteen days for restoration services at Defendant

16  WSH, and fifty days for evaluation and seventeen days for restoration services at Defendant

17  ESH.  *Id.*

18          A year and a half later, there has been no improvement in the waitlists and delays.  In

19  fact, the waitlists and delays are longer.  According to the most recent waitlists provided by

20  Defendants, there are 256 people waiting in city and county jails for more than seven days for

21  competency evaluation or restoration services from Defendants.  Cooper Decl., Ex. C.  Ninety of

22  those individuals have already been determined to be incompetent, but are still waiting in jails

23  for restoration services.  Cooper Decl., Ex. C.  According to testimony provided by Defendants,

24

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

the current minimum wait for felony restoration treatment is sixty days.  Cooper Decl, Ex. J at 12-13; Decl. of Mary Kay High ("High Decl.") ¶¶ 3-4.  Indeed, waits for felony restoration services have been as long as seventy-three days.  Morris Decl., Ex. B.

> 3. <u>Defendants' Failure to Reduce Waitlists and Delays in Competency Evaluations and Restoration Services Cause Prolonged Detentions in Jails Which Harm Plaintiffs and Class Members.</u>

Defendants' failure to timely provide competency evaluations and restoration services to individuals in jails causes the individually named Plaintiffs and Plaintiff DRW's affected constituents to continue to languish in jails across the state for weeks and months to the detriment of their overall mental condition in numerous ways.  It is well-documented that jails are not therapeutic environments appropriate for individuals with mental conditions.  Snow Decl. ¶ 12; Decl. of Dr. Terry Kupers ("Kupers Decl."), Ex. A, at 4-9 (detailing limits of mental health treatment available in jails).  Indeed, Defendants themselves are well-aware of the harms to individuals with mental disabilities in jails.  As noted in Defendants' own consultants' recent report:

> Delays in treatment for individuals with severe mental illnesses entail both short-term and long-term consequences.  They continue to suffer from their symptoms in jails that cannot provide a therapeutic environment, and that often lack resources to identify and offer even initial treatment.  This can cause delays in treatment, but also exacerbation of symptoms for the defendant.

Cooper Decl., Ex. K at 16.

> a. *Plaintiffs and Class Members Do Not Receive Adequate Mental Health Treatment in Jails.*

Individuals with mental disabilities decompensate rapidly in jails while awaiting evaluation or restoration services because jails cannot provide adequate mental health treatment.  Kupers Decl., Ex. A, at 14; Morris Decl. ¶ 21; Decl. of Melissa Parker ("Parker Decl.") ¶¶ 12-13; Decl. of Marilyn Roberts ("Roberts Decl.") ¶ 12.  Jails across the state acknowledge their

CARNEY GILLESPIE ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

inability to treat the mental health needs of individuals waiting for evaluation and restoration services.  Snow Decl. ¶ 9; Karlsson Decl. ¶ 9 (prolonged detention "significantly taxes" mental health resources at King County Correctional Facility); Decl. of Kristina Ray ("Ray Decl.") ¶ 6 (Spokane County Jail mental health module always full and has a waitlist).

Prolonged detention in jails without adequate treatment exacerbates individuals' mental conditions, which manifests in deeply concerning behavior and self-harm.  Plaintiff A.B. "declined to take any medications, to wash herself, or to otherwise protect her most basic survival needs."  Decl. of Cassie Cordell Trueblood ("Trueblood Decl.") ¶ 5.  Plaintiff Q.M. "became less coherent and less communicative" and indicated his intent to "urinate in his cell in order to avoid having contact with the jail guards."  Decl. of Kathryn McCormick ("McCormick Decl.") ¶¶ 20-21.  Defense attorney Kari Reardon testifies that clients have "swallow[ed] objects or engag[ed] in other harm to self." Reardon Decl. ¶ 12.  After weeks of waiting in jail, one client "swallowed a razor provided to him by jail staff."  *Id.* ¶ 13.  Indeed, the Pierce County Jail Mental Health Manager Judy Snow testifies that "[i]t is not uncommon for individuals to smear feces or be unable to toilet properly due to decompensating."  Snow Decl. ¶ 14.

b.  *Jail Conditions and Solitary Confinement Exacerbate Harm to Individuals with Mental Disabilities.*

Jails are punitive by nature, and the conditions of confinement in correctional settings often exacerbate the harm suffered by individuals awaiting competency evaluation and restoration services. Kupers Decl., Ex. A at 4-9.  It is not uncommon for jails to resort to the use of force, restraints, and involuntary medication. Snow Decl. ¶ 14 ("I've even seen an individual be put in a restraint chair so that jail staff could clean the cell of feces and urine."); Decl. of Michael Stanfill ("Stanfill Decl.") ¶ 6; Roberts Decl. ¶ 15, Ex. C (photographs of bruises on Plaintiff K.R.'s wrists due to the use of restraints).  Individuals with mental disabilities are

CARNEY GILLESPIE ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

frequently placed in solitary confinement where their liberty, freedom of movement, and social interaction are extremely limited.  Trueblood Decl. ¶ 6; McCormick Decl. ¶ 22; Ray Decl. ¶¶ 7-8; Reardon Decl. ¶¶ 9-10; High Decl. ¶ 5; Cooper Decl., Exs. D-G.

Individuals with mental disabilities are frequently placed in solitary confinement for multiple reasons, and in all cases, solitary confinement, as an even more restrictive correctional setting, can accelerate decompensation. Kupers Decl., Ex. A at 9-13.  Solitary confinement, or 22 to 23 hour per day lock-down, "is not therapeutic," Ray Decl. ¶ 7, and "disproportionately impacts inmates with mental illness as the isolation only continues to exacerbate their mental illness." Snow Decl. ¶ 9.  *See also* Kupers Decl., Ex. A at 7-11.  Many individuals may end up in solitary confinement because their mental states make them less able to follow jail rules. Kupers Decl., Ex. A at 11; Cooper Decl., Exs. D-F.  Others may be placed in solitary confinement for suicide watch.  Cooper Decl., Ex. G; Reardon Decl. ¶ 11; Kupers Decl., Ex. A, at 10-11.  Individuals with mental disabilities may also end up in solitary confinement if they are parties to acts of violence in a jail.  Individuals with mental disabilities are often both victims and perpetrators of violence due to their decompensated mental states.  Kupers Decl., Ex. A at 10. Plaintiff K.R. was assaulted by another inmate while he was on the phone with his mother. Roberts Decl. ¶ 14.  Defense attorney Reardon testifies that a vulnerable client was "attacked by another inmate, knocked unconscious, and sustained a traumatic brain injury after shards of his own skull pierced his brain."  Reardon Decl. ¶ 14.

        c.     *The Harms Suffered by Plaintiffs and Class Members Are Irreparable.*

Defendants are well-aware of the long-lasting harms suffered by Plaintiffs and Class members due to their prolonged detention in jails.  Cooper Decl., Ex. K at 16.  Plaintiffs and Class members suffer these harms multiple times over, as individuals with mental disabilities spend more time in jail than those without such disabilities.  Karlsson Decl. ¶¶ 6-7; Stanfill Decl.

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

¶ 9.  The longer an individual with mental disabilities is detained in jail, the more difficult it is to restore and maintain that individual's competency.  Kupers Decl., Ex. A at 14-15; Snow Decl. ¶ 12.  Once Defendants WSH and ESH finally admit Plaintiffs and Class members for competency restoration services after they have languished in jail for months, Defendants "struggle because these individuals then require longer stays once they are admitted, straining the resources of the hospital."  Cooper Decl., Ex. K at 16.  *See also* Snow Decl. ¶ 12; Kupers Decl., Ex. A at 12.

Plaintiff putative Class members are innocent until proven guilty.  Nonetheless, many class members suffer serious irreparable harm far in excess of any criminal punishment that could be levied if convicted due to Defendants' failure to provide timely competency evaluation and restoration services.  For example, Amanda Cook, a twenty-five-year-old mother, committed suicide while she was waiting in Spokane County Jail for competency evaluation services from Defendant ESH.  Parker Decl. ¶ 3, Ex. B.  Plaintiff Q.M. has languished in jail for five months, largely in isolation, though his sentencing range if convicted is one to three months. Decl. of Ben Goldsmith ("Goldsmith Decl.") ¶ 7.  Others may lose their home, their belongings, or their eligibility for community based services while they wait in jail without a conviction.  Cooper Decl., Ex. L.

4.     <u>Defendants' Repeated and Continued Failure to Provide Timely Evaluations and Restoration Services is Well-Documented.</u>

JLARC issued a recommendation that Defendants "should hire an independent, external consultant" to develop both a service delivery approach to "meet the statutory targets" and "a staffing model to implement the new approach."  Snow Decl., Ex. N at 19.  On June 30, 2014, the consultants hired by Defendant DSHS concluded there are systemic problems with Washington's forensic mental health system, including:

> [A] lack of infrastructure specific to forensic services, a lack of
> systemic training and oversight for forensic clinicians, and a lack of



CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

1
2

> community-based alternatives to lengthy inpatient hospitalization for incompetent defendants and [not guilty by reason of insanity] acquittees.

3   Cooper Decl., Ex. K at 2.  According to Defendants' own experts, "DSHS currently has an

4   insufficient number of evaluators to conduct all the evaluations required."  Cooper Decl., Ex. K

5   at 10.  The report went on to conclude that Washington's forensic mental health system is

6   inadequately funded, resulting in its inability to fulfill its obligations under state law.  *See*

7   Cooper Decl., Ex. K at 11.  With pressure from the legislature, Defendants have hired

8   consultants and reached out to stakeholders, but have failed to propose or implement a plan for

9   fixing a fifteen-year-old problem.  Cooper Decl. Exs. J-K; Morris Decl. ¶ 22; Snow Decl. ¶ 17.

10  **B.     Defendants Have Made Clear That They Will Not Take Any Action to Reduce
11          Waitlists and Delays in Competency Evaluations and Restoration Services for
           Plaintiffs and Class Members.**

12          Plaintiffs and Class members now seek relief from this Court to vindicate their due

13  process rights under the United States Constitution, as Defendants have made clear that they will

14  not take any action to remedy the waitlists and delays.  Defense attorneys have tried to bring

15  contempt motions seeking to compel Defendants to take action, with little success.  Morris Decl.

16  at ¶ 6; Decl. of Andrea Crumper ("Crumpler Decl.), at Exs. D, F; Trueblood Decl., Ex. B;

17  Reardon Decl. ¶ 8.  For example, Defendants successfully argued that the state court lacked

18  jurisdiction to determine constitutional liberty questions.  Crumpler Decl., Exs. D, F.  Even

19  where state courts have found Defendants in contempt, Defendants refuse to comply with these

20  court orders.  Cooper Decl., Exs. H, J at 53 (Attorney General's Office stating in contempt

21  proceedings that Defendants will not comply with any state court order for Defendants to

22  immediately transport a pre-trial detainee for competency restoration).  Because neither

23  legislative action nor state courts have appropriately addressed the issue, Plaintiffs bring this

24  action in federal court.

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

1

### III.    ARGUMENT

2       This action is still in the early stages of discovery, but Plaintiffs have already presented

3   substantial evidence showing that Defendants are systematically violating the rights of

4   individuals with mental disabilities with pending criminal proceedings by failing to timely

5   provide competency evaluations or restorations.  Because Defendants are acting or refusing to

6   act on grounds generally applicable to all individuals who have been waiting in jail for seven or

7   more days for competency evaluations or restorations, final injunctive relief and corresponding

8   declaratory relief are appropriate respecting the proposed Class as a whole.  Accordingly,

9   Plaintiffs respectfully request that the Court certify this case as a class action pursuant to Rule

10  23(b)(2).

11  **A.      Plaintiffs Satisfy the Requirements for Class Certification Under Rule 23(a)**

12      "The decision to grant or deny class certification is within the trial court's discretion."

13  *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).  In order to grant

14  class certification, the Court must determine that the criteria of Rule 23(a) are met, and that the

15  class fits within one of the three categories of Rule 23(b).  *Unthaksinkun v. Porter*, C11-

16  0588JLR, 2011 WL 4502050, at *6 (W.D. Wash. Sept. 28, 2011) (quoting *Wal–Mart Stores, Inc.

17  v. Dukes*, ⸺ U.S. ⸺, 131 S. Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)).

18      However, the Court does not, when certifying a class, evaluate the strength of the claims:

19  "[a]ny inquiry into the merits . . . should be limited to determining whether the requirements of

20  Rule 23 are met and 'may not go so far . . . as to judge the validity of the claims.'"  *Id.* (quoting

21  *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union

22  v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010)).

23

24

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

There are four prerequisites to class certification: numerosity, commonality, typicality, and adequacy of representation.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2009) (citing Fed. R. Civ. P. 23(a)).  For the reasons set forth below, Plaintiffs satisfy each of these.

      1.    <u>The Proposed Class Members Are So Numerous That Joinder Is Impracticable.</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  *Harris v. Palm Springs Alpine Est., Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). No fixed number of class members is required.  *Perez-Funez v. District Director, Immigration & Naturalization Service*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) ("There is no magic number for determining when too many parties make joinder impracticable.  Courts have certified classes with as few as thirteen members, and have denied certification of classes with over three hundred members.") (citations omitted).

"The party seeking certification need not identify the precise number of potential class members."  *Garrison v. Asotin County*, 251 F.R.D. 566, 569 (E.D. Wash. 2008).  Moreover, numerosity has been held presumptively satisfied when a proposed class comprises forty or more members.  *See McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673-74 (W.D. Wash. 2010) (citing cases).

In this case, unfortunately, the most recent reports provided by the state indicate there are 256 putative Class members who have been charged with crimes and who are waiting in jail for more than seven days for evaluation and restoration of competency by Defendants as required by state law.  Cooper Decl., Ex. C. Clearly, this number of plaintiffs would be impractical to join individually.  While the number of people on the waiting in jails for competency evaluations or

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

1   restoration services by Defendants has varied in size, there has been a persistent waitlist for these

2   services for fifteen years with a recent dramatic increase.  Cooper Decl., Exs. C, J at 12-13.  For

3   this reason, the numerosity criterion is satisfied with respect to the proposed Class.

4          Joinder is also inherently impractical because of the unnamed, unknown future class

5   members who will be harmed by Defendants' unlawful practice of subjecting individuals with

6   mental disabilities to prolonged incarceration due to their failure to timely evaluate and treat such

7   individuals pursuant to court orders.  *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319

8   (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (holding joinder of unknown

9   members is impracticable); *Ali v. Ashcroft*, 213 F.R.D. 390, 408-09 (W.D. Wash. 2003), *aff'd*,

10  346 F.3d 873, 886 (9th Cir. 2003), *vacated on other grounds*, 421 F.3d 795 (9th Cir. 2005)

11  (citations omitted) ("'where the class includes unnamed, unknown future members, joinder of

12  such unknown individuals is impracticable and the numerosity requirement is therefore met,'

13  regardless of class size.").  The impracticability of joining future class members is particularly

14  relevant with inherently revolving detainee populations such as individuals with mental

15  disabilities who are largely charged with low-level crimes.

16          2.      The Class Presents Common Questions of Law and Fact.

17          Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed.

18  R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members

19  have suffered the same injury." *Unthaksinkun*, 2011 WL 4502050, at *12 (quoting *Dukes*, 131 S.

20  Ct. at 2551) (internal marks omitted).  "The class members' 'claims must depend upon a

21  common contention,'" and that common contention "must be of such a nature that it is capable of

22  classwide resolution—which means that determination of its truth or falsity will resolve an issue

23

24

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

1   that is central to the validity of each one of the claims in one stroke.'"  *Id.*  (quoting *Dukes*, 131

2   S. Ct. at 2551).

3           It is not necessary that members of the proposed class "share every fact in common or

4   completely identical legal issues." *Rodriguez*, 591 F.3d at 1122.  Rather, the "existence of

5   shared legal issues with divergent factual predicates is sufficient, as is a common core of salient

6   facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150

7   F.3d 1011, 1019 (9th Cir. 1998).  *See also Doe v. Los Angeles Unified Sch. Dist.*, 48 F. Supp. 2d

8   1233, 1241 (C.D. Cal. 1999) ("[C]ommonality exists if plaintiffs share a common harm or

9   violation of their rights, even if individualized facts supporting the alleged harm or violation

10  diverge.").  In this context, one shared legal issue can be sufficient. *See, e.g.*, *Walters v. Reno*,

11  145 F.3d 1032, 1046 (9th Cir. 1998) ("What makes the plaintiffs' claims suitable for a class

12  action is the common allegation that the INS's procedures provide insufficient notice.");

13  *Rodriguez*, 591 F.3d at 1122 ("[T]he commonality requirement asks us to look only for some

14  shared legal issue or a common core of facts.").

15          The commonality standard is even more liberal in a civil rights suit such as this one, in

16  which "the lawsuit challenges a system-wide practice or policy that affects all of the putative

17  class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other*

18  *grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).  "[C]lass suits for injunctive or

19  declaratory relief" like this case, "by their very nature often present common questions satisfying

20  Rule 23(a)(2)."  7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1763 at 226.

21          In this case, all named Plaintiffs have in common with the Class the principal legal issue

22  in the case, relating to the legality of Defendants' practices.  Each named Plaintiff and the Class

23  assert that Defendants' conduct violates their due process rights under the Fourteenth Amendment

24

CARNEY
GILLESPIE
ISITT

315 5TH AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

of the U.S. Constitution and should be enjoined as such an injunction would provide classwide

resolution  As such, the commonality criterion is satisfied.

      3.     <u>The Claims of the Named Plaintiffs Are Typical of the Claims of the Members of the Proposed Class.</u>

Typicality is satisfied if "the claims or defenses of the representative parties are typical of

the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality

requirement is to assure that the interest of the named representative aligns with the interests of

the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992).  "It is not necessary

that the class representatives' injuries be identical to all class members' injuries, 'only that the

unnamed class members have injuries similar to those of the named plaintiffs and that the

injuries result from the same, injurious course of conduct.'" *Unthaksinkun*, 2011 WL 4502050, at

\*13 (quoting *Armstrong*, 275 F.3d at 869); *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S.

147, 156 (1982) (citation omitted).

As with commonality, factual differences among class members do not defeat typicality

provided there are legal questions common to all class members.  *LaDuke v. Nelson*, 762 F.2d

1318, 1332 (9th Cir. 1985) ("The minor differences in the manner in which the representative's

Fourth Amendment rights were violated does not render their claims atypical of those of the

class."); *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) ("When

it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff

and the class sought to be represented, the typicality requirement is usually satisfied, irrespective

of varying fact patterns which underlie individual claims.") (citations omitted).

The claims of the named Plaintiffs are typical of the claims of the proposed Class.  Each

of the named Plaintiffs has suffered the harm this litigation seeks to remedy: being held in jail for

a period of seven or more days without being provided with court-ordered competency

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

1    evaluation or restoration.  While the length of time that each of the named Plaintiffs and

2    proposed Class members has waited in jail varies, all have been subjected to prolonged detention

3    in jails in excess of a reasonable seven days for arraigning an in-jail evaluation or transporting to

4    a hospital for the provision of competency evaluation or restoration.  *See Oregon Advocacy*

5    *Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003); Wash. Rev. Code § 10.77.068.  In each

6    case, the delay was not due to the exercise of professional judgment specific to the best interests

7    of the putative Class member.  Rather, it results from Defendants' failure to provide adequate

8    staffing and facilities to meet their obligations to Plaintiffs.  The named Plaintiffs and Class

9    members all seek the same declaratory and injunctive relief.  For these reasons, the typicality

10   requirement is satisfied.

11           4.     <u>The Named Plaintiffs Will Adequately Protect the Interests of the Proposed Class,
                    and Counsel Are Qualified to Litigate this Action.</u>

12           Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

13   the interests of the class."  In order to make that determination, the Court "must resolve two

14   questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

15   class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

16   on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)

17   (internal quotation marks and citation omitted).  In this case, both questions are answered in the

18   affirmative.

19           a.     *Individual Named Plaintiffs*

20           None of the named Plaintiffs have interests in conflict to the Class; rather, they all share

21   the common interest of a remedy that will prevent further violations of their rights under the U.S.

22   Constitution.

23

24

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

1    Moreover, in an action where incompetent persons are represented by next friends

2    pursuant to Fed. R. Civ. P. 17, the next friends must be dedicated to the named plaintiffs' best

3    interests, be familiar with the litigation, understand why the named plaintiffs seek relief, and be

4    willing and able to pursue the case on behalf of the named plaintiffs.  *Sam M. ex rel. Elliot v.*

5    *Carcieri*, 608 F.3d 77, 92 (1st Cir. 2010).  The next friends for the individual named Plaintiffs,

6    who sue on their behalf, have manifested their understanding that this case is a class action.

7    Each of them is dedicated to the best interests not only of these named Plaintiffs, but also to the

8    proposed Class to whom they would owe a fiduciary duty.  Each of the next friends is also

9    familiar with this litigation, understands the need for the relief sought, and is willing and able to

10   pursue this case on behalf of these named Plaintiffs and the Class they seek to represent.  *See*

11   Trueblood Decl. ¶ 4; Crumpler Decl. ¶ 4; Roberts Decl. ¶ 4; McCormick Decl. ¶¶ 3-5.

12       Finally, Rule 23(a)(4) "is satisfied as long as one of the class representatives is an

13   adequate class representative."  *Rodriguez v. West Publ. Corp.*, 563 F.3d 948, 961 (9th Cir.

14   2009).  Because all individual named Plaintiffs are individually adequate representatives of the

15   class, they meet the criteria of Rule 23(a)(4).

16       b.    *Organizational Plaintiff*

17       Plaintiff Disability Rights Washington ("DRW"), as the designated Protection and

18   Advocacy system for people with disabilities in the state of Washington, has standing as an

19   organization to bring this case and seek relief on behalf of its constituency affected by

20   Defendants' delay in providing competency evaluations and restorations. *Mink*, 322 F.3d 1101

21   (Oregon counterpart brought case and secured relief for people waiting in jail for competency

22   evaluation and restoration); *K.M. v. Regence Blueshield*, C13-1214 RAJ, 2014 WL 801204

23   (W.D. Wash. Feb. 27, 2014) (holding, "DRW has constitutional standing to represent its

24

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION -- 14-cv-01178-MJP - Page 17

CARNEY
GILLESPIE
ISITT

315 5TH AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

constituents-individuals with physical, mental and developmental disabilities in Washington State."); *Elkins v. Dreyfus*, C 10-1366 MJP, 2010 WL 3947499, at *9 (W.D. Wash. Oct. 6, 2010) (approving DRW as organizational plaintiff alongside a plaintiff class).  Since DRW's constituency includes every class member awaiting evaluation and restoration for a mental disability that affects competency to stand trial, the interests of DRW and the class are in complete alignment.  Decl. of Mark Stroh ¶ 6; *Elkins*, 2010 WL 3947499, at *6 (this Court previously found having both a class and DRW as an organizational plaintiff appropriate given "DRW exists to represent the interests of those with disabilities and those within the proposed class.").

        c.    *Counsel*

The adequacy of Plaintiffs' counsel is also satisfied here.  Counsel are deemed qualified when they can establish their experience in previous class actions and cases involving the same area of law.  *See Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985); *Marcus v. Heckler*, 620 F. Supp. 1218, 1223-24 (N.D. Ill. 1985); *Adams v. Califano*, 474 F. Supp. 974, 979 (D. Md. 1979), *aff'd without opinion*, 609 F.2d 505 (4th Cir. 1979).

With respect to the adequacy of counsel, the Court considers the work counsel has done to investigate the claims of the proposed Class, counsel's experience in handling complex cases, counsel's knowledge of applicable law, and the resources counsel will commit to representing the Class.  Fed. R. Civ. P. 23(g)(1)(A).  Plaintiffs are represented by Disability Rights Washington, the Public Defender Association, the American Civil Liberties Union of Washington Foundation, and a private law firm that specializes in civil rights litigation, Carney Gillespie Isitt PLLP.  Plaintiffs' counsel are counsel of record in numerous cases, including those

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION -- 14-cv-01178-MJP - Page 18

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

focusing on civil rights and due process violations, that successfully obtained class certification and class relief.  They are able and experienced in criminal defense litigation, including competency determination and restoration, as well as civil rights litigation, and, among them, have considerable experience in handling complex and class action litigation, including civil rights litigation and litigation on behalf of people with disabilities.  *See* Declarations of David Carlson; Christopher Carney; Sarah Dunne; and Anita Khandelwal in support of the Motion for Class Certification.  In this case, Plaintiffs' counsel have worked extensively to investigate the claims, are dedicated to prosecuting the claims of the Class, and have the resources to do so. *Id*. In sum, Plaintiffs' counsel will vigorously represent both the named and absent Class members.

**B.    This Action Satisfies The Requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure.**

In addition to the four requirements of Rule 23(a), Plaintiffs must satisfy one of the three conditions of Rule 23(b).  *Rodriguez*, 591 F.3d at 1122.  Here, Plaintiffs seek certification under Rule 23(b)(2).  Class certification under Rule 23(b)(2) "requires 'that the primary relief sought is declaratory or injunctive.'" *Id.* at 1125 (citation omitted). "The rule does not require [the court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Id.*

Rule 23(b)(2) was specifically designed for civil rights cases challenging a common course of conduct.  *See* Fed. R. Civ. P. 23 advisory committee's note to 1966 Amendment, Subdivision (b)(2) (noting "various actions in the civil-rights field" are appropriate for (b)(2) certification; 7A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1775, at 71 (3d ed. 2005).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

1  unlawful only as to all of the class members or as to none of them." *Unthaksinkun*, 2011 WL

2  4502050, at *15 (quoting *Dukes*, 131 S. Ct. at 2557).  "In other words, Rule 23(b)(2) applies

3  only when a single injunction or declaratory judgment would provide relief to each member of

4  the class." *Id.* (quoting *Dukes*, 131 S. Ct. at 2557).

5        This action meets the requirements of Rule 23(b)(2), namely "the party opposing the

6  class has acted or refused to act on grounds generally applicable to the class, thereby making

7  appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a

8  whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (Rule 23(b)(2) "requirements are

9  unquestionably satisfied when members of a putative class seek uniform injunctive or

10 declaratory relief from policies or practices that are generally applicable to the class as a

11 whole"); *Marisol A. ex.rel. Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (certifying

12 under Rule 23(b)(2) class of children seeking declaratory and injunctive relief from systematic

13 failures in child welfare system).

14       Defendants' actions of failing to provide timely evaluations of competency and treatment

15 for restoration of competency to all Class members clearly demonstrate that Defendants have

16 acted "on grounds generally applicable to the class, thereby making appropriate final injunctive

17 relief or corresponding declaratory relief with respect to the class as a whole."  Hence, the

18 requirements of Rule 23(b)(2) are met.

19            **IV.**   **CONCLUSION**

20       For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion

21 and enter the attached order certifying the proposed Class pursuant to Rule 23(b)(2); appoint

22 A.B., D.D., K.R., and Q.M. as Class representatives; and appoint Disability Rights Washington,

23

24

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

1   the Public Defender Association, the American Civil Liberties Union of Washington Foundation,

2   and Carney Gillespie Isitt PLLP as Class counsel.

3           Dated this 3rd day of October, 2014.

4                                               **CARNEY GILLESPIE ISITT PLLP**

5                                               /S/Christopher Carney
                                                /S/Sean Gillespie
6                                               /S/Kenan Isitt
                                                Christopher Carney, WSBA No. 30325
7                                               Sean Gillespie, WSBA No. 35365
                                                Kenan Isitt, WSBA No. 35317

8                                               **DISABILITY RIGHTS WASHINGTON**

9                                               /s/ David Carlson
10                                              /s/ Emily Cooper
                                                David R. Carlson, WSBA No. 35767
11                                              Emily Cooper, WSBA No. 34406
                                                Disability Rights Washington
12                                              315 Fifth Avenue South, Suite 850
                                                Seattle, WA 98104
13                                              (206) 324-1521
                                                davidc@dr-wa.org
14                                              emilyc@dr-wa.org

15                                              **ACLU OF WASHINGTON FOUNDATION**

16                                              /s/ Sarah A. Dunne
17                                              /s/ Margaret Chen
                                                Sarah A. Dunne, WSBA No. 34869
                                                Margaret Chen, WSBA No. 46156
18                                              ACLU of Washington Foundation
                                                900 Fifth Avenue, Suite 630
19                                              Seattle, Washington 98164
                                                (206) 624-2184
20                                              dunne@aclu-wa.org
                                                mchen@aclu-wa.org

21

22

23

24



CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206·445·0220
FAX 206·260·2486

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**PUBLIC DEFENDER ASSOCIATION**

*/s/ Anita Khandelwal*

Anita Khandelwal, WSBA No. 41385
Public Defender Association
810 Third Avenue, Suite 800
Seattle, Washington 98104
(206) 447-3900
anitak@defender.org

Attorneys for Plaintiffs

CARNEY
GILLESPIE
ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- John K McIlhenny (JohnM5@atg.wa.gov)

- Nicholas A Williamson (NicholasW1@atg.wa.gov)

- Sarah Jane Coats (sarahc@atg.wa.gov)

- Amber Lea Leaders (amberl@atg.wa.gov)


DATED:  October 3, 2014, at Seattle, Washington.



/s/Mona Rennie
Legal Assistant
Disability Rights Washington



CARNEY GILLESPIE ISITT

315 5th AVENUE SOUTH, SUITE 860
SEATTLE, WA 98104
PHONE 206•445•0220
FAX 206•260•2486