1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

CASSIE CORDELL TRUEBLOOD, et al.,

                Plaintiffs,

     v.

WASHINGTON STATE DEPARTMENT
OF SOCIAL AND HEALTH SERVICES,
et al.,

                Defendants.

CASE NO. C14-1178 MJP

ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT

11
12
13
14
15
16
17

      THIS MATTER comes before the Court on Plaintiffs' motion for summary judgment on

18

the question of whether current in-jail waiting times for court-ordered competency evaluation

19

and restoration services violate the Due Process Clause of the Fourteenth Amendment.  (Dkt. No.

20

87.)  Having considered the Parties' briefing and all related papers, the Court finds the current in-

21

jail wait time experienced by Plaintiffs and class members to be far beyond any constitutional

22

boundary and therefore GRANTS the motion.

23
24

**Summary**

1

2     In this case, Plaintiffs argue that Defendants, the Washington State Department of Social

3 and Health Services and two state hospitals, Western State Hospital and Eastern State Hospital,

4 are violating the constitutional rights of certain pretrial criminal defendants by failing to provide

5 those individuals with timely services.  State law requires that Defendants provide competency

6 evaluation and competency restoration services to people who have been charged with a crime,

7 but who state court judges believe may be mentally incompetent to stand trial.

8     Once a court orders that an individual be evaluated for competency or that an

9 incompetent person receive treatment so as to restore competency, that individual waits in the

10 local jail until Defendants are able to provide those services.  The hospitals have been unable to

11 provide services within the timeframe suggested by the legislature, seven days, because of an

12 increase in the number of individuals requiring such services and because of a lack of resources,

13 staff, and facilities.  The average in-jail waiting times now range from two weeks at the low end

14 to almost two months on the high end.

15     As the Court explains in greater detail below, Defendants' failure to provide these court-

16 ordered services within a reasonable amount of time violates the rights guaranteed by the Due

17 Process Clause of the Fourteenth Amendment.  The Due Process Clause protects the liberty

18 interests of individuals to be free from incarceration absent a criminal conviction, and to receive

19 restorative treatment when they are being incarcerated due to mental incompetence.  Defendants'

20 failure to provide timely services to these detainees has caused them to be incarcerated,

21 sometimes for months, in conditions that erode their mental health, causing harm and making it

22 even less likely that they will eventually be able to stand trial.   Because this failure violates the

23 due process rights of criminal defendants who are mentally ill or suspected to be mentally ill, the

24

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT- 2

1   Court grants Plaintiffs' motion and declares that Defendants have violated their constitutional

2   rights.  At trial, the Court will hear facts to determine what amount of time detainees can be

3   made to wait without violating their due process rights, and will fashion a remedy accordingly.

4                                          **Background**

5           This summary judgment motion is part of a class action brought on behalf of people

6   facing criminal charges who have been found to be, or are suspected to be, mentally incompetent

7   to stand trial.  Following a court order that they be evaluated for competency or provided with

8   competency restoration services, these detainees wait in city or county jail until they can be

9   accepted into one of two state hospitals charged by state law with performing competency

10  services for criminal defendants.  RCW 10.77 et seq. (2014).  At this point, their criminal

11  prosecutions are stayed until they regain competency; if they cannot regain competency, they

12  must be found not guilty by reason of insanity.  The hospitals, Western State Hospital ("WSH")

13  and Eastern State Hospital ("ESH"), are chronically short on beds and staff, and thus the waiting

14  time for transfer – not to exceed seven days under a target deadline set by the legislature – can

15  now exceed sixty days.  For the period of November 1, 2012 to April 30, 2013, individuals

16  waited in jail on average twenty-nine days for evaluation and fifteen days for restoration at

17  WSH, and fifty days for evaluation and seventeen days for restoration at ESH.  (Dkt. No. 42-3 at

18  51.)  The legislature's target of wait time of seven days or less was met less than fifteen percent

19  of the time.  (Id.)

20          Plaintiffs detail the alarming conditions faced by many mentally ill pretrial detainees

21  while in jail awaiting transfer.  (Dkt. No. 87 at 7-10.)  Without access to medication and facing

22  the extraordinary stresses of being incarcerated, some detainees resort to harming themselves or

23  others.  (Dkt. No. 47 at 3-5.)  Some detainees withdraw within themselves, refusing to eat and

24

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT- 3

1   urinating and defecating on themselves rather than interact with guards and other detainees.

2   (Dkt. No. 52 at 3-5.)  Some are forcibly medicated or restrained so as to allow for guards to feed

3   and clean them, and suffer physical injuries from the process.  (Dkt. No. 42 at 4-5.)  Jails are

4   often not equipped to deal with people with mental health issues, and overwhelmed guards resort

5   to placing mentally ill detainees in solitary confinement, for their own safety or the safety of

6   others.  (Dkt. No. 50-1 at 10-14.)  Alone for 22 to 23 hours a day and without access to

7   medication, some of these detainees lose touch with reality—damage to their mental health that

8   can take years of intensive mental health services to reverse.  (Id. at 15-17.)

9         Defendants—WSH, ESH, and the State Department of Social and Health Services—

10   concede that "current wait times for many criminal defendants are excessive and indefensible."

11   (Dkt. No. 95 at 3.)  They argue, however, that other waiting periods are reasonable under the

12   circumstances and thus comply with due process.  Defendants detail the challenges they face,

13   including a lack of qualified and/or licensed forensic psychologists who can perform competency

14   evaluations and restoration services, concern for the safety of other patients and hospital staff

15   when potentially dangerous arrestees are too hastily transferred to civil units, and the lack of

16   physically acceptable spaces which can be secured sufficiently to serve those facing criminal

17   charges.  (Dkt. No. 95 at 3-7.)

18         Plaintiffs argue that Defendants' lack of funds, staff, or facilities cannot justify

19   infringement of the liberty interests of those incarcerated, and now seek summary judgment on

20   the question of whether current wait times violate due process.

21                          **Discussion**

22      I.     Legal Standards

23            A.     Summary Judgment

24

1    Summary judgment is proper where "the movant shows that there is no genuine issue as

2    to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3    56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue

4    of fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). In assessing whether a party has met

5    its burden, the underlying evidence must be viewed in the light most favorable to the non-

6    moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). All

7    material facts alleged by the non-moving party are assumed to be true, and all inferences must be

8    drawn in that party's favor. <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1088 (9th Cir. 2008).

9    B.    Due Process Clause of the Fourteenth Amendment

10    "'The Due Process Clause . . . provides heightened protection against government

11    interference with certain fundamental rights and liberty interests,' . . . 'forbid[ding] the

12    government to infringe certain "fundamental" liberty interests <u>at all</u>, no matter what process is

13    provided, unless the infringement is narrowly tailored to serve a compelling state interest.'"

14    <u>Lopez-Valenzuela v. Arpaio</u>, 770 F.3d 772, 780 (9th Cir. 2014) (en banc) (quoting <u>Washington</u>

15    <u>v. Glucksberg</u>, 521 U.S. 702, 719–20 (1997) and <u>Reno v. Flores</u>, 507 U.S. 292, 302 (1993))

16    (emphasis in original). The Supreme Court has long recognized that individuals have a

17    fundamental liberty interest in being free from incarceration absent a criminal conviction, and

18    that there are corresponding constitutional limits on pretrial detention. <u>See Lopez-Valenzuela</u>,

19    770 F.3d at 777-78, 780-81.

20    "Incapacitated criminal defendants have liberty interests in freedom from incarceration

21    and in restorative treatment." <u>Oregon Advocacy Ctr. v. Mink</u>, 322 F.3d 1101, 1121 (9th Cir.

22    2003). "Because incapacitated criminal defendants have not been convicted of any crime, they

23    have an interest in freedom from incarceration. They also have a liberty interest in receiving

24

1  restorative treatment." Id.  "[A] person charged by a State with a criminal offense who is

2  committed solely on account of his incapacity to proceed to trial cannot be held more than the

3  reasonable period of time necessary to determine whether there is a substantial probability that

4  he will attain that capacity in the foreseeable future.  If it is determined that this is not the case,

5  then the State must either institute the customary civil commitment proceeding that would be

6  required to commit indefinitely any other citizen, or release the defendant.  Furthermore, even if

7  it is determined that the defendant probably soon will be able to stand trial, his continued

8  commitment must be justified by progress toward that goal." Jackson v. Indiana, 406 U.S. 715,

9  738 (1972).

10          "Whether the substantive due process rights of incapacitated criminal defendants have

11  been violated must be determined by balancing their liberty interests in freedom from

12  incarceration and in restorative treatment against the legitimate interests of the state." Mink, 322

13  F.3d at 1121.

14          II.      Plaintiffs' and Class Members' Liberty Interests

15          Plaintiffs and class members have suffered extended periods of incarceration in city and

16  county jails awaiting court-ordered competency evaluation and restoration services, implicating

17  their rights to be free from incarceration absent conviction and to timely restorative treatment

18  when mental incompetence is the purpose of their incarceration.

19          "[T]he paradigmatic liberty interest under the due process clause is freedom from

20  incarceration." Oviatt ex rel. Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

21  Furthermore, "a person committed solely on the basis of his mental incapacity has a

22  constitutional right to receive such individual treatment as will give each of them a realistic

23  opportunity to be cured or to improve his or her mental condition." Ohlinger v. Watson, 652

24

1    F.2d 775, 778 (9th Cir. 1980) (internal quotation marks omitted).  "Adequate and effective

2    treatment is constitutionally required because, absent treatment, [they] could be held indefinitely

3    as a result of their mental illness, while those convicted and sentenced" need only serve the

4    maximum term for their criminal offense.  Id.

5         While Defendants argue that a certain amount of in-jail wait time is both reasonable and

6    constitutional, they agree that Plaintiffs and class members have due process rights to be free

7    from prolonged incarceration absent conviction, and in restorative treatment when they are being

8    incarcerated for the purpose of competency evaluation and restoration.  (Dkt. No. 95 at 12, 20.)

9         III.    State Interests

10        "The safeguards that the Constitution accords to criminal defendants presuppose that

11   government has a sovereign prerogative to put on trial those accused in good faith of violating

12   valid laws.  Constitutional power to bring an accused to trial is fundamental to a scheme of

13   'ordered liberty' and prerequisite to social justice and peace."  Illinois v. Allen, 397 U.S. 337,

14   347 (1970) (Brennan, J., concurring).  In furtherance of that goal, the state has a legitimate

15   interest in evaluating a potentially incompetent defendant's competency so as to determine

16   whether he or she may stand trial, and in restoring the competency of those found incompetent so

17   that they then may be brought to trial.  The state has a corresponding interest in an efficient and

18   organized competency evaluation and restoration system, the administration of which uses public

19   resources in an appropriate manner.  "Lack of funds, staff or facilities," however, "cannot justify

20   the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation."

21   Mink, 322 F.3d at 1121 (quoting Ohlinger, 652 F.2d at 779).

22        Like the Mink court, this Court can discern no legitimate state interest in "keeping

23   mentally incapacitated criminal defendants locked up in county jails for weeks or months."

24

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT- 7

1    Mink, 322 F.3d at 1121.  Defendants argue they have a "legitimate interest in reasonable delays

2    before provision of competency services."  (Dkt. No. 95 at 13) (emphasis in original).  The Court

3    disagrees.  As discussed above, the state has a legitimate interest in an efficient, cost-effective

4    competency services apparatus, and the functioning of that apparatus may require the passage of

5    a certain amount of time before services are provided.  There is, however, no legitimate

6    independent interest in delays within the system because delays undermine the state's "primary

7    governmental interest" of bringing the accused to trial.  (Dkt. No. 95 at 12.)  Prolonged

8    incarceration awaiting competency evaluation or restoration undermines that goal because

9    "[w]hile they are detained in jail, incapacitated criminal defendants do not receive care giving

10   them a realistic opportunity of becoming competent to stand trial."  Mink, 322 F.3d at 1121.  In

11   other words, because jails are inherently punitive and not therapeutic institutions, the mental

12   health of detainees further erodes with each additional day of wait time, especially when those

13   detainees are held in solitary confinement.   Because delays lengthen incarceration, worsening

14   the mental health conditions of detainees, and because "continued commitment must be justified

15   by progress toward [the] goal" of restoration of competency so that the detainee is able to stand

16   trial, Jackson v. Indiana, 406 U.S. 715, 738 (1972), there is no legitimate independent interest in

17   delays.

18           Defendants also argue there is a legitimate interest in detaining individuals awaiting

19   competency services who have pending criminal charges, particularly when the charges are

20   serious in nature.  (Dkt. No. 95 at 13.)  While this may be true, Plaintiffs do not challenge the

21   fact of their detention, but rather the length of their detention.  (Dkt. No. 87.)  The state's

22   legitimate interest in detention is not an interest in prolonged or indefinite detention, and is not

23   relevant to the question here.

24

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT- 8

1    IV.    Due Process Balancing

2         "Whether the substantive due process rights of incapacitated criminal defendants have

3    been violated must be determined by balancing their liberty interests in freedom from

4    incarceration and in restorative treatment against the legitimate interests of the state." Mink, 322

5    F.3d at 1121.  The Court concludes that such a balance favors the mentally ill detainees, and that

6    Defendants' failure to provide timely services violates the Due Process Clause of the Fourteenth

7    Amendment.

8         Detainees incarcerated while waiting for court-ordered competency evaluation and

9    restoration services face extraordinary hardships in city and county jails.  Plaintiffs and class

10   members are incarcerated for many weeks not because they have been convicted of a crime and

11   not because they have been found to be dangerous or pose a flight risk; rather, Plaintiffs and

12   class members are incarcerated because Defendants do not have sufficient bed space or available

13   staff to provide the evaluations and restorations they are charged by state law with providing.

14   While any incarceration can be harmful to people with serious mental illness, some detainees are

15   held in solitary confinement—isolated for 22 to 23 hours per day—because city and county jails

16   are ill equipped to handle the challenges posed by mentally ill detainees.  For many, solitary

17   confinement exacerbates mental illness and increases the chance of suicide.  Plaintiff A.B., for

18   instance, spent thirty-seven days in solitary confinement, where she declined to take medication

19   or wash herself.  (Dkt. No. 51 at 2.)  Plaintiff D.D. told his attorney he had a plan to end his life

20   because of his ongoing incarceration after spending weeks in solitary confinement.  (Dkt. No. 54

21   at 2.)  Plaintiff K.R. lost touch with reality after spending four months in jail without medication,

22   much of it in solitary confinement after being assaulted by his cellmate.  (Dkt. No. 88 at 2-3, 49

23   at 2-4.)  Those not in solitary confinement also suffer deterioration of their mental health, in part

24

ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT- 9

1  because the rate of medication compliance in jails is low.  Plaintiff R.H., for example, told his

2  attorney that he was experiencing visual hallucinations, blurred vision, and constant head pain,

3  and could not remember his own name or whether anyone in his family had visited him in jail.

4  (Dkt. No. 91 at 1-2.)

5        Jails are punitive environments by definition, and the conditions of confinement

6  undermine the mental health of detainees as well as the state's interests in competency

7  restoration and trial.  While the state's interest in an organized, efficient, and cost-effective

8  competency evaluation and restoration apparatus is legitimate, an effective and administrable

9  system in no way requires waiting periods measured in weeks.  Defendants themselves concede

10 that their failure to provide timely competency evaluation and restoration services to some

11 detainees has resulted in prolonged incarceration that is "excessive and indefensible."  (Dkt. No.

12 95 at 1.)  The Court concludes that the liberty interests of those incarcerated while awaiting

13 court-ordered competency services outweigh countervailing state interests, and that the current

14 waiting periods violate the substantive due process rights of those incarcerated.

15       V.      Defendant's Motion to Strike

16       Defendants move to strike portions of Plaintiffs' Reply because it contains new

17 arguments and new facts not contained in Plaintiffs' Motion for Summary Judgment.  (Dkt. No.

18 103.)  Specifically, Defendants move to strike Plaintiffs' argument that substantive due process

19 is violated when waiting times exceed seven days as well as the facts contained in declarations

20 attached to Plaintiffs' Reply.  (Id. at 1.)  Defendants contend that a proposed seven-day bright

21 line presents a "separate and distinct legal question that calls for different analysis, different legal

22 authority, and different material facts," and that Defendants would have responded accordingly

23 had the argument been presented  (Id. at 3.)

24

1    While Plaintiffs' Reply does narrow their original argument, it does not present new

2    issues or a materially different legal approach.  Defendants have already substantively responded

3    to the crux of Plaintiffs' argument: Defendants' Response makes clear that they oppose a bright

4    line of any sort, argues at length the Court should not identify due process violations "based on

5    arbitrary numbers," and contends that the Court should formulate a narrow rule and wait until

6    trial to make more specific determinations.  (Dkt. No. 95 at 7-11.)  The Court agrees with

7    Defendants, however, that the introduction of new facts is inappropriate in a reply brief.  See,

8    e.g., Roth v. BASF Corp., 2008 WL 2148803, at *3 (W.D. Wash. May 21, 2008).  The Court

9    therefore STRIKES the declarations attached to Plaintiffs' Reply, but does not strike the legal

10   argument contained therein.

11                                           **Conclusion**

12   The state has consistently and over a long period of time violated the constitutional rights

13   of the mentally ill—this must stop.  The in-jail wait time experienced by Plaintiffs and class

14   members today is far beyond any constitutional boundary.  The Court finds that Defendants'

15   failure to provide timely competency evaluation and restoration services to Plaintiffs and class

16   members has caused them to languish in city and county jails for prolonged periods of time, and

17   that this failure violates their right to substantive due process under the Fourteenth Amendment.

18   It is clear to the Court that wait times of less than seven days comport with due process, and that

19   anything beyond seven days is suspect.  The Court finds, however, that determination of the

20   precise outer boundary permitted by the Constitution depends on facts to be proven at trial.  The

21   Court therefore declines to find a constitutionally required bright line at this stage in the

22   litigation.

23

24

1    Because Defendants' failure to provide timely services, causing the prolonged

2  incarceration of criminal defendants waiting for court-ordered competency evaluation and

3  restoration, violates the substantive due process rights of those detained, the Court GRANTS

4  Plaintiffs' motion for summary judgment.

5

6    The clerk is ordered to provide copies of this order to all counsel.

7    Dated this 22nd day of December, 2014.

8

9

10

Marsha J. Pechman
11                                        Chief United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24