UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASSIE CORDELL TRUEBLOOD, et al., | CASE NO. C14-1178 MJP |
| Plaintiffs, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, et al., | |
| Defendants. | |

Plaintiffs bring this action seeking an order to compel Defendants to provide timely competency evaluation and restoration services to class members—individuals charged with a crime who are detained in city and county jails awaiting services—after a court orders that Defendants provide class members with those services.  The Court previously granted Plaintiffs' motion for summary judgment, finding that wait times of up to seven days were constitutional, and that wait times beyond seven days were suspect.  In order to determine the precise outer boundary of constitutionally permissible wait times in this case, and to determine the appropriate

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 1

1  remedy, the Court held a seven-day bench trial, which began on March 16, 2015, and concluded

2  on March 25, 2015.  Plaintiffs were represented by Emily Cooper, La Rond Baker, Christopher

3  Carney, Anita Kandelwal, and David Carlson; Defendants were represented by Sarah Coats,

4  John McIlhenny, Amber Leaders, and Nicholas Williamson.  After consideration of the evidence

5  and the arguments submitted, the Court makes and enters the following Findings of Fact and

6  Conclusions of Law:

7  **Summary**

8       The State of Washington is violating the constitutional rights of some of its most

9  vulnerable citizens.  The State has consistently failed to provide timely competency evaluation

10  and restoration services, services needed to determine whether individuals understand the

11  charges against them and can aid in their own defenses, which is required in order for them to

12  stand trial.  By failing to provide competency evaluation and restoration services within seven

13  days of a court order, the State fails to provide both the substantive and procedural due process

14  required by the Constitution.  Our jails are not suitable places for the mentally ill to be

15  warehoused while they wait for services.  Jails are not hospitals, they are not designed as

16  therapeutic environments, and they are not equipped to manage mental illness or keep those with

17  mental illness from being victimized by the general population of inmates.  Punitive settings and

18  isolation for twenty-three hours each day exacerbate mental illness and increase the likelihood

19  that the individual will never recover.

20       The Department of Social and Health Services has been hampered in providing these

21  required services by insufficient funding for beds and personnel.  Without these resources, they

22  cannot collaborate and coordinate with the other agencies and courts involved in the criminal

23  mental health system.

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 2

1     The Department of Social and Health Services has failed to change its procedures to

2   respond to this ongoing crisis, and has routinely defied the orders of Washington's state courts, a

3   practice that has resulted in hundreds of thousands of dollars in contempt fines.  The Department

4   continues to fail to make significant progress in implementing any of the reforms recommended

5   by auditors and experts.  The Department has failed to plan ahead for growth in the demand for

6   competency services, which has increased every year for the last decade, and has failed to show

7   the leadership and capacity for innovation that is required to address the crisis.  Other states and

8   counties have been able to meet the constitutional requirements, and so can the State of

9   Washington.

10     In order to stop these continued violations, the Court enters a permanent injunction

11   requiring the provision of competency services within seven days.  The Court will appoint a

12   monitor to ensure that progress toward the timely provision of services is being made.  The

13   mentally ill are deserving of the protections of the Constitution that our forefathers so carefully

14   crafted.  The rights protected can be difficult and sometimes costly to secure; however, the

15   Constitution is a guarantee to all people, and is not dependent upon a price tag.  The State must

16   honor its obligations under the law.

17   **FINDINGS OF FACT**

18   **I.      The Class**

19     1.  Class members are all pretrial detainees waiting in jail for court-ordered competency

20   services that Defendants are statutorily required to provide.  Putative next friends seek to assert

21   claims on behalf of named Plaintiffs.  On October 31, 2014, the Court certified the class as: All

22   persons who are now, or will be in the future, charged with a crime in the State of Washington

23   and: (a) who are ordered by a court to receive competency evaluation or restoration services

24

through the Washington State Department of Social and Health Services ("DSHS"); (b) who are waiting in jail for those services; and (c) for whom DSHS receives the court order.

2.  Plaintiff K.R. was booked into Thurston County Jail on June 23, 2014.  On July 3, 2014, a court ordered Western State Hospital ("WSH") to evaluate his competency.  The evaluation was completed on July 23, 2014.  On July 30, 2014, the court found K.R. incompetent and ordered that he be admitted to WSH for competency restoration treatment.  WSH confirmed receipt of the order on July 30, 2014.  K.R. was not admitted to WSH for competency restoration until October 3, 2014.  While waiting for transportation to WSH for court-ordered competency services, K.R. was incarcerated for more than seventy-five days where he lacked medication and spent the vast majority of that time in solitary confinement after being assaulted by his cellmate.

3.  Plaintiff A.B. was an inmate at the Snohomish County Jail on July 2, 2014, when a court found her incompetent and ordered her to be admitted to WSH for competency restoration services.  Defendants received the court order on or about July 3, 2014.  While waiting for transportation to WSH for court-ordered competency services, A.B. was incarcerated for thirty-seven days in solitary confinement where she declined to take medication or wash herself.

4.  Plaintiff D.D. was booked into Spokane County Jail on July 29, 2014.  On August 5, 2014, the court ordered that Defendants conduct a competency evaluation.  Eastern State Hospital ("ESH") confirmed receipt of the court order for competency evaluation on August 6, 2014.  D.D. was evaluated by ESH on September 10, 2014.  D.D. waited thirty-five days in solitary confinement or on suicide watch, which is also a form of solitary confinement, after making numerous statements about wanting to die at Spokane County Jail before the evaluation was completed.  D.D. was eventually found not competent to stand trial.

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 4

1    5.  In the month preceding trial, one class member committed suicide while incarcerated

2    and waiting for DSHS to provide competency services.

3    6.  Each named Plaintiff and class member is a constituent of Plaintiff Disability Rights

4    Washington ("DRW").  All fall within DRW's mandate to ensure that the rights of persons with

5    mental health conditions are protected.  DRW's interests are in complete alignment with those of

6    the class members.

7    7.  DRW is a private non-profit organization designated by the Governor of the State of

8    Washington as the protection and advocacy system for individuals with mental, physical,

9    sensory, and developmental disabilities in the state of Washington pursuant to the

10   Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15041, et seq.; the

11   Protection and Advocacy for Individuals with Mental Illness Act, as amended, 42 U.S.C. §

12   10801, et seq.; the Protection and Advocacy of Individual Rights Act, 29 U.S.C. § 794e; and

13   RCW 71A.10.080.

14   **II.    The Competency Process**

15   8.  Defendant DSHS is charged under Washington law with overseeing competency

16   services, including evaluations and restorations.  RCW 10.77 et seq.  If an individual is found to

17   be incompetent to stand trial, state law places responsibility on Defendant for "providing mental

18   health treatment and restoration of competency."  RCW 10.77.088; see also 10.77.084 and

19   10.77.086.

20   9.  When a court has ordered an individual to undergo competency evaluation or

21   restoration, the individual's criminal case is stayed during all competency-related proceedings.

22   See RCW 10.77.084 (providing that after a criminal defendant has been found incompetent, the

23   proceedings against the defendant are stayed); Washington State Court Rules: Superior Court

24

1   Criminal Rules, CrR 3.3(e)(1) (excluding all proceedings related to the competency of a

2   defendant to stand trial when computing time for trial).

3        10.   Defendants provide competency services in local jails, in the community, or at the

4   two state hospitals, ESH and WSH.  See RCW 10.77.060.  Nearly ninety percent of evaluations

5   occur outside the state hospitals, either in jails or, for persons who have been released from jail

6   on personal recognizance, in the community.

7        11.   The process begins when there is reason for a judge or an attorney to doubt that an

8   individual charged with a crime is competent to stand trial.  Because state and federal law forbid

9   the criminal prosecution of individuals who do not understand the charges against them or are

10  unable to aid in their own defenses, courts order that these individuals' competency be evaluated

11  to determine whether they may stand trial.  RCW 10.77.060; See also Medina v. California, 505

12  U.S. 437, 449 (1992) ("the Due Process Clause affords an incompetent defendant the right not to

13  be tried").

14       12.   When a court orders a competency evaluation, the court order is sent to Defendants,

15  who gather the required documentation and assign the case to an evaluator.

16       13.   In order to complete an evaluation, an evaluator requires the following documents:

17  (1) the court order; (2) the charging documents; and (3) discovery (e.g., criminal history, police

18  reports).   If the evaluation will be completed at one of the state hospitals, the individual must

19  also be medically cleared, i.e., cleared by a medical professional at the jail as stable enough to

20  receive care in a psychiatric hospital, which is not equipped to handle all types of medical

21  emergencies.

22       14.   While evaluators require access to the necessary documentation, the evaluation is

23  based primarily on a thirty-to-ninety-minute face-to-face interview with the individual.

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 6

15. After completion of the evaluation, the evaluator provides his or her report and recommendation to the court in which the criminal proceeding is pending. RCW 10.77.065. If the court finds the individual competent to stand trial, the criminal prosecution resumes. If the court finds the individual incompetent, the proceedings are stayed and the court may enter a competency restoration order as allowed by RCW 10.77.086 or 10.77.088.

16. Approximately fifty percent of individuals ordered to receive a competency evaluation in Washington are found to be incompetent to stand trial.

17. Depending on the nature of the criminal charges against the individual, the court orders restoration periods ranging from two weeks to ninety days. RCW 10.77.088 (non-felony restorations) and 10.77.086 (felony restorations). Restoration periods of forty-five days are ordered for individuals charged with class B and C felonies, and periods of ninety days are ordered for individuals charged with all other felonies. After a hearing, a second ninety-day restoration period may be ordered. If certain conditions are met, a court may order additional restoration treatment for a period of up to six months. Restoration periods of fourteen days, in addition to any unused in-patient evaluation time, are ordered for individuals charged with serious non-felony crimes, for total restoration periods of up to twenty-nine days.

18. Individuals charged with non-serious non-felony crimes are not ordered for restoration if they are found incompetent. Instead, their charges are dismissed or stayed, and the individual may be referred for civil commitment under RCW 71.05.

19. Sixty percent of individuals charged with misdemeanors have their charges dismissed after the completion of a competency evaluation. Ninety percent of individuals referred for competency evaluations have had prior contact with the criminal justice system. Thirty-seven percent have been referred for a competency evaluation more than once since 2011.

20.  If the court orders that an incompetent individual receive competency restoration services, the individual is placed on a waiting list for admission to one of the state hospitals, ESH or WSH, where DSHS provides competency restoration services.  Individuals who receive competency evaluations at the state hospitals and are found to be incompetent are usually transported back to jail, where they must wait until Defendants have sufficient bed space and staff to provide the ordered restoration services.

21.  From 2001 to 2011, Washington has seen an eighty-two percent increase in the demand for competency evaluations.  Demand for competency services has grown, and is expected to continue to grow, at a rate of eight to ten percent per year.  In addition to yearly growth, there are seasonal fluctuations in the demand for services each year.

22.  For years, Defendants have failed to timely provide competency services pursuant to state law and have almost never provided court-ordered competency services within seven days. While much of DSHS's data is incomplete and unreliable due to poor data collection and management practices and a lack of consistency of practices across the state hospitals, the following chart, based on information provided by DSHS to the legislature in December 2014, is illustrative of the nature and persistence of Defendants' delays:

| DSHS Competency Service | Average Number of Days Waiting, ESH | Average Number of Days Waiting, WSH | Target Number of Days |
|---|---|---|---|
| Evaluation in hospital – bed offer | 41.2 | 30.6 | 7 |
| Evaluation in jail – completed | 56.3 | 14.7 | 7 |
| Restoration in hospital – bed offer | 20.9 | 29.8 | 7 |

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 8

23. It is the policy of the state of Washington that evaluations should occur within seven days, and that admission to the hospitals should also occur within seven days. See Senate Bill 6492; Senate Bill 5889. Defendants have conceded that "some of the waiting periods are excessive and indefensible." (Dkt. No. 95 at 1.)

24. Delays in the provision of competency services result in people with confirmed or suspected mental illness spending more time incarcerated for the same offenses than those without mental illnesses. In King County Correctional Facility, for instance, those with mental illness spend on average three times more time incarcerated than those without mental illness. Furthermore, overincarceration and the postponed adjudication of competence results in significant costs to the public, especially when class members are held in solitary confinement. At all times relevant to this case, class members are pretrial detainees and, as such, have not been convicted of the alleged crime for which they were arrested and sent to jail.

### III.    The Harms Caused by Prolonged Incarceration

25. Jails are inherently punitive institutions, and are not designed or administered so as to provide for the needs of the mentally ill. A correctional environment, calibrated to provide safety and order, is incongruous with the particular needs of the mentally ill, and results in people with confirmed or suspected mental illness spending more time in solitary confinement, where their mental health further deteriorates. This deterioration is in direct conflict with the State's interest in prompt evaluation and treatment so that the individual may be brought to trial, especially for individuals whose illnesses become more habitual and harder to treat while they wait in isolation.

26. Washington's state hospitals provide high levels of care to the individuals they can accommodate, and are an appropriate environment for mental health treatment. The state

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 9

1  hospitals provide group and individual programming, have outdoor spaces and televisions, and

2  perhaps most importantly, allow class members to enter and exit their living quarters freely.

3  When an individual chooses to remain in his or her room, staff members interact with that

4  individual and attempt to persuade him or her to join the group, a treatment strategy that is

5  essential for individuals who isolate themselves as a symptom of their mental illness.  If an

6  urgent situation requires that an individual be involuntarily restrained or held in isolation in a

7  room, the restraint procedures must be authorized by a psychiatrist, must be for a clinical reason,

8  and must be reauthorized as necessary every four hours.

9      27.  In jail, by contrast, class members are routinely held in solitary confinement for

10  twenty-three hours a day for reasons unrelated to their mental health needs.  Class members are

11  placed in solitary confinement because they are victimized by other inmates, or because

12  symptoms of their illnesses prevent them from following generally applicable rules or behavioral

13  expectations.  Sometimes class members are placed in solitary confinement for their erratic or

14  unpredictable behavior, not as punishment for breaking the rules, but to prevent them from

15  continuing to break other rules which may result in additional charges or some other more

16  serious form of punishment.  These same solitary confinement cells are used to punish other

17  inmates for bad behavior.  Class members cannot enter or exit their cells freely, and are not

18  encouraged to interact with other people.  Even class members on suicide watch are observed by

19  video camera; they experience almost no human interaction, even though isolation is known to

20  be clinically destructive to these individuals' mental health.

21      28.  Incarceration, generally, is bad for class members for several reasons.  While waiting

22  for long periods of time in local jails, class members are not receiving the mental health

23  treatment they need.  Their conditions worsen not only because of lack of treatment, but because

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 10

1  prolonged incarceration exacerbates mental illness, making symptoms more intense and more

2  permanent, and reducing the likelihood the person's competency can ever be restored.

3  Incarceration increases the likelihood of suicide.  Incarceration also unnecessarily exposes class

4  members to harmful conditions such as jail overcrowding, which leads to increased violence

5  among inmates and to the targeting of individuals perceived as weak.  Because class members

6  are stigmatized for what others perceive as erratic and unpredictable behavior, they are less

7  likely to find a social support network within the jail and therefore are less successful than others

8  at navigating the jail environment, increasing their feelings of isolation, terror, and despair.

9      **IV.    Barriers to Timely Competency Services**

10          29.  The primary causes of the delay in Defendants' provision of services to class

11  members are shortages of staff and of beds at both WSH and ESH.  The staff and bed shortages

12  are primarily the result of insufficient funding and inadequate planning.

13          30.  DSHS identified numerous other structural and clinical barriers to timely services, in

14  addition to the lack of staff and beds.  DSHS identified (1) delays of one to three days in

15  receiving all of the required documentation; (2) delays caused by scheduling an interpreter; (3)

16  delays caused by defense attorneys requesting to be present during an evaluation but failing to

17  make themselves available for the interview in a timely manner; (3) delays caused by a litigant's

18  rejection of an assigned evaluator; (4) delays caused by long travel times for evaluators who

19  travel between county jails; (5) delays caused by waiting for intoxicants to clear out of an

20  individual's system before performing an evaluation; (6) delays caused by a lack of adequate

21  evaluation rooms or other evaluation facilities at the jails; and (7) delays caused by jail

22  transportation of individuals to the state hospitals.

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 11

1      With appropriate planning, coordination, and resources, none of these barriers prevent

2  DSHS from providing competency services within seven days.

3      31.  DSHS's staff shortage has been exacerbated by DSHS's inability to effectively hire

4  or retain qualified staff.[1]  DSHS's ability to hire has been hampered by the fact that DSHS does

5  not pay competitive wages, by a cumbersome collective bargaining process, and by institutional

6  resistance to expanding the pool of eligible applicants for vacant positions.  DSHS has failed to

7  meaningfully explore utilizing other qualified professionals to perform evaluations, including

8  psychiatric nurse practitioners, physician's assistants, and masters in social work, and has failed

9  to offer the requisite forensic training that could prepare these other professionals to perform

10  evaluations.  High evaluator turnover in recent years has also hampered the timely provision of

11  services because new evaluators are unable to complete evaluations as quickly as experienced

12  evaluators, and because temporary vacancies during turnover result in lower system-wide

13  capacity.

14      32.  The lack of accurate data and timely performance reporting makes it difficult for

15  DSHS to understand and predict demand for its services, to improve its operating policies and

16  procedures, and to adequately plan for the future.  Inconsistent procedures and practices across

17  the hospitals hamper the timely provision of services, as does the fact that the hospitals do not

18  consistently use electronic medical records instead of paper records.  Timely services are further

19  hampered by DSHS's lack of knowledge about, and lack of willingness to use, electronic court

20  records, which are available for most jurisdictions and which contain much of the information

21  needed to provide competency services.

22  _____

23      [1] Evaluator availability is further limited because evaluators are not asked to make themselves
available to conduct evaluations in the evenings, on weekends, or on holidays, forcing class members to

24  wait for longer periods even though jails operate twenty-four hours a day, seven days a week.

1    33.  Long travel times hamper timely evaluation services because all of DSHS's

2  evaluators are currently stationed at just three locations in the State of Washington: ESH, WSH,

3  and a satellite office in Seattle.  DSHS is planning to open a satellite office in Vancouver,

4  Washington, and to station up to two new evaluators in the Yakima or Tri-Cities areas.  There is

5  no requirement that evaluators be based at the state hospitals.

6    **V.    Seven Days is Both Reasonable and Achievable**

7    34.  Notwithstanding the barriers faced by DSHS, DSHS is capable of providing the

8  services they are charged with providing within seven days with more resources and better

9  management.   If the forensic mental health system is given the resources it requires, wait times

10  of seven days or less can be achieved in nine months.

11    35.  With full staffing and adequate bed space, DSHS could meet current and future

12  demand by adopting new administrative efficiencies:

13    There is no current attempt to sort class members by the seriousness of their crimes, e.g.

14  whether the charge is a misdemeanor or a felony, and thus no attempt is made to sort between

15  people who would spend two days in jail if convicted and people who would spend years in

16  prison.

17    There is no current attempt to triage or sort class members by the acuity of their mental

18  illnesses and their current manifestations, and thus no attempt to admit those who urgently need

19  hospitalization and intensive care over those who are more stable.

20    There is no system-wide attempt to triage class members based on the amount of time or

21  resources that their cases require, e.g. whether their evaluations are simple and can be done

22  quickly or will require additional interviews and the examination of substantial additional

23  records.

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 13

1        36.  Pierce County currently utilizes a panel of independent contract evaluators to

2   perform evaluations in the Pierce County jail.  The panel system is made possible by Senate Bill

3   5551, which allows counties to contract for evaluators when the State is consistently failing to

4   meet the seven-day target for the provision of services.  Although there can be a delay of one to

5   three days in securing the necessary documents and assigning the case to an evaluator,

6   approximately ninety-five percent of evaluations are completed within seven days of assignment.

7   These evaluations are reportedly of good quality, and have not been rejected by the courts or the

8   litigants in Pierce County.

9        37.  Experts hired by the State have identified as a problem the high percentage of

10  forensic beds currently being occupied by patients found not guilty by reason of insanity

11  ("NGRI").  These experts, Groundswell Services, Inc., advised that Washington is an outlier

12  among states in being overly punitive by failing to identify community-based programs for the

13  NGRI population and instead holding them in hardened forensic facilities.  Moving members of

14  the NGRI population to less restrictive housing or to community-based programs would make

15  available beds and staff for competency evaluation and restoration services.

16       38.  The system-wide problems in Washington's forensic mental health system and

17  proposed solutions identified by Groundswell Services are consistent with the problems and

18  solutions identified by the 2012 and 2014 Joint Legislative Audit and Review Committee reports,

19  ordered by the state legislature in an effort to aid DSHS in providing timely services.

20       39.  Recent attempts by DSHS to implement the suggestions of experts hired by the State

21  show progress.  The State's future planning, however, currently done in two-year increments, is

22  inadequate to accommodate the increase in demand for competency services on a long-term

23  basis.  Long-term planning is required in order for DSHS to keep pace with demand and not fall

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 14

1  back into crisis.  DSHS must plan for the long-term future as current estimates project that

2  demand for services will continue to increase at a rate of eight to ten percent each year.

3      40.  DSHS consistently ignores court orders to provide class members with services or to

4  admit class members to the state hospitals, even when they have been found in contempt.  DSHS

5  has developed a de facto policy to continue to administer the forensic mental health system in the

6  manner it considers best; court orders which conflict with its waiting list methodology are

7  ignored as a matter of course.  Numerous orders from numerous courts have been ignored under

8  this policy.

9                          **CONCLUSIONS OF LAW**

10     1.  DRW has standing to represent the interests of persons who require competency

11  services, and to seek a permanent injunction and declaratory judgment establishing the time

12  frames within which due process requires that services be provided.  See Oregon Advocacy Ctr.

13  v. Mink, 322 F.3d 1101, 1112 (9th Cir. 2003); In re Lamb, 173 Wn.2d 173, 196-197 (2011)

14  (citing to federal law providing DRW with the authority to "pursue legal, administrative, and

15  other appropriate remedies . . . to ensure the protection of, and advocacy for, the rights of persons

16  with . . . disabilities."); Doe v. Stincer, 175 F.3d 879 (9th Cir. 1999); Hunt v. Washington State

17  Apple Advertising Commission, 432 U.S. 333 (1997).  Next friends have standing because they

18  have shown that: (1) each Plaintiff is unable to litigate his own cause due to mental incapacity or

19  other similar disability; and (2) each next friend has some significant relationship with, and is

20  truly dedicated to the best interests of, each Plaintiff.  Coal. of Clergy, Lawyers, & Professors v.

21  Bush, 310 F.3d 1153, 1159-60 (9th Cir. 2002).[2]

22     2.  Plaintiffs' burden of proof on their claims is a preponderance of the evidence.

23  _____

24     [2] Defendants have not challenged standing.

3.  Constitutional questions regarding the conditions and circumstances of pretrial confinement are properly addressed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Mink, 322 F.3d at 1120-21.

4.  The foundational liberty interest under the due process clause is freedom from incarceration.   Oviatt ex rel. Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).  Individuals have a fundamental liberty interest in being free from incarceration absent a criminal conviction, and there exist corresponding constitutional limitations on pretrial detention.  See Lopez-Valenzuela v. Arpaio, 770 F.3d 772, 777-78, 780-81 (9th Cir. 2014) (en banc).

5.  "Incapacitated criminal defendants have liberty interests in freedom from incarceration and [also] in restorative treatment."  Mink, 322 F.3d at 1121.

6.  As part of a right to treatment and care, institutionalized persons have liberty interests in reasonable care and safety, reasonably non-restrictive confinement conditions, and such other treatment as may be required to comport fully with the purposes of confinement.  See Youngberg v. Romeo, 457 U.S. 307, 319 (1982) (mentally retarded individual committed in state institution has liberty interests requiring state to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint).

7.  A determination of constitutionally adequate treatment for Plaintiffs and class members must be measured not by that which must be provided to the general prison population, but by that which must be provided to those committed for mental incompetency.  See Ohlinger v. Watson, 652 F.2d 775, 777-78 (9th Cir. 1981) ("a person committed solely on the basis of his mental incapacity has a constitutional right to receive such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition").  "Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the]

treatment necessary for rehabilitation." Mink, 322 F.3d at 1121 (quoting Ohlinger, 652 F.2d at 779).

8.  The purpose of a class member's incarceration during this portion of his or her case is either the completion of an evaluation in a jail, or admission to a state hospital for competency services.  Because class members have not been convicted of any crime, they are not being incarcerated as punishment.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979) (under the Due Process Clause, a pretrial detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.)  Furthermore, when competency evaluations or restorations are ordered, class members' criminal cases are stayed, and the time they spend incarcerated as a consequence of their suspected or confirmed incompetence is excluded when computing time for trial.  See RCW 10.77.084; CrR 3.3(e).

9.  Class members who are found competent to stand trial do not have a right to competency restoration treatment.  Nevertheless, while awaiting evaluation services from Defendants, the cause of their incarceration is suspected incompetence, and the purpose of their incarceration is to receive competency services.  As such, due process requires, at a minimum, some rational relation between the nature and duration of confinement and its purpose.  See Jackson v. Indiana, 406 U.S. 715, 738 (1972) ("due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed").  A reviewing court must therefore consider the constitutionality of the detention in light of the detention's purpose, determine whether the detention is based on permissible goals, and, if it is, evaluate whether the detention is excessive in relation to those goals.

10.  "Whether the substantive due process rights of incapacitated criminal defendants have been violated must be determined by balancing their liberty interests in freedom from

1    incarceration and in restorative treatment against the legitimate interests of the state." <u>Mink</u>, 322

2    F.3d at 1121.

3         11.  Plaintiffs and class members have suffered, and continue to suffer, prolonged

4    incarceration in city and county jails for the purpose of waiting for competency services from

5    Defendants because of suspected or confirmed mental incompetence.  Their prolonged

6    incarceration implicates their right to be free from incarceration absent conviction and their right

7    to the competency services which form the basis for their detention.

8         12.  The State's primary governmental interest in regard to Plaintiffs and class members

9    is to bring those accused of a crime to trial.  In furtherance of that goal, the state has a legitimate

10   interest in evaluating a potentially incompetent defendant's competency so as to determine

11   whether he or she may stand trial, and in restoring the competency of those found incompetent so

12   that they may be brought to trial.  The state has a corresponding interest in an efficient and

13   organized competency evaluation and restoration system, the administration of which uses public

14   resources appropriately.

15        13.  After weighing the interests involved, the Court concludes that due process

16   balancing favors Plaintiffs and class members, and finds seven days to be the maximum

17   justifiable period of incarceration absent an individualized finding of good cause to continue

18   incarcerating that person.

19        14.  A seven-day limit is required by the Constitution because of the gravity of the harms

20   suffered by class members during prolonged incarceration—harms which directly conflict with

21   class members' rights to freedom from incarceration and to the competency services which form

22   the basis of their detention, and also directly conflict with the State's interests in swiftly bringing

23   those accused of crimes to trial and in restoring incompetent criminal defendants to competency

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 18

so as to try them.  Unlike the state psychiatric hospitals, jails cannot provide the environment or type of care required by class members, especially where class members are held in solitary confinement without access to medication, and as a result, jails actively damage class members' mental condition.  Each additional day of incarceration causes further deterioration of class members' mental health, increases the risks of suicide and of victimization by other inmates, and causes illness to become more habitual and harder to cure, resulting in longer restoration periods or in the inability to ever restore that person to competency.  The inhumanity of holding class members in jails for prolonged periods of time has been affirmatively recognized by Washington State, which has twice in the last five years passed legislation declaring that the policy of the State of Washington is that competency services should be provided within seven days.  A similar policy was established in Oregon, where the state has successfully met the seven-day requirement of the <u>Oregon Advocacy Center v. Mink</u> injunction, an injunction that was upheld by the Ninth Circuit Court of Appeals.

15.  The interests of all Parties are protected and furthered by a seven-day timeframe.  For class members, this timeframe provides a real limitation on the amount of time that they can be incarcerated without being convicted of a crime, allows for the provision of greatly needed services, the provision of which forms the basis of their detention, and finally, provides them with prompt treatment and a meaningful chance at recovery.  The protections afforded by the Constitution require that society treat all individuals fairly, including our most vulnerable citizens, and require that we organize our institutions so that they do not cause harm to the very people they are created to protect.

The State's interests are also furthered by the seven-day timeframe.  The state's primary interests are in swiftly bringing those accused of criminal acts to trial, and in running its forensic

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 19

1  mental health system in an organized and cost-effective manner.  People who are incarcerated for

2  long periods of time before they receive services require longer and more intensive care,

3  resulting in higher costs to DSHS.  Class members' criminal trials are delayed by long periods of

4  incarceration, especially where the incarceration causes class members to require a longer

5  treatment period.  Not only does this contravene the State's interest in swiftly bringing the

6  accused to trial, it results in significant costs to the public, who pay for the incarceration and the

7  extended treatment.  Holding someone in solitary confinement, a common occurrence with class

8  members, is especially taxing on jail resources and expensive to the public.  While it is the

9  counties rather than DSHS who directly fund the jails, the public bears the cost nonetheless.  An

10  efficient system that moves people through the competency process quickly will thus increase

11  the speed at which competent people are brought to trial, will increase the percentage of

12  incompetent people who can be restored and thus brought to trial, and will reduce the amount of

13  money that the public spends incarcerating people.  The State's interest in an efficient and cost-

14  effective system is furthered by requiring it to adopt sound management practices with

15  measurable results rather than by allowing a poorly managed system to continue to allow itself to

16  be thrown into crisis every time a minor roadblock presents itself.  A properly functioning

17  forensic system must be able to plan for and accommodate fluctuations in demand, not

18  destroyed by them.

19       16.  Approximately forty jurisdictions sign orders for evaluations and restorations

20  managed by DSHS.  Even with more funding and changes to the practices and policies of the

21  Department, Washington's forensic mental health system cannot function efficiently without the

22  help of all of its participants.  Without clear, consistent court orders that attach all statutorily

23  required information and are immediately transmitted to DSHS, DSHS cannot start the

24

evaluation or restoration process.  Defense counsel, interpreters, jail wardens, and prosecutors all have unique responsibilities to ensure that evaluations, hearings, and restoration services are offered in a timely manner.  Defense attorneys who request to be present at competency evaluations, and thus affect the timeliness of the evaluation with their own scheduling constraints, must be responsive to communications, and must be flexible so as to allow the evaluation to be scheduled as soon as practicable.  Defense attorneys should also assist in the process by helping to locate and transmit any missing documentation.  Prosecutors make vital decisions when they choose whom to charge, and whom to divert into community treatment programs.  Prosecutors must be willing to make difficult decisions about who is in need of social tolerance rather than incarceration.  All of these participants are interdependent; a failure by any participant to take their responsibility seriously threatens the seven-day deadline.

17.  Consequently, this Court declares that incarcerating Plaintiffs and class members for more than seven days while they wait for Defendants to provide competency services, without an individualized determination by a court of good cause to continue incarcerating that person, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

18.  Plaintiffs are awarded attorney's fees and costs.  Plaintiffs must petition the Court for a determination of fees and costs within thirty days if the Parties cannot agree on a determination.

**ACCORDINGLY, IT IS SO ORDERED:**

The Court orders Defendants to cease violating the constitutional rights of Plaintiffs and class members by providing timely competency evaluation and restoration services, and enters a permanent injunction requiring the following:

1    (1) Defendants must provide in-jail competency evaluations within seven days of the

2  signing of a court order calling for an evaluation.  Where an in-jail evaluation cannot be

3  completed within seven days of a court order, Defendants must secure an extension from the

4  ordering court for individualized clinical good cause, or must immediately admit the individual

5  to a state hospital to finish conducting the evaluation.  Clinical good cause means good cause

6  based on the unique medical or psychiatric needs of the particular individual, and does not

7  include a lack of resources or the system's inability to administratively accommodate the needs

8  of the individual within seven days;

9    (2) Defendants must admit persons ordered to have their competency evaluated in a state

10  hospital into that hospital within seven days of the signing of the court order; and

11    (3) Defendants must admit persons ordered to receive competency restoration services

12  into a state hospital within seven days of the signing of a court order calling for restoration

13  services.

14    Defendants are further ordered to cease violating the constitutional rights of Plaintiffs and

15  class members by reducing wait times as soon as practicable, but no later than nine months from

16  the date of this order.  Defendants are ordered to secure sufficient evaluation staff, restoration

17  staff, and administrative staff, so as to allow them to provide competency services within seven

18  days.  Defendants are ordered to secure sufficient bed space and other facilities so as to allow for

19  the admission of Plaintiffs and class members to state hospitals within seven days, without

20  sacrificing the therapeutic environment of a psychiatric hospital.

21    Defendants have demonstrated a long history of failing to adequately protect the

22  constitutional rights of Plaintiffs and class members, and have acknowledged that this failure is

23  indefensible.  Defendants have not demonstrated that they are adequately planning for the future

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 22

growth in demand for competency services.  In order to ensure that Plaintiffs and class members do not face another constitutional crisis in three years, Defendants are ordered to prepare a long-term plan on how they will continue to provide services within seven days, even as demand for such services continues to grow and the state hospitals' existing campuses reach their full capacities.  Defendants are ordered to submit their long-term plan to this Court no later than three months from the date of this order.

Defendants have demonstrated a consistent pattern of intentionally disregarding court orders, including where they have been found in contempt of court, and have established a de facto policy of ignoring court orders which conflict with their internal policies.  In order to ensure compliance with this order, the Court will appoint a Monitor, as an agent of the Court, to oversee Defendants' implementation of the injunction's requirements.  The Parties are ordered to provide the Court with a joint recommendation for an appropriately qualified expert to serve as the Monitor within fourteen days of the date of this order.  If the Parties cannot agree on a recommendation, the Parties should each submit a list of at least two recommendations.  Recommendations should include the name of the proposed Monitor, assurance that the person is willing to serve as a Monitor, and his or her current curriculum vitae.  The Monitor will be an agent of the Court, and shall be subject to its orders.  Defendants are responsible for all reasonable fees and costs incurred by the Monitor.

Defendants shall file a report with the Monitor on the fifth day of every month, which shall include: (1) the number of days between when a court ordered provision of competency services and when provision was completed, for each person ordered to receive competency services during the previous month; (2) data regarding the number of evaluators, bed capacity, physicians, and other resources needed to provide timely competency services; (3) the steps

1   taken in the previous month to implement this order; (4) when and what results are intended to

2   be realized by each of these steps; (5) the results realized in the previous month; (6) the steps

3   planned to be taken in the following month; (7) certification by Defendants that they are fully

4   compliant with all deadlines that became due in the previous month; (8) Defendants' estimate for

5   when the wait times will reach seven days or less, and all data relied on in making that estimate;

6   and (9) any other information the Monitor informs Defendants is necessary for the Monitor to

7   fully review Defendants' actions and advise the Court.

8       Within thirty days of every third monthly report from Defendants, the Monitor shall file a

9   quarterly public report with the Court which shall include: (1) a summary of Defendants' actions

10  during the preceding period; (2) the Monitor's opinion as to the sufficiency of Defendants'

11  progress; (3) the Monitor's recommendations for actions to remedy any lack of progress or

12  performance by Defendants; and (4) the Monitor's recommendation on when, and under what

13  circumstances, the Monitor's services are no longer needed or should be modified.  Defendants'

14  monthly reports shall be attached as appendices to the Monitor's quarterly public report.

15      Upon submission of Defendants' long-term plan for continued compliance with this order

16  as demand for competency services continues to grow, the Monitor shall provide the Court with

17  an opinion about the sufficiency of the plan and make recommendations for remedying any

18  deficiencies in the plan.

19      When it determines a hearing is necessary based upon its review of the Monitor's reports

20  or the input of the Monitor and the Parties, the Court will hold a hearing to secure additional

21  evidence or argument about the sufficiency of Defendants' progress in substantially complying

22  with this Court's order, and to order any action necessary to remedy a lack of progress or

23  performance in correcting the underlying constitutional violation.

24

1

2       The clerk is ordered to provide copies of this order to all counsel.

3

4       Dated this 2nd day of April, 2015.

5

6

7       _____
        Marsha J. Pechman
8       Chief United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 25