1

2

3

4

5

6                                                    The Honorable MARSHA J. PECHMAN

7                            UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
8                                       AT SEATTLE

9    TRUEBLOOD et al.,                              NO.  C14-1178 MJP
                              Plaintiffs,
10              v.
                                                    DEFENDANTS' LONG-TERM
11   WASHINGTON STATE DEPARTMENT OF                 PLAN
     SOCIAL AND HEALTH SERVICES et al.,
12
                              Defendants.
13

14          As ordered in the Court's April 2nd, 2015, Findings of Fact and Conclusions of Law

15   (Dkt. # 131), the Department of Social and Health Services respectfully submits their long-

16   term plan.

17

18          RESPECTFULLY SUBMITTED this 2nd day of July 2015.

19                                          ROBERT W. FERGUSON
                                            Attorney General
20

21                                          JOHN K. MCILHENNY, JR., WSBA No. 32195
                                            SARAH J. COATS, WSBA No. 20333
22                                          AMBER L. LEADERS, WSBA No. 44421
                                            NICHOLAS A. WILLIAMSON, WSBA No. 44470
23                                          Assistant Attorneys General
                                            Attorneys for Defendants
24                                          Office of the Attorney General
                                            7141 Cleanwater Drive SW
25                                          PO Box 40124
                                            Olympia, WA 98504-0124
26                                          (360) 586-6565

DEFENDANTS' LONG TERM-PLAN                          i
NO.  C14-1178 MJP

*Trueblood, et al., v. Washington State Department of Social and Health Services, et al.*
*Cause No. C14-1178 MJP*
*LONG-TERM PLAN*

**July 2, 2015**

Behavioral Health and Service Integration Administration
PO Box 45050
Olympia, WA  98504-5050
(360) 725-2260
Fax:  (360) 407-0304



Washington State Department of Social & Health Services

# TABLE OF CONTENTS

**Executive Summary** ........................................................................................Page 4

- Table 1:  Funding in the 15-2017 Biennial Budget .......................................Page 4

**Introduction** ..................................................................................................Page 5

- Table 2:  Current Forensic System Resources in Washington State ...............Page 5

- Recent Progress ...........................................................................................Page  5

- Table 3:  Increases in Forensic Evaluators and Competency
  Restoration Beds in 15-17 Biennial Budget .................................................Page 5

- Guiding Principles .........................................................................................Page  8

- Elements of the Long-Term Plan ..................................................................Page 9

**Element 1: Increase Competency Evaluation Capacity and Quality** ...............Page 10

- Current Competency Evaluation Capacity--Background ................................Page 10

- Increase the Number of Forensic Evaluators ...............................................Page 10

- Table 4:  Forensic Evaluator Funding in the 15-17 Biennial Budget ............Page 11

- Out Station Evaluators .................................................................................Page 11

- Improve Training and Quality Assurance ......................................................Page 11

- Improve System Collaboration .....................................................................Page 12

- Develop Triage Models .................................................................................Page 12

- Streamline In-Custody Evaluation Processes ................................................Page 13

**Element 2: Expand Bed Capacity for Competency Restoration Treatment** ....Page 13

- Current Competency Restoration Treatment Capacity--Background .............Page 13

- Projections for the Future ............................................................................Page 14

- Increase State Hospital Capacity to Provide Inpatient
  Competency Restoration Treatment .............................................................Page 14

- Create Short-Term Strategies to Accommodate Needed Capacity ...............Page 15

- Implement Internal Process Improvements .................................................Page 15

- Increase Alternatives to Inpatient Restoration for
  Defendants not Requiring Hospitalization ....................................................Page 16

**Element 3: Create a Robust and Reliable Data System to Better**
    **Forecast Demand for Services and Assess Program Performance** ......................Page 16

- Acquire Necessary Expertise ....................................................................Page 17

- Improve the Use of Existing DSHS Data .....................................................Page 17

- Explore the Creation of Cross-System Automation .....................................Page 17

**Element 4: Create Opportunities to Safely Divert People with**
    **Mental Illness from Arrest, Prosecution or Incarceration** ...........................Page 17

- Background ...........................................................................................Page 18

- Pursue Misdemeanor Diversion Options ...................................................Page 18

- Table 5:  Number of Referrals for Misdemeanor
    Competency Evaluation and Restoration ..............................................Page 18

- Apply Early Intervention and Diversion Opportunities ................................Page 19

- Expand the Use of Civil Geropsychiatric Diversion .....................................Page 19

**Conclusion** ....................................................................................................Page 21

**Appendices** ...................................................................................................Page 22

- Appendix A:  Triage Models Under Consideration in Washington State ..........Page 22

- Appendix B:  Background of Forensic Services in Washington State ...............Page 24

- Appendix C:  Restoration Process ..............................................................Page 25

**EXECUTIVE SUMMARY**

This report is submitted to the United States District Court for the Western District of Washington at Seattle (the Court) in compliance with an order by the Court in the class action lawsuit *Trueblood et al. v. DSHS et al.*, Case No. C14-1178 MJP ("*Trueblood*"). On April 2, 2015, the Court issued Findings of Fact and Conclusions of Law that required the Department of Social and Health Services (DSHS) to, among other things, deliver this "long-term plan" by July 2, 2015. The plan must describe not only how DSHS will provide competency evaluation and restoration treatment services (hereafter referred to as "competency services") within seven days of signing of a court order; but how DSHS will also provide competency services within the seven-day standard as demand for services grow.

DSHS, with the support of Governor Jay Inslee and the Legislature, has taken substantial steps to improve competency services in Washington, including:

- Increasing funds dedicated solely to forensic mental health services;
  An investment of over $40 million in Washington's forensic mental health system by the Legislature in the two-year operating budget for the period of July 1, 2015 to June 30, 2017 (hereafter referred to as the 15-17 biennial budget) will yield a 40 percent increase in Forensic Evaluators and a 65 percent increase in the number of beds available to provide competency restoration treatment. Table 1 details funding provided in the 15-17 biennial budget:

**Table 1:  Funding in the 2015-2017 Biennial Budget**

| Budget Item | FTEs | Dollars (Millions) |
|---|---|---|
| Competency Evaluation Staff | 18.0 | $ 4.67 |
| Competency Restoration Beds | 129.2 | $26.86 |
| Non-Felony Diversion | 0.0 | $ 4.81 |
| Office of Forensic Mental Health | 11.0 | $ 4.18 |
| **Total** | **158.2** | **$40.52** |

- Enacting supporting legislation to, among other things, allow DSHS to provide restoration treatment services in the community, and to compel prosecutors, defense counsel, court administrators and jails to expedite exchange of information, access to defendants, and timely transport to state hospitals; and
- Improving the integrity of data collection and analysis by adding new data management expertise.

To sustain this progress over time, Washington has committed to four cohesive strategies:

1. Increase the capacity and quality of competency evaluation services;
2. Increase the bed capacity for competency restoration treatment services;
3. Create robust and reliable data systems, forecast future demand for services, and monitor program performance; and
4. Create opportunities to safely divert people with mental illness from arrest, prosecution or incarceration.

These strategies combine to create a long-term plan that will enable Washington to provide competency services within the time frames established by the Court.

## COMPETENCY SERVICES SYSTEM LONG-TERM PLAN

### INTRODUCTION

Historically, Washington has operated a competency services program that has fallen short of constitutional requirements. The system in Washington has been characterized by too few Forensic Evaluators, too few state hospital beds for timely restoration treatment, cumbersome communication across the criminal justice and forensic mental health systems, and inadequate data systems. Wait times for competency services have been too long. Table 2 shows the baseline bed capacity and number of forensic evaluators in Washington's competency services system as of April 2015.

**Table 2:  Current Forensic System Resources in Washington State**

| Site | April 2015 Capacity (Beds) | April 2015 Forensic Evaluator Positions (FTE) |
|---|---|---|
| **Eastern State Hospital** | 22 | 6 |
| **Western State Hospital** | 116 | 26.5 |
| **Total** | 138 | 32.5 |

**Recent Progress**

In the last year substantial and dramatic steps have been taken to begin to correct the major deficiencies in Washington's forensic mental health system and comply with the seven-day standard established in the *Trueblood* Order. These steps include:

1. Increasing Funding to Improve the Forensic Mental Health System
   The 15-17 biennial budget was enacted by the Legislature on June 29, 2015 and signed by Governor Jay Inslee on June 30, 2015. It includes $40.5 million in new funding to improve competency services. Table 3 shows only the increases in the 15-17 biennial budget for forensic evaluator and competency restoration bed capacity.

**Table 3:  Increases in Forensic Evaluators and Competency Restoration Beds in 15-17 Biennial Budget**

| Site | April 2015 Forensic Evaluator Positions (FTE) | 15-17 Biennial Budget Increase (FTE) | Total Forensic Evaluator Capacity (FTE) | % Increase (FTE) | $ Increase (Millions) | April 2015 Capacity (Beds) | 15-17 Biennial Budget Increase (Beds) | Total Capacity (Beds) | % Increase (Beds) | $ Increase (Millions) |
|---|---|---|---|---|---|---|---|---|---|---|
| ESH | 6 | 5 | 11 | 83% | $1.41 | 22 | 15 | 37 | 68% | $13.41 |
| WSH | 26.5 | 8 | 34.5 | 30% | $2.25 | 116 | 45 | 161 | 39% | $4.47 |
| TBD | N/A | N/A | N/A | N/A | N/A | 0 | 30 | 30 | N/A | $8.97 |
| **Total** | **32.5** | **13[1]** | **45.5** | **40%** | **$3.66** | **138** | **90** | **228** | **65%** | **$26.86** |

---

[1] This figure does not include five Full Time Equivalents (FTE) for supervisory and administrative support that also are funded in the 15-17 biennial budget

This significant investment in the forensic mental health system in Washington state includes, among other things:

- 13 additional forensic evaluators--**a 53 percent increase.**
  DSHS has commenced recruitment and hiring for these positions. The vacancies were advertised in May 2015. Interviews with qualified applicants began in June 2015, and multiple job offers will occur in July 2015 and thereafter.
- 90 additional beds for competency restoration treatment--**a 65 percent increase.**
  DSHS opened up 10 of these beds at Western State Hospital in June 2015.
- $4.8 million dollars to finance community-based treatment for people who are diverted from prosecution when their competence to stand trial has been raised but diversion to treatment is more appropriate.

2. Enacting Supporting Legislation (Senate Bill 5177)
   As outlined in the Court's decision, DSHS is responsible to provide competency services but cannot, by itself, assure compliance with the seven-day standard required in the *Trueblood* order. DSHS is part of a larger system. As the Court's order stated, "Even with more funding and changes to the practices and policies of the Department, Washington's forensic mental health system cannot function efficiently without the help of all of its participants."

   In response to this need, the Washington State Legislature passed Senate Bill 5177[2] on May 28, 2015 and Governor Jay Inslee signed the bill into law on June 10, 2015. This legislation supports critical efforts needed to improve the competency service system in general and, more specifically, to successfully meet the seven-day standard for the delivery of competency services.

   Key provisions of SB 5177 include:
   a. *Timely Access to Competency Services*--Every day is critical in meeting a seven-day standard for timely access to competency services. This legislation defines responsibilities for key system partners whose commitment is vital to achieving this goal. The responsibilities include:

      i. Transmission of Required Documentation
         Within 24-hours of the signing of the court order the following system partners must provide to the state hospital:
         - The court clerk must provide the court order and charging documents, including the request for bail and certification of probable cause;
         - The prosecuting attorney must provide the discovery packet, including a statement of the defendant's criminal history; and
         - The jail administrator must provide the defendant's medical clearance information if the court order requires transportation of the defendant to a state hospital.

---

[2] The new public law can be found at: (http://lawfilesext.leg.wa.gov/biennium/2015-16/Pdf/Bills/Session%20Laws/Senate/5177-S2.SL.pdf)

      *ii.*  Timely Transport of Defendants
          Jails must transport a defendant to a state hospital or other secure facility within one day of receiving an offer of admission by DSHS for competency services.

      *iii.* Timely Access to Defendants
          Jails must cooperate with DSHS to arrange for evaluators to have timely access to defendants and appropriate space to perform evaluations.

b.  *Standardized Court Orders*--By December 31, 2015, the Administrative Office of the Courts must work with DSHS, the Office of the Attorney General, prosecuting and defense attorneys, counties, Disability Rights Washington, and tribal and community mental health groups to standardize court orders used for competency services. Standardizing court orders will increase system consistency and streamline admissions processes to help ensure the seven-day standard is met.

c.  *Video Testimony*--The Administrative Office of the Courts must convene a work group composed of representatives of the courts, DSHS, the Office of the Attorney General, prosecuting and defense attorneys, counties, and Disability Rights Washington to consider and facilitate the use of video testimony by state forensic evaluators in court matters involving the forensic mental health system, and present their findings by June 30, 2016. The availability of video testimony will reduce delays caused by unavailability of witnesses and reduce public safety concerns regarding transporting witnesses.

d.  *Alternative Sites for Competency Restoration Treatment*--There are currently no alternatives to competency restoration treatment provided in the state hospitals. DSHS is authorized to develop alternative locations and increase access to competency restoration treatment services for individuals who do not require inpatient psychiatric hospital services. DSHS also is directed to work with counties and the court to develop a screening process to determine which individuals can safely receive competency restoration treatment outside the state hospitals. Opening new locations for competency restoration treatment can ease the current burden on the state hospitals and free space for in-custody individuals awaiting competency services.

3.  <u>Establishing the Office of Forensic Mental Health Services</u>
In 2014, DSHS contracted with Groundswell Services, a consortium of national experts in forensic mental health services, to recommend ways to improve Washington's forensic mental health system. One of the recommendations was to establish a centralized Office of Forensic Mental Health Services to "oversee all forensic evaluation services, assist hospitals and community agencies in implementing best-practice forensic treatment, and liaise across systems to ensure a strategic, integrated approach to the forensic population."[3]  Senate Bill 5177 establishes the Office of Forensic Mental Health Services within DSHS.

---

[3] Groundswell Services, Inc. (W. Neil Gowensmith, Daniel C. Murrie, and Ira K. Packer), "Forensic Mental Health Consultant Review – Final Report", Prepared for the State of Washington's Department of Social and Health Services in response to contract #1334-91698 (June 30, 2014) at p. 1 (hereinafter, "Groundswell Report"); Trial Exhibit No. 35.

DSHS is moving forward to establish this new office as the cornerstone for increased accountability, quality, and efficiency in the state's forensic mental health system. With the passage of the 15-17 biennial budget, new positions--including a director for forensic services; a competency restoration specialist; two workforce development specialists; an implementation liaison; and a project manager--are being established and DSHS has commenced aggressive recruitment efforts for these positions. Progress updates regarding the establishment of this new office will be included in monthly reports to the Court Monitor.

**Guiding Principles for Long-Term Plan Development and Implementation**
Four key principles guide development of this long-term plan and implementation of future improvements.

1. _Competency services will be provided promptly and efficiently_
   Washington will meet the timelines and other requirements set forth in the Trueblood order.

2. _Changes implemented will maintain or improve the quality of competency treatment services_
   Washington will create a system to improve the quality of competency services so timeliness is not gained at the expense of quality.

3. _Cross-system collaboration is required to ensure the system achieves desired outcomes_
   The ability to improve Washington's forensic mental health system and to meet the seven-day standard for providing competency services is dependent on the commitment and active collaboration of all system partners including judges, court clerks, prosecutors, defense attorneys, law enforcement, jail managers and others.

4. _Long-term planning to meet Trueblood requirements must be innovative and dynamic_
   This report provides a broad long-term plan for improving competency services and meeting the requirements of _Trueblood_. Although the plan is based on careful analysis of available recent history and projections of future trends, DSHS acknowledges that data integrity and analysis must improve to better inform policy and practice. The system must remain flexible enough to benefit from new or emerging data and experience.

**Elements of the Long-Term Plan**

Guided by the principles above and building upon the funding and policy changes already enacted by the Washington State Legislature, DSHS' long-term plan includes four key elements. Each element will be discussed in detail in subsequent sections of this report.

1. Increase evaluation capacity and improve quality, both in terms of additional evaluators  and improved and more timely access to defendants to conduct evaluations;

2. Expand bed capacity for competency restoration treatment, inside and outside the state hospitals;

3. Develop  more robust and reliable data systems to better forecast demand for services and monitor program performance; and

4. Create opportunities to safely divert people with mental illness from arrest, prosecution or incarceration.

**ELEMENT 1: INCREASE COMPETENCY EVALUATION CAPACITY AND QUALITY**

Washington's primary strategy for expediting access to competency evaluations is focused on adding qualified evaluation personnel based on forecasted demand. DSHS also is making several process improvements to increase system efficiency, including:

- More timely access to evaluations by out stationing staff;
- Increase quality through improved training;
- Improve collaboration among system partners;
- Improve clinical placements by developing a triage system; and
- Increase evaluator productivity via internal process improvements.

*Current Competency Evaluation Capacity – Background*

DSHS currently operates competency evaluation services out of its two state psychiatric hospitals, Western State Hospital (WSH) and Eastern State Hospital (ESH), and the North Regional Office (a satellite office of WSH in downtown Seattle). The satellite office is primarily dedicated to serving the greater Seattle metro area and Snohomish, Whatcom and Skagit counties.

WSH currently has 26.5 forensic evaluator positions, including 7.5 at the North Regional Office. The evaluators are responsible for all competency to stand trial evaluations in Western Washington.  Each WSH evaluator is expected to conduct 10 evaluations per month. ESH currently has six forensic evaluator positions that are responsible for all evaluations in the 20 counties on the east side of the Cascades. Each ESH evaluator is expected to conduct nine evaluations per month.

Nearly 70 percent of evaluations are conducted in jails; however, a small percentage of defendants are ordered to either WSH or ESH for evaluations. In 2013, WSH completed approximately 170 inpatient evaluations, while ESH completed 36.

Additionally, Washington state counties can contract with private evaluators in certain circumstances[4] and be reimbursed for those costs by DSHS. Pierce County contracts with local evaluators to conduct evaluations outside the state hospital system. In 2014, Pierce County evaluators completed 243 evaluations in the Pierce County Jail. No other counties have pursued this option.

Demand for competency evaluation services has grown steadily over the past several years, roughly 8 percent per year since 2001. To keep pace with future demand for competency evaluation DSHS will:

a. *Increase the Number of Forensic Evaluators*
   Additional funding provided in the 15-17 biennial budget enacted in June 2015 will increase the number of forensic evaluators by 40 percent from 32.5 to 45.5 and the ability to provide more timely evaluations.

---

[4] This may apply if the department did not meet the performance target for timely completion of competency evaluations under RCW 10.77.068 during the most recent quarter in 50% of cases submitted by the referring county.

**Table 4:  Forensic Evaluator Funding in the 15-17 Biennial Budget**

| Site | April 2015 Forensic Evaluator Positions (FTE) | 15-17 Biennial Budget Increase (FTE) | Total Forensic Evaluator Capacity (FTE) | % Increase (FTE) | $ Increase (Millions) |
|---|---|---|---|---|---|
| ESH | 6 | 5 | 11 | 83% | $1,407,786 |
| WSH | 26.5 | 8 | 34.5 | 30% | $2,252,457 |
| **Total** | **32.5** | **13** | **45.5** | **40%** | **$3,660,243** |

To improve recruitment efforts, DSHS negotiated a 15 percent pay increase for forensic evaluators. DSHS began recruiting for 13 new positions in May 2015 and began filling these positions in July 2015. Newly hired forensic evaluators will begin providing competency evaluations as promptly as practical thereafter based on training and orientation requirements.

b. *Out Station Evaluators*
   DSHS intends to out station forensic evaluators in locations with enough demand to support an out station site. Based on data from April 2014 to March 2015, there appears to be enough demand to support out station sites in Everett, Vancouver and the Tri-Cities. This places forensic evaluators closer to the service area, reducing travel time and delays in evaluation services.

c. *Improve Training and Quality Assurance*
   Judges rely heavily on the opinions of forensic evaluators to determine a defendant's competency to stand trial. It is incumbent on DSHS to maintain high quality standards for evaluations as capacity to conduct evaluations increases. Performing evaluations is not a standard focus in doctoral training for psychologists and psychiatrists. DSHS has a training system in place for forensic evaluators that involves pairing new evaluators with experienced evaluators for several months of mentorship.

   DSHS is developing an improved training model to ensure evaluators are provided the tools and knowledge to provide consistent and high quality competency evaluations.  The training will cover broad conceptual issues related to competency and the "nuts and bolts" of conducting evaluations, such as how to obtain  critical documents and access to correctional facilities. It will include presentations from forensic system partners, such as the judiciary. DSHS will consult national experts in competency assessment to assist in designing and delivering the training so it is consistent with national best practices. Until the Department's new training program is available, an interim training model will provide a compressed version of the didactics currently used in WSH's year-long forensic fellowship training program.

d. *Improve System Collaboration*

Compliance with a seven-day standard for competency services requires cross-system commitments and collaboration. Competency services are provided in a larger context that includes courts, prosecutors, defense counsel, jails, law enforcement, and mental health providers. DSHS will take an active role in strengthening collaboration among these system partners.

Successfully implementing SB 5177 is required to meet the seven-day standard for provision of competency services. DSHS and the Office of the Governor will convene a meeting of representatives from each system partner--prosecutors, defenders, jails, administrator of the courts, and the tribes on July 10, 2015 to begin discussions and implement these collaborative efforts. Follow up activity is expected to include the organization of subgroups and an oversight committee.  Progress reports on implementation will be included in the monthly reports to the Court Monitor.

DSHS will lead trainings for forensic system partners involved with evaluation-related issues to foster required collaboration. One indirect impact of the *Trueblood* decision is that attorneys may be more likely to request an evaluation in order to explore mental health or mitigating issues generally, rather than competency specifically, given the promise of a quick conclusion. Many other states provide such education to the judiciary about the nature and circumstances of effective referrals for evaluations. Such training tends to reduce unnecessary demand on system resources, increase reasonable referrals, and help jurisdictions best allocate resources to the defendants who need them most.

DSHS will work closely with courts, jails, interpreters and attorneys to develop a system to decrease scheduling delays in those cases requiring an interpreter or in which a defense attorney has requested to be present during the evaluation interview. To meet a seven-day standard, scheduling of all parties needs to occur within 48 to 72 hours of the court order being signed.

e. *Develop Triage Models*

It is important to develop a system to place the right people in the right settings for competency services. Indeed, the Court noted this as part of its Order. See ECF No. 131, pg. 13 (noting triage as a possibility to meet current and future demands). Competency evaluations can be used to identify mentally ill inmates who require treatment and, in more severe cases, defendants who require inpatient psychiatric hospitalization. A triage protocol can prescreen individuals in jail who have been referred for competency evaluation, identify those who are acutely mentally ill and would benefit from hospitalization, and then ensure admission to a hospital for treatment as quickly as possible. Effective triage, therefore, benefits not only the defendants but also maximizes the availability of scarce inpatient restoration treatment services.

Appendix A includes detailed information about the various models being evaluated. Based on this work, the most appropriate model for Washington will be determined and an implementation plan will be developed. Progress updates regarding the implementation of a triage model will be included in the monthly reports to the Court Monitor.

f. _Streamline In-Custody Evaluation Processes_

DSHS conducted a Lean process to develop recommendations for streamlining the in-custody forensic evaluation process. Several of these recommendations can be managed internally within DSHS given the recently approved budgetary resources, including:

- Removing administrative duties from forensic evaluators by adding support staff;
- Increasing capacity for transcription services; and
- Modifying the assignment process, so that patients can be assigned to the same evaluator on subsequent admissions.

**ELEMENT 2: EXPAND BED CAPACITY FOR COMPETENCY RESTORATION TREATMENT**

Washington's strategy for expanding restoration capacity is based on review of historical data to estimate the number of beds needed in the future. Three different scenarios of potential bed need were forecasted through January 2019 based on varying estimates of increased demand for competency services. DSHS' primary strategy to improve the timeliness of competency restoration treatment is to expand the number of available competency restoration beds at Western and Eastern state hospitals.

However, given the short timeframe for compliance with the _Trueblood_ Order to meet a seven-day standard and the significant expansion of capacity required for compliance, DSHS also is formally seeking information from private contractors regarding their capacity to provide up to 30 additional beds for competency restoration treatment outside the state hospitals. This is a "stop gap" strategy to assure that the state has enough restoration capacity in the shorter-term while the state develops additional resources at state facilities to address longer-term needs.

_Current Competency Restoration Treatment Capacity--Background_

DSHS provides nearly all of its competency restoration treatment services at either WSH or ESH. WSH operates about 120 competency restoration treatment beds[5]. In 2013 WSH admitted approximately 650 persons for restoration treatment, nearly double the number of admissions in 2011. ESH operates about 20 competency restoration treatment beds. ESH admitted 92 persons for restoration in 2013. Most of the defendants admitted to WSH and ESH for competency restoration treatment are restored to competency and discharged within about 60 days.

---

[5] Actual numbers of restoration patients on any given day may vary in accordance with real-time bed use needs. For example, some patients may be transferred from civil commitment beds into the forensic ward, or there may be an influx of defendants needing in-patient evaluations.

*Projections for the Future*
Fiscal and program staff from DSHS and the Washington State Office of Financial Management modeled additional bed capacity needed to meet a  seven-day standard for admission with assumptions of increases in demand at ten percent and twenty percent annually. The following graph illustrates the model as applied to WSH and ESH.



Orders for competency restoration treatment are expected to increase as more evaluations are completed. To meet current and future capacity for competency restoration treatment services DSHS will:

a.  *Increase state hospital capacity to provide inpatient competency restoration treatment*
    For mentally ill defendants ordered to receive competency restoration treatment, additional inpatient forensic hospital bed capacity must be developed or made available. Based on projections in the chart above, it is estimated that compliance with a seven-day standard will require 90 beds during the 15-17 biennium. The 15-17 biennial budget funded those competency restoration beds.

Preparation is underway to open 60 beds at WSH and ESH as follows:

| | | |
|---|---|---|
| WSH Ward S4 | 10 Beds | Became operational in June 2015 |
| WSH Ward S4 | 05 Beds | Planned to be operational in September 2015 |
| WSH Ward E2 | 30 Beds | Planned operational by December 2015 |
| ESH Ward 3S1 | 15 Beds | Planned operational by November 2015 |

An additional 30 beds are anticipated to be transitioned to the state hospitals from shorter-term contracted or alternate facility operations. Current estimates are that these beds would be opened as follows:

| | | |
|---|---|---|
| WSH Ward S4 | 15 Beds | No sooner than July 2016 |
| ESH Ward 3S1 | 15 Beds | No sooner than July 2016 |

b. *Create short-term strategies to accommodate needed capacity*
DSHS intends to maximize the use of state hospital beds to meet the seven-day competency services standard. However, given insufficient existing physical bed capacity and challenges of recruiting sufficient state hospital staff, a Request for Information (RFI) process was initiated in June 2015. The RFI was posted in June 2015, asking interested parties to submit information indicating how they could contribute to development of options for restoration treatment services outside of state hospitals. Up to 30 beds may be brought online using contracted resources. Contracted beds would be required to be brought online by early December 2015. Responses are due to DSHS by July 17, 2015. The RFI identifies three options for contracting this work:
- Use of a state facility with state staff providing the daily room and board functions and contracted staff providing competency restoration treatment services;
- Use of a state facility with all services provided by contracted staff; and
- Contractors provide both the facility and all staff services.

c. *Implement internal process improvements*
DSHS and its consultants identified several improvements to the current competency restoration treatment model that would ensure follow-up competency evaluations occur as soon as a patient appears to have been restored to competency. Once adopted, these strategies should lead to more timely discharge of restoration patients and contribute to increased bed capacity. DSHS is developing a workgroup involving DSHS administrators, WSH and ESH staff, and consultants to standardize competency restoration treatment models, programs, modules, and resources in ESH and WSH.

By December 31, 2016, DSHS will adopt standard restoration program curricula that include:

- Uniform procedures for reviewing progress in restoration treatment. Frequent review by treatment staff will be targeted to monitor individual patient progress toward restoration. Patients may be restored as competent to stand trial before the court ordered 45 or 90 day restoration period. Regular brief assessments by treatment staff will monitor patient progress so patients are re-evaluated as soon as clinically appropriate;
- Uniform processes for requesting re-evaluation of competency. When treatment staff determines that a patient is ready for re-evaluation of competence, an evaluator will be promptly assigned to conduct a new evaluation. When patients are determined to have been restored to competence they will be expeditiously returned to court; and
- Consistent, specialized restoration approaches and resources for populations with special needs, primarily defendants with developmental or intellectual disabilities.

d. _Increase alternatives to inpatient restoration for defendants not requiring hospitalization_
   Not all defendants adjudicated as incompetent to stand trial meet the clinical or security need for hospitalization. As a longer term strategy, DSHS will explore development of outpatient restoration programs for the subset of defendants who have been adjudicated incompetent to stand trial, but do not require inpatient treatment. Community-based outpatient restoration is common in several other states, and has the benefit of providing services in the least restrictive environment. Given the need to balance public safety with individual treatment needs, outpatient programs tend to serve relatively small numbers of competency restoration treatment clients.

**ELEMENT 3: CREATE A ROBUST AND RELIABLE DATA SYSTEM TO BETTER FORECAST DEMAND FOR SERVICES AND ASSESS PROGRAM PERFORMANCE**

Historically, DSHS has not effectively used data to monitor program performance or adequately forecast demand for competency services. The state hospitals used different tools and protocols for data collection and reporting and DSHS did not have the staff expertise to analyze data to assess and improve program performance. The _Trueblood_ decision, the Joint Legislative Audit and Review Committee (JLARC) 2014 (_Trueblood_ trial Exhibit 25) report, and the Groundswell report all make clear that DSHS has to develop and use its data for a more focused look at services provided and their effectiveness for people who use them. DSHS was allocated resources in the 15-17 biennial budget necessary to create the infrastructure to gather and analyze data with which to forecast service demands and assess program performance. As part of this effort, DSHS will:

- Acquire necessary staff expertise;
- Improve the use of existing DSHS data; and
- Explore the creation of cross-system automation.

a. _Acquire necessary expertise_
DSHS is adding experts to the Behavioral Health and Services Integration Administration (BHSIA) Team needed to build a data management and analysis infrastructure. DSHS recently hired a data manager and data consultant. Additional positions, including a statistician and two technology solution support positions, are being established. DSHS will begin aggressive recruitment efforts in July 2015.

b. _Improve the use of existing DSHS data_
In the short-term, DSHS will develop and institute standard protocols for data collection and reporting using existing systems. In the long-term, a new information system will be needed to replace disparate applications currently in use that are not integrated and require redundant effort.  DSHS is developing a set of requirements for a single, state-wide integrated information system. The requirements should be complete by October 31, 2015.

c. _Explore the creation of cross-system automation_
The very nature of providing competency services requires communication across the hospitals and with the multiple jurisdictions in the state. There are no standardized platforms or methods of communication to share information across the system in a timely manner. The current system does not make use of 21st Century technology but instead relies on faxes and the U.S. Postal Service. Significant effort and resources are needed to design, build and support a cross-system communication environment. DSHS will collaborate with forensic system partners to explore systemic solutions to these communication challenges.

**ELEMENT 4: CREATE OPPORTUNITIES TO SAFELY DIVERT PEOPLE WITH MENTAL ILLNESS FROM ARREST, PROSECUTION OR INCARCERATION**

The fourth element of DSHS' long-term plan is to reverse or at least stem the trend of increased demand for competency services. In order to accomplish this, DSHS will work with system partners to agree upon diversion strategies. These include, but are not limited to:

- Pursue misdemeanor diversion options--explore the option of eliminating or reducing unnecessary evaluation and restoration of misdemeanant defendants;
- Apply early intervention diversion opportunities—pre-arrest, pre-charging and post-booking diversion; and
- Expand use of civil Geropsychiatric diversion—WSH provides services for many individuals with personal care and complicated cognitive or behavioral support needs. Active inpatient psychiatric treatment will not meet their needs even though they have a mental health diagnosis, and their behavioral baseline or histories have historically been beyond the capacity of community providers. However, with proper supports, these individuals can be diverted from inpatient psychiatric care. Services could be provided in less restrictive community settings, improving liberty and quality of life.

_Background_

Washington, like all other states, struggles with the problem of persons with mental illness entering the criminal justice system, creating challenges for courts and jails that go well beyond competency services. This problem is often labeled "criminalization of people with mental illness."  While the focus of this long-term plan is on reducing time frames for competency services to meet the _Trueblood_ seven-day standard, the problem is broader than this narrow focus and requires a variety of broader systemic interventions.

    a.  _Pursue misdemeanor diversion options_

Under current state law, competency evaluations are provided for people charged with any misdemeanor. However, competency restoration treatment services are only provided to people charged with a non-felony crime that is a serious offense.[6] Part of DSHS' long-term plan is to explore the option of eliminating or greatly reducing unnecessary evaluation and restoration of misdemeanant defendants. This is similar to approaches in other states, such as Florida.

Data from JLARC indicates that 60 percent of misdemeanants had their charges dismissed following a competency evaluation. The data suggest that for _most_ misdemeanants, there is no real value in expending forensic evaluator resources to assess competency, because the cases seldom go to trial. Rather, these individuals could better be served by diversion from the criminal justice system and treated within the civil system (which is necessary for about 26 percent of misdemeanor defendants according to the JLARC report). Table 5 below shows the number of referrals for misdemeanor competency evaluation and misdemeanor competency restoration treatment.

**Table 5:  Number of Referrals for Misdemeanor Competency Evaluation and Restoration**

| Calendar Year | Eastern State Hospital | | Western State Hospital | | Total | |
|---|---|---|---|---|---|---|
| | Evaluations | Restorations | Evaluations | Restorations | Evaluations | Restorations |
| **2012** | 240 | 12 | 1503 | 111 | 1743 | 123 |
| **2013** | 305 | 17 | 1509 | 102 | 1814 | 119 |
| **2014** | 350 | 12 | 1761 | 149 | 2111 | 161 |

Legislation passed in June 2015 (SB 5177) allows prosecutors to dismiss charges without prejudice for certain nonviolent offenders, and refer them instead for an assessment by a mental health professional, chemical dependency professional, or developmental disabilities professional. DSHS will use the $4.8 million appropriated in the 15-17 biennial budget to work with prosecutors, regional support networks and community mental health and chemical dependency treatment providers to match people who are diverted from prosecution to

---

[6] RCW 10.77.088. A non-felony crime which is a "serious offense" is defined in RCW 10.77.092. For defendants charged with a non-felony crime that is _not_ a serious offense as defined in RCW 10.77.092, the court may stay or dismiss proceedings and detain the defendant for sufficient time to allow the designated mental health professional to evaluate the defendant and consider initial detention proceedings under chapter 71.05 RCW (the Involuntary Treatment Act, which applies to cases involving civil commitment). See RCW 10.77.088(2).

appropriate treatment in the community. Implementing misdemeanor diversion options has significant potential to free up evaluator resources and improve timeliness in the provision of competency services.

b.  *Apply early intervention and diversion opportunities*

**Governor Jay Inslee's Diversion Initiative**--Responding to the *Trueblood* seven-day standard is not only about building capacity in the system to respond to demand for services. The Governor feels strongly that it is also about detaining only those people for whom arrest and trial are appropriate, balancing public safety with providing opportunities for community-based treatment as an alternative to arrest or prosecution.  His office will convene a cross-system team to develop and implement strategies that safely and appropriately divert persons with mental illness from the criminal justice system into treatment. The Governor's diversion initiative will engage law enforcement, courts, DSHS, community mental health providers and consumers of mental health services. He looks forward to a wide-ranging discussion of options. DSHS will actively support the task force.

Washington has adopted some best practice diversion strategies. They begin with interactions between law enforcement officers and citizens. More and more, jurisdictions provide Crisis Intervention Training and because of their success, the 2015 legislature enacted Senate Bill 5311.[7] It will incorporate Crisis Intervention Training into the basic training provided to police officers by the Criminal Justice training Commission starting in 2017.  Other diversion strategies occurring in Washington state include establishment of additional mental health courts, increased access to crisis triage/stabilization facilities through funding provided by the 2013 and 2014 legislatures, jail diversion programs, innovative partnerships between community mental health providers and jails to support successful community re-entry (e.g. Clark County) and specialized housing. Mental Health & Addictions Services at Harborview, King County's Forensic Intensive Supported Housing (FISH) program, and King County's Forensic Assertive Community Treatment (FACT) teams also represent good examples of creative, efficient and sensible interventions for individuals with mental illness in the criminal justice system.

However, these innovative approaches currently occur primarily at the local, rather than state-level, and they remain piecemeal across the state. With cooperation from law enforcement, the counties, and other partners, there is significant room to expand and standardize similar types of programs across the state. DSHS is committed to exploring these opportunities.

c.  *Expand the use of civil Geropsychiatric diversion*

WSH provides services for many individuals with personal care and complicated cognitive or behavioral support needs. Active inpatient psychiatric treatment will not meet their needs even though they have a mental health diagnosis, and their behavioral baseline or histories have historically been beyond the capacity of community providers. However, with proper supports, these individuals can be diverted from inpatient psychiatric care. Services could be provided in less restrictive community settings, improving liberty and quality of life.

---

[7] Second Substitute Senate Bill 2SSB 5311 (Chapter 87, Laws of 2015).

DSHS is engaged in a broad effort across our long-term care and community mental health systems to develop stable and sustainable long term care placements for state hospital patients who are deemed by their mental health treatment team to be ready for discharge, or who could be diverted from a long-term commitment to a state hospital.

With the support of the Legislature, the Aging and Long Term Support Administration (ALTSA) has been developing new service models for individuals with these especially complicated behaviors. The 2013 Legislature funded a new service, the Enhanced Services Facility (ESF), to support people with complex needs who are not benefitting from active treatment in the state psychiatric hospitals. The first 12 ESF beds will be available in September 2015 and ALTSA anticipates an additional 10-16 beds will be available over the next six to twelve months. There are also more than 350 ALTSA residential or nursing facility providers statewide who hold contracts that offer additional residential or nursing support for people with behavioral challenges. These break out as follows:

- 52 adult family home (AFH) providers with a Specialized Behavior Support contract that provides enhanced staffing specific to the client;
- 261 AFH providers with an Expanded Community Services contract that provides support for enhanced coordination of services;
- 39 assisted living providers with an Expanded Community Services contracts; and
- Almost 20 skilled nursing providers with an Expanded Community Services contracts.

Key to the success of these programs is a strong collaboration among DSHS' administrations, including Behavioral Health and Integrated Service Administration (BHSIA) and ALTSA, as well as Regional Support Networks (RSN) to develop strong care planning and support for transitions. The services required to support sustained community placements include behavior support intervention when needed, 24/7 in-person response to clients and providers at times of behavior escalation, cross-system transition and crisis planning, and training of the partners across the systems of care. DSHS will collaborate on a local level with Regional Support Networks and community mental health providers to help develop these enhanced supports. Over the course of the next two years, our goal is to reduce the need for a civil ward and, through patient movement at the state hospitals, create additional forensic bed capacity.

**CONCLUSION**

DSHS is committed to meeting the requirements of the *Trueblood* decision. That commitment is now financially supported through a state budget that has injected over $40 million into the State's forensic mental health system. These financial resources have been strategically allocated to align with recommendations provided by JLARC and Groundswell, including:

- Significantly increasing the number of forensic evaluators;
- Adding 90 new forensic beds, and the staff to support them;
- Establishing the centralized Office of Forensic Mental Health Services to provide coordination and management of the improvement efforts described in this Long-Term Plan; and
- Investing in diverting people with mental illness from the criminal justice system and into community-based treatment

The passage of Senate Bill 5177 made important contributions to improving forensic mental health services as detailed in this plan.

In addition to the strong support provided by the Legislature, this Long-Term Plan is strongly supported by Governor Inslee. Not only is the Governor supporting DSHS's proposed actions to expedite competency services, but he is convening a cross-system group to find proactive solutions that safety and appropriately divert persons with mental illness from involvement in the criminal justice system.

Finally, as better data becomes available and is analyzed, and we have actual experience operating under the new seven-day standard, this plan will be modified to make sure it is yielding the intended positive results.

**APPENDIX A:  TRIAGE MODELS UNDER CONSIDERATION IN WASHINGTON STATE**

National Models

DSHS is studying systems from other states (Massachusetts and Washington DC, in particular) that use screening procedures for evaluations. For example, Massachusetts' statutes explicitly provide an initial screening evaluation for competency to stand trial, prior to referral for a more complete evaluation. Washington D.C. requires evaluators to complete a screening evaluation of competency within the first three to five days after the order has been initiated. This screening timeframe appears to apply to all defendants, regardless of location. This screening goes back to the judge, who orders further evaluation if necessary.

Both of these systems are able to accurately achieve the following results:

- Identification of "clearly true positives" (those persons referred for evaluation who are very clearly incompetent to stand trial due to acute mental illness, and who are should be immediately transferred to the hospital for competency restoration treatment services);
- Identification of "clearly false positives" (those persons referred for evaluation who very clearly are competent and do not need competency restoration treatment services); and
- Identification of those remaining persons who do not fall into either of the above categories, and who will proceed towards a full competency evaluation.

Information about how resources are allocated in these systems will be useful in determining how similar procedures could be funded and implemented in Washington to add long-term stability to the system.

Local Models

DSHS is investigating local approaches to screening defendants referred for evaluation. Washington state has at least two counties--King and Snohomish--that use these kinds of early assessment/screening procedures.

*Snohomish County Model*

The Snohomish County Superior Court implemented a screening process on March 5, 2015 that provides a screening assessment of competency to stand trial by Snohomish County Competency Assessment Management Program at Snohomish County Corrections within three business days of judicial referral. (This is feasible if the product is a very short summative report, much like the model used in Massachusetts)  Based on the report, individuals deemed not in need of further evaluation are screened out, thus avoiding the costly and scarce resources of a full evaluation (again, this is a feasible model based on the Massachusetts experience). Those who are deemed in need of further evaluation can either be referred for a more thorough jail-based evaluation, or ordered to have the evaluation completed on an inpatient basis if this is judged clinically necessary (typically based on a finding of circumstances involving the health of the defendant). This triage model serves several functions:

- Eliminates the need for full competency evaluations in cases in which the court agrees with the screening assessment that there are no concerns about competency;
- Moves individuals who are in acute need of hospitalization to inpatient services more quickly (potentially three days required for the screening assessment versus seven days); and

- Identifies those individuals for whom a full evaluation is appropriate and moves them more quickly through that process.

*King County Model*

There is also a long-standing triage model in the Seattle Municipal Mental Health Court and the King County District Regional Mental Health Court where social workers at the public defense agencies or community mental health agencies (called "mental health court monitors" or "mental health court liaisons") screen out defendants prior to an order being signed (e.g., defendants who are intoxicated or withdrawing from drugs or alcohol, and who will likely stabilize quickly). These social workers continue to meet with the defendants after the competency order is entered but before the evaluation takes to determine if the order for evaluation needs to be withdrawn once the defendant stabilizes. These two courts also allow the evaluators at DSHS' North Regional Office to request approval for a "truncated report" for the defense and prosecution for those defendants who are acutely psychotic and clearly incompetent. These truncated reports meet the requirements of Washington law but are substantially shorter. This model may be useful in other counties if courts are amenable to this approach.

Other Models

Another potential interim model could rely on community-based mental health clinicians, rather than jail staff, to conduct the triage. This is more likely to be necessary in smaller counties that do not have comprehensive jail mental health services.  This could be an interim model, until there is a larger cadre of well-trained evaluators who would be available to adapt the Snohomish or King County model to these jurisdictions. This model will also be explored by DSHS as part of long-term options.

**APPENDIX B:  EVALUATION PROCESS**

**Arrest**

• Person is charged and becomes criminal defendant.

**Competency Raised**

•"Whenever ...there is reason to doubt [the defendant's] competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate a qualified expert or professional person, who shall be approved by the prosecuting attorney, to evaluate and report upon the mental condition of the defendant."  10.77.060(1)(a).

**Evaluation 10.77.060**

• **In Jail:** "The evaluator shall assess the defendant in a jail, detention facility, in the community, or in court to determine whether a period of inpatient commitment will be necessary to complete an accurate evaluation ... Otherwise, the evaluator shall complete the evaluation." 10.77.060(1)(c)          **--OR--**
• **In-patient:** Without an assessment, up to 15 days of in-patient evaluation can be ordered at the state hospital or "secure mental health facility" if: (i) The defendant is charged with murder 1 or 2; (ii) an in-jail evaluation will be inadequate for an accurate evaluation;  or (iii) the court finds that an evaluation outside the jail setting is necessary for the health, safety, or welfare of the defendant. RCW 10.77.060(1)(d).

**Determination of Competency**

• "The expert conducting the evaluation shall provide his or her report and recommendation to the court in which the criminal proceeding is pending." 10.77.065(1)(a)(i).
• **If found competent:** the criminal prosecution resumes.
• **If Incompetent:** The court may enter a competency restoration order as allowed by 10.77.086 or 10.77.088.

**APPENDIX C:  RESTORATION PROCESS**

**Finding of Incompetence**

- "If at any time during the pendency of an action and prior to judgment the court finds, following a report as provided in RCW 10.77.060, a defendant is incompetent, the court shall order the proceedings against the defendant be stayed..."  10.77.084(1)(a).

**Felony Restoration 10.77.086**

- **Felony Restoration**: "Shall commit the defendant to the custody of the secretary who shall place such defendant in an appropriate facility of the department." 10.77.086(1)(a)(i).
  - 45 initial commitment days for class B and C felonies, 90 days for all others. 10.77.086(1)(b).
  - After a hearing, a second period of 90 day restoration may be ordered. 10.77.086(3).
  - If certain conditions are met, a court may order additional restoration for up to six months. 10.77.086(4).

**Non -Felony Restoration 10.77.088**

- Restoration for **"serious" nonfelony crimes only** . 10.77.088(1)(a).
  - 14 days in addition to any unused time of in-patient evaluation  (15 days). This can equal a total restoration period of 29 days.
  - Defendant may be placed in "a secure mental health facility in the custody of the department or an agency designated by the department." 10.77.088(1)(a)(i).
- For **non-serious nonfelony crimes**, the proceedings are stayed or dismissed, and the defendant may be referred for civil commitment under RCW 71.05. No restoration treatment is permitted. 10.77.088(2).

**Competency Determination**

- If defendant is not restored after treatment, charges are dismissed without prejudice and defendant referred for civil commitment under 10.77.084(1)(c).
- If restored to competency, criminal trial resumes.

## CERTIFICATE OF SERVICE

*Amber L. Leaders*, states and declares as follows:

I am a citizen of the United States of America and over the age of 18 years and I am competent to testify to the matters set forth herein. I hereby certify that on this 18th day of May, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

David Carlson:  davidc@dr-wa.org

Emily Cooper:  emilyc@dr-wa.org

Anna C. Guy:  annag@dr-wa.org

Sarah A. Dunne:  dunne@aclu-wa.org

Margaret Chen:  mchen@aclu-wa.org

LaRond Baker:  lbaker@aclu-wa.org

Anita Khandelwal:  anitak@defender.org

Christopher Carney:  Christopher.Carney@cgilaw.com

Sean Gillespie:  Sean.Gillespie@cgilaw.com

Kenan Isitt:  Kenan.isitt@cgilaw.com

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Dated this 2nd day of July 2015 at Olympia, Washington.

Amber L. Leaders
Assistant Attorney General

Office of the Attorney General
7141 Cleanwater Drive SW
PO Box 40124
Olympia, WA  98504-0124
(360) 586-6565

DEFENDANTS' LONG TERM-PLAN
NO.  C14-1178 MJP

i

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565