1

2

**THE HON. MARSHA J. PECHMAN**

3

4

5

UNITED STATES DISTRICT COURT

6

WESTERN DISTRICT OF WASHINGTON

7

A.B., by and through her next friend CASSIE
CORDELL TRUEBLOOD, *et al.*,

No. 14-cv-01178-MJP

8

Plaintiffs,

9

v.

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO
MODIFY THE INJUNCTION**

10

WASHINGTON STATE DEPARTMENT OF
SOCIAL AND HEALTH SERVICES, *et al.*,

11

12

Defendants.

13

**I.      INTRODUCTION**

14

Defendants have moved this Court to extend the timeframe to comply with this Court's

15

injunction mandating the timely provision of competency services to Plaintiffs-Class Members.

16

Although a time extension is all but inevitable since the January 2, 2016, deadline has long

17

passed and Defendants now assert they will simply be unable to timely comply with the

18

injunction, Plaintiffs urge the Court to note the following: (1) Defendants' request for a time

19

extension was necessitated in large part by their repeated refusal to work meaningfully with the

20

Court Monitor ("Monitor") and, unless they are directed to do so in compliance with the

21

injunction going forward, it is unlikely Defendants will be able to comply even by June 2016;

22

and (2) Defendants should not be permitted to seek substantive modifications to the injunction

23

under the guise of a request for a time extension.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO MODIFY THE INJUNCTION
14-cv-01178-MJP - 1**

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

1    First, Defendants' claim that their need for additional time to comply with this Court's

2    injunction stems solely from unexpected findings of safety violations by the Centers for

3    Medicare and Medicaid Services ("CMS") is simply factually inaccurate.  There is no question

4    that Defendants have wholly failed to comply with the injunction: indeed, instead of decreasing

5    wait times for competency services, the following chart demonstrates Defendants have allowed

6    the delays for both evaluations and restoration actually to *increase:*

| DSHS Competency Service | Average Number of Days, ESH (trial and current) | | Average Number of Days, WSH (trial and current) | |
|---|---|---|---|---|
| In hospital evaluation | 41.2 | 86.0 | 30.6 | 22.4 |
| In jail evaluation | 56.3 | 45.6 | 14.7 | 15.2 |
| Restoration | 20.9 | 94.0 | 29.8 | 36.6 |

11   Although the CMS findings may have played some role in Defendants' failure to comply,

12   Defendants' pleadings omit their portion of culpability for the delays leading up to CMS

13   enforcement in December 2015.  If this culpability—which is the result of Defendants' refusal to

14   adhere to the Monitor's recommendations—goes unaddressed, it will inevitably result in future

15   delays.  These delays have dire consequences.  As noted in the Monitor's recent report, two

16   Class Members have died in jail while waiting for competency services. Dkt. 180 at 3, 19.

17   Second, while modification regarding the timing of compliance may be warranted, of

18   greater concern is Defendants' attempt to wholesale rewrite this Court's injunction regarding the

19   provision of competency restoration services in a therapeutic environment.  Defendants' Long

20   Term Plan provided for additional beds for competency restoration services at the state

21   psychiatric hospitals and only thirty temporary beds in correctional settings.  Dkt. 164 at 13.

22   Defendants now seek to rely extensively, and potentially permanently, on fifty-four restoration

23   beds in correctional facilities that do not mirror the "therapeutic environment of a psychiatric

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO MODIFY THE INJUNCTION**
**14-cv-01178-MJP - 2**

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

1    hospital." Dkt. 131 at 22.  Defendants should not be permitted to undermine the Court's

2    injunction by cloaking these substantive modifications as a time extension, and none of the

3    evidence they have proffered as to changed circumstances justify these changes.

## II.    ARGUMENT

### A.    A Limited Extension of the Compliance Date May Be Warranted but Defendants' Reliance on the CMS Enforcement is Unpersuasive.

7         "A party seeking modification . . . of an injunction bears the burden of establishing that a

8    significant change in facts or law warrants revision . . . of the injunction." *Sharp v. Weston*, 233

9    F.3d 1166, 1170 (9th Cir. 2000).  The party must show one of the following: 1) changed factual

10   conditions make compliance with the decree substantially more onerous; 2) the decree proves to

11   be unworkable because of unforeseen obstacles; 3) enforcement would be detrimental to the

12   public interest. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992).

13        Defendants argue under the first two *Rufo* prongs that unforeseen facts regarding CMS

14   enforcement at Western State Hospital ("WSH") (only one of the two psychiatric hospitals that

15   are subjects of the injunction) have caused them to be unable to provide competency services

16   within seven days by January 2, 2016.  Def. Br. at 1.  Defendants claim their failure to comply

17   was caused by the threatened loss of federal funding after CMS determined WSH was unsafe

18   because Defendants, in part, had failed to adequately staff the facility.  This finger pointing is

19   disingenuous because many of the actions Defendants could have taken to reduce wait times are

20   consistent with remedying the CMS finding.  For example, the CMS finding that WSH has

21   insufficient staff to protect patients and staff is wholly in keeping with this Court's conclusion

22   that Defendants have failed to appropriately staff the state psychiatric hospitals to keep up with

23   the demand for mental health services.  *See* Dkt. 131 FOF 35.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO MODIFY THE INJUNCTION**
**14-cv-01178-MJP - 3**

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

**B.      Defendants' Failure to Timely Comply Stems from Abandonment of the Long Term Plan and Failure to Adhere to the Monitor's Recommendations.**

Defendants originally identified the following in their Long Term Plan as necessary actions for compliance with this Court's injunction by January 2, 2016 and for years to come:

- Increase the number of forensic beds (Dkt. 164 at 14);

- Increase the number of forensic evaluators (Dkt. 164 at 11);[1]

- Create outstations for evaluators in areas that are not located near a state psychiatric hospital (Dkt. 164 at 12);

- Create a robust and reliable data system (Dkt. 164 at 16);

- Develop triage models (Dkt. 164 at 13); and

- Use diversion to reduce the demand for competency services and provide mental health treatment in the less restrictive environment (Dkt. 164 at 17).

As detailed below, Defendants failed to take appropriate steps to implement each of these six actions consistent with their Long Term Plan to reach compliance.  Defendants' failure to implement the steps identified in their Long Term Plan occurred before CMS's visit, has nothing to do with CMS enforcement, and stems instead from their repeated refusal to work appropriately with the Monitor as directed by this Court's injunction.  Dkt. 131 at 23-24.

       1.      <u>Defendants Abandoned Their Plan to Increase Bed Capacity and Related Staffing at the State Hospitals.</u>

This Court ordered Defendants to secure sufficient bed space and related staff so as to allow for the admission of class members to hospitals within seven days.  Dkt. 131 at 22.

---

[1] Although Defendants have appealed the portion of this Court's injunction requiring the State to perform competency evaluations within seven days, Defendants did not seek a stay of the order while it is on appeal. Regardless of whether the Court has jurisdiction over this portion of the injunction, the facts underlying Defendants' action regarding implementation of timely competency evaluation are informative for the Court to consider when determining whether to grant Defendants' request for a modification of the injunction. Further, appropriate staffing levels at the state hospitals impact the ability to provide both evaluation and restoration services.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO MODIFY THE INJUNCTION**
**14-cv-01178-MJP - 4**

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

1    Defendants' Long Term Plan committed to "increase the bed capacity for competency restoration

2    services." Dkt. 164 at 4, 14.  This included bed expansion at both WSH and ESH. *Id.* at 6.  To

3    meet these commitments, Defendants secured $26.86 million to pay for 129.2 "direct care staff

4    to operate 90 additional Competency Restoration treatment beds."  Dkt. 176 Attach. E at 16.

5    However, bed expansion at WSH has been indefinitely postponed.  *See* Cooper Decl. at 1 (citing

6    to Secretary Quigley November 3, 2015, letter stating, "I have concluded we must take a full

7    pause on expansion until we are able to fill our many deep staffing needs.").  Defendants also

8    claim that thirty new beds at Eastern State Hospital ("ESH") "are expected to be operational by

9    January 2016."  Dkt. 176 Attach. E at 14.  However, Defendants identify the failure to recruit

10   sufficient staff as a barrier to opening the new ESH unit. *Id.* at 35.

11          The staffing issues at DSHS are neither new nor unforeseen.  In nearly every Quarterly

12   Report to the legislature submitted since they began reporting in 2012, DSHS identified staffing

13   resources as a key barrier to the provision of timely services. *See* Trial Exs. 26-34. Prior to trial,

14   DSHS repeatedly claimed that staffing was the primary barrier to meeting the seven day target to

15   provide competency services.  Ex. 30 at 3 ("We have had challenges from initial implementation

16   of this legislation during a time of fiscal cuts and shortages…"); *Id* at 5.  ("We cannot address

17   this problem fully without additional resources devoted solely to forensic services.").  Both

18   DSHS's consulting experts, Groundswell, and the independent legislative auditors agreed.  *See*

19   Trial Ex. 35 at 20 and Ex. 24 at 17 ("[T]he two state hospitals likely did not meet the assumed

20   staffing and productivity standards.").[2]   Recent CMS enforcement has only clarified what

21   _____

22   [2] Defendants' witnesses' testimony at trial was consistent with the Quarterly Reports.  Several DSHS employees
     testified they could provide timely competency services with appropriate staffing and related resources. *See Ward V.*
     5 102: 18-22 and 103:5; Powers Vol. 5, 45:11-19; Waiblinger V. 4, 141: 11-18. Dr. Waiblinger went on to clarify

23   that he believed he could get the waitlist down to under seven days in six months with appropriate resources.  V.4,
     146: 14-25.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**                          Disability Rights Washington
**MOTION TO MODIFY THE INJUNCTION**                             315 5th Avenue South, Suite 850
**14-cv-01178-MJP - 5**                                         Seattle, Washington  98104
                                                                (206) 324-1521 ᐧ Fax: (206) 957-0729

1    Defendants have long known: DSHS has been unable to recruit and retain sufficient staff to

2    address the needs of all patients including class members.

3            Defendants' failure to remedy their long-standing problem of inadequate staffing

4    contributed to the CMS enforcement and is the likely result of their refusal to engage

5    meaningfully with the Monitor's recommendations.  For example, the Monitor has repeatedly

6    recommended Defendants expedite licensing of the new staff, exercise emergency administrative

7    authority to hire contract staff, and diversify the pool of clinicians who can provide competency

8    services.  Dkt. 180 at 34 and 44; Dkt. 171 at 32-34.  However, Defendants refused to consider

9    diversifying the clinical staff and instead waited three months after this Court's order to receive

10   legislative funding to hire additional staff rather than seeking emergency funding or again

11   contracting for staff pursuant to an emergency declaration.  Dkt. 164 at 12 and 7.

12          2.      Defendants Failed to Hire Sufficient Forensic Evaluators to Reduce Delays in
                    Competency Evaluation.

13

14          This Court also ordered Defendants to secure sufficient evaluation staff so as to allow

15   them to provide competency evaluations within seven days. Dkt. 131 at 22.  The State allocated

16   monies for $4.67 million to pay for 18 new competency evaluator staff.  Dkt. 176 Attach. E at

17   16.  However, Defendants have failed to fill all of these positions, Dkt. 176 Attach. E at 13,

18   resulting in wait times that have actually gotten worse since this case was tried. WSH's current

19   average to provide in jail evaluation is 15.2 days.  Dkt. 176 Attach. E at 7.  ESH's average is

20   45.6 days.  *Id.* at 8. While ESH's in-jail evaluation waitlist has consistently been far worse than

21   WSH, *see Id.,* DSHS has hired eight of nine evaluators at WSH.  *Id* at 19.  In fact, DSHS only

22   hired three out of the planned five evaluators at ESH, eventually transferring one of the ESH

23   open positions to WSH.  *Id.*

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO MODIFY THE INJUNCTION**
**14-cv-01178-MJP - 6**

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

The Monitor informed Defendants that bringing in temporary competency evaluators would be a swift and timely way to bring down the wait list for those who are waiting for competency evaluations and could be done while Defendants went through the traditional hiring process for permanent competency evaluators.  Dkt. 180 at 20, 33, 44; *see also* Dkt. 171 at 36, 40, 45.  She additionally recommended Defendants explore using other mental health providers to perform competency evaluations, including MSWs and other designated mental health providers similar to the types of practitioners who perform civil commitment evaluations.  Dkt. 180 at 33.  Defendants declined to follow the Monitor's suggestions.

3.       Defendants Failed to Create Appropriate Evaluation Outstations.

As the Groundswell consultants identified in 2013, there is a great need for Defendants to develop outstations for competency evaluators.  Trial Ex. 35 at 21.  This need is particularly strong in eastern Washington, where travel times between jails and ESH are significant and weather is often an obstacle.  *Id.*  Defendants reaffirmed the need to create outstations in their Long Term Plan as a means of reducing wait times for competency evaluations.  Dkt. 164 at 12.  Defendants identified the Tri-Cities as a location for an ESH outstation.  *Id.* However, after developing their Long Term Plan, Defendants failed to create permanent outstations in eastern Washington other than a part-time outstation in Yakima.[3]  Defendants' decision to not follow their own plan and outside recommendations to create outstations in areas of eastern Washington with high referrals coupled with the continued lack of sufficient evaluators have contributed to the skyrocketing delays for competency evaluations at ESH.  None of this has anything to do with CMS findings regarding staffing issues at WSH.  Further, starting in August 2015, the

---

[3] Although the State is now sending WSH evaluators to Yakima to perform evaluations, the process is *ad hoc* with no set schedule.  Dkt. 176 Attach. E at 19 and 28.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO MODIFY THE INJUNCTION**
**14-cv-01178-MJP - 7**

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

Monitor also repeatedly noted that Defendants' efforts to create outstations in eastern

Washington were lagging.  Dkt. 171 at 31; Dkt. 180 at 29.

      4.    <u>Defendants Failed to Create a Robust and Reliable Data System.</u>

      The Court ordered Defendants to file a report with the Monitor and to include data

regarding wait times, estimates for compliance, and resources need to reach compliance.  Dkt.

131 at 23-24.  The Court also entered a finding of fact that "the lack of accurate data and timely

performance reporting makes it difficult for DSHS to understand and predict demand for their

services, to improve their operating policies and procedures, and to adequately plan for the

future. Dkt 131 FOF 32.[4]  Likewise, Defendants' Long Term Plan referenced the long-standing

problems it has had with accurate data and the need to appropriately allocate resources.  Dkt. 164

at 16.  The Monitor reported on January 8, 2016, "One of the major problems plaguing the

administration of the forensic and competency services system is data reporting."  Dkt. 180 at 43.

The Monitor recommends prioritizing the validation of data and reporting "to enable the Parties

to estimate requirements for achieving compliance."  Dkt. 180 at 45.  However, Defendants have

failed to implement procedures to ensure reliable data despite having had nine months to do so.

      5.    <u>Defendants Failed to Develop and Implement Triage Protocols.</u>

      In their Long Term Plan, Defendants identified a need to develop and implement triage

protocols.  Dkt. 164 at 12; Dkt. 131 at 13.  Triage protocols are a necessary component of

reducing the harms that Plaintiffs-Class Members with acute mental illness suffer in jail

(including worsening mental health symptoms and risks of injury or death) by prioritizing those

who require treatment including, in more severe cases, inpatient psychiatric hospitalization.  *Id.*

---

[4] Groundswell, the experts DSHS retained, also noted that DSHS data was unreliable, and the lack of reliable data posed an obstacle in allocating staffing resources appropriately.   Trial Ex. 35 at 11.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO MODIFY THE INJUNCTION**
**14-cv-01178-MJP - 8**
    Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521  ·  Fax: (206) 957-0729

1  This strategy was identified as necessary at trial, in this Court's order, and was reaffirmed as an

2  effective strategy for minimizing harm to class members by Dr. Mauch.  Dkt. 180 at 20, 33; Dkt.

3  171 at 22-23.  However, although the State identified the need to develop and implement triage

4  protocols, Defendants have failed to do so.  Dkt. 180 at 8; *see also* Cooper Decl. at 2.

5              6.      <u>Defendants Have Failed to Use Money Allocated for Diversion.</u>

6          The Court ordered Defendants to include in their Long Term Plan, "how they will

7  continue to provide services with seven days, even as demand for such services continues to

8  grow and the state hospitals' existing campuses reach their full capacities."  Dkt. 131 at 23.   The

9  Defendants' Long Term Plan stated they secured $4.81 million dollars to divert class members

10 from the forensic mental health system and into "community-based treatment."  Dkt. 164 at 4, 6.

11 The Monitor noted that $4.8 million was "modest given the scope of need for these services in

12 Washington."  Dkt. 180 at 31; Dkt. 171 at 41.  The Monitor also repeatedly identified several

13 programs and entities that serve as a foundation for diversion services as well as ways to

14 leverage the funds.  Dkt. 180 at 14 and 31; Dkt. 171 at 14-15.  However, Defendants failed to

15 take action and follow up on these recommendations seven months after they were initially

16 issued and despite "the need for diversion is growing." Dkt. 180 at 31.

17         This inaction is also wholly unrelated to the CMS enforcement and instead a direct result

18 of Defendants' unwillingness to engage with the Monitor.  Less than two months from the

19 compliance deadline, DSHS responded to the Monitor's request for a diversion update and stated

20 for the first time that it had barriers to spending the legislated funding.  *Id.* at 14-15.  The

21 Monitor has also raised concerns regarding the lack of diversion funds in the Governor's 2016

22 Supplemental Budget.  *Id.* at 31.  Finally, the Monitor recommends Defendants consider

23

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO MODIFY THE INJUNCTION**
**14-cv-01178-MJP - 9**

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ⋅  Fax: (206) 957-0729

"Medicaid program demonstrations and waivers" as they have done with other aspects of the system. *Id.* Defendants have to yet to respond to these recommendations.

**C.    Defendants Should Not be Permitted to Significantly Modify the Injunction By Providing Services to Some Class Members in Correctional Facilities.**

This Court ordered Defendants to provide restoration services in the "therapeutic environment of a psychiatric hospital." Dkt. 131 at 22. To comply with this directive, Defendants planned to build additional capacity at the state psychiatric hospitals and to use outside facilities, for a short period of time, to clear the backlog of class members waiting for restoration services. Dkt. 164, pgs. 13-17. Instead of providing competency restoration services in facilities that are as therapeutic as a state psychiatric hospital, Defendants have now chosen to provide restoration services in correctional facilities—even though the Monitor noted serious concerns with the efficacy of jail based restoration, Dkt. 171 at 36, and even though this Court found that the state hospitals are "an appropriate environment for mental health treatment." Dkt. 131 FOF 26. Defendants should not be permitted to undermine this Court's injunction by placing some class members in correctional settings where the competency restoration services will not be the equivalent of restoration services offered in the state psychiatric hospitals.

The state hospitals are certified by CMS and the Joint Commission, have group and individual therapy rooms, outdoor spaces, individual rooms that patients can enter or exit freely, longstanding and fully developed restoration treatment protocols, and requirements regarding the use of seclusion and restraint that comport with best practices. *See* Dkt. 180 at 34; Dkt. 131 FOF 26. Neither of the two correctional based restoration programs Defendants are developing provide the same level of services or therapeutic treatment as the restoration services provided in the state psychiatric hospitals. Dkt. 180 at 34. Indeed, Dr. Deborah Pinals, a consultant for the

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO MODIFY THE INJUNCTION
14-cv-01178-MJP - 10

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

Monitor, articulated several concerns with providing restoration services in correctional

facilities.  She noted that neither facility would be licensed as a hospital nor accredited by either

CMS or the Joint Commission. Dkt. 180 at 37.  She found YCCC has a "correctional feel," and

noted class members would be expected to wear correctional attire.  Dkt. 180 at 542 and 547.

Bedrooms in the YCCC would house four individuals, as opposed to single or double rooms at

the hospitals, and would not have sufficient partitions to provide privacy, deepening the sense

that the environment is more correctional than therapeutic. Dkt. 180 at 547.  In addition, it is

unclear how much patients would be in contact with correctional staff or be subjected to jail

sanctions, rules, and regulations.  Dkt. 180 at 545-547.

Dr. Pinals expressed many of the same concerns regarding Maple Lane. Dkt. 180 at 547.

And finally, she noted that DSHS has only vague ideas about how these facilities could be used

to provide therapeutic services (*e.g.*, Defendants failed to identify a provider with prior forensic

experience to provide restoration services at Maple Lane; evidenced a lack of clarity on self-

harm mitigation strategies; and have not planned for removal of the elevated control center to

make the environment feel therapeutic and not correctional).  Dkt. 180 at 558-563.  However,

Defendants failed to incorporate these recommendations before contracting for in-jail restoration

at YCCC and Maple Lane. Dkt. 180 at 35-36.  Instead, Defendants have unilaterally decided to

spend at least $8.97 million, Dkt. 164 at 5, to focus on developing two entirely new standalone

programs in correctional settings, the likes of which have never existed in Washington.

Defendants have considered corrections-based restoration in the past, but rejected it after

their own consulting experts found that such programs are "not a national best practice model,"

and that they present challenges because of the "limited capabilities of correctional facilities to

provide adequate mental health care, and perhaps most importantly, significant concerns

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO MODIFY THE INJUNCTION**
**14-cv-01178-MJP - 11**

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

1   regarding civil liberties and least restrictive settings for mental health treatment." Trial Ex. 35 at

2   32. Nonetheless, Defendants continue to pursue remedying the constitutional violation arising

3   from their underlying failure to provide competency services by shuffling class members from

4   one correctional facility to another and by not providing the same level of care at the correctional

5   facility based restoration programs as at the state psychiatric hospitals.

6                            **III.   CONCLUSION**

7           Defendants have repeatedly failed to work with the Monitor to bring their evaluation and

8   restoration system into compliance with this Court's injunction. Their failure to meet the

9   deadline set by this Court was thus all but inevitable, regardless of any outside federal action

10  taken by CMS. They seek now not only an extension from the Court but also substantive

11  changes to the injunction itself. This Court should act to prevent further floundering by

12  Defendants.

13          If this Court determines that an extension of time is necessary, Plaintiffs respectfully

14  request that the Court direct Defendants to develop a new Long Term Plan consistent with the

15  original injunction and that Defendants respond in writing to each of the Monitor's outstanding

16  recommendations regarding compliance. Given Defendant's efforts to provide competency

17  services in a non-therapeutic environment and failure to adhere to the Monitor's

18  recommendations in violation of the Court's order, these steps are consistent with and necessary

19  to ensure compliance with this Court's injunction.

20  //
    //
21  //
    //
22  //
    //
23  //

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**                      Disability Rights Washington
**MOTION TO MODIFY THE INJUNCTION**                          315 5th Avenue South, Suite 850
**14-cv-01178-MJP - 12**                                     Seattle, Washington  98104
                                                             (206) 324-1521 · Fax: (206) 957-0729

1    DATED this 11th day of January, 2016.

2                                    */s/Emily Cooper*
                                     DISABILITY RIGHTS WASHINGTON
3                                    David R. Carlson, WSBA No. 35767
                                     Emily Cooper, WSBA No. 34406
4                                    Disability Rights Washington
                                     315 Fifth Avenue South, Suite 850
5                                    Seattle, WA 98104
                                     (206) 324-1521
6                                    davidc@dr-wa.org
                                     emilyc@dr-wa.org
7
                                     /s/Anita Khandelwal
8                                    PUBLIC DEFENDER ASSOCIATION
                                     Anita Khandelwal, WSBA No. 41385
9                                    Public Defender Association
                                     810 Third Avenue, Suite 800
10                                   Seattle, Washington 98104
                                     (206) 447-3900
11                                   anitak@defender.org

12                                   /s/La Rond Baker
                                     ACLU OF WASHINGTON FOUNDATION
13                                   La Rond Baker, WSBA No. 43610
                                     Margaret Chen, WSBA No. 46156
14                                   ACLU of Washington Foundation
                                     900 Fifth Avenue, Suite 630
15                                   Seattle, Washington 98164
                                     (206) 624-2184
16                                   lbaker@aclu-wa.org

17                                   /s/Christopher Carney
                                     CARNEY GILLESPIE ISITT PLLP
18                                   Christopher Carney, WSBA No. 30325
                                     Carney Gillespie Isitt PLLP
19                                   315 Fifth Avenue South, Suite 860
                                     Seattle, WA 98104
20                                   (206) 445-0212
                                     Christopher.Carney@CGILaw.com
21

22                                   ***Attorneys for Plaintiffs***

23

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**                    Disability Rights Washington
**MOTION TO MODIFY THE INJUNCTION**                       315 5th Avenue South, Suite 850
**14-cv-01178-MJP - 13**                                  Seattle, Washington   98104
                                                          (206) 324-1521 · Fax: (206) 957-0729

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- Nicholas A Williamson (NicholasW1@atg.wa.gov)
- Sarah Jane Coats (sarahc@atg.wa.gov)
- Amber Lea Leaders (amberl1@atg.wa.gov)

DATED:  January 11, 2016, at Seattle, Washington.


/s/Mona Rennie
Mona Rennie
Legal Assistant

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO MODIFY THE INJUNCTION
14-cv-01178-MJP - 14**

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521 · Fax: (206) 957-0729