1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
8
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10   CASSIE CORDELL TRUEBLOOD, et            CASE NO. C14-1178-MJP
     al.,
11                                          ORDER DENYING DEFENDANTS'
                    Plaintiffs,             MOTION TO RECONSIDER
12                                          INJUNCTION REGARDING
            v.                              TIMING OF SERVICES AND
13                                          INPAIENT EVALUATIONS
     WASHINGTON STATE DEPARTMENT
14   OF SOCIAL AND HEALTH SERVICES,
     et al.,
15
                    Defendants.
16

17

18          THIS MATTER comes before the Court on Defendants' Motion to Reconsider Scope of

19   Injunction Regarding Timing of Services and Inpatient Evaluations.  (Dkt. No. 288.)  Having

20   considered the Parties' briefing and the related record, the Court DENIES the Motion.

21                                      **Background**

22          On April 2, 2015, this Court imposed a multipart injunction that required Defendants to

23   cease violating class members' constitutional rights by providing timely competency services by,

24   among other things: (1) completing provision of in-jail competency evaluations within seven

ORDER DENYING DEFENDANTS' MOTION TO
RECONSIDER INJUNCTION REGARDING
TIMING OF SERVICES AND INPAIENT
EVALUATIONS- 1

1 days of the signing of a court order, unless an extension is secured for clinical good cause, (2)

2 admitting those ordered to receive an in-hospital competency evaluation to a state hospital within

3 seven days of the signing of a court order, and (3) admitting those ordered to receive competency

4 restoration services to a state hospital within seven days of a court order.  (Dkt. No. 131 at 21-

5 23.)

6   Defendants appealed the portion of the injunction relating to in-jail evaluations, but did

7 not appeal the portions relating to in-hospital evaluations or restoration services.  See Trueblood

8 v. Washington State Dep't of Soc. & Health Servs., 822 F.3d 1037 (9th Cir. 2016).  On appeal,

9 the Ninth Circuit affirmed class members' constitutional right to timely competency evaluations,

10 but vacated the seven-day requirement imposed by this Court as to in-jail evaluations.  (See Dkt.

11 Nos. 233, 303.)  After reexamination, this Court modified the injunction to require the

12 completion of in-jail evaluations within fourteen days of the signing of a court order for such

13 services.  (Dkt. No. 303.)

14   Although Defendants' appeal concerned only in-jail evaluations, Defendants now argue

15 that the logic and reasoning underlying the Ninth Circuit's opinion requires reevaluation of two

16 components of the injunction not relating to in-jail evaluations.  (Dkt. No. 288.)  First,

17 Defendants argue that the time limit for admission to a state hospital for inpatient evaluations

18 and restoration services should be calculated from the date Defendants receive the court order

19 and other necessary documentation, rather than the date the court order is signed.  (Id. at 3-10.)

20 Second, Defendants argue the portion of the injunction relating to in-hospital evaluations should

21 be amended to require only that Defendants comply with state law, which requires admission

22 within fourteen days of receipt of the necessary documentation.  (Id. at 5-12.)

23

24

ORDER DENYING DEFENDANTS' MOTION TO
RECONSIDER INJUNCTION REGARDING
TIMING OF SERVICES AND INPAIENT
EVALUATIONS- 2

1    Plaintiffs oppose the Motion, arguing that it is time-barred and that nothing in the Ninth

2  Circuit's opinion requires the revisions Defendants request.  (Dkt. No. 291.)

3                                                    **Discussion**

4    I.        Timeliness of Motion

5    Plaintiffs argue Defendants' Motion is time-barred.  Plaintiffs argue that although Local

6  Civil Rule 7(h) requires motions for reconsideration to be filed within fourteen days of the order

7  to which they relate is filed, Defendants' Motion was filed 455 days after the Court imposed the

8  injunction and 28 days after the Ninth Circuit issued the mandate upon which Defendants'

9  Motion is based.  (Dkt. No. 291 at 1-4.)  Plaintiffs further argue that Defendants lost the ability to

10  challenge the undisturbed portions of this Court's injunction when they chose not to appeal them

11  within 30 days of judgment.  Plaintiffs contend allowing Defendants to use this Motion as a

12  "backdoor means of appeal would frustrate the interests in finality and judicial economy Rule 4

13  is intended to serve."  (Id. at 3-4.)

14    Defendants argue their Motion is timely under Fed. R. Civ. P. 60, which allows motions

15  brought "within a reasonable time" when a judgment "is based on an earlier judgment that has

16  been reversed or vacated; or applying it prospectively is no longer equitable; or . . . any other

17  reason that justifies relief."  (Dkt. No. 293 at 1-3) (citing Fed. R. Civ. P. 60(b)(5)-(6) and (c)(1).)

18    Considering the equitable principles underlying Fed. R. Civ. P. 60's timing provision, the

19  Court finds it appropriate to consider the merits of Defendants' Motion.  While the Court finds

20  Defendants' Motion timely under Fed. R. Civ. P. 60(c)(1), however, the Court finds Defendants

21  have failed to establish an entitlement to relief under Fed. R. Civ. P. 60(b) based on the Ninth

22  Circuit's opinion in Trueblood v. Washington State Dep't of Soc. & Health Servs., 822 F.3d

23  1037 (9th Cir. 2016).

24
ORDER DENYING DEFENDANTS' MOTION TO
RECONSIDER INJUNCTION REGARDING
TIMING OF SERVICES AND INPAIENT
EVALUATIONS- 3

II.     Time Limit Begins at Date of Court Order

Defendants first argue that the time limit for admission to a state hospital for inpatient evaluations and restoration services should be calculated from the date Defendants receive the court order and other necessary documentation, rather than the date the court order is signed. (Dkt. No. 288 at 3-10.)  Defendants argue that because the deadline for completion of in-jail evaluations is calculated from the date the Washington Department of Social and Health Services ("DSHS") receives the court order and other documentation, the deadlines for admission for in-hospital evaluations and restoration services should be calculated in the same manner.  (Id.) Plaintiffs oppose the request.  (Dkt. No. 291 at 4-9.)

Defendants' argument rests on a proposition already rejected by the Court.  After this Motion was fully briefed, the Court issued its Order Modifying Permanent Injunction as to In Jail Competency Evaluations, in which it found that in-jail competency evaluations must be completed within fourteen days of the signing of a court order, not fourteen days from DSHS's receipt of the court order.  (Dkt. No. 303 at 31-32.)  In making that determination, the Court found that the concerns articulated by the Ninth Circuit when it remanded the issue for further consideration and repeated here by Defendants were no longer relevant because of, inter alia, (1) statutory changes since trial that now legally require stakeholders to submit documents to DSHS within twenty-four hours of the signing of a court order, (2) the fact that, as of May 2016, all necessary documents were received by DSHS on the same day the court order was signed in at least seventy-one percent of cases, and all necessary documents were received in three days or less in ninety-five percent of cases, and (3) testimony by DSHS's community outreach liaison that DSHS had just begun contacting stakeholders around the state to inform them of the new twenty-four-hour requirement, and that DSHS expected the percentage of cases in which DSHS

ORDER DENYING DEFENDANTS' MOTION TO
RECONSIDER INJUNCTION REGARDING
TIMING OF SERVICES AND INPAIENT
EVALUATIONS- 4

1   receives all necessary documents on the same day the court order is signed to continue to rise

2   over the coming months.  (Id. at 14, 31-32.)  For the sake of judicial economy, that discussion is

3   not repeated here.

4          In order to provide timely competency services, DSHS cannot passively wait to receive

5   easily available information, but instead must actively participate in building a system that

6   allows courts and other stakeholders to quickly transfer orders, discovery, and other information

7   directly to DSHS.  Defendants' first request is DENIED.

8          III.    Seven Days to Admit Class Members to State Hospital for Evaluation

9          Next, Defendants argue the portion of the injunction relating to in-hospital evaluations

10  should be amended to require only that Defendants comply with state law, which requires

11  admission within fourteen days of receipt of the necessary documentation.  (Dkt. No. 288 at 5-

12  12.)  The Court disagrees.[1]

13         The Court finds that the statutory fourteen-day requirement for admission for an in-

14  hospital evaluation does not bear a reasonable relation to the purposes of the confinement as it

15  relates specifically to class members awaiting in-hospital evaluations, and concludes now as it

16  did before that seven days is the maximum justifiable period of time to incarcerate a class

17  member waiting for admission to a state hospital for an in-hospital evaluation.[2]  Once the system

18

19         [1] In arriving at these conclusions, the Court relies on testimony and evidence from trial and from

20  the evidentiary hearings held since trial, other evidence in the record, and findings of fact made and
     entered in Dkt. Nos. 131, 186, 289, and 303.
            [2] To evaluate Defendants' request to modify the injunction, the Court must determine whether the

21  nature and duration of the confinement imposed by the statutory fourteen-day standard bears some
     reasonable relation to the purpose for which the individual is committed.  See Jackson v. Indiana, 406

22  U.S. 715, 733-38 (1972), Youngberg v. Romeo, 457 U.S. 307, 321 (1982), Trueblood, 822 F.3d at 1043-
     45.  The Court must make this determination by balancing the legitimate interests of class members

23  against the legitimate interests of the state.  Trueblood, 822 F.3d at 1043-45 (finding the framework
     adopted by the Ninth Circuit in Oregon Advocacy Ctr. v. Mink, 322 F.3d 1101 (9th Cir. 2003), to be

24  "equally applicable to individuals awaiting competency evaluations").  The Court has written at length

1 provides for a reasonable amount of time in which to transmit information, to arrange and

2 prepare for the transport of an individual from a jail to one of the two state hospitals, and to

3 complete the transport, each additional day of delay works against the interests of all Parties.

4 And, although class members awaiting in-hospital evaluations have some similarities with class

5 members awaiting in-jail evaluations, a number of key differences between the groups and their

6 situations, stemming from the legal framework provided by state law as it relates to the two

7 groups, necessitate different wait-time standards for the two groups:

8  First, the tasks to be completed are different.  In-jail evaluations must be <u>completed</u>

9 within fourteen days, whereas the seven-day standard for in-hospital evaluations requires only

10 that Defendants admit class members to a hospital so that an evaluation can <u>begin</u>.

11  Second, because the tasks are different, the interests of the Parties are different.  While

12 class members retain their interests in "mitigating the harm caused to detainees who languish in

13 jail awaiting a competency determination and in reducing the impact of solitary confinement and

14 other conditions often imposed on mentally ill detainees who are awaiting evaluation," the state's

15 interests in "accurate evaluations, preventing the stigma of an incorrect determination, avoiding

16 undue separation of a detainee from her counsel and family, and protecting the detainee's rights

17 to counsel and against self-incrimination" are not implicated for the in-hospital evaluation

18 subgroup.  <u>Trueblood</u>, 822 F.3d at 1044-45.  The time it takes Defendants to admit a class

19 member to a state hospital has no impact on the accuracy of the evaluation conducted entirely

20 after the class member has been admitted, and therefore there can be no impact on any stigma

21 resulting from an incorrect determination.  Furthermore, when an evaluator or a court orders a

22

23 about the interests of class members and of the state at the competency evaluation stage, and about how those interests interact when balanced against each other.  (Dkt. No. 303.)  The Court now incorporates that discussion and will not repeat it here except to note how those interests, when considered in the in-

24 hospital evaluation context, differ from the interests in the in-jail evaluation context.

1   class member to receive an in-hospital evaluation, they will necessarily be separated from their

2   community, counsel, and family.  This separation is not "undue"—it is a mandatory component

3   of the decision to order an in-hospital evaluation instead of an in-jail evaluation.  Nothing in this

4   Court's injunction determines whether a class member is ordered for evaluation in a hospital or

5   in a jail—the decision stems entirely from state law and the decision of the state court judge or

6   evaluator.  And, because the evaluation occurs entirely after the class member is admitted to the

7   state hospital, the time by which Defendants must admit the class member has no impact on the

8   availability of defense counsel to participate in the actual evaluation.

9          Defendants now argue that the state also has a legitimate interest in reducing "misuse" of

10  the in-hospital evaluation system so as to "avoid[] a system that encourages defendants and

11  defense counsel to seek inpatient evaluations as a means to obtain a faster evaluation" because a

12  system with "shorter timelines for inpatient evaluation versus in-jail evaluation" would "tak[e]

13  away from those who truly need treatment."  (Dkt. No. 288 at 11-12.)  The Court disagrees.

14  First, Washington law allows state judges to order in-hospital evaluations in only three

15  circumstances.  RCW 10.77.060(d) ("The court may commit the defendant for evaluation to a

16  hospital or secure mental health facility without an assessment if: (i) The defendant is charged

17  with murder in the first or second degree; (ii) the court finds that it is more likely than not that an

18  evaluation in the jail will be inadequate to complete an accurate evaluation; or (iii) the court

19  finds that an evaluation outside the jail setting is necessary for the health, safety, or welfare of

20  the defendant.").  In these circumstances, the court—not the class member or her defense

21  counsel—has found an in-hospital evaluation appropriate.  While class members may prefer in-

22  hospital evaluations, that decision is simply not theirs to make.  The only other mechanism

23  allowing for in-hospital evaluations is an evaluator's decision that "inpatient commitment is

24

ORDER DENYING DEFENDANTS' MOTION TO
RECONSIDER INJUNCTION REGARDING
TIMING OF SERVICES AND INPAIENT
EVALUATIONS- 7

1   needed." RCW 10.77.060(c).  Again, the in-hospital evaluation is being conducted because an

2   evaluator—not a class member or her counsel—decided that was preferable, and all evaluators

3   are DSHS employees except for the Pierce County panel evaluators.  Second, contrary to

4   Defendants' assertion, a seven-day time limit for admission to a state hospital for an in-patient

5   evaluation would appear to result in a longer timeframe for inpatient evaluations than for in-jail

6   evaluations, not a shorter timeframe.  RCW 10.77.060(c) allows for up to fifteen days to

7   complete the evaluation once admitted to a hospital.  Therefore, a completed in-hospital

8   evaluation would take up to twenty-two days (up to seven for admission, up to fifteen for

9   completion), whereas an in-jail evaluation must be completed within fourteen days.  Because

10  Defendants have not provided any explanation for their unsupported conclusion that in-hospital

11  evaluations would occur faster than in-jail evaluations, (see Dkt. Nos. 288 at 11-12, 293 at 1-8),

12  the Court is unable to accept this conclusory assertion as a legitimate interest.

13       The legitimate interests maintained by the state in the in-hospital evaluation context—

14  bringing those accused of a crime to trial, evaluating a potentially incompetent defendant's

15  competency so as to determine whether he or she may stand trial, restoring the competency of

16  those found incompetent so that they may be brought to trial, and maintaining an efficient and

17  organized competency evaluation and restoration system, the administration of which uses public

18  resources appropriately—as well as the legitimate interests of class members awaiting in-hospital

19  evaluations, all weigh against a fourteen-day standard and in favor of a shorter, seven-day

20  standard.

21       Third, the barriers to timely in-jail evaluations and the barriers to timely admission for in-

22  hospital evaluations differ significantly, and there are many fewer barriers in the in-hospital

23  evaluation context.  Completing in-jail evaluations within fourteen days requires the cooperation

24

ORDER DENYING DEFENDANTS' MOTION TO
RECONSIDER INJUNCTION REGARDING
TIMING OF SERVICES AND INPAIENT
EVALUATIONS- 8

1    of evaluators, defense counsel, jail administrators, interpreters, defense experts, and other

2    stakeholders.  In contrast, admission for in-hospital evaluations requires only that the jail provide

3    medical clearance for the class member, and jails are now legally required to provide medical

4    clearance information within twenty-four hours of the signing of a court order for an evaluation.

5    RCW 10.77.075.  The only other thing that needs to be done within the seven days lies entirely

6    within the control of Defendants: providing a bed in a state hospital.  In fact, Defendants do not

7    even need the discovery or charging documents because the seven-day timeframe does not

8    require Defendants to actually conduct an evaluation—it simply requires them to open a bed for

9    the class member at a hospital.

10          Finally, in invoking principles of federalism and asking the Court to defer to state law as

11   to the fourteen-day standard, Defendants ask the Court to ignore another state law, and the policy

12   judgments underlying that law.  As discussed above, Washington law allows for in-hospital

13   evaluations only in limited circumstances, and ninety percent of competency evaluations in

14   Washington happen outside of a state hospital.  (Dkt. No. 131 at 6.)  The distinction between

15   class members who receive in-hospital evaluations and those who receive in-jail evaluations was

16   created by Washington law, not by this Court.  The policy judgments underlying that

17   distinction—that class members ordered to be evaluated in a hospital are more in need of mental

18   health services in a hospital setting than the other ninety percent of people ordered to receive

19   competency evaluations—are entitled to as much deference from this Court under principles of

20   federalism as the fourteen-day standard enacted four days before trial in this matter.  (See Dkt.

21   No. 303 at 10-12.)  Additionally, that state law requires either a judge or an evaluator to be the

22   one to make the determination that an in-hospital evaluation is appropriate represents a

23   legislative determination not only that judges and evaluators are capable of identifying people

24

ORDER DENYING DEFENDANTS' MOTION TO
RECONSIDER INJUNCTION REGARDING
TIMING OF SERVICES AND INPAIENT
EVALUATIONS- 9

1   who are actually in need of hospitalization while receiving services, but that judges and

2   evaluators, not DSHS administrators, should be the ones to make that determination.

3   Accordingly, the Court must reject Defendants' contention that people who receive in-hospital

4   evaluations are "taking spots away from those who truly need treatment."  (Dkt. No. 288 at 12.)

5           Similarly, arguments advanced by Defendants such as a murder charge "alone makes it

6   no more likely that a defendant will be found incompetent or will need the specialized care

7   available in a state hospital," and therefore that this is "not a population that should be rushed to

8   the hospital," (Dkt. No. 288 at 11), miss the point entirely.  This Court has not ordered that

9   people with murder charges be evaluated in a state hospital—that decision was made by state law

10  in conjunction with the ordering judge or evaluator, and is the binding law of Washington state,

11  whether DSHS agrees with it or not.  Defendants have proven themselves capable of lobbying

12  for desired legislation, and principles of federalism counsel that Defendants make these

13  arguments to the legislature, not to this Court.

14          In sum, the Court finds once again that wait times in excess of seven days contravene the

15  interests of both the state and class members, and do not bear a reasonable relation to the purpose

16  of the confinement.  See Jackson, 406 U.S. at 733-38.  The Court understands Defendants' desire

17  to reserve scarce hospital bed space for class members already found incompetent and badly in

18  need of restoration and treatment.  But the solution is to secure adequate bed space to provide

19  timely services to all class members, not to seek to delay services to those DSHS deems less in

20  need.  Washington's policy is that certain people be evaluated in a hospital; Defendants must

21  meet the obligation contained in that policy judgment while still providing timely restoration

22  services to others.  "Lack of funds, staff or facilities cannot justify the State's failure to provide

23  [class members] with [the] treatment necessary for rehabilitation."  Mink, 322 F.3d at 1121

24

ORDER DENYING DEFENDANTS' MOTION TO
RECONSIDER INJUNCTION REGARDING
TIMING OF SERVICES AND INPAIENT
EVALUATIONS- 10

1   (quoting <u>Ohlinger v. Watson</u>, 652 F.2d 775, 779 (9th Cir. 1980)).  Defendants have known for

2   years that they lacked sufficient bed space to provide timely services, having been told so by

3   both experts of their own choosing and outside auditors hired by the state legislature.

4   Defendants' failure to take all reasonable steps to reduce wait times by, inter alia, securing more

5   bed space, has resulted in this Court's finding that Defendants are in contempt of this Court's

6   orders.  (Dkt. No. 289.)  Defendants must rise to the occasion and engage in the serious reforms

7   necessary to improve the timeliness of competency services—the constitutional rights of some of

8   our most vulnerable citizens depend on it.  Defendants' second request is DENIED.

9                                                           **Conclusion**

10         Defendants' Motion to Reconsider Scope of Injunction Regarding Timing of Services

11   and Inpatient Evaluations is DENIED.  (Dkt. No. 288.)

12

13         The clerk is ordered to provide copies of this order to all counsel.

14

15         Dated this 19th day of August, 2016.

16

17

18                                              Marsha J. Pechman

19                                              United States District Judge

20

21

22

23

24
ORDER DENYING DEFENDANTS' MOTION TO
RECONSIDER INJUNCTION REGARDING
TIMING OF SERVICES AND INPAIENT
EVALUATIONS- 11