The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| A.B., by and through her next friend Cassie Cordell Trueblood, et al. | ) ) ) | No. 14-cv-01178-MJP |
| Plaintiffs, | ) ) | |
| v. | ) ) | COUNTIES' AMICUS BRIEF |
| Washington State Department of Social and Health Services, et al., | ) ) ) | |
| Defendants. | ) ) ) | |
| | ) | |

## I.    INTRODUCTION

King County, Pierce County and Snohomish County (the "Counties"), which together represent almost four million Washington residents, have a substantial interest in proper and effective operation of both Washington's criminal justice system and its mental health care system. As noted in the Counties' motion to accept this amicus brief, DSHS's failure to fix its competency evaluation and restoration systems has negatively impacted county funding for the criminal justice system, jails, and local mental health resources, while denying needed mental health care and endangering community safety.

Although it is long past the point where DSHS should have resolved this problem, the Counties oppose DRW's request for an order precluding the commitment of most civil conversion

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

1  patients to the state hospitals because this requested relief is unsound and would violate state

2  statutes and court orders.  Dkt. 938 at 25-28.

3       The Counties largely agree with DRW that the conflict between competency and

4  conversion beds is a problem self-created by DSHS due to their precipitous closure of civil wards

5  before adequate replacement space was fully available.  But DRW overlooks a direct link between

6  DSHS's continuing contempt of this Court's orders for timely competency restoration and civil

7  conversion commitments:  A major reason that the use of forensic beds by conversion patients has

8  increased is *because* DSHS is failing to discharge its obligation to timely evaluate and treat

9  incompetent defendants.   This Court has already found that prolonged periods of local

10 incarceration without court-ordered competency evaluation and restoration services makes a

11 criminal defendant's mental condition worse.  Dkt. No. 131 at 9 ("Section III: The Harms Caused

12 by Prolonged Incarceration").  Due to DSHS's continuing contempt and ongoing failure to provide

13 timely competency restoration services, civil conversion patients have been impacted in two ways:

14 1) Civil conversion patients are in worse shape mentally because DSHS has failed to *timely* admit

15 them for competency evaluation and restoration services; and 2) Even worse, with some patients,

16 DSHS's competency restoration efforts have been so dilatory that state courts have been forced to

17 dismiss charges and order conversion commitments *without any competency restoration treatment*

18 *at all*.  Because conversion patients were *Trueblood* **class members** whose predicament is directly

19 related to DSHS's misfeasance and contumacious behaviors, it makes no sense to further injure

20 them by precluding their commitment in a state hospital for necessary mental health treatment

21 under chapter 71.05 RCW.

22      This Court should also decline DRW's requested relief on comity and federalism grounds,

23 because precluding conversion commitments directly violates state law and court orders.  *See*

COUNTIES' AMICUS BRIEF [No. 14-cv-01178-MJP] - 2

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

1   *LaShawn A. by Moore v. Barry*, 144 F.3d 847, 854 (D.C. Cir. 1998) (when enforcing federal orders,

2   "[d]isregarding local law . . . is a grave step and should not be taken unless absolutely necessary.").

3   There is no doubt that state law mandates conversion commitments to the state hospital for

4   evaluation and possible treatment. *See* RCW 10.77.086(5) (upon dismissal of a felony case for

5   failure to restore competency, a Washington Superior Court "*shall* . . . order that the defendant to

6   be committed to a state hospital" for evaluation).  This statute represents the judgment of the

7   Washington Legislature, enforced by orders of the Superior Court, that former criminal defendants

8   facing felony charges, but found unrestorable, require mental health evaluation and possible longer

9   term treatment in a state hospital under chapter 71.05 RCW. *See In re Det. of M.W. v. Dep't of*

10  *Soc. & Health Servs.*, 185 Wash. 2d 633, 651, 374 P.3d 1123, 1131 (2016) (state's interest in

11  conversion commitments "compelling under substantive due process").  Under the facts and

12  circumstances of this case, comity and federalism concerns should preclude this Court from

13  ordering DSHS to violate state law by refusing to admit civil conversion patients.

14       To be clear, the Counties are in full agreement with DRW that DSHS's failure over the

15  past eight years to bring the competency evaluation and restoration processes into compliance with

16  the constitution requires much stronger action from this Court to enforce its orders.  But DRW's

17  requested relief would trade the constitutional rights of competency restoration defendants for

18  those of felony conversion patients.  Fundamentally, this Court should reject the idea that its

19  equitable powers should be used to break the conversion commitment system in order to provide

20  temporary relief to the competency restoration system.

21                           **II.    FACTS**

22  **A.    The Civil Conversion Commitment Process.**

23       Under Washington law, "[w]hen a court declares that an individual is incompetent to stand

COUNTIES' AMICUS BRIEF [No. 14-cv-01178-MJP] - 3

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

trial for felony charges, the charges against that person are dismissed without prejudice and the person must undergo a mental health evaluation for civil commitment and treatment." *In re M.W.*, 185 Wash. 2d at 642.  By statute, when competency cannot be restored, "the court *shall* dismiss the charges without prejudice and *order the defendant to be committed to a state hospital* for up to 120 hours if the defendant has not undergone competency restoration services or has engaged in outpatient competency restoration services and up to 72 hours if the defendant engaged in inpatient competency restoration services starting from admission to the facility . . . for evaluation for the purpose of filing a civil commitment petition under chapter 71.05 RCW."  RCW 10.77.086(5). Although DSHS is currently in contempt of several civil conversion court orders, it freely admits that "the Department does not control felony conversion court orders, and is mandated by law and court order to accept these patients."  Dkt. 943 at 10.

    In accordance with this statute, after the Superior Court has entered an order committing the former defendant to the state hospital for a 120- or 72-hour evaluation for civil commitment, the state hospital coordinates with the county jail to admit the patient.  Upon admission, responsibility for the conversion commitment patient transfers fully to the state hospital, which may seek a 180-day commitment for mental health treatment by petitioning the Superior Court where the hospital is located.  RCW 71.05.290(3).  The 180-day commitment may be ordered only if the patient "has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.086[5], and has committed acts constituting a felony, and *as a result of a behavioral health disorder, presents a substantial likelihood of repeating similar acts*."  RCW 71.05.280(3) (emphasis added).  If the patient's dismissed charges were for a "violent offense," the committing court is required to make a "special finding" under RCW 71.05.280(3)(b) determining "whether the acts the person committed constitute a violent offense under RCW

COUNTIES' AMICUS BRIEF [No. 14-cv-01178-MJP] - 4

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

9.94A.030." *See generally In re M.W.*, 185 Wn.2d at 642-44 (describing civil conversion

commitment process, including "special finding" and recommitment procedures adopted in HB

1114 for persons charged with violent offenses).

**B.     Since December 14, 2022, DSHS Has Been Intentionally Violating RCW
10.77.086(5) and State Court Conversion Orders.**

On December 14, 2022, DSHS Assistant Secretary Bovenkamp issued a policy

memorandum informing the Counties and others that it would no longer comply with RCW

10.77.086(5) and Superior Court orders to admit conversion patients for 120- or 72-hour evaluation

commitments. *See* Decl. of Vitalich (Ex. 1).  Instead, DSHS asserted its alleged authority to

"triage" which conversion patients it would accept,  and stated it would provide "timely notice"

when  rejecting a conversion patient for admission. *Id.* (Ex. 1 at 2).  Although DSHS touts its

"partnership" with "stakeholders" (Dkt. 943 at 2),  it provided no notice of this  new policy and

engaged in no discussion prior to issuing it.

Shortly after DSHS asserted its new authority to trump statute and court order, King County

received notices that WSH would be rejecting former defendants Michael Holland and Daniel

Aura for admission. *Id.* (Exs. 2 & 3).  The Holland case is illustrative of the conversion

commitment problem and the depth of DSHS's ongoing contempt for court orders.

Holland was charged with Misdemeanor Violation of a Court Order and Felony

Harassment, both with Domestic Violence designations, for showing up at his former roommate's

apartment in violation of a protection order and threatening to kill him. *Id.* (Ex. 4 – Information

and Certification of Probable Cause).  A DSHS evaluator found Holland incompetent to stand trial

and recommended inpatient competency restoration at the state hospital. *Id.* (Ex. 5 – Forensic

Evaluation on file with Superior Court).  Accordingly, the Superior Court ordered Holland to

undergo  inpatient  competency  restoration  services  on  September 14, 2022. *Id.* (Ex. 6 –

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

1  Competency Restoration Order).

2  But Holland was not admitted to a state inpatient facility for competency restoration as

3  required by the court's order.  As a result, on November 2, 2022, the court found DSHS in contempt

4  for failing to transport Holland for competency restoration services and ordered DSHS to pay him

5  $250 per day in compensatory sanctions.  *Id.* (Ex. 7 – Contempt Order).  Despite contempt

6  sanctions under both the state court order and this court's order, DSHS continued with its contempt

7  of court and persisted in denying Holland competency restoration treatment.

8  Without any indication that DSHS's contumacious behaviors would change, on December

9  7, 2022, the Superior Court dismissed Holland's pending charges without prejudice under RCW

10  10.77.086(5), and committed Holland "to a state hospital for up to 120 hours" to undergo an

11  evaluation for a civil conversion commitment. Decl. of Vitalich (Ex. 8 – "Dismissal and

12  Commitment Order").  The Dismissal and Commitment Order was entered on a standard form

13  used throughout the state.  Notably, the sole reason cited by the court as to why Holland was not

14  likely to regain competency within a reasonable period of time was "*due to the delay in admission*"

15  to a state inpatient facility for restoration services.  *Id.* (Ex. 8 at 1; emphasis added).  The order

16  provided that Holland would be retained in the jail for 14 days to allow transport and admission to

17  the state hospital.

18  Upon being informed by DSHS that it would be denying Holland admission for a

19  conversion commitment under its new "triage" policy, the King County Prosecutor, on behalf of

20  the State of Washington,[1] filed an emergency motion to clarify DSHS's obligations under the

21

22  [1] The locally-elected county prosecutor operates as a state official and represents the sovereign
authority of the State of Washington in criminal proceedings. *See, e.g., Whatcom Cty. v. State*, 99

23  Wn. App. 237, 250, 993 P.2d 273 (2000) (county prosecutor is a "state official" who represents
the State in criminal proceedings).

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

1   Order of Dismissal and Commitment.  Notice was provided to the DSHS AAG.  On December 16,

2   2022, the Superior Court clarified that its prior order "mandates and directs" DSHS to admit

3   Holland "for a 120-hour civil commitment hold," and that DSHS was not authorized to decline to

4   admit Holland for evaluation.  Decl. of Vitalich (Ex. 9 – "Clarifying Order").

5          King County provided a copy of the court's Clarifying Order to DSHS.  The County also

6   sent a letter to DSHS Assistant Secretary Bovenkamp explaining DSHS's obligations to admit

7   Holland and Aura under the terms of the Order of Dismissal and Commitment, and under the

8   Clarifying Order, because it is "[o]ur legal norm for state agencies to comply with court orders."

9   Decl. of Vitalich, Ex. 10 ("KC Letter").  King County also met directly with DSHS Secretary Jilma

10  Mineses, key DSHS leadership and the DSHS AAG.  As reflected in a follow-up memo from

11  DSHS, the agency intentionally decided not to follow the Superior Court's order that "mandates

12  and directs" the admission of Holland and Aura to a state hospital for a conversion commitment.[2]

13  Decl. of Vitalich, Ex. 11 (DSHS Reply to KC Letter).  In the end, neither Holland, nor Aura were

14  admitted to the state hospital for the required 120-hour civil conversion evaluation.[3]

15         As an agency, DSHS has  several mandatory duties that implicate the rights of others,

16

17  [2] DSHS did not dispute its *legal* obligation under statute and the Dismissal and Commitment Order
18  to admit conversion patients, but claimed its obligations were superseded by necessity.  DSHS
    pointed out that it was not required to file a petition for a180-day commitment, but this was non-
19  responsive to its legal obligation to *admit* the patient to the state hospital for a 120-hour evaluation
    to determine whether a subsequent 180-day commitment was appropriate.  Contrary to DSHS's
20  claims on page 2 of Ex. 11, neither the statute nor court order allows DSHS to reject a patient
    *before* admitting the patient and without the required evaluation.

21  [3] DSHS suggested that Holland and Aura could be committed under the standard provisions of the
    Involuntary Treatment Act ("ITA"), chapter 71.05 RCW, using local Designated Crisis
22  Responders and local mental health facilities.  But this is not what state law requires.  Moreover,
    the standards for commitment under the ITA are substantially different from those applicable to
23  civil conversions.  Further, local bed space is already disappearing due to a lack of adequate
    funding from the State, and the State itself is now in direct competition with the Counties for
    remaining local beds.

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

including mandatory commitment obligations under the conversion statute and the "not guilty by reason of insanity" statute. It is a false choice to claim that DSHS cannot meet its competency evaluation and restoration obligations unless it abandons its other mandatory duties. Unfortunately, DRW's requested relief would grant DSHS the cover of a federal court order to further DSHS's illegal "policy" of violating state court conversion orders.

## III.    ISSUES

A.     Under principles of comity and federalism, should the Court decline to override state law and  court orders that require DSHS to admit felony conversion patients to a state hospital for a 120-hour evaluation and possible 180-day commitment under chapter 71.05 RCW?

B.     Should the Court decline to use its equitable powers to remedy DSHS's contempt of court by denying mental health services in a state hospital to civil conversion patients?

## IV.    LEGAL ARGUMENT

### A.    Within the Context of this Case, Comity and Federalism Do Not Permit Equitable Relief That Would Empower DSHS to Ignore State Law and Court Orders

It is well-established that a district court has broad equitable powers to enforce its orders, including formulating appropriate relief to remedy a party's contempt. However,  "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief."  *Stone v. San Francisco,* 968 F.2d 850, 860 (9th Cir.1992) (*quoting Rizzo v. Goode,* 423 U.S. 362, 379 (1976)).  Comity and federalism concerns are "highly contextual and must be evaluated on a case-by-case basis." *Stone*, 968 F.2d at 860.  In tailoring a remedy, "federal courts should 'exercise the least possible power adequate to the end proposed.'" *Id.* at 861 (quoting *Spallone v. United States,* 493 U.S. 265, 280 (1990)).  More intrusive measures may be ordered only when "the least intrusive measures fail to rectify the problems." *Id.*  In the context of the current case, federalism concerns do not permit a federal court to empower DSHS to violate

Leesa Manion, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

state statutes and state court orders.[4]

The substantial federalism concerns implicated by DRW's requested relief to preclude DSHS from accepting civil conversion patients—in violation of state law and court orders—are aptly addressed in the *Stone* decision.  In *Stone*, the City and County of San Francisco were in contempt for jail overcrowding, and the district court granted the sheriff expanded powers "to release inmates even when such release contravened applicable state laws."  968 F.2d at 853.  The local district attorney, appearing as amicus before the Ninth Circuit, urged the court to reverse provisions of the district court's order that allowed the Sheriff "to override applicable state laws and state court criminal sentences ordered pursuant to those laws."  *Id.* at 854.  Although issues of comity and federalism were raised only by amicus, the court determined that it was necessary to address them.  *Id.* at 855-56.

The Ninth Circuit approved many actions taken by the district court to enforce its  order over the course of nine years to prevent overcrowding in the jails, but noted that "expansion of the Sheriff's early-release authority to override applicable state law . . . presents a different case" and "raise[s] strong federalism concerns because the district court's action effectively reallocated legislative power to the executive."  *Id.* at 864.  The district court had not given sufficient time to see if other measures would work, nor had it adopted necessary findings.  *Id.*  The Ninth Circuit summarized:  "the district court should tailor the grant of such authority as narrowly as possible so as to minimize the intrusion upon the state's affairs.  At a minimum, the court should give the Sheriff override authority *only as a last resort and only as essential to achieve compliance with*

---

[4] DSHS mildly protests against DRW's requested suspension of civil conversion commitments – something the agency is already claiming the right to do and actually doing despite binding law. Notably, DSHS fails to make *any* of the comity or federalism arguments that militate against DRW's requested relief.  Both DSHS's active violation of the law and its refusal to defend its obligation to comply with the law are disturbing.

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

1    *the consent decree*." *Id.* at 965 (emphasis added).

2    Due to these same concerns, the federal district court in Oregon very recently denied the

3    request of Disability Rights Oregon to deny or limit admission to various mandatory civil

4    commitment populations, in violation of state law and court orders, for the purpose of improving

5    the timeliness of Oregon's competency evaluation and restoration system. *Disability Rts. Oregon*

6    *v. Allen*, No. 3:02-CV-00339-MO, 2022 WL 4125680, at *1 (D. Or. Aug. 16, 2022). The court

7    pointed out that "federal courts are hesitant to approve via injunction state actors' noncompliance

8    with state laws that abut, but do not directly conflict with federal law." Because Washington

9    statutes and court orders on civil conversion commitments were not enacted to frustrate this court's

10   orders and otherwise comply with constitutional requirements, the Court should not preclude or

11   forgive DSHS's full compliance  with all laws it is charged by the Washington Legislature to

12   administer and enforce.[5]

13   Although acknowledging "serious concerns" about the ability of the Oregon state hospital

14   to comply with the competency injunctions, the court declined to impose relief that would

15   authorize violations of state law:

16   > There is a key distinction to be made between protecting Defendants' ability to work
     > towards solutions to the admittance crisis—what the 2002 injunction was put in place to
17   > actualize—and blatantly authorizing noncompliance with specific provisions of state law

18   _____

19   [5] DRW's requested relief focuses on civil conversion patients mainly because they are convenient.
     The same result could be obtained by precluding  admission for geriatric adults with dementia, or
20   other patients with chronic mental illness; this would also free beds in the civil units and allow the
     transfer of conversion patients from forensic to civil beds. The Counties do not advocate this
21   approach because DSHS must be expected to fulfill all its legal obligations.  Establishing
     mandatory commitment populations is a complex task uniquely within the prerogative of the
22   legislature and state courts. It is astonishing that DSHS has not already established interim
     facilities to house and treat all patients charged to its care under state laws. The agency's
23   willingness to cut off one population of patients who need mental health treatment allows it to
     avoid engaging in creative and necessary crisis management solutions (*e.g.,* using vacant hospitals,
     mothballed secure facilities, etc.) that would provide some  level of service to all mandatory
     patients, rather than leave many of them to live on the streets.

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

COUNTIES' AMICUS BRIEF [No. 14-cv-01178-MJP] - 10

they no longer wish, for good reason, to comply with.  Protecting respects the executive and its role in implementing policy positions; authorizing noncompliance tramples on the role of the state legislature to write laws, a job of which I am neither capable nor for which I was appointed.

*Id.* at *3.  DRW's proposed relief suffers from the same fatal federalism concerns.  If its proposed relief were adopted by this Court, DSHS would be empowered to ignore state law and the orders of state judges that otherwise require the admission of civil conversion patients.

One major difficulty with imposing DRW's highly intrusive proposed relief is the continuing ability of this Court to take other actions toward enforcement of its orders. For example, the Court may opt to collect the substantial accrued fines from the State, and/or further increase those fines.  This Court also has the power to personally fine DSHS and other state officials.  After eight years of contempt, the Court might also place the State hospitals in receivership, where accrued and continuing contempt fines could be used to provide more immediate and effective relief in the hands of a skilled and innovative court-appointed receiver.  *See Stone*, 968 F.2d at 861 ("when the least intrusive measures fail to rectify the problems, more intrusive measures are justifiable").

Moreover, this Court may be able to substantially resolve DSHS's contempt by forcing the agency to fix its broken competency evaluation process.  Based on preliminary statistics provided by DSHS, the Counties have discovered that agency evaluators have gone from finding 33% of defendants referred for competency evaluations "not competent" in 2013 to a 60% "not competent" rate in 2022.  Decl. of Vitalich ¶4, Exs. 13-14..  This represents a whopping **82% increase in "not competent" findings by DSHS over the past 9 years** that is not explained by any changes in competency standards, or, as DSHS points out in Dr. Kinlen's declaration (Dkt. 947), by any other relevant demographic change.  If DSHS is *unnecessarily* diverting criminal defendants into the competency system, the harm to *Trueblood* class members is obvious.  Given the difference

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

between the 2013 and 2022 "not competent" rates, the current rate of 60% places an additional 1,512 persons in the competency system.[6]  If any significant number of these 1,512 defendants were *wrongly* deemed incompetent by DSHS evaluators, they are occupying beds that should be open to truly incompetent class members.  Moreover, this high rate of "not competent" findings encourages more defendants to seek evaluations because chances are very good they may avoid criminal liability for their acts by being one of the 60% who are found incompetent, which provides an opportunity for all charges to be dismissed following DSHS's failure to engage in timely restoration services.[7]

The continuation of a broken competency evaluation and restoration system that DSHS is unable or unwilling to fix harms all Washington residents and places unacceptable burdens on local governments.  The Counties urge further action by the Court before taking the drastic step of overriding Washington's civil conversion law.

**B.    The Court Should Decline to Exercise Its Equitable Powers to Preclude Most Civil Conversion Commitments Because It Is Inequitable**

The proposed relief sought by DRW is  an unsound and inequitable policy approach.  Civil conversion patients are not committed to the state hospital merely to occupy bed space, but because they have real and legitimate mental health treatment needs.  Some of their mental health conditions were worsened by DSHS's failure to provide timely competency restoration treatment. It is unseemly to argue that civil conversion patients, who all fell within the *Trueblood* class prior to dismissal of their criminal cases, should now be denied evaluation and mental health treatment in the state hospital.  This Court should refrain from using its equitable powers to temporarily

---

[6] To show the math, the Counties understand that DSHS was charged with completing roughly 5,600 evaluations in 2022.  A 60% "not competent" rate means that 3,360 defendants were found not competent, whereas a 33% rate would divert only 1,848 defendants to the competency system.
[7] Such defendants also may receive daily contempt payments by state court order.

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

1  improve competency restoration timelines by sacrificing the individual rights of conversion

2  patients.

3          DRW's proposed relief also substantially endangers public safety.  Over the past five years,

4  the King County Superior Court has dismissed 616 felony cases under RCW 10.77.086(5) with

5  conversion commitments to the state hospital.  Decl. of Vitalich, Ex. 12 (Baker Analysis).  If

6  DRW's proposed relief is adopted and conversion commitments are allowed only for individuals

7  charged with a violent offense and where a special finding is made, 72% of these cases would no

8  longer be eligible for a civil commitment.  *Id.*  Nearly all of these patients would suffer from the

9  denial of access to mental health treatment under DRW's proposal, while further imperiling public

10  safety due to high recidivism rates.

11          For the foregoing reasons, amicus Counties respectfully ask this Court to deny DRW's

12  proposed relief.  DSHS should not be granted the shelter of a federal court order while it seeks to

13  shirk its obligations under state law and court orders.

14          Dated this 13th day of January, 2023.

15                              LEESA MANION
                                King County Prosecuting Attorney
16
                                By: *s/ David Hackett*
17                              DAVID J. HACKETT, WSBA #21236

18                              By: *s/ Andrea Vitalich*
                                ANDREA VITALICH, WSBA #25535
19
                                Senior Deputy Prosecuting Attorneys
20                              Attorneys for King County
                                516 3rd Avenue, #W554
21                              Seattle, WA 98104
                                Tel: (206) 477-1120/Fax: (206) 296-0191
22                              david.hackett@kingcounty.gov
                                andrea.vitalich@kingcounty.gov
23

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

1

2

MARY ROBNETT
Pierce County Prosecuting Attorney

3

*/s/ Michelle Luna*
Michelle Luna, WSBA #27088
Deputy Prosecuting Attorney

4

955 Tacoma Avenue South, Suite 301
Tacoma, WA 98402

5

Tel: (253) 798-6380 Fax: (253) 798-6713
michelle.lunagreen@piercecountywa.gov

6

7

8

JASON J. CUMMINGS
Snohomish County Prosecuting Attorney

9

By: */s/ Bridget E. Casey*
Bridget E. Casey, WSBA #30459
Deputy Prosecuting Attorney

10

3000 Rockefeller Avenue, M/S 504
Everett, WA 98201

11

Tel: (425) 388-6330 Fax: (425) 388-6333
Bridget.Casey@co.snohomish.wa.us

12

13

14

15

16

17

18

19

20

21

22

23

COUNTIES' AMICUS BRIEF [No. 14-cv-01178-MJP] - 14

1

## <u>CERTIFICATE OF FILING AND SERVICE</u>

2

I hereby declare that on this day I caused the foregoing document to be electronically

3 filed with the Clerk of the Court using the Court's CM/ECF System, which will serve a copy of

4 this document upon all counsel of record.

5

I declare under penalty of perjury under the laws of the United States and the State of

6 Washington that the foregoing is true and correct.

7

DATED this 13th day of January, 2023.

8

9

10 MALLORY R. TRIPLETT
Paralegal I
King County Prosecuting Attorney's Office

11

12

13

14

15

16

17

18

19

20

21

22

23

COUNTIES' AMICUS BRIEF [No. 14-cv-01178-MJP] - 15

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191