1
2
3
4
5

The Honorable Marsha J. Pechman

6          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
7                   AT SEATTLE

8
A.B., by and through her next friend Cassie          )   No. 14-cv-01178-MJP
9   Cordell Trueblood, et al.                         )
                              Plaintiffs,             )   DECLARATION OF ANDREA
10           v.                                       )   VITALICH IN SUPPORT OF
                                                      )   AMICUS BRIEF BY KING, PIERCE
11   Washington State Department of Social and        )   AND SNOHOMISH COUNTIES
     Health Services, et al.,                         )
12                            Defendants.             )
                                                      )
13   _____         )

14   I, Andrea Vitalich declare as follows:

15   1.  I am over the age of 18 years and I am competent to testify as to the matters stated

16       herein.

17   2.  A true and correct copy of the following documents are attached as exhibits to this

18       declaration:

19       Exhibit 1 – Letter from DSHS Assistant Secretary Bovenkamp, dated 12/14/2022

20       Exhibit 2 – Letter from WSH CEO Thompson re: refusal to admit Michael Holland

21       Exhibit 3 – Letter from WSH CEO Thompson re: refusal to admit Daniel Aura

22       Exhibit 4 – Information and Certification for Determination of Probable Cause,

23       Holland

         Exhibit 5 – DSHS competency evaluation, Holland

DECLARATION OF ANDREA VITALICH IN SUPPORT OF          **Leesa Manion**, Prosecuting Attorney
AMICUS BRIEF BY KING, PIERCE AND SNOHOMISH COUNTIES    CIVIL DIVISION, Litigation Section
[No. 14-cv-01178-MJP] - 1                              516 3rd Avenue, #W554
                                                       Seattle, Washington 98104
                                                       (206) 477-1120 (206) 296-0191

1    <u>Exhibit 6</u> – Superior Court order for competency restoration, Holland

2    <u>Exhibit 7</u> – Superior Court order finding DSHS in contempt and ordering sanctions,

3    Holland

4    <u>Exhibit 8</u> – Superior Court order dismissing charges without prejudice and ordering

5    evaluation for potential civil commitment, Holland

6    <u>Exhibit 9</u> – Superior Court clarifying order, Holland

7    <u>Exhibit 10</u> – Letter from King County to Assistant Secretary Bovenkamp, dated

8    12/20/2022.

9    <u>Exhibit 11</u> – DSHS's reply to King County's letter, dated 12/21/2022.

10   3.   In the course of working on the Counties' amicus brief, I asked King County Senior

11        Deputy Prosecutor David Baker, who keeps track of data and statistics of all kinds

12        regarding criminal cases prosecuted by our office, to run some numbers regarding

13        competency evaluations, competency restorations, felony conversion cases, and

14        recidivism.  Senior DPA Baker's declaration regarding his findings is attached as

15        <u>Exhibit 12</u>.

16   4.   I also acquired statistics from DSHS regarding the percentage rate where DSHS

17        evaluators find defendants not competent.  These statistics were provided by Dr. Tom

18        Kinlen of DSHS, who is familiar to this court, via email on January 11, 2023.

19        Attached as <u>Exhibit 13</u> is a power point slide showing that, in calendar year 2013,

20        DSHS evaluators statewide found **33%** of defendants charged with felonies and

21        referred for competency evaluations to be not competent under the legal standard.

22        DSHS provided more recent numbers for King County felonies alone.  Attached

23        <u>Exhibit 14</u> shows that DSHS evaluators found **60%** of felony defendants within King

DECLARATION OF ANDREA VITALICH IN SUPPORT OF
AMICUS BRIEF BY KING, PIERCE AND SNOHOMISH COUNTIES
[No. 14-cv-01178-MJP] - 2

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

County that were referred for competency evaluations to be not competent.  The dramatic increase in the rate of incompetency findings from 33% to 60% is not explained by any change in the law, but does result in *substantially* more people requiring competency services.

The foregoing is true and correct to the best of my knowledge under penalty of perjury and the laws of the state of Washington.

Signed this 12th day of January, 2023 at Seattle, Washington.

_____
ANDREA VITALICH

DECLARATION OF ANDREA VITALICH IN SUPPORT OF
AMICUS BRIEF BY KING, PIERCE AND SNOHOMISH COUNTIES
[No. 14-cv-01178-MJP] - 3

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

# Exhibit 1

**STATE OF WASHINGTON**
DEPARTMENT OF SOCIAL AND HEALTH SERVICES
**Behavioral Health Division**
P.O. Box 45090, Olympia, Washington 98504-5090

December 14, 2022

TO:            Washington State Partners

FROM:        Kevin Bovenkamp,
               Assistant Secretary

RE:            Hospital Admission Triaging

Dear Washington State Partners,

We are informing our system partners that the Department of Social and Health Services' ability to admit new patients to Eastern State Hospital and Western State Hospital has reached a critical point. The short-term impacts of this critical situation, and the efforts to address it, are discussed below.

**A New Challenge: Civil Felony Conversion Patients Are Limiting New Admissions to State Hospitals**

The population of civil conversion patients at the state hospitals has reached such a critical mass that all admissions to the hospitals are greatly impacted. This is due to several factors: 1) a sharp increase in competency restoration referrals (nearly 40% in just the last fiscal year), 2) COVID-19 impacts to admissions (pausing and starting admissions due to outbreaks which created large backlogs, and a recent increase in cases), and 3) the increase in wait times for inpatient beds which leads to more dismissals and an increase in civil conversion patients. The civil conversion patients court-ordered into the state hospitals then occupy beds that were previously used to provide inpatient competency services, like competency restoration. Because civil conversion patients stay at the hospitals much longer than most competency patients (approximately one year and at times more), each civil conversion patient admitted to the state hospital has resulted in fewer beds available for competency patients, and those beds being unavailable for longer periods of time. When a treatment bed is occupied by a civil conversion patient during a year, it serves only that patient, instead of it being able to serve at least 4-5 competency patients in that bed, during that same time period. Over the last year, this has increased wait times for competency restoration and is severely impacting admissions of all types.

In addition to the ongoing difficulties in admitting patients for competency services, DSHS's ability to admit all forensic patients has become extremely limited, to include not guilty by reason of insanity (NGRI) patients, patients transferred from other DSHS facilities, restoration admissions designated as priority admissions under the triage consultation and expedited admission process, outpatient competency program removals, and other types of admissions.

While timely admissions for competency services have long been delayed, the current situation represents a distinct new phase of limitations on admissions to WSH and ESH. Longer delays in admissions for competency services also results in more dismissals of criminal charges as a result of motions brought in the criminal proceedings, which could then lead to more releases back to the community.

*Hospital Admission Triaging*
*December 14, 2022*
*Page 2*

Because the hospitals have now hit the point where not all civil conversion patients can be timely admitted, it is expected that some civil conversion patients referred to DSHS will not be able to be admitted, which could lead to these individuals then being released from jail into the community.

At this time, DSHS is adjusting admitting procedures to evaluate and admit patients who present the highest levels of risk to the community and to themselves.  DSHS will triage patients using the information it has and identify those who present the highest levels of risk based on their criminal charges, clinical acuity, and criminal history, and prioritize those patients for admission.  As much as possible, admissions will still happen in accordance with existing processes, including the existing prioritization algorithm.  <u>When DSHS identifies a felony conversion patient who cannot be admitted to the state hospital, DSHS will attempt to provide timely notice that the admission cannot be completed.</u>

**DSHS is Taking Numerous Steps to Address Admission Limitations**

DSHS is taking numerous steps to admit as many patients as possible to the state hospitals and the residential treatment facilities, and to complete current projects that will expand bed capacity.  This includes a blend of near-term efforts, and long-term projects.

Although we are making every effort to treat and discharge patients back to the community from our civil programs, most of these patients have involvement in the criminal justice system. The state hospitals are now serving populations with increasingly complex clinical and serious criminal histories, and for these reasons finding safe and effective discharges for these patients has become increasingly difficult.

DSHS has a number of projects that have been in development for years. In the coming months and years, DSHS will open new inpatient psychiatric beds, including: two new forensic wards opening in early 2023 at WSH (58 beds total); a new NGRI unit opening at the Maple Lane campus in fall 2023 (30 beds total); and a new forensic hospital opening on the WSH campus in 2027 (350 beds total).  In addition, DSHS is opening a new civil residential treatment facility at the Maple Lane campus in February 2023 (16 beds total) and is projecting to open new civil residential treatment facilities in Clark County in late 2024 (48 beds total).  These new civil beds will allow DSHS to open up additional forensic beds at WSH by moving and treating civil conversion patients outside of the state hospitals.

DSHS is also in the process of identifying other treatment opportunities in community hospitals for civil conversion patients. This work could result in the identification of additional beds in existing psychiatric facilities that can be used to provide treatment to the civil conversion population. Currently, competency admissions to the residential treatment facilities are continuing, and are not directly impacted by this current situation.

Inside of the state hospitals, DSHS is remodeling existing space to create more treatment beds and identifying any opportunity to safely increase treatment beds and efficiencies. These efforts are critical in the context of the necessary closure of old treatment wards to make space for the new 350-bed forensic facility.

*Hospital Admission Triaging*
*December 14, 2023*
*Page 3*

**Opportunities to help**

The increase in behavioral health needs impacts people and systems throughout Washington state. We recognize that as the system has been inundated with demand, other facilities and systems are also facing increasing challenges.

For those counties where prosecutorial diversion or other diversion programs exist, we strongly encourage prosecutors to use their counties' prosecutorial diversion programs to offer people in need wraparound services, especially for any misdemeanor cases. Additionally, for the eleven counties with outpatient competency restoration, we encourage continued and on-going use of this program whenever possible.

We encourage all of our partners, including law enforcement and other first responders to partner with diversion programs in their communities to provide people with needed behavioral health resources before they encounter the criminal court system.

In addition, we would like to remind jail partners of the new 21-day competency check program; more information can be found here. Any patient who can have competency resolved before being admitted to an inpatient bed will help the system, and any patient who is stabilized before arriving at a state hospital helps to shorten the lengths of stay and admit more patients.

*Please contact Behavioral Health Administration Assistant Secretary, Kevin Bovenkamp, at* *kevin.bovenkamp@dshs.wa.gov, with any questions.*

KB:tk:so

cc:    Dr. Brian Waiblinger, DSHS/BHA Medical Director
       Dr. Thomas Kinlen, OFMHS Director
       Amber Leaders, GOV Senior Policy Advisor
       Nicholas Williamson, Assistant Attorney General
       Charles Southerland, Western State Hospital – Civil Center CEO
       Mark Thompson, Western State Hospital – Gage Center CEO
       Eric Carpenter, Eastern State Hospital CEO
       Aura MacArthur, Director of Project Management

# Exhibit 2



STATE OF WASHINGTON
**DEPARTMENT OF SOCIAL AND HEALTH SERVICES**
**BEHAVIORAL HEALTH ADMINISTRATION**
• Western State Hospital • 9601 Steilacoom Blvd SW • Lakewood, WA  98498-7213 •

December 14, 2022

Good Afternoon,

We are reaching out about Michael Holland who has been referred to DSHS for admission to a state hospital. At this time, Western State Hospital is unable to admit Mr. Holland within the required 14-days. The number of court orders for all patient types continues to outpace available beds, including patients referred to the state hospital for civil commitment following dismissal of criminal charges. For this reason, no admission can be offered at this time, and no beds are anticipated to be available in the near future.

We understand that this is a frustrating situation, and we are similarly frustrated and concerned about the lack of available beds at state facilities. To the extent admissions are possible at all right now, only the most serious charges and clinically acute persons can be admitted. Because admission to the state hospital is not possible at this time for this patient, DSHS is recommending that you reach out to the local designated crisis responder (DCR) in order to assess this patient for possible civil detention at a local facility.

Respectfully,

Mark Thompson
Chief Executive Officer
Gage Center of Forensic Excellence
Western State Hospital

# Exhibit 3



## STATE OF WASHINGTON
### DEPARTMENT OF SOCIAL AND HEALTH SERVICES
### BEHAVIORAL HEALTH ADMINISTRATION
• Western State Hospital • 9601 Steilacoom Blvd SW • Lakewood, WA  98498-7213 •

December 14, 2022

Good Afternoon,

We are reaching out about Daniel Aura who has been referred to DSHS for admission to a state hospital. At this time, Western State Hospital is unable to admit Mr. Aura within the required 14-days. The number of court orders for all patient types continues to outpace available beds, including patients referred to the state hospital for civil commitment following dismissal of criminal charges. For this reason, no admission can be offered at this time, and no beds are anticipated to be available in the near future.

We understand that this is a frustrating situation, and we are similarly frustrated and concerned about the lack of available beds at state facilities. To the extent admissions are possible at all right now, only the most serious charges and clinically acute persons can be admitted. Because admission to the state hospital is not possible at this time for this patient, DSHS is recommending that you reach out to the local designated crisis responder (DCR) in order to assess this patient for possible civil detention at a local facility.

Respectfully,

Mark Thompson
Chief Executive Officer
Gage Center of Forensic Excellence
Western State Hospital

Exhibit 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

FILED
2022 AUG 16 11:55 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 22-1-04244-0 SEA

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

THE STATE OF WASHINGTON,                      )
                                  Plaintiff,  )
                                              )      No. 22-1-04244-0 SEA
            v.                                )
                                              )      INFORMATION
MICHAEL CHARLES HOLLAND,                      )
                                              )
                                 Defendant.   )
                                              )
_____ )

     I, Daniel T. Satterberg, Prosecuting Attorney for King County in the name and by the authority of the State of Washington, do accuse MICHAEL CHARLES HOLLAND of the following crime[s]: **Domestic Violence Misdemeanor Violation Of A Court Order, Felony Harassment - Domestic Violence**, committed as follows:

Count 1  Domestic Violence Misdemeanor Violation Of A Court Order

     That the defendant MICHAEL CHARLES HOLLAND in King County, Washington, on or about August 12, 2022, did know of and willfully violate the terms of a court order issued on 7/22/2022 by the Seattle Municipal Court Court, no contact order for the protection of Christopher A Adames, by violating (i) the restraint provisions prohibiting contact with a protected party, prohibiting acts of violence or threats of violence against a protected party, or prohibiting stalking of a protected party; and/or (ii) a provision excluding the defendant from a residence, workplace, school, or day care;;

     Contrary to RCW 7.105.450(1), and against the peace and dignity of the State of Washington.

     And further do accuse the defendant, Michael Charles Holland, at said time of committing the above crime against a family or household member as defined in RCW 7.105.010 and RCW 10.99.020, which is a crime of domestic violence as defined in RCW 10.99.020.

     And further do accuse the defendant, Michael Charles Holland, at said time of committing the above crime against a family or household member as defined in RCW 10.99.020, which is a crime of domestic violence as defined in RCW 10.99.020.

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

INFORMATION - 1

Count 2  Felony Harassment - Domestic Violence

That the defendant MICHAEL CHARLES HOLLAND in King County, Washington, on or about August 12, 2022, knowingly and without lawful authority, did threaten to cause bodily injury immediately or in the future to Christopher A Adames, by threatening to kill Christopher A Adames, and the words or conduct did place said person in reasonable fear that the threat would be carried out;

Contrary to RCW 9A.46.020(1), (2)(b), and against the peace and dignity of the State of Washington.

And further do accuse the defendant, Michael Charles Holland, at said time of committing the above crime against a family or household member as defined in RCW 10.99.020, which is a crime of domestic violence as defined in RCW 10.99.020.

DANIEL T. SATTERBERG
Prosecuting Attorney

By: _____

    David D. Martin, WSBA #27129
    Senior Deputy Prosecuting Attorney

INFORMATION - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

CAUSE NO.   22-1-04244-0 SEA

PROSECUTING ATTORNEY CASE SUMMARY AND REQUEST FOR BAIL AND/OR
CONDITIONS OF RELEASE

The State incorporates by reference the Certification for Determination of Probable Cause

prepared by Detective Kassi A. Sobania of the Seattle Police Department for case number 2022-

211979.

The State requests bail set in the amount of $2,500.00 as that was the amount set at fist

appearance.  Here the defendant is a former roommate who attempted to stab the victim in the

past and showed up to the victim's apartment with an active NCO in place for a harassment

charge from Seattle Municipal Court from July 20, 2022.  The defendant's threats to kill together

with his frequent violation of order, per the Certification for Determination of Probable Cause

"Since 7/20/2022, Michael has been arrested four times for violating this order."  The defendant

also claims not to know about the order and may be impaired or unwilling to follow court orders.

The defendant should be directed to CCAP or EHD if he is able to post bail.

Signed and dated by me this 16th day of August, 2022.

Prosecuting Attorney Case
Summary and Request for Bail
and/or Conditions of Release - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

1

2

3

David D. Martin, WSBA #27129
Senior Deputy Prosecuting Attorney

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Prosecuting Attorney Case
Summary and Request for Bail
and/or Conditions of Release - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

**_Certification for Determination of Probable Cause_**

That **Kassi Sobania** is a Detective with the Seattle Police Department and has reviewed the investigation conducted in Seattle Police Department Case number **2022-211979**. There is probable cause to believe that **HOLLAND, Michael Charles** committed the crime of **Felony Harassment – DV & MVNCO** within the City of Seattle, County of King, State of Washington. This belief is predicated on the following facts and circumstances.

**RELATIONS:** Arrested/HOLLAND, Michael Charles (03-10-1985) and Victim/ADAMES, Christopher A (05-21-1983) had been roommates at 1925 Eastlake AV E, #205, Seattle, WA 98102 for about nine months. At the time of this incident, there was a protection order in place barring Michael from contacting Christopher (**PNO 222064 issued by Seattle Municipal Court on 7/22/2022 and expires 7/22/2027**). Since 7/20/2022, Michael has been arrested four times for violating this order.

**INCIDENT:** On Friday, August 12, 2022 around 4:40 AM, Seattle Police officers were dispatched to 1925 Eastlake AV E, #205, Seattle, in regard to a violation of a court order. The exact call notes read, "SEE RP WAITING IN FRONT - FORMER ROOMMATE IS INSIDE APT - RP HAS NCO AGAINST HIM - SUSP KNOWN TO CARRY KNIVES" with an update of "SUSP CAME OUTSIDE, SAW RP, SAYING HE NEEDED A RIDE, THEN TOLD RP THAT RP WAS 'GETTING ON HIS LAST NERVE' AND THRET TO KILL RP".

Upon arrival, officers made contact with Christopher who explained that Michael approached him and asked for a ride to which Christopher declined (**MVNCO; RCW 26.50.110**). After Christopher denied his ride, Michael told him, "you're getting on my last nerve" then "verbally threatened to kill" Christopher. Due to the previous incidents, Christopher believed that Michael would carry out this threat (**Felony Harassment – DV; RCW 9A.46.020**). Christopher described Michael's tone as "calm" when he said this threat.

While officers were speaking with Christopher, Michael came outside the building and stood at a bus stop. Christopher pointed him out and officers took him into custody without incident. Michael claimed to not know about the protection order and claimed that the apartment was solely his.

Under penalty of perjury under the laws of the State of Washington, I certify that the foregoing is true and correct to the best of my knowledge and belief. Signed and dated by me this **15th** day of **August, 2022**, at Seattle, Washington.

_(signature)_ 8300

| AGENCY:<br><br>Seattle Police Department | CASE NUMBER:<br><br>2022-211979 | FILE NUMBER: | PCN NUMBER: | **SUPERFORM** |
|---|---|---|---|---|

## ARREST INFORMATION

| DATE & TIME OF VIOLATION<br>8/12/2022 6:15:00 AM | CRIMINAL TRAFFIC CITATION ATTACHED?<br>☐ YES    ☐ NO | | ACCOMPLICES |
|---|---|---|---|
| DATE OF ARREST/TIME<br>8/12/2022 5:23:00 AM | ARREST LOCATION<br>1900 EASTLAKE AV E SEATTLE, WA 98109 | | |

## SUSPECT INFORMATION

| NAME (LAST, FIRST, MIDDLE/JR, SR, 1st, 2nd)<br><br>HOLLAND, MICHAEL CHARLES | DOB<br><br>3/10/1985 | ALIAS, NICKNAMES<br><br>MICHAEL HOLLAND, MICHAEL CHARLES HOLLAND, MICHAEL C HOLLAND |
|---|---|---|

| ARMED/DANGEROUS<br>☐ YES  ☐ NO | IDENTITY IN DOUBT?<br>☐ YES  ☐ NO | CITIZENSHIP | |
|---|---|---|---|

### PHYSICAL DETAILS

| SEX<br>M | HEIGHT<br>5'10 | WEIGHT<br>170 | SKIN TONE | RACE<br>W | EYE<br>BRO | HAIR<br>BRO | SCARS, MARKS, TATTOOS, DEFORMITIES |
|---|---|---|---|---|---|---|---|

### IDENTIFICATION DETAILS

| UCN<br>11974463 | PRIOR BA # | AFIS # | FBI # | STATE ID #<br>WA30225326 | DRIVERS LICENSE #<br>WDL4R295673B | STATE | SSN |
|---|---|---|---|---|---|---|---|

### RESIDENCE

| LAST KNOWN ADDRESS<br>1925 EASTLAKE AVE E UNIT 205 SEATTLE, WA 98102 | EMPLOYMENT / SCHOOL<br>EMPLOYER, SCHOOL (ADDRESS, SHOP/UNION NUMBER) | |
|---|---|---|
| RESIDENCE PHONE<br>(206) 920-7670 | BUSINESS PHONE<br>(206) 920-7670 | OCCUPATION |

### EMERGENCY CONTACT

| PERSON TO BE CONTACTED IN CASE OF EMERGENCY | RELATIONSHIP | ADDRESS | PHONE |
|---|---|---|---|

## CHARGE INFORMATION

| OFFENSE<br>☐ DV  ☐ FUGITIVE    Domestic Violence Felony Violation Of A Court Order | RCW / ORD# | COURT / CAUSE # | CITATION # |
|---|---|---|---|
| OFFENSE<br>☐ DV  ☐ FUGITIVE | RCW / ORD# | COURT / CAUSE # | CITATION # |

## WARRANT / OTHER

| WARRANT DATE | WARRANT NUMBER | OFFENSE | AMOUNT OF BAIL<br>$2,500.00 | WARRANT TYPE |
|---|---|---|---|---|
| ORIGINATING POLICY AGENCY | ISSUING AGENCY | WARRANT RELEASED TO: (SERIAL # / UNIT / DATE / TIME) | | |

## PROPERTY INFORMATION

LIST VALUABLE ITEMS OR PROPERTY LEFT FOR ARRESTEE AT JAIL

LIST VALUABLE ITEMS OR PROPERTY ENTERED INTO EVIDENCE (SIMPLE DESCRIPTION, IDENTIFYING MARKS, SERIAL #)

LIST ITEMS ENTERED INTO SAFEKEEPING

| TOTAL CASH OF ARRESTEE<br>$0.00 | WAS CASH TAKEN INTO EVIDENCE?<br>☐ YES  ☐ NO   AMOUNT: $0.00 | SIGNATURE OF JAIL STAFF RECEIVING ITEMS / SERIAL # |
|---|---|---|

## OFFICER INFORMATION

| ARRESTING OFFICER / SERIAL #<br>Sobania, Kassi A 8300 | TRANSPORTING OFFICER / SERIAL # | SUPERVISOR SIGNATURE / SERIAL # |
|---|---|---|
| SUPERFORM COMPLETED BY (SIGNATURE/SERIAL #) | CONTACT PERSON FOR ADDITIONAL INFORMATION (NAME / SERIAL # / PHONE) | |

## COURT FILE

| SUPERIOR COURT<br>FILING INFO     ☐ IN CUSTODY   ☐ AT LARGE   ☐ OUT ON BOND | COURT CAUSE (STAMP OR WRITE) |
|---|---|
| COURT/DIST.<br>CT.NO. | DIST. CT.<br>BOND$ | SUP. CT. DATE |

## EXTRADITE

| PERSON APPROVING EXTRADITION | SEAKING-LOCAL ONLY<br>WACIC-STATE WIDE | NCIC-WILL EXTRADITE<br>FROM ID & OR ONLY ☐ | NCIC-WILL EXTRADITE<br>FROM OR, ID, MT, WY, CA,<br>NV, UT, CO, AZ, NM, HI, AK ☐ | NCIC-WILL EXTRADITE<br>FROM ALL 50 STATES ☐ |
|---|---|---|---|---|

| E<br>N<br>T<br>R<br>Y | UCN  11974463 | DOE | C<br>L<br>E<br>A<br>R<br>A<br>N<br>C<br>E | DOC |
|---|---|---|---|---|
| | WAC | TOE | | TOC |
| | NCIC | OP | | OP |

# Exhibit 5

FILED

2022 SEP 14
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 22-1-04244-0 SEA

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

STATE OF WASHINGTON

                              Plaintiff/Petitioner,

vs.

Michael Holland                                    NO. 22-1-04244-0          [X] SEA
                                                                            [ ] KNT

                              Defendant/Respondent.

_____ Documents considered by the court are attached.
        _____ Court Services
        _____ Appendix B
        _____ PR Interview Report

  X    WSH/DSHS Report dated    9/9/22    is attached.

_____ Notification of a WSH Referral dated _____ is attached.

_____ Documents provided by:
        ___ State of Washington
        ___ Defendant
        ___ Alleged victim

_____ Notice of violation dated: _____



**STATE OF WASHINGTON**
DEPARTMENT OF SOCIAL AND HEALTH SERVICES
Behavioral Health Administration
Office of Forensic Mental Health Services

09/09/2022

## COMMUNITY FORENSIC EVALUATION SERVICE

### COMPETENCY EVALUATION REPORT

RE:   **STATE OF WASHINGTON**            **CAUSE NO:  22-1-04244-0 SEA**
   **v.**
   **MICHAEL CHARLES HOLLAND**        **DOB: 03/10/1985**

**This forensic mental health evaluation and report were completed by the Office of Forensic Mental Health Services (OFMHS) of the Department of Social and Health Services pursuant to court order under the authority of RCW 10.77.060. This document has been released only to the court and other persons legally authorized to receive it, and it is intended for their use only. Any other use of this report is not authorized by the undersigned.**

### REFERRAL INFORMATION
On 08/30/2022, the King County Superior Court ordered Mr. Holland to undergo an outpatient evaluation of his competency to proceed to trial by a qualified expert designated by the Secretary of the Department of Social and Health Services (DSHS). The court order was signed 08/30/2022. The order and discovery were received by OFMHS on 08/30/2022.

Mr. Holland has the pending legal charges of Domestic Violence Misdemeanor Violation of a Court Order and Felony Harassment – Domestic Violence, which allegedly occurred on or about 07/22/2022 and 08/12/2022.

### SUMMARY OF OPINIONS
The following are my opinions based on my evaluation of the defendant:

**Effort and Reliability:** Mr. Holland appeared to put forth his best effort given his presentation, and there were no signs of feigning psychiatric symptoms.

**Diagnosis or Current Mental Status:** Mr. Holland merits a diagnosis of:

   - Unspecified Schizophrenia Spectrum and Other Psychotic Disorder

**Competency:** Mr. Holland **does not possess** the present capacity to understand the nature of the proceedings against him and **does not possess** the present capacity to assist in his own defense.

**Restoration Opinion:** Inpatient competency restoration treatment is recommended.

**DCR Evaluation:** An evaluation by a DCR is recommended.

## NATURE OF EVALUATION

**Notifications**
This interview was conducted via a secure videoconferencing system, with the defendant attending from the King County Correctional Facility (KCCF), and the evaluator conducting the interview from a remote location. This videoconferencing system entails a live transmission, utilizes encrypted channels to ensure confidentiality, and does not record the communication. The use of videoconferencing has been previously tested and utilized at the KCCF for competency interviews.

Mr. Holland was interviewed by the undersigned via telehealth on 09/01/2022 with Mr. Holland at KCCF. Mr. Holland was informed of the purpose and authority for the evaluation, the distribution of the report, and the non-confidential nature of the evaluation. He was informed he had the right to have his attorney present and to decline to answer questions. Defense counsel, Robert Mangone, was present in-person with Mr. Holland. Mr. Holland was told that the undersigned was solely in an evaluative role for the court. He was informed that the evaluator is a mandated reporter. Mr. Holland appeared to have an adequate understanding of the information given to him and initially agreed to continue the interview. However, as the interview progressed, his agitation increased, and he discontinued the interview prematurely.

**Database:**
1. Discovery materials
2. Records from the Office of Forensic Mental Health Services (OFMHS)
3. State of Washington Division of Mental Health online databases
4. Requested records from Swedish Hospital on 09/01/2022
5. Requested records from Fairfax Hospital on 09/02/2022
6. King County Correctional Facility (KCCF) Records
7. KCCF Phone Calls
8. Personal interview of Mr. Holland on 09/01/2022 for 46 minutes via telehealth with Mr. Holland at KCCF.

## RELEVANT CLINICAL HISTORY

## Self-Report

*Except where otherwise noted, the following psychosocial history was supplied solely by the defendant's self-report and is thus limited by the credibility and recall of the defendant. Only that subset of information relevant to the purpose of this evaluation is reported here and it therefore does not represent a complete psychosocial history of the defendant.*

<u>Familial:</u> Mr. Holland reported living in Alabama, Tennessee, and various other locations. He described traveling because he was in the Marines. Mr. Holland reported that he is married but has not been able to complete the required paperwork because of some ongoing property issues. Mr. Holland indicated that he has a son who is living with his fiancée. Mr. Holland expressed concern for the well-being of his son, but his concerns regarding his son did not appear reality based.

<u>Education:</u> Mr. Holland reported graduating high school and obtained a bachelor's degree in science of business.

<u>Employment:</u> Mr. Holland was in the Marines from approximately 2003 to 2007. He initially endorsed receiving an honorable discharge but later indicated that he is "technically" still active and considered AWOL. Mr. Holland provided a list of various jobs he held. Since approximately 2015, Mr. Holland indicated that he has been a real estate broker/manager. He reported owning "many, many businesses."

<u>Medical:</u> Mr. Holland described having intestinal bacteria which came about after he had shigella. He noted that he cannot eat many foods, particularly fermented foods.

<u>Substance Use:</u> Mr. Holland denied any drug use and reported that he is "not really an alcohol drinker."

<u>Psychiatric:</u> Mr. Holland described being hospitalized for psychiatric purposes once while he was in the Marines. He indicated that he attempted suicide and had to hospitalized for one to two weeks. Mr. Holland reported previously being diagnosed with ADHD.

**Collateral Sources of Information**

<u>Office of Forensic Mental Health Services (OFMHS) Records:</u> Mr. Holland has not had any prior evaluations through OFMHS.

<u>Washington State Healthcare Authority Behavioral Healthcare Reporting System Records:</u> This database showed the following contacts:

*Outpatient Services*
- RSN/BHO: King County
  - Agency: Not listed
  - Location: Mental Health Outpatient Facility,
  - Date range of contacts: 2022

- o   Diagnoses: Mental disorder, not otherwise specified

- RSN/BHO: Molina Healthcare of Washington Inc
  - o   Agency: Not listed
  - o   Location: Telehealth
  - o   Date range of contacts: 2020
  - o   Diagnoses: Attention-deficit hyperactivity disorder, combined type; Generalized anxiety disorder; Major depressive disorder, recurrent, moderate

*Investigations*
- County: King
  - o   Date: 06/28/2022; Legal Reason: gravely disabled

*Hearings*
- County: Snohomish
  - o   Date: 07/08/2022; Hearing Outcome: Dismissed

Swedish and Fairfax Hospital Records: Records from these locations were requested, but the records were not received in time for submission of the report.

King County Correctional Facility (KCCF) Records: Mr. Holland was booked into KCCF on 08/12/2022. The following information was extracted from KCCF records:

- Progress note (08/12/2022, Saskia Schaeffer, RN): On intake, Mr. Holland indicated that "he is a captain in this facility and that he is a 5 star general." He was oriented to person and place but not time.
- Progress note (08/13/2022, Nancy Whitney, LMHC): Mr. Holland reported that someone had stolen his apartment. He indicated that he did not wish to be in psychiatric housing. He was noted to present with persecutory and grandiose delusions. He did not appear to be responding to internal stimuli, and he did not present with thought disorganization. It was planned to move him to non-psychiatric housing because he only presented with fixed delusions, and it was believed that psychiatric housing would not be helpful to him.
- Progress note (08/19/2022, Rachel Shapiro, LICSW): An officer was noted to report that Mr. Holland's "moods can be very up and down, and that he seems delusional." When speaking to Mr. Holland, it was documented, "Pt reports that his real name is 'Lucifer Morningstar' and that he is here under the wrong name on 'false charges.' He reports that he is not eating because 'the food here is poison for me,' noting he cannot have anything 'fermented.'" He reported that he had not eaten in days, but his chart was noted to show that he had dinner the previous day.
- Progress note (08/26/2022, Kayla Shull, ARNP): It was documented that Mr. Holland submitted a kite requesting medications for ADHD and narcolepsy, which he was reportedly prescribed through Kaiser Permanente. It was learned that his prescribed

medications through Kaiser Permanente were bupropion (antidepressant) and Vyvanse, but neither of such medications were noted to be current.

- Progress note (08/30/2022, Ryan Scott, LMHC): It was cited that Mr. Holland was transferred from general population to psychiatric housing after he was "yelling and screaming at other inmates for no reason after breakfast. Appears agitated for being here and requesting to be moved to Yesler way. Reports he bailed x4 already and he's still here. Alert and oriented x3. Reports he should be getting methamphetamine medication." During the interaction with the provider, it was documented how Mr. Holland reported that he was not charged with a crime and "he feels unspecified people 'are just trying to lock me away.'"

- Progress note (08/31/2022, John Rose, MD): It was cited that Mr. Holland was hospitalized at Fairfax hospital in June of this year. It was also found that he was previously prescribed Haldol (antipsychotic) and lithium (mood stabilizer). On the day of the interaction, it was documented that "this morning he was racked out and required the threat of use of force to get back into his cell." Mr. Holland presented as dismissive and irritable. His affect was noted to be labile. Mr. Holland reportedly "insisted he was being held illegally." Mr. Holland also reportedly stated that he is a "board certified physician." The provider noted, "I looked up on the NPI registry and did not find a Michael C Holland physician." It was planned to start Mr. Holland on Haldol and lithium.

KCCF Phone Calls: KCCF phone calls were received under Mr. Holland's name that ranged from 08/12/2022 to 08/31/2022. There were several phone calls that were not placed by Mr. Holland. There were three phone calls placed by Mr. Holland dated 08/26/2022, 08/29/2022, and 08/31/2022. All calls were placed to a bail bond agency. Mr. Holland provided the phone numbers of two different individuals (i.e., his mother, his fiancée) to the bail bond agency so the individuals could be called to take the liability for his bail bond. His mother refused to sign for the bail bond, and Mr. Holland's fiancée did not answer the phone calls from the bail bond agency. When speaking to the bail bond agency, Mr. Holland also reported having a name that was different from the one he was booked under. There was no other notable content to the phone calls.

## MENTAL STATUS EXAMINATION

Appearance, Activity, and Attitude: Mr. Holland was dressed in jail attire and wore a mask to comply with COVID protocols. His hair appeared unkempt. No abnormal motor movements were observed. Mr. Holland described sleeping seven hours and reported that he has barely eaten due to his dietary restraints/medical condition. Mr. Holland was initially cooperative. As the interview progressed, he became more defensive and hostile, especially when asking him questions related to the court system and his current legal situation. This led him to discontinue the interview prematurely. Mr. Holland's attitude also had a grandiose quality, and he noted how the undersigned was insulting his intelligence. Mr. Holland appeared to put forth his best effort given his presentation, and there were no signs of feigning psychiatric symptoms.

Mood and Affect: Mr. Holland described his mood as "annoyed." His affect (i.e., outward expression of emotion) was blunted (i.e., decreased emotional expression), but he did show increased agitation.

Speech and Thought Processes: Mr. Holland's speech was generally within normal limits with respect to rate, volume, and quantity. His speech increased in rate and quantity when discussing delusional ideation. His thinking was generally organized in that it could be followed. However, Mr. Holland tended to perseverate on information, including his realtor license, businesses he owns, and being a "juris." His thinking was rigid in that he could not process corrective information provided to him. For example, he became irritated when questioned about his current legal situation (e.g., current charges) and noted that the undersigned should only be asking him questions regarding his mental health. It was attempted to explain the purpose of a competency evaluation to him in greater detail. Nonetheless, he was unable to process this explanation and only continued to assert that the undersigned should only be asking him about his mental health, which ultimately led him to discontinue the interview.

Thought Content and Perception: Mr. Holland presented with persecutory and grandiose ideation. It was difficult to fully assess this ideation given such ideation appeared to be linked to his current charges, and there were concerns regarding eliciting incriminating information. Mr. Holland also stopped himself when he began discussing ideas which seemed to have delusional themes and were connected to his case. Mr. Holland noted how his charges are "false allegations." He also indicated that "they're people who are trying to ruin my life," and he reported having some form of legal documents to support his claims. He subsequently referenced an employee he fired and how he owns a company. He then noted "someone doing stolen valor." It is possible that Mr. Holland possesses some form of real estate license. However, the extent to which Mr. Holland discussed his businesses and property ownership as well as how "this has been fraud" gave the impression that his ideation crossed into delusional territory. Mr. Holland expressed grandiose ideation in that he noted how he is in "Mersa," which he said is a society for geniuses. It is believed he was referring to Mensa. Because he reportedly had a real estate license for five years, Mr. Holland also indicated it "makes me a juris," which "makes me a lawyer or a judge." Mr. Holland did not endorse auditory hallucinations, and he did not appear to be responding to internal stimuli. Mr. Holland did not report any current thoughts of harming himself or others.

Cognition: Mr. Holland was oriented to place and time. When assessing his orientation to person, the question had to be rephrased to ask his name on the charging documents. When he was initially asked his full name, he responded, "That's a loaded question because I'm in witness protection." Mr. Holland had two errors on a serial subtraction task, but he was able to track the conversation. Therefore, his attention/concentration appeared adequate. He recalled three words immediately after presentation and after a briefly delay, suggesting sufficient immediate and delayed memory. He was also able to identify the current and three

previous presidents. Overall, his memory appeared to be within normal limits. Mr. Holland showed some capacity for abstract reasoning based on his interpretation of a proverb.

Insight and Judgment: Mr. Holland acknowledged having ADHD. However, he did not appear to have any insight into his increasingly improbable grandiose and persecutory statements. Mr. Holland showed sufficient judgment on a hypothetical scenario.

## DIAGNOSTIC IMPRESSIONS
Mr. Holland has never been evaluated through OFMHS, and his mental health treatment in Washington has been relatively sparse. He seems to have primarily come into contact with psychiatric services over the course of his involvement with the criminal justice system. During his detainment, Mr. Holland has made delusional statements as well as presented with heightened agitation. It was planned to start Mr. Holland on an antipsychotic and a mood stabilizer to address his symptoms. During the current evaluation, Mr. Holland presented with grandiose and persecutory ideation. He also displayed heightened agitation. Given his presentation, a diagnosis with psychotic and mood symptoms would appear appropriate (e.g., bipolar I disorder with psychotic features; schizoaffective disorder). However, the course of his symptom presentation is unclear, which would be required for a specific diagnosis. At this time, then, an unspecified diagnosis will be applied.

Based on the available data, the following diagnostic impressions are offered in accordance with the criteria set forth in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders-Fifth Edition-Text Revision (DSM-5-TR)*:

- Unspecified Schizophrenia Spectrum and Other Psychotic Disorder

## COMPETENCY TO STAND TRIAL
This defendant's competency to stand trial was evaluated against Washington State's version of the *Dusky* standard; namely, whether as a result of a mental disease or defect the defendant "[l]acks the capacity to understand the nature of the legal proceedings against him or her or to assist in his or her own defense". (RCW 10.77.010 (14)).

My competency opinion is based upon two major considerations: (1) the nature and severity of the defendant's current mental problems and (2) the present impact of any mental disorders on those of defendant's functional capacities that are important for competent performance as a defendant in criminal proceedings.

Capacity to Understand the Nature of the Legal Proceedings: Mr. Holland described the purpose of a trial as "hear all arguments before anything is made and to see if anything has been broken in judicial process or in the penal law of the land." When asked if he believes that he can receive a fair trial, Mr. Holland responded, "I believe so." He went on to note, "I believe in the court system. I devoted my life to it. I'm a real estate broker…I'm a juris…I use it in business daily. I do contracts daily. I understand laws. I went through my entire documents and wrote notes in because a lot of double jeopardy and false allegations."

Mr. Holland described the role of the judge as "to hear out the case and to decide if the actual information stacks up, and if it doesn't, it's their job to get to the bottom of it." He also noted that the judge is "there for due process." Mr. Holland described the role of the defense attorney as "to defend their client." Mr. Holland reported that the role of the prosecutor is to "present the facts and represent the state." Mr. Holland described the role of a jury as "grand jury is a panel that literally hears it out. Chosen from the community. Literally there to listen to find out what it should be based on the evidence provided to them." He then started to become irritated and noted that the undersigned was "getting into deep semantics." Mr. Holland indicated that the undersigned had to provide him specific scenarios. When asked if he should talk to the prosecutor without his attorney present, he indicated that "it depends on if I'm the plaintiff or not." When asked if he should talk to the prosecutor without his attorney present as a defendant, he became irritated and noted, "You're insulting my intelligence." Mr. Holland subsequently went on a diatribe describing how he has been a real estate broker for 5 years, which "makes me a lawyer or a judge." He also discussed how he owns various businesses and indicated that he is in "Mersa," which he said is a society for geniuses.

Mr. Holland was asked to recall his current charges. He indicated that his charges are "trumped up charges" and "laundry list that are all made up." He then noted how the undersigned was "going back into case" and became annoyed by the undersigned asking him questions regarding his charges. He indicated that the undersigned should only be asking him questions about his mental health. It was attempted to fully explain the purpose of a competency evaluation to him multiple times (e.g., to assess how his mental health may be impacting his understanding of his case), but he was not receptive to these explanations. He persisted that the undersigned should only be asking him questions about his mental health and repeatedly noted, "I don't have any mental health issues" as well as "this is insulting my intelligence."

<u>Capacity to Assist in Own Defense</u>: Mr. Holland reportedly expects his attorney to "argue the case and to present the facts to the judge in a precise orderly manner without a shadow of doubt. I am innocent and this has been fraud." Mr. Holland described how his attorney likely expects him to be honest and to provide facts. If he had a disagreement with his attorney, Mr. Holland would reportedly settle it through "communication."

<u>Competency Opinion</u>: Mr. Holland likely has the capacity to have a factual understanding of court proceedings. However, given the totality of information, it is unlikely that he has the capacity for a *rational* understanding of his current legal situation. Mr. Holland expressed how his charges are "false allegations" and "they're people who are trying to ruin my life." Given this information, it seems that Mr. Holland has ongoing delusional beliefs that are impacting his capacity to appreciate the allegations against him. Therefore, it is unlikely that he has the capacity to rationally understand proceedings. Similarly, because of his delusional ideation, it is unlikely that Mr. Holland would have the capacity to engage in reality-based discussions with his attorney.

In conclusion, Mr. Holland does not possess sufficient present capacity to understand the nature of the proceedings against him and does not possess sufficient present capacity to assist in his own defense.

Restoration Opinion: Should the Court find that Mr. Holland is not competent to stand trial, inpatient psychiatric treatment is recommended toward improving his condition so his competency can be restored. Mr. Holland has never undergone competency restoration treatment. However, with psychotropic medication and the psychosocial treatment available in competency restoration programming, Mr. Holland may be restorable. He would more likely than not need psychotropic medication for restoration to be successful given his symptom presentation.

**DCR Recommendation**

**An opinion is required as to whether or not the defendant should receive an RCW 71.05 civil commitment evaluation by a DCR. This opinion is based solely upon the above evaluation under RCW 10.77.060. Other reasons may exist to require a civil commitment evaluation, which fall within the scope of other standards outside the purview of this evaluation.**

Mr. Holland did not report any current thoughts of harming himself or others. However, Mr. Holland appears to have ongoing delusions that could put him at heightened risk for harming others. Moreover, Mr. Holland has presented with heightened agitation, and such agitation could put him at risk for harming others. Therefore, should the Court elect to release Mr. Holland, it is my recommendation that the Court first order an evaluation by a DCR for civil commitment under RCW 71.05.

David Detullio, PsyD
Licensed Psychologist
Forensic Evaluator
Office of Forensic Mental Health Services – Northern Regional Office
Fax: 206-333-0549
Email: david.detullio2@dshs.wa.gov

Cc:     Presiding Judge, King County Superior Court
        Christopher Wong, Prosecutor
        Sarra Marie, Defense Attorney
        King County DCR
        King County Correctional Facility

# Exhibit 6

1

2

FILED
KING COUNTY WASHINGTON

SEP 1 4 2022

3

SUPERIOR COURT CLERK
BY Yuji Pearce
DEPUTY

4

5

6

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

7

STATE OF WASHINGTON,

8

|                                  | )   |
| Plaintiff,                       | )   No. 22-1-04244-0 SEA |
|                                  | )   |

9

|                                  | )   |
| vs.                              | )   Order for Felony Competency |
|                                  | )   Restoration Treatment |
| MICHAEL CHARLES HOLLAND,         | )   ☒ Inpatient (CRORIP) |
|                                  | )   |
|                                  | )   ☐ Outpatient (CROROP) |
|                                  | )   |
| Defendant.                       | )   Clerk's action required: |
| Date of birth: March 10, 1985    | )   paragraphs 4, 5, 9, and 12 |
|                                  | )   |

10

11

12

13

14

The court has reviewed the report of DSHS dated __September 9, 2022__, considered the representations of counsel, and considered the demeanor and presentation of the defendant.

15

16

The court considered the following additional information: _____

17

The court enters the following regarding the defendant's competency:

18

**Findings of Fact:**

19

**1. Incompetency.**

20

The court finds by a preponderance of the evidence that, as a result of mental disease or defect, the defendant lacks the capacity to:

21

☒ understand the nature of the proceedings against him/her, and/or

22

☒ assist in his/her own defense as a result of mental disease or defect.

23

The defendant is incompetent pursuant to RCW 10.77.010 and 10.77.050.

24

Order For Felony Competency Restoration Treatment
(CRORIP, CROROP) Page 1 of 7
MP 240 (06/2020)

**Daniel T. Satterberg**, Prosecuting Attorney
Criminal Division
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

**2. Developmental Disability.** (*Check only if applies.*)

☐ The court has been advised by _____ that the defendant may have a developmental disability.

**Conclusions of Law:**

**3.** Competency restoration treatment is appropriate under RCW 10.77.086.

**The Court Orders:**

**4. Competency Restoration Treatment.**

The court orders the defendant into a program for restoration of competency, as described below. Any facility or provider providing services in accordance with this order shall be referred to as the "treatment facility." The treatment facility shall promptly notify the court and all parties of the date on which the competency restoration period commences by admission to the treatment facility and expires by discharge from the treatment facility so that a timely hearing date may be scheduled.

**A.    Nature of Treatment** *(select one)*:

☒ **Inpatient Treatment (CRORIP)**

The defendant shall be placed in the custody of the Secretary of the Department of Social and Health Services (DSHS) to undergo competency restoration under RCW 10.77.086. The length of the placement includes only the time the defendant is actually at the treatment facility and shall be in addition to reasonable time for transport to or from the treatment facility.

☐ **Outpatient Treatment (CROROP)**

> Note: Outpatient competency restoration programs are being phased in over several years. Before the court orders outpatient competency restoration treatment, please check with DSHS. *There is currently is no Outpatient Competency Restoration Program in King County.*

The defendant is clinically appropriate for outpatient competency restoration treatment. The defendant shall be placed on conditional release for up to 90 days for restoration of competency under RCW 10.77.086. The defendant must reside in housing approved by DSHS, adhere to medications or receive prescribed intramuscular medication, abstain from alcohol and unprescribed drugs, and follow other rules and conditions for participation established by DSHS.

☐ **Outpatient Treatment by DSHS:** DSHS has certified, as of the date of this order, that there is an available appropriate outpatient restoration program that has adequate space for the defendant at the following outpatient restoration program:

Order For Felony Competency Restoration Treatment
(CRORIP, CROROP) Page 2 of 7
MP 240 (06/2020)

**Daniel T. Satterberg**, Prosecuting Attorney
Criminal Division
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6106

☐ **Outpatient Treatment under the guidance and control of a professional person appointed by the court.**

**B.** **Treatment Period** *(select one)*:

> Note: The length of the placement includes only the time the defendant is actually at the treatment facility and shall be in addition to reasonable time for transport to or from the treatment facility.

☒ **45 Days:** A first felony inpatient restoration period of 45 days (for felony offenses that are not classified as a violent offense under RCW 9.94A.030).

☐ **90 Days:** A first felony restoration period of 90 days for a case where the highest charge is a violent offense or where the defendant has been ordered to participate in outpatient competency restoration.

☐ **90 Days:** A second felony restoration period of 90 days. The court finds that a second restoration period is appropriate under RCW 10.77.084 and RCW 10.77.086.

☐ **180 days:** A third felony restoration of up to 180 days. To support this period of restoration, the court or jury finds:

☐ There is a substantial probability that the defendant will regain competency within a reasonable period of time,

**and**

☐ The defendant is:

☐ A substantial danger to other persons, and/or

☐ Presents a substantial likelihood of committing criminal acts jeopardizing public safety or security.

**C.** **Medication:**

The treatment facility is authorized to administer clinically appropriate voluntary medication for the purpose of competency restoration.

☐ There is a separate order regarding involuntary medications.

☒ The issue of involuntary medication may be addressed in a separate hearing.

Daniel T. Satterberg, Prosecuting Attorney
Criminal Division
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

**5. Access to Records:**

This signed court order shall serve as authority for the treatment facility (including outpatient restoration provider) and DSHS to be given access to all records held by any mental health, medical, educational, or correctional facility that relate to the present or past mental, emotional, or physical condition of the defendant.

**Within 24 hours** of the signing of this order the following information shall be provided to DSHS, the prosecuting attorney, and the defense attorney at the emails designated in the distribution at the end of this order:

- The **clerk of the court** shall provide a copy of this order.

- Unless previously provided to DSHS and for the purpose of competency restoration, the following materials shall be provided by the **prosecuting attorney**: The discovery packet, charging document, understanding of the defendant's criminal history, and any written competency evaluation that was utilized in the court's finding that the defendant is not competent to proceed.  DSHS shall forward previously received discovery packet information to any contracted outside agency providing restoration services.

- The **jail administrator/jail health services** shall provide the defendant's medical clearance information to DSHS, if this order requires transportation for inpatient competency restoration.

**6. Evaluation and Report:**

The evaluator designated by the secretary of DSHS shall evaluate the defendant's competency to stand trial before the end of the treatment period. The evaluator shall prepare a written report with the results of the evaluation.  The report shall ordinarily be distributed by DSHS within 2 business days of the final evaluation.

☒ **Defense Attorney Presence** *(Only check this box if defense counsel wants notice and the opportunity to be present):*

The defense requests notification of the time and place of the evaluation at the contact information provided.  DSHS shall provide the defense attorney with reasonable notice and opportunity to attend the evaluation.  The defense attorney may be contacted at: ____ Sarra.Marie@kingcounty.gov

☐ The evaluation may proceed without the defense attorney present if notice has been provided.

☒ The evaluation may not proceed without the defense attorney present.

☐ **A defense expert** has been appointed under RCW 10.77.060 and DSHS is directed to contact the defense attorney to determine whether the expert will be witnessing the evaluation.

Order For Felony Competency Restoration Treatment
(CRORIP, CROROP) Page 4 of 7
MP 240 (06/2020)

**Daniel T. Satterberg**, Prosecuting Attorney
Criminal Division
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

**Contents of Report:**

The report shall include all of the contents required in the initial Order for Competency Evaluation. If this report follows the second treatment period, or the first treatment period if the defendant's incompetence is determined to be solely due to a developmental disability, or if the evaluator concludes that the defendant is not likely to regain competency, then the report must also include an assessment of the defendant's future dangerousness.

☐ Additional Requirements of Report (if any): _____

_____.

**Copies of Report:**

DSHS shall furnish a copy of the written report of the results of the evaluation to the court, the prosecutor, the defense attorney, the Designated Crisis Responder (DCR) for King County and the Jail/Detention facility (if the defendant is currently held in the detention facility).

7. **Transportation and Admission to the DSHS Designated Facility:**

This section is only applicable if the defendant will be undergoing inpatient restoration.

☒ **In-custody Defendant:**  The defendant shall be transported and admitted to the treatment facility by the earlier of 7 days of DSHS's receipt of this order or 14 days from the date of this order as required by statute and case law.

The Jail/Detention facility shall transport the in-custody defendant from the Jail/Detention facility to the treatment facility designated by DSHS and back. Transportation to the treatment facility shall occur within 1 day of the receipt of an offer of admission of the defendant for restoration treatment.

☐ **Inpatient Defendant:**  The defendant is currently admitted to a DSHS designated facility.

☐ **Out-of-custody Defendant:**  Within 3 court days of entry of this order, the defendant's attorney shall contact DSHS to request notification of the admission date.  The defendant shall report to the DSHS designated facility as directed by DSHS.  The defendant shall obtain medical clearance prior to admission and shall follow the instructions of DSHS regarding medical clearance.

8. **Discharge:**

Any treatment facility providing inpatient services related to competency shall discharge the defendant as soon as the treatment facility determines that the defendant is competent to stand trial.  Discharge shall not be postponed during the writing and distribution of the evaluation report.

Order For Felony Competency Restoration Treatment
(CRORIP, CROROP) Page 5 of 7
MP 240 (06/2020)

Daniel T. Satterberg, Prosecuting Attorney
Criminal Division
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

The treatment facility shall promptly notify the court and all parties of the date on which the competency restoration period expires by discharge from the treatment facility so that a timely hearing date may be scheduled.

**9. Next Hearing:**

The next hearing date is scheduled for __November 16, 2022_____(date) at

___9___ AM in ___KC Courthouse 1201/955_____(location)

If the defendant is admitted to a facility designated by DSHS from a Jail/Detention facility, the defendant shall be returned to the Jail/Detention facility before this court date, except as provided below:

☒ All parties agree ☐ to waive the presence of the defendant or ☒ to the defendant's remote participation at a subsequent competency hearing or to presentation of an agreed order if the opinion of the treatment facility is that the defendant remains incompetent, and the hearing is held prior to the expiration of the current commitment period. **The report must be provided to the parties with sufficient time to accommodate remote participation for entry of a continued restoration order.**

**10. ☐ Interpreter.**

The defendant requires the services of an interpreter in the following language

_____.

**11. Time for trial period remains tolled.**

Pursuant to CrR 3.3, the time for trial in this case is tolled until the defendant is found competent to stand trial.

**12. Firearm Restriction.**

The defendant shall immediately surrender any concealed pistol licenses and the defendant may not possess a firearm unless the defendant's right to do so is restored by a court of record. The *Notice of Ineligibility to Possess a Firearm* is filed separately.

**13. Other.**

_____

_____

Dated: _____          *Johanna Bender*

               SEP 1 4 2022          **Judge**

                                     Print Name: _____

Order For Felony Competency Restoration Treatment
(CRORIP, CROROP) Page 6 of 7
MP 240 (06/2020)

**Daniel T. Satterberg**, Prosecuting Attorney
Criminal Division
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742 FAX (206) 205-6104

Approved as to form

Approved as to form


_____

_____

Deputy Prosecuting Attorney

Attorney for the Defendant

Print Name: Gabrielle R. Charlton

Print Name: Sarra Marie

WSBA No. 34582

WSBA No. 46617

Order For Felony Competency Restoration Treatment
(CRORIP, CROROP) Page 7 of 7
MP 240 (06/2020)

**Daniel T. Satterberg**, Prosecuting Attorney
Criminal Division
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

# Exhibit 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FILED**
KING COUNTY WASHINGTON

NOV 02 2022

SUPERIOR COURT CLERK

### IN THE SUPERIOR COURT OF WASHINGTON
### IN AND FOR THE COUNTY OF KING

|  |  |
|---|---|
| STATE OF WASHINGTON,<br>*Plaintiff*<br><br>v.<br>MICHAEL HOLLAND,<br>*Defendant* | No: 22-1-04244-0 SEA<br><br>ORDER FINDING CONTEMPT<br>AND IMPOSING SANCTIONS |

This matter comes before the Court on Defendant's motion to hold the Washington
Department of Social and Health Services in contempt for its failure to provide timely restoration
services to the above-named defendant, in violation of the September 14, 2022, order of this Court
and RCW 10.77.068; and to impose sanctions. The Court hereby enters the following findings and
conclusions and also incorporates by reference its oral findings and conclusions of law in this
matter.

### FINDINGS

1. DSHS was ordered to transport Mr. Holland for inpatient services on September 14, 2022.

2. As of October 31, 2022, DSHS has not transported Mr. Holland to any of its restoration
   facilities to begin restoration.

ORDER ON CONTEMPT                                  - 1 -                **King County Department of Public Defense**
                                                                       **Associated Counsel for the Accused Division**
                                                                       710 Second Avenue, Suite 1000•Seattle, WA 98104
                                                                       (206) 263-5894



3. DSHS has the ability to provide restoration services to Mr. Holland and has failed to do so in *will find*
violation of the September 14, 2022, order and in violation of Mr. Holland's constitutional
rights.

## CONCLUSIONS OF LAW

1. DSHS is in contempt of Court.

2. The Court imposes compensatory sanctions in the amount of $250 per day, commencing on
September 28, 2022 and will continue until such a time as Mr. Holland is admitted to
competency restoration services. Sanctions shall be paid to the clerk of court and will be
dispersed to a payee or responsible adult or other agreed person for purposes of addressing
behavioral health and/or housing concerns. *of the defendant*

Dated this _2_ day of ~~October~~ *November*, 2022.

_____
*Johanna Bender*
JUDGE
King County Superior Court

Presented by:

*/s/ Sarra Marie*
Sarra Marie, WSBA #46617
Counsel for the Defendant

Approved as to form:

_____
Teague Pasco, WSBA #
Attorney General
Attorney for DSHS

*Notice waived*
_____
Christopher Wong, WSBA #40677
Senior Deputy Prosecuting Attorney
King County Prosecuting Attorney's Office

ORDER ON CONTEMPT                - 2 -          **King County Department of Public Defense**
                                                 **Associated Counsel for the Accused Division**
                                                 710 Second Avenue, Suite 1000•Seattle, WA 98104
                                                 (206) 263-5894

# Exhibit 8



**FILED**

KING COUNTY, WASHINGTON

DEC 0 7 2022

SUPERIOR COURT CLERK
BY Christina Nord
DEPUTY

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 22-1-04244-0 SEA |
| Plaintiff, | ) | |
| | ) | Order Dismissing Felony Charges and |
| vs. | ) | Directing Civil Commitment Evaluation |
| | ) | (ORDDCCE) |
| MICHAEL CHARLES HOLLAND, | ) | Clerk's Action Required: par. 4, par. 7 |
| Defendant. | ) | |
| Date of birth: March 10, 1985 | ) | |
| | ) | |

The court considered the following:

☒ The evaluation report, dated 9-8-22 by DSHS.

☐ The agreement of the parties.

☒ Other: Argument of the parties for a motion to dismiss on 10-31-22.

The court makes the following findings of fact and conclusions of law:

**Findings of Fact**

**1. Incompetency.**

The court finds that as a result of mental disease or defect, the defendant lacks the capacity to understand the nature of the proceedings against him/herself and/or assist in his/her own defense. The defendant is incompetent pursuant to RCW 10.77.010 and 10.77.050.

**2. Restorability.**

The defendant ☐ did ☒ did not undergo competency restoration.

☒ The defendant is unlikely to regain competency in a reasonable period of time **due to the delay in admission.**

☐ The defendant is statutorily ineligible for further competency restoration.

Order Dismissing Felony Charges and
Directing Civil Commitment Evaluation
(ORDDCCE)  MP 260 (06/2022)

Page 1 of 3

**Daniel T. Satterberg**, Prosecuting Attorney
Criminal Division
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

☒ Other:  The Court heard argument on a motion to dismiss pursuant to State v. Hand and
CrR 8.3(b) on October 31, 2022 and denied those motions on that date.  However, the
Court indicated that if the defendant were not admitted to restoration by December 1st,
2022 as represented by DSHS, then the Court would dismiss this case without prejudice
and refer to civil commitment without an additional hearing.  The defendant having not
been admitted to date, the Court hereby dismisses this case without prejudice.  The order
filed November 1, 2022 is incorporated by reference.  *All findings & conclusions*
*a oral ruling from 10/31/22 are hereby incorporated.*

3. **Felony Charge**.

The defendant is charged with the felony offense(s) of: Domestic Violence Misdemeanor
Violation Of A Court Order and Felony Harassment - Domestic Violence.

**The Court Orders:**

4. **Dismissal Without Prejudice.**

This case is dismissed without prejudice.

5. **Commitment for Civil Commitment Evaluation.**

The defendant is committed to a state hospital for up to 120 hours if the defendant has not
undergone competency restoration services or has engaged in outpatient competency
restoration services and up to 72 hours if the defendant engaged in inpatient competency
restoration services starting from admission to the facility, excluding Saturdays, Sundays,
and holidays, for evaluation for the purpose of filing a civil commitment petition under
chapter 71.05 RCW.

6. **Admission to State Hospital.**

The defendant shall be held in the jail/detention facility for a maximum of 14 days pending
admission to the state hospital for civil commitment evaluation.  The defendant shall be
released if the state hospital has not offered admission within 14 days.  The defendant shall
be transported to the state hospital by the jail/detention facility.

☐ The defendant is currently in the state hospital and no further transport is needed.

☐ Other: _____

_____

7. A copy of this order shall be emailed to DSHS within 24 hours by the county clerk.

**Dated** _____

DEC 07 2022

**Judge**

Print Name   Johanna Bender

Order Dismissing Felony Charges and          Page 2 of 3          **Daniel T. Satterberg**, Prosecuting Attorney
Directing Civil Commitment Evaluation                            Criminal Division
(ORDDCCE)  MP 260 (06/2022)                                      W554 King County Courthouse
                                                                 516 Third Avenue
                                                                 Seattle, WA 98104-2385
                                                                 (206) 477-3742  FAX (206) 205-6104

1

Presented by/Approved as to form:                    Presented by/Approved as to form:

2

3

4

Deputy Prosecuting Attorney                          Attorney for the Defendant

Print Name: Christopher Wong                          Print Name: Sarra Marie

5

WSBA No.  40677                                       WSBA No.  46617

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Order Dismissing Felony Charges and          Page 3 of 3          **Daniel T. Satterberg**, Prosecuting Attorney
Directing Civil Commitment Evaluation                             Criminal Division
(ORDDCCE)  MP 260 (06/2022)                                       W554 King County Courthouse
                                                                  516 Third Avenue
                                                                  Seattle, WA 98104-2385
                                                                  (206) 477-3742  FAX (206) 205-6104

# Exhibit 9



**FILED**
KING COUNTY, WASHINGTON

DEC 16 2022

SUPERIOR COURT CLERK
BY Christina Nord
DEPUTY

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

THE STATE OF WASHINGTON, )
                      Plaintiff, )
       v. )        No. 22-1-04244-0 SEA
                       )
MICHAEL CHARLES HOLLAND )   ORDER CLARIFYING
                       )   12/7/2022 ORDER
           Defendant. )
                       )
                       )

     THIS MATTER having come on regularly before the undersigned judge of the above-entitled court upon the motion of the State in the above-entitled cause to clarify the court's 12/7/2022 order, and the court being fully advised in the premises; now, therefore,

     IT IS HEREBY ORDERED, ADJUDGED and DECREED that the court's 12/7/2022 order mandates and directs the Department of Social and Health Services & Western State Hospital (DSHS & WSH) to admit Michael Charles Holland to a State hospital for a 120-hour civil commitment hold. This order, and the 12/7/22 order, do not provide authorization for DSHS & WSH to decline to admit the Michael Charles Holland to the State hospital for a civil commitment hold. DSHS & WSH shall admit Michael Charles Holland to a State Hospital no later than December 21, 2022.

ORDER CLARIFYING
12/7/2022 ORDER - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 296-9000 FAX (206) 296-0955

1    SIGNED this ___16___ day of December, 2022.

2

3                                              _____

4    Presented by:                            JUDGE   Johanna Bender

5    DANIEL T. SATTERBERG
     King County Prosecuting Attorney

6    By:

7

8    _____

9    Rebecca M. Vasquez, WSBA# 30322
     Senior Deputy Prosecuting Attorney

10

11   Defense acknowledges receipt of order and defers to Court regarding clarification of order. All prior
     arguments and objections are maintained:

12

13   _____
     Sarra Marie, WSBA #46617

14   Attorney for Defendant

15

16

17

18

19

20

21

22

23

24

     ORDER CLARIFYING
     12/7/2022 ORDER - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 296-9000  FAX (206) 296-0955

# Exhibit 10



**King County**

Dow Constantine
King County Executive

401 Fifth Avenue, Suite 800
Seattle, WA  98104

206-296-9600   Fax 206-296-0194
TTY Relay:  711
www.kingcounty.gov

December 20, 2022

Assistant Secretary Kevin Bovenkamp
Department of Social and Health Services
Behavioral Health Administration
P.O. Box 45050
Olympia, Washington 98504-5050

*Sent electronically only*

  Re: New Policy re Hospital Admission "Triaging" and DSHS Legal Obligation to Accept
     Statutorily Identified Patients for Admission

Dear Assistant Secretary Bovenkamp:

  I'm writing in response to your memo of December 14, 2022, which asserts DSHS's authority to exercise discretion over the acceptance of forensic patients for evaluations and commitment under the felony flip statutes.  On the same day, King County received letters from Mark Thompson, CEO of the Gage Center at WSH, informing the county that WSH would be refusing admission to defendants Michael Charles Holland and Daniel Aura despite court orders requiring their admission to WSH for a 120-hour "felony flip" commitment evaluation per RCW 10.77.086(5).  We were quite surprised by these communications, especially when there was no prior notice or discussion.  DSHS's actions represent a substantial departure from the agency's prior and routine acceptance of felony flip admissions, which risks outright release of these defendants into the community without the benefit of court-ordered evaluation and treatment services.

  In light of your memo and Mr. Thompson's letter, we approached the Superior Court for an order clarifying DSHS's obligations under the standard-form felony flip court order to admit patients to the state hospital for a 120-hour evaluation.  Copies of these pleadings were served on DSHS's attorney.  In the context of the Holland felony flip order (which is in all respects identical to the Aura felony flip order), the court's December 1, 2022, order clarifies that its felony flip commitment order "*mandates and directs* the Department of Social and Health Services and Western State Hospital to admit Michael

Page 2 of 3
December 20, 2022

Charles Holland to the State hospital for a civil commitment hold . . . by no later than December 21, 2022."  (Emphasis added).  In other words, as clarified, the original standard-form felony flip order used in the Holland and Aura cases imposes a mandatory legal duty on your agency to admit felony flip defendants to a state hospital for 120-hour evaluations under RCW 10.77.086(5) and RCW 71.05.280(3).

Although it is King County's expectation that this clarified order should resolve the situation, we have yet to hear from DSHS on new dates for the admission of defendants Holland and Aura within the time frames established by the court.  Our legal norm is for state agencies to comply with court orders.  There is no longer any doubt, if there ever was, that the court has mandated and directed DSHS to admit both defendants to WSH for a 120-hour evaluation.  This legal duty comports with community expectations.  No member of the public should be placed at risk from the actions of either defendant, which is the entire point of the felony flip commitment statute and the court's order to provide evaluation and treatment services to these defendants.

We understand that DSHS is attempting to create bed space for competency evaluation and restoration services by denying admission to felony flip defendants.  To be sure, this problem requires prompt and effective resolution.  The Holland and Aura cases are but one example where the failure to provide court-ordered restoration services has resulted in dismissal of their criminal cases and the resulting need for a felony flip commitment.  We caution against "solutions" that attempt to make short-term gains on one problem with DSHS forensic admissions by creating another problem, especially when there is a pronounced negative impact on public safety and the provision of mental health services to persons who need those services.

Although King County does not support any approach that violates the court's felony flip orders or DSHS's legal obligation to admit those patients for 120-hour evaluations, we do welcome a continued partnership in the upcoming legislative session to address the underlying competency evaluation and restoration crisis and corresponding lack of behavioral health beds.  King County is currently working on legislative proposals to decrease pressures on the competency evaluation and restoration process.  We are focusing on proposals that would complement the State's efforts to increase capacity in the system.  We would welcome further discussions on these ideas and those that the State is considering. Michael White, our State Relations Director, will follow up with Ms. Leaders to coordinate.

In the meantime, please respond at your earliest convenience with the date that we can transport defendants Holland and Aura for admission to WSH.  The ability of the King County Jail to hold these defendants expires on December 21, 2022 for Mr. Holland and December 23, 2022 for Mr. Aura.

Thank you.

Very truly yours,

April Putney
King County Deputy Executive

Page 3 of 3
December 20, 2022

Cc:     Jilma Meneses, DSHS Secretary
        Senator Manka Dhingra, Chair, Senate Law and Justice Committee
        Kathryn Leathers, Governor's Office
        Amber Leaders, Governor's Office
        Mark Thompson, CEO Gage Center at WSH

Exhibit 11



**STATE OF WASHINGTON**
DEPARTMENT OF SOCIAL AND HEALTH SERVICES
**Behavioral Health Division**
P.O. Box 45090, Olympia, Washington 98504-5090

December 21, 2022

TO:         King County Executive Office
            King County Prosecutors

FROM:       Sjan Talbot, Deputy Assistant Secretary,
            on behalf of Kevin Bovenkamp
            Assistant Secretary, DSHS Behavioral Health Administration

RE:         State vs. Holland 22-1-04244-0

The Department is in receipt of the follow up court order that was entered in the State v. Holland matter. We have also received the follow up communication sent by Ms. Putney regarding this case and State v. Aura. Unfortunately, the Department continues to be without the ability to admit these patients. This is unavoidable, and it is an impossibility for the Department to comply with all of the competing court orders currently placing patients into the state hospital. Action is required in order to continue to admit serious and violent cases, including other serious felony conversion cases originating from King County, as further explained below.

The state hospitals are now at the center of what is best described as a tragedy of the commons. The Department receives court orders for inpatient admissions from over 250 individual jurisdictions across Washington State. This includes felony conversion cases from all 39 superior courts. Each jurisdiction acts according to their own best interest, and without coordination with other jurisdictions. State hospital beds, and the other facilities that the Department has opened, are a common resource to all of these jurisdictions—but a resource that is being used to such a great extent that the system has reached a breaking point. While some jurisdictions may feel that they have taken steps to use this shared resource only when necessary, other jurisdictions do not exercise such discretion or restraint. The end result is a system that is flooded with referrals by orders ranging from felony conversions based on Murder 1, to misdemeanor restoration orders based on minor infractions.

Over the last year, the number of civil felony conversion patients using beds at the Gage Forensic Center at Western State Hospital has grown from a dozen to nearly 170 patients. Even with aggressive discharge planning for patients, these civil conversion patients occupy beds for long lengths of stay because it takes time to stabilize patients with complex illnesses and then create safe discharge plans for patients with involvement in the criminal justice system. The spiraling increase in the number of civil conversion patients leads to a situation where the "cement hardens" at the state hospitals: there is nowhere internally to transfer patients, all of the quickly-accomplished patient discharges are already completed, and the state hospitals becomes unable to admit nearly any patients at all. Continuing to admit all felony conversions is impossible.

To prevent further deterioration of the situation, the Department is currently reviewing all pending admissions three times per week. At these reviews, the Department must respond to the fact that there are more people needing admission each week than there are discharging, and therefore not all patients can be admitted. It is impossible to simultaneously admit all patients within the timelines set forth by statute. The Department reviews the cases that are queued up as the next admissions based on the established admission algorithm and attempts to match those admissions to the beds that will be vacated by discharges.

When it is literally impossible, like now, to admit every single patient referred for admission, informed choices must be made that prioritize public safety. This means patients that are violent and present serious safety risks must be admitted before other less violent patients. Specific to Mr. Holland's case, not admitting his case allowed WSH to instead admit another felony conversion case from King County, where the charges included Assault 2 – Domestic Violence, and Unlawful Imprisonment – Domestic Violence. That case also presented a history of police response that required a S.W.A.T. team, as well as alleged criminal history involving assaults on strangers in public. In other examples, the Department could not admit a civil conversion stemming from a Malicious Mischief 2 charge from Whatcom County, and will instead be able to admit a competency restoration patient charged with Murder 1 from Clallam County who is so acutely decompensated in jail that they have also been approved as an expedited admission. A shoplifting case from Snohomish, charged as Burglary 2, could not be admitted as a felony conversion, and instead an Assault 2 – Domestic Violence case from Clark, in which the patient is alleged to have attacked his bed-bound grandmother, was admitted as a felony conversion. Because it is unavoidable under the current circumstances that some patients will not be timely admitted, and therefore released, we hope that you can recognize how the Department is prioritizing public safety and the communities best interest in the agonizing decisions that are being made on each of these cases.

Contrary to the assertion in Ms. Putney's letter, the Department is not seeking to exercise legal authority which it does not have—but in a situation in which compliance with all legal and statutory obligations is absolutely impossible, the Department must act to protect public safety. Further, release of a civil conversion patient without filing a petition is contemplated under RCW 10.77.065(4). That statute makes it clear that "[a] facility conducting a civil commitment evaluation under RCW * 10.77.086(4) or ** 10.77.088(1)(c)(ii) that makes a determination to release the person instead of filing a civil commitment petition must provide written notice to the prosecutor and defense attorney at least twenty-four hours prior to release. The notice may be given by email, facsimile, or other means reasonably likely to communicate the information immediately." By providing written notice to the court, the prosecutor, and defense counsel, the Department is acting in accordance with the decision not to file a petition, as contemplated by this statute. Making the decision to not to admit before the patient is transported to the state hospital is a necessary emergency measure to avoid a complete and utter collapse of the state hospital admissions system and to avoid dangerous patients in need of treatment from being released into the community.

The Department shares your desire for this system to function as intended. The State continues to invest hundreds of millions of dollars into this system in order to provide more services and treatment beds. In the coming months the Department will open new wards at Western State Hospital, a new treatment facility on the Maple Lane Campus, and will be negotiating contracts with community hospitals to provide additional treatment space for patients who are already admitted into the state hospitals.

*State vs. Holland 22-1-04244-0*
*December 21, 2022*
*Page 3*

In the coming years, numerous additional projects will create hundreds of additional treatment beds for forensic patients and felony conversions. But until those beds can take patients, the Department remains in an impossible situation and cannot admit all of the patients that are court-ordered to be admitted.

In the coming months the Department will open new wards at Western State Hospital, a new treatment facility on the Maple Lane Campus, and will be negotiating contracts with community hospitals to provide additional treatment space for patients who are already admitted into the state hospitals. In the coming years, numerous additional projects will create hundreds of additional treatment beds for forensic patients and felony conversions. But until those beds can take patients, the Department remains in an impossible situation and cannot admit all of the patients that are court-ordered to be admitted.

While the Department understands the concern that may arise from not admitting a patient like Mr. Holland and Mr. Aura, at this time there is no choice: blindly admitting every referral without regards to the consequences that admission will have is not tenable. Doing so poses a safety threat to the community at large. Thank you again for the conversation this morning. We appreciate your offer to work together on resolving the Statewide issues that are contributing to the ever-increasing demand for competency related services and welcome further discussions on identifying solutions.

KB:NW:kt

cc:     Manka Dhingra, Senator
        Jilma Meneses, DSHS Secretary
        Kathryn Leathers, GOV General Counsel
        Nick Williamson, ATG
        Dr. Thomas Kinlen, OFMHS Director
        Charles Southern, WSH CEO Civil Center
        Mark Thompson, WSH CEO Gage Center

Exhibit 12

DocuSign Envelope ID: 52322903-5180-4A7B-9D0F-5B2B5BB20A821

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| A.B., by and through her next friend Cassie Cordell Trueblood, et al. | ) ) ) No. 14-cv-01178-MJP |
| Plaintiffs, | ) ) DECLARATION OF DAVID BAKER |
| v. | ) IN SUPPORT OF AMICUS BRIEF ) BY KING, PIERCE AND |
| Washington State Department of Social and Health Services, et al., | ) SNOHOMISH COUNTIES ) ) |
| Defendants. | ) ) |

I, David Baker, declare as follows:

1. I am over the age of 18 years and I am competent to testify as to the matters stated herein.

2. I am a King County Senior Deputy Prosecuting Attorney and the Data Analytics Manager for the King County Prosecuting Attorney's Office (KCPAO). My duties include the monitoring and analyzing of data from the KCPAO's records management system. This includes data on crimes referred to and prosecuted by the KCPAO.

3. I was asked to run some numbers regarding competency evaluations, competency restorations, felony cases dismissed due to a finding of incompetency for civil

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

commitment, and re-offense; I did so utilizing software I use on a routine basis in the course of my duties.

4.  According to our records, from 2018 through 2022, the King County Superior Court has dismissed 616 cases without prejudice because of a finding of incompetency for civil commitment.

5.  If civil commitments were limited to individuals charged with a violent offense as defined by the Washington State Sentencing Reform Act, our records indicate that 448 of the 616 cases referenced above—72 percent—would no longer be eligible for civil commitments.

6.  Although it is difficult to pinpoint recidivism rates for these defendants given the limitations of the data our office collects, our data shows that of the 473 defendants who had cases dismissed due to incompetency for civil commitment within the noted timeframe, 98 had a new criminal case referral to the KCPAO after the dismissal. This almost certainly an underestimate, as this cannot account for the criminal case referrals to other prosecuting entities in the other counties or the many municipalities in Washington State.

The foregoing is true and correct to the best of my knowledge under penalty of perjury and the laws of the state of Washington.

Signed this 12th day of January, 2023 at Seattle, Washington.



DAVID BAKER

DECLARATION OF DAVID BAKER IN SUPPORT OF
AMICUS BRIEF BY KING, PIERCE AND SNOHOMISH COUNTIES
[No. 14-cv-01178-MJP] - 2

**Leesa Manion**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
516 3rd Avenue, #W554
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

Exhibit 13

# Trend in Competency Evaluation Determinations
Washington State


STATUS
**UPDATED**
**OCT 2021**





**DATA SOURCE:** FES modules in Cache database(WSH), MILO database(ESH), Pierce County, and the Forensic Data System (FDS).

\* Other includes orders still in process and orders where the determination is missing.



**DSHS** | Facilities, Finance, and Analytics Administration | Research and Data Analysis Division ● OCTOBER 2021

# Exhibit 14

**DART Ticket 904: Competency Data** - *revised to break out Table 1 by offense type*

**Table 1.** King County Competency Evaluations By Opinion Type & Fiscal Year (Grouped by Client &

| Opinion Type | FY19 | | FY20 | | FY21 | |
|---|---|---|---|---|---|---|
| | Number | Percent | Number | Percent | Number | Percent |
| Competent | 604 | 41% | 504 | 36% | 499 | 39% |
| No Opinion | 22 | 1% | 44 | 3% | -- | -- |
| Not Assessed | 40 | 3% | 13 | 1% | -- | -- |
| Not Competent | 805 | 55% | 824 | 59% | 723 | 57% |
| **Total** | 1471 | 100% | 1385 | 100% | 1276 | 100% |

--Values suppressed to protect confidentiality.

**Table 1a.** King County **Felony** Competency Evaluations By Opinion Type & Fisca

| Opinion Type | FY19 | | FY20 | | FY |
|---|---|---|---|---|---|
| | Number | Percent | Number | Percent | Number |
| Competent | 167 | 40% | 153 | 38% | 177 |
| No Opinion | 12 | 3% | -- | -- | -- |
| Not Assessed | 15 | 4% | -- | -- | -- |
| Not Competent | 224 | 54% | 232 | 57% | 243 |
| **Total** | 418 | 100% | 408 | 100% | 444 |

--Values suppressed to protect confidentiality.

**Table 1b.** King County **Misdemeanor** Competency Evaluations By Opinion Type

| Opinion Type | FY19 | | FY20 | | FY |
|---|---|---|---|---|---|
| | Number | Percent | Number | Percent | Number |
| Competent | 437 | 42% | 351 | 36% | 322 |
| No Opinion | -- | -- | -- | -- | -- |
| Not Assessed | -- | -- | -- | -- | -- |
| Not Competent | 581 | 55% | 592 | 61% | 480 |
| **Total** | 1053 | 100% | 977 | 100% | 832 |

--Values suppressed to protect confidentiality.

**Table 2.** King County Not Competent Evaluations Who Received a Restoration Order by Fiscal Yea

| Fiscal Year | # |
|---|---|
| 2019 | 252 |
| 2020 | 263 |
| 2021 | 291 |
| 2022 | 408 |

**Table 3.** King County Not Competent Evaluations Who Received a Restoration Order and **Were Su**

| Fiscal Year | # |
|---|---|
| 2019 | 119 |
| 2020 | 104 |
| 2021 | 129 |
| 2022 | 112 |

**Table 4.** King County Not Competent Evaluations Who Received a Restoration Order and then **Re**

| Fiscal Year | # |
|---|---|
| 2019 | 57 |
| 2020 | 92 |
| 2021 | 85 |
| 2022 | 98 |

**Table 5.** King County Not Competent Evaluations Who Received a Restoration Order and then **Re**
Length of Stay calculated from the date the civil conversion order was signed to the date the inc

| Fiscal Year | Avg. LOS |
|---|---|
| 2019 | 317.36 |
| 2020 | 299.81 |
| 2021 | 209.46 |
| 2022 | 130.86 |

**Data Notes:** [1]Fiscal Year represents the FY the initial competency evaluation order was completed
[2]Data found in Tables 2-5 represent cases that were linked by Cause Number to the originating ev

**DSHS: Research and Data Analytics**
**Data Source: Forensic Data System (FDS)**
**Date: 01/10/2023**

 Completion Date)[1]

| FY22 | |
|---|---|
| Number | Percent |
| 600 | 34% |
| -- | -- |
| -- | -- |
| 1126 | 64% |
| 1761 | 100% |

al Year (Grouped by Client & Completion Date)[1]

| 21 | FY22 | |
|---|---|---|
| Percent | Number | Percent |
| 40% | 212 | 38% |
| -- | -- | -- |
| -- | -- | -- |
| 55% | 336 | 60% |
| 100% | 563 | 100% |

 & Fiscal Year (Grouped by Client & Completion Date)[1]

| 21 | FY22 | |
|---|---|---|
| Percent | Number | Percent |
| 39% | 388 | 32% |
| -- | -- | -- |
| -- | -- | -- |
| 58% | 790 | 66% |
| 100% | 1198 | 100% |

r (Grouped by Client & Completion Date)[1,2]

**uccessfully Restored** by Fiscal Year (Grouped by Client & Completion Date)[1,2]

**ceived a Civil Conversion Order** by Fiscal Year (Grouped by Client & Completion Date)[1,2]



**ceived a Civil Conversion Order** by Fiscal Year (Grouped by Client & Completion Date)[1,2]
dividual was discharged from a state hospital

d in.

valuation order in Table 1.