The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A.B., by and through her next friend Cassie Cordell Trueblood, et al.,
    Plaintiffs,

v.

Washington State Department of Social and Health Services, et al.,
    Defendants.

No. 14-cv-01178-MJP

DECLARATION OF DAVID J. HACKETT ON BEHALF OF AMICI COUNTIES

I, David J. Hackett declare as follows:

1. I am the General Counsel for King County Executive Dow Constantine and a Special Deputy Prosecutor in this matter. I am over the age of 18 years and am competent to testify to the matters stated herein.

2. I have been directly involved in civil commitment matters for nearly 26 years. Until last week, I was on the Public Safety Review Panel (PSRP), which is a statutory body that provides recommendations to the courts and DSHS on conditional and unconditional release for Not Guilty By Reason of Insanity and HB 1114 patients. I was appointed by the Washington Governor as a charter member of the PSRP and served as the Panel's Chair for many years, where I gained a substantial

DECLARATION OF DAVID HACKETT
[No. 14-cv-01178-MJP] - 1

Leesa Manion (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

understanding of forensic operations at both Western State Hospital (WSH) and Eastern State Hospital.

3. After DSHS claimed in these proceedings that it had "work[ed] diligently" to identify suitable vacant hospitals or secure facilities, King County consulted with a real estate broker and was readily able to find two properties that appeared suitable to provide inpatient mental health services. It took just a couple weeks to identify two properties. Both properties could potentially serve as important parts of the state hospital system and free up bed space and other resources for *Trueblood* class members. If available, such hospital beds would be important in freeing up forensic beds at WSH for *Trueblood* class members.

4. One property is currently a senior living facility with different levels of independence for residents; 33 beds at this facility are specifically for memory care in a secure ward within the building. The memory care beds in particular could potentially be used as a DSHS inpatient facility; the remainder of the facility could be used for another purpose, such as a step-down facility for WSH patients.

5. The other property is a fully staffed inpatient treatment facility that could potentially be used as a DSHS inpatient facility. In addition to the beds that already exist, the property is large enough that the facility could be expanded.

6. Specific information identifying these facilities was provided to DSHS during the legislative session. One outcome of this exchange was a provision in ESSSB 5440, Laws of 2023, ch. 453 § 19(1):

> The department *shall* coordinate with cities, counties, hospitals, and other public and private entities *to identify locations that may be commissioned or renovated for use in treating clients committed to the department for competency evaluation,*

DECLARATION OF DAVID HACKETT
[No. 14-cv-01178-MJP] - 2

Leesa Manion (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

> *competency restoration, civil conversion, or treatment following acquittal by reason of insanity*.

(Emphasis added). King County is unaware of what further steps DSHS has taken to pursue the identified facilities.

7. According to King County's broker, additional properties are available and information about them can be provided in the event that a serious buyer came forward with adequate funds for a purchase. These properties are not openly advertised for sale because it would disrupt the viability of current operations, thereby risking the loss of patients and staff.

8. Shortly before this hearing, Cascade Behavioral Health Hospital in Tukwila, Washington announced that it will close on July 31, 2023. This mental health hospital has been operated by Arcadia Health for the past 10 years. Arcadia claims that its decision to close the hospital is solely a business decision based on an inability to operate the facility given the limitations of state reimbursement rates and the costs of doing business in our region. The large majority of contracts for operations at Cascade Behavioral Health are directly between the State of Washington and Cascade Behavioral Health. These include Detox and Evaluation and Treatment (E&T) services totaling about 137 beds between the two service types. King County holds one small contract with Cascade for voluntary and involuntary treatment Inpatient Psychiatric Services. If Cascade Behavioral Health closes, it will be a major loss for our region and state at a moment when we need more behavioral health capacity, not less. The facility has already substantially reduced the number of patients receiving care there.

9. Cascade Behavioral Health has been one of the largest evaluation and treatment facilities in the region, including 97 evaluation and treatment (E&T) beds serving
DECLARATION OF DAVID HACKETT
[No. 14-cv-01178-MJP] - 3

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

involuntary treatment patients, and 40 withdrawal management (detox) beds. At the time of the announced closure, 28 individuals from King County were involuntary treatment (ITA) clients. Cascade is the last detox facility in the state that accepts Medicare. It employs about 200 local residents.

10. The hospital is divided into six wards with an average size of 16 beds per ward. The facility is considered a locked facility and may be appropriate for patients whose transfer would directly benefit *Trueblood* class members, including civil conversion patients that are currently housed on WSH's forensic wards. When the hospital property last sold in 2013, its reported purchase price was just over $9 million. The current appraised value of the property and buildings is just over $18 million.

11. King County understands that the State is giving this property serious consideration. A prospective purchase price for the facility is currently unknown, but there are active and ongoing discussion with Arcadia. The State and King County are touring the facility and picking up slack (just kidding) on Friday. Time is of the essence for acquiring this facility because the facility has a hard closure date of July 31, 2023. Staff are only being paid through this date and are already likely in the process of looking for new jobs.

12. The amicus counties seldom seek or obtain restoration orders for persons whose highest charge is a misdemeanor. In the very rare occasions where restoration is sought for a misdemeanor, it is due to unique facts where the absence of a restoration option directly impacts public safety.

13. The vast bulk of misdemeanor restoration orders originate from municipal courts (or District Courts sitting as municipal courts under contract with a city). The data

DECLARATION OF DAVID HACKETT
[No. 14-cv-01178-MJP] - 4

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

presented to the court from the existing parties appears to geographically designate these municipal courts as "county" orders. Amici have alerted DSHS multiple times that county and city restoration orders are unrelated, but they nonetheless continue to conflate these different political jurisdictions. This geographic designation should not be confused to imply a political designation. As a political entity, county governments have no control over municipal courts or prosecutors. Indeed, the Washington Constitution gives county government no supervisory control over their elected prosecutors, who are state officials housed within the county structure to prosecute cases in the name of the State of Washington. As charter counties, amici are specifically precluded by the Washington Constitution from impacting the duties, obligations or discretion of the prosecutor.

14. From 1997 through 2012, I prosecuted civil commitment cases under RCW 71.09 and as the Unit Chair within the King County Prosecuting Attorney's Office closely followed the DSHS contempt proceedings before Judge Dwyer in *Turay v. Weston*. Similar to this case, DSHS failed to satisfy its constitutional obligations with regard to housing sexually violent predators and providing conditional release opportunities. Because the Departments progress was inadequate, they were found in contempt and fined many millions. Eventually, the state started working diligently toward compliance and asked the Legislature for authority to build the facilities required by the federal district court. As part of the package of legislation, DSHS obtained broad authority to quickly and efficiently build these facilities:

> (3) Notwithstanding RCW **36.70A.103** or any other law, *this statute preempts and supersedes local plans, development regulations, permitting requirements, inspection requirements, and all other laws as necessary to enable the secretary*

DECLARATION OF DAVID HACKETT
[No. 14-cv-01178-MJP] - 5

Leesa Manion (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191

> *to site, construct, occupy, and operate a secure community transition facility on McNeil Island and a total confinement facility on McNeil Island.*

(Emphasis added). If DSHS had requested or obtained similar legislation in this case, there would have been no need to destroy six wards and 180 beds in order to comply with the City of Lakewood's master plan. Similarly, the 48 beds for the Clark County facility would not be delayed by the need to jump through various local permitting "hoops." The State has plenary powers in determining whether and how to construct its own facilities.

15. The foregoing is true and correct to the best of my knowledge under penalty of perjury and the laws of the United States and the state of Washington.

Signed this 14th day of June, 2023 at Seattle, Washington.

_____
David J. Hackett

DECLARATION OF DAVID HACKETT
[No. 14-cv-01178-MJP] - 6

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 (206) 296-0191