1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**THE HONORABLE MARSHA J. PECHMAN**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.B., by and through her next friend Cassie Cordell Trueblood, *et al.* | No. 14-cv-01178-MJP |
| Plaintiffs, | **PLAINTIFFS' REPLY BRIEFING ON GOOD CAUSE EXTENSION PER DKT. NO. 1012** |
| v. | |
| Washington State Department of Social and Health Services, *et al.*, | |
| Defendants. | |

## I.   INTRODUCTION

Defendants ask this Court to abandon all oversight of good cause extensions (GCE) to the deadlines imposed by the Permanent Injunction. While it is true that the Parties have been unsuccessful in their efforts to inspire state courts to timely rule on requests for GCE, the requirement of individualized good cause to protect the constitutional rights of class members is too important to adopt Defendants' suggestion to treat every good cause request as meritorious with no meaningful oversight. Instead, the Court can and should appoint a limited special master to review past and future good cause extension requests to ensure that they comply with this Court's Permanent Injunction and the constitutional rights of class members.

## II.   BACKGROUND

Plaintiffs adopt the "History" portion of Defendants' briefing (*see* Dkt. No. 1023) insofar as it describes the Court's previous Orders and the State Legislature's amendment of RCW 10.77.068. Defendants recently submitted to this Court a re-calculation of contempt fines based on additional data (*see* Dkt. No. 1011), claiming overpayment to the Court of $2,727,750 in contempt fines for exceeding the 14-day competency evaluation requirement.[1] As a result, on July 15, 2023, this Court ordered Parties to provide briefing and answer four issues, addressed in sequence below.

## III. ISSUES PRESENTED BY THE COURT

### A.  A state statute cannot amend or gut a federal court's permanent injunction enforcing a federal constitutional right.

The Supremacy Clause of the U.S. Constitution and principles of federal preemption make it clear that a state law cannot amend or gut a federal court's permanent injunction enforcing a federal constitutional right. The Supremacy Clause states that "the Laws of the United States . . . shall be the supreme Law of the Land . . ., any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supreme Court has interpreted the Supremacy Clause "as prohibiting States from interfering with or controlling the operations of the Federal Government." *United States v. Washington*, 142 S. Ct. 1976, 1984 (2022). A state law cannot stand "as an obstacle to the accomplishment and execution of the full purposes of Congress." *Hines v. Davidowitz*, 61 S.Ct. 399, 403-404 (1941).

---

[1] In its more recent briefing (Dkt. No. 1023), Defendants claimed an additional $3,118,500 in overpayment to the Court, resulting in a claimed total decrease of in-jail contempt fines for June 2022 – June 2023 of $5,846,250.

PLAINTIFFS' REPLY BRIEFING ON GOOD CAUSE
EXTENSION - 2
No. 14-cv-01178-MJP

**B.  The good cause extension in RCW 10.77.068 does not comport with this Court's Permanent Injunction.**

Defendants rely on *Patterson v. New York*, 432 U.S. 197 (1977) and *Medina v. California,* 505 U.S. 437 (1992) to argue that this Court must defer to the state's power to establish and implement criminal procedure, but this is misplaced. We are not engaged in a new, independent analysis of whether RCW 10.77.068 is constitutional. This Court has already evaluated the Defendant's practices and procedures surrounding evaluation of a class member's competency to stand trial and its delivery of competency restoration' services. In 2015, this Court found the wait times that resulted from Defendants' practices and procedures to be unconstitutional. *See* Dkt. No. 131. RCW 10.77.068 was modified after this Court's ruling. The question is whether it runs afoul of this Court's Permanent Injunction.

In order for Defendants to satisfy a class member's constitutional rights, this Court's Permanent Injunction requires them to provide a competency evaluation within fourteen days. The Permanent Injunction further requires them to demonstrate *individualized* good cause when they will not meet the constitutionally-required deadline of fourteen days and are seeking an extension. The question before this Court is not the same as presented by *Medina* or *Patterson*. The question is whether the amended RCW 10.77.068 and its implementation meets the requirements of the Permanent Injunction. It does not.

Plaintiffs acknowledge that the State has made numerous attempts to secure good cause extensions (GCE) from the superior courts, but that this has proven challenging. Plaintiffs also assume that the 2022 amendments made to RCW 10.77.068 were a good faith effort by the State to obtain a GCE within the requirements of this Court's Permanent Injunction. However, the statute and its implementation contradict or strip the Permanent Injunction in several key ways.

First, the statute itself includes a basis for GCE that is explicitly not allowed by the Permanent Injunction: "(g) An unusual spike in the receipt of evaluation referrals or in the number of defendants requiring restoration services has occurred, causing temporary delays until the unexpected excess demand for competency services can be resolved." RCW 10.77.068(4)(g). The Permanent Injunction does not allow a GCE due to Defendants' "lack of resources or the

PLAINTIFFS' REPLY BRIEFING ON GOOD CAUSE
EXTENSION - 3
No. 14-cv-01178-MJP

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

system's inability to administratively accommodate the needs of the individual." Dkt. No. 303 at 32-33.

Although Defendants claim that they have not used this specific statutory reason as a basis for requesting a GCE, there is no guarantee that they will not do so in the future. Further, it is not possible to confirm Defendants' claim unless there is an independent review of the 974 GCE requests made by Defendants since June of 2022, but those have not been presented to this Court. Finally, 402 (over 40%) of the Defendants' GCE requests provide "other" as the reason for seeking the extension. Without additional information, we cannot know whether some portion of these 402 "other" reasons are significantly related to a lack of resources or inability to administratively accommodate the individual's needs.

Second, the Defendants' GCE notification to superior courts do not provide enough information to meet the Permanent Injunction's requirement of "individualized good cause." The GCE requests provided to this Court by Defendants demonstrate that Defendants are relying mainly on pre-labeled check boxes as a means of demonstrating good cause. While these check box categories generally correspond to the allowable bases for GCE outlined by the Court in the Permanent Injunction, they do not provide enough information to determine "individualized good cause."

More importantly, 40% of the GCE requests at issue here are based not on one of these specific check box categories, but instead on "other." Whether and to what extent additional information is provided on the form GCE request to further explain the "other" is not known, as only one of those 402 "other" requests is before the Court. *See* Dkt. No. 1023-2. This one example provided by Defendants elaborates "other" by stating only that there were "technical issues with equipment in the jail setting." *Id*. This does not provide enough information to determine individualized good cause that would comply with the Permanent Injunction.

Third, the Permanent Injunction requires Defendants to "secure" the GCE from the presiding court. *See* Dkt. No. 303 at 32-33. Plaintiffs acknowledge that it may not be possible without additional changes in state law or superior court resources and culture to obtain

PLAINTIFFS' REPLY BRIEFING ON GOOD CAUSE EXTENSION - 4
No. 14-cv-01178-MJP

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

affirmative responses to GCE requests at a significant rate. However, RCW 10.77.068 and its implementation goes too far in stripping this important safeguard.

RCW 10.77.068 presumes the superior court's consent to a GCE when the superior court does not affirmatively respond within an arbitrarily short period of time. The GCE request forms require five days (*see* Dkt. No. 1023-2 and 1023-3), but the statue requires seven (*see* RCW 10.77.068(5)). RCW 10.77.068 also does not require that Defendants advise superior courts in the GCE request forms that the superior court's consent will be presumed unless it provides an affirmative response. Neither does it require notification that a GCE could lead to the waiver of contempt fines under the instant case. This Court included the requirement that Defendants "secure" a GCE after demonstrating individualized good cause presumably because there must be some check on Defendants' authority to claim and benefit from a GCE—a delay that violates class members' constitutional rights.

Plaintiffs acknowledge Defendants' concerns regarding the cost versus benefit of requiring a superior court hearing for each and every GCE request. However, Plaintiffs also believe that the GCE information provided by Defendants must receive some additional affirmative scrutiny. This additional scrutiny need not be a full hearing by the superior court. There are other ways to ensure that the GCE request is based on individualized good cause that complies with the Permanent Injunction. Plaintiffs have suggested a path forward below.

### C.   Because RCW 10.77.068 is not consistent with the Permanent Injunction, this Court should order independent review of Defendants' requests for GCE.

As discussed above, RCW 10.77.068 allows broader exceptions that run afoul of this Court's Permanent Injunction. Plaintiffs agree that the Parties' efforts to encourage timely superior court review of GCEs has been largely unsuccessful. However, the solution cannot be to remove all oversight, which would have the effect of calculating fines without any ruling on the basis for delay. Instead, Plaintiffs suggest that the appropriate remedy is to appoint a special master with the narrow mandate to promptly review all GCEs sought by the State, and report to the Court for fine calculation. This is a task that could easily and efficiently be performed by any

PLAINTIFFS' REPLY BRIEFING ON GOOD CAUSE
EXTENSION - 5
No. 14-cv-01178-MJP

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

special master with the appropriate legal training and experience. The State should bear the burden of the expense for the special master, which would likely be trivial by comparison to the fine amounts under consideration.

### D. An independent review will allow this Court to determine whether and to what extent to grant Defendants' proposed fine reduction.

Because the GCE process to date has been distinguished largely by its dysfunction, there has been little or no meaningful oversight. In order to determine which GCE the State now claims comply with this Court's Permanent Injunction, Plaintiffs suggest that a special master review the relevant documents to make findings and report to the Court. Based on the special master's review, the Court can make informed decisions on which if any fines should be refunded.

## VIII.   CONCLUSION

Wherefore Plaintiffs request this Court find:

1. That RCW § 10.77.086 and its implementation of good cause extension is in conflict with the Permanent Injunction.

2. That appointment of a special master to review Defendants' requests for good cause extension and make recommendations to this Court is an appropriate remedy that ensures meaningful oversight.

3. That any determination of past and future fine reduction related to good cause extensions should be based on this Court's review of the special master's recommendations.

PLAINTIFFS' REPLY BRIEFING ON GOOD CAUSE
EXTENSION - 6
No. 14-cv-01178-MJP

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

1

2   Dated this 15th day of August, 2023

3

    Respectfully submitted,

4

5   /s/ Kimberly Mosolf
    David R. Carlson, WSBA No. 35767
6   Kimberly Mosolf, WSBA No. 49548
    Elizabeth Leonard, WSBA No. 46797
7   Disability Rights Washington
    315 Fifth Avenue South, Suite 850
8   Seattle, WA 98104
    (206) 324-1521
9   davidc@dr-wa.org
    kimberlym@dr-wa.org
10  bethl@dr-wa.org

11  /s/Christopher Carney
    Christopher Carney, WSBA No. 30325
12  Carney Gillespie PLLP
    600 1st Avenue, Seattle, WA 98104
13  Seattle, Washington 98104
    (206) 445-0212
14  Christopher.Carney@cgilaw.com

15  **Attorneys for Plaintiffs**

16

17

18

19

20

21

22

23

PLAINTIFFS' REPLY BRIEFING ON GOOD CAUSE
EXTENSION - 7
No. 14-cv-01178-MJP

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729