UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.B., by and through her next friend CASSIE CORDELL TRUEBLOOD, et al., | CASE NO. C14-1178 MJP |
| Plaintiffs, | ORDER RE: GOOD CAUSE EXCEPTION |
| v. | |
| WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, et al., | |
| Defendants. | |

This matter comes before the Court on the Parties' responsive briefing to the Court's Order requesting additional briefing on Defendants' proposed judgment. (Dkt. No. 1012). Having reviewed Defendants' Response Brief (Dkt. No. 1023), Plaintiffs' Response Brief (Dkt. No. 1036), Defendants' Reply Brief (Dkt. No. 1043), and all supporting materials, the Court ORDERS that Defendants may not reduce contempt fines for in-jail competency evaluations where a "good cause exception" was granted solely under RCW 10.77.068(5).

1

# BACKGROUND

2    Under the Court's Modified Permanent Injunction ("Injunction"), the Department of

3   Social and Health Services must complete in-jail competency evaluations within 14 days of the

4   receipt of a court order or within 21 days of the date the court order was signed. (Modified

5   Permanent Injunction at 32-34 (Dkt. No. 303); Order Adopting the Parties' Mediated Settlement

6   Agreement ¶ 2 (Dkt. No. 408).) If DSHS fails to complete the in-jail competency evaluation

7   within these time limits, it must pay, per Class Member: $750 for each of the first six days of

8   non-compliance and $1,500 per day starting the seventh day and every day thereafter. (See Order

9   on Plaintiffs' Second Motion for Civil Contempt at 13 (Dkt. No. 506).) But the Injunction allows

10   for a "good cause exception" to these time limits. Under the Injunction, "[w]here an in-jail

11   evaluation cannot be completed within fourteen days of a court order, Defendants must secure an

12   extension from the ordering court for individualized good cause, or must immediately admit the

13   individual to a state hospital to finish conducting the evaluation." (Modified Permanent Injunction at

14   32-33 (Dkt. No. 303). The Court defined "individualized good cause" as follows:

15           Individualized good cause encapsulates both clinical good cause—meaning good cause
             based on the unique medical or psychiatric needs of the particular individual, including
16           the continued presence of intoxicants but not including DSHS's lack of resources or the
             system's inability to administratively accommodate the needs of the individual within
17           fourteen days—and good cause based on class members' non-clinical interests, i.e.,
             where having their defense counsel, an interpreter, or an expert of their choosing present
18           at the evaluation is not possible to arrange within the fourteen-day timeframe.

19   (Id. at 33.) The Court made clear that "in order to invoke the individualized good cause

20   exception, Defendants must seek an extension from the ordering court." (Id.) The Court also

21   ordered Defendants "to track each request for an individualized good cause extension made by

22   DSHS evaluators, and whether the request was granted or denied" and to include this

23   information "in Defendants' monthly reports to the Court Monitor." (Id.)

24

Defendants claim that a recent change in state law affords them a new basis to assert a good cause exception to the in-jail competency evaluation contempt fines. (See Def. Resp. Br. at 4-5 (citing RCW 10.77.068(5)).) Under RCW 10.77.068(5), DSHS may request an extension of time to complete the evaluation and the ordering court then presumes "good cause" exists so long as DSHS has provided a reason for the delay and a reasonable estimate of the additional time needed. Specifically, the law states:

> The department shall provide written notice to the court when it will not be able to meet the maximum time limits under subsection (2) of this section and identify the reasons for the delay and provide a reasonable estimate of the time necessary to complete the competency service. Good cause for an extension for the additional time estimated by the department shall be presumed absent a written response from the court or a party received by the department within seven days.

RCW 10.77.068(5). Defendants have identified $5,846,250 in in-jail competency evaluation fines for June 2022 through July 2023 that they believe should be credited because DSHS complied with RCW 10.77.068(5). (See Declaration of Dr. Thomas J. Kinlen – July 2023 Data & Contempt Report (Dkt. No. 1011); Def. Resp. Br. at 9 (Dkt. No. 1023).)

After reviewing this request, the Court noted its significant concern with Defendants' position that RCW 10.77.068 provides for good cause extensions that are "allowed by the Court's permanent injunction." (Order for Further Briefing (Dkt. No. 1012).) The Court ordered the Parties to brief whether:

> (1) there is any authority supporting the proposition that a state statute can amend or gut a federal court's permanent injunction that enforces a federal constitutional right; (2) the good cause exception in RCW 10.77.068 comports with the Permanent Injunction; (3) if RCW 10.77.068 is not consistent with the Permanent Injunction, what remedy, if any, the Court should order; and (4) the proposed fines proposed in Dr. Kinlen's Declaration (Dkt. No. 1011) should be entered or whether some other amount is due, and whether any prior judgments should be amended if the Court finds that RCW 10.77.068 is inconsistent with the Permanent Injunction.

1    (Dkt. No. 1012 at 3.) With their responsive briefing, Defendants have noted that from June 2022

2    through May 31, 2023 DSHS evaluators requested 974 good cause exceptions, 962 of which

3    were granted. (Def. Resp. Br. at 3 and Ex. 1 thereto (Dkt. No. 1023).) Of these exceptions, 798

4    were granted where a request was made solely in compliance with RCW 10.77.068(5), while

5    "161 were still affirmatively granted by the [ordering] court." (Id.)

6                                              **ANALYSIS**

7    **A.    Jurisdiction**

8            Because Defendants have an appeal pending, the Court separately examines its own

9    jurisdiction.

10           "The filing of a notice of appeal generally divests the district court of jurisdiction over

11   the matters appealed." McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l

12   Typographical Union, 686 F.2d 731, 734 (9th Cir. 1982). This judge-made rule divests the

13   district court of jurisdiction over only those issues on appeal, and, even then, the district court

14   may issue orders that may facilitate review of the pending appeal. See Marrese v. Am. Acad. of

15   Orthopaedic Surgeons, 470 U.S. 373, 379, 105 S. Ct. 1327, 1331, 84 L. Ed. 2d 274 (1985); In re

16   Silberkraus, 336 F.3d 864, 869 (9th Cir. 2003) (noting that after a notice of appeal is filed, the

17   district court may properly issue an order amending the order on appeal if it aids the Ninth

18   Circuit's review).

19           The Court here finds that Defendants' appeal of the Court's Orders on Plaintiffs' Motion

20   for Contempt (Dkt. Nos. 1029, 1045) does not divest the Court of jurisdiction to enforce its prior

21   Orders of Contempt (Dkt. Nos. 289, 506) and the Injunction (Dkt. No. 303) or to issue judgments

22   concerning contempt fines imposed under those Orders (Dkt. Nos. 289, 506). That is because the

23   pending appeal concerns only a more recent order of contempt that does not implicate the

24

1    Court's authority to impose fines for in-jail competency evaluations or whether RCW

2    10.77.086(5) complies with the Injunction. As such, the Court finds that it continues to have

3    jurisdiction to police and enforce the prior Orders of Contempt and Injunction.

4    **B.     RCW 10.77.068(5) Deviates from the Court's Injunction**

5           The Court rejects Defendants' request for reductions for in-jail evaluation fines where a

6    good cause exception was granted solely under RCW 10.77.068 and not in full compliance with

7    the Court's Injunction. There are several reasons the Court reaches this conclusion.

8           First, RCW 10.77.068(5) allows for good cause exceptions for reasons that the Injunction

9    does not permit. To obtain a good cause exception under the Injunction, DSHS must

10   affirmatively "secure an extension from the ordering court for individualized good cause."

11   (Modified Permanent Injunction at 32.) This requires a showing of "both clinical good cause—

12   meaning good cause based on the unique medical or psychiatric needs of the particular

13   individual, including the continued presence of intoxicants but not including DSHS's lack of

14   resources or the system's inability to administratively accommodate the needs of the individual

15   within fourteen days—and good cause based on class members' non-clinical interests, i.e., where

16   having their defense counsel, an interpreter, or an expert of their choosing present at the

17   evaluation is not possible to arrange within the fourteen-day timeframe." (Id. at 33.) But under

18   RCW 10.77.068(5) good cause is simply presumed so long as DSHS has "provide[d] written

19   notice to the court when it will not be able to meet the maximum time limits . . . and identify the

20   reasons for the delay and provide a reasonable estimate of the time necessary to complete the

21   competency service." RCW 10.77.068(5). Under this law, DSHS no longer has to provide

22   evidence of the Class Member's clinical and non-clinical interests. And because good cause is

23   then presumed, the ordering court need not make any individualized determination of good

24

1    cause. Indeed, Defendants concede that the new law "relieves criminal courts of making more

2    particularized findings of good cause" so long as DSHS supplies the limited notice. (Resp. Br. at

3    5.) The Court finds that the new law fails to impose the same evidentiary standard on DSHS to

4    obtain a good cause exception under the Injunction and that the presumption of good cause

5    materially deviates from the Injunction's requirement that the ordering court make a finding of

6    individualized good cause.

7         Second, Defendants have not presented any convincing argument as to how RCW

8    10.77.068(5) can "be read in harmony" with the Injunction. (Resp. Br. at 4 (Dkt. No. 1023).)

9    Defendants agree that the Injunction requires a specific finding of clinical good cause. (Resp. Br.

10   at 5.) And yet they point to no portion of RCW 10.77.068(5) that requires such a finding. Instead,

11   they suggest that the law's new, "efficient" process complies with the Injunction because the

12   "Injunction [does not] set out the form an individualized determination must take." (Id.) While

13   Defendants are correct that the Injunction does not specify the precise form of the ordering

14   court's finding, the Injunction nevertheless requires DSHS to provide evidence of clinical and

15   non-clinical good cause and requires the ordering court to make a specific, individualized finding

16   of good cause. The new law removes these threshold requirements, which undermines the letter

17   and spirit of the Injunction. The Court finds no harmony possible where the new law effectively

18   guts the Injunction's substantive requirements of the good cause exception.

19        Third, the Court remains unpersuaded by Defendants' argument that the new law

20   comports with the Injunction because it provides for a more "efficient" and "streamlined

21   process" to obtain good cause extensions for in-jail evaluations. The Court's Injunction balances

22   practical considerations regarding competency evaluations with the constitutional rights of Class

23   Members to receive timely competency evaluations. Defendants have not provided any evidence

24

1    that the new law provides that same balance or why efficiency might excuse non-compliance

2    with the terms and substance of the Injunction.

3            For these reasons, the Court rejects Defendants' request to reduce in-jail competency

4    evaluation fines where a good cause exception was obtained in compliance solely with RCW

5    10.77.068(5). The Court will only reduce in-jail competency evaluation fines where DSHS has

6    requested and obtained a good cause exception in full compliance with the Injunction. Based on

7    the record before it, the Court will only reduce the in-jail competency evaluation fines for the

8    161 extensions that were affirmatively granted by the ordering Court. The Court will enter

9    judgment to this effect. To do so accurately, the Court ORDERS Defendants to submit an

10   accounting of the fines associated with the 161 extensions and to indicate how the Court should

11   account for these fines. This submission must be made by no later than September 15, 2023.

12           The Court further ORDERS Defendants to continue to track good cause exceptions as it

13   has prior to the amendment of RCW 10.77.068(5) and to request reductions for in-jail

14   competency evaluation fines only where the extension was granted in full compliance with the

15   Injunction.

16           The Court notes that it has not made any determination as to whether the good cause

17   extension procedure in RCW 10.77.068(5) is constitutional or not. Doing so is unnecessary and

18   improvident, particularly because the Court has acted only to ensure compliance with its

19   Injunction and Orders of Contempt. The Court's Order today provides no ruling on whether

20   RCW 10.77.068(5) is constitutional or whether it may continue to be followed within the state

21   court system. DSHS is free to seek good cause exceptions under RCW 10.77.068(5), but it may

22   not invoke compliance with that law to obtain a reduction to the in-jail competency evaluation

23   contempt fines under the Court's Injunction.

24

ORDER RE: GOOD CAUSE EXCEPTION - 7

**C.      No Special Master**

Plaintiffs have proposed that a special master should be appointed to determine whether each good cause exception identified by Defendants complies with the Injunction for purposes of calculating monthly fines. The Court rejects this proposal. Defendants have maintained a system to track good cause exceptions prior to the implementation of RCW 10.77.068(5) that has proved adequate to calculate the correct contempt fines due. Based on the record before it today, the Court finds that appointing a special master would create complexities, increase inefficiencies, and impose costs that are not necessary to calculate the fines. That said, Plaintiffs are free to question the accuracy of Defendants' tracking of good cause exceptions and the calculation of contempt fines. Such concerns may be brought to the Court's attention but only after the Parties meet and confer to discuss Plaintiffs' concerns.

## CONCLUSION

The Court appreciates the Parties' briefing on this issue and finds that in-jail competency evaluation contempt fines may only be reduced where a good cause exception is obtained in full compliance with the Injunction. Good cause exceptions that are obtained solely under RCW 10.77.068(5) do not meet the Injunction's standard for a good cause exception, and they may not be used to calculate the contempt fines. The Court ORDERS Defendants to continue to track good cause exceptions as it has before the revisions to RCW 10.77.068(5) went into effect and to request reductions for in-jail competency evaluation fines only where the extension was granted in full compliance with the Injunction. And, as detailed above in Section B, the Court ORDERS Defendants to provide further information concerning the 161 good cause exceptions by no later than September 15, 2023.

\\

The clerk is ordered to provide copies of this order to all counsel.

Dated September 6, 2023.

Marsha J. Pechman
United States Senior District Judge