UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.B., by and through her next friend CASSIE CORDELL TRUEBLOOD, et al., <br><br> Plaintiff, <br><br> v. <br><br> WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, et al., <br><br> Defendants. | CASE NO. C14-1178 MJP <br><br> ORDER REGARDING APRIL 2024 GOOD CAUSE EXCEPTION REQUESTS |

The Court issues this Order in response to the Declaration of Dr. Thomas J. Kinlen—April 2024 Data and Contempt Report. (Dkt. No. 1114 ("Kinlen April Decl.").) In this declaration, Dr. Kinlen states that DSHS "is seeking to claim GCE [Good Cause Exceptions]" for five different individuals. (Kinlen April Decl. ¶ 13.) He claims that as to each of these individuals, a state trial court affirmatively granted a Good Cause Exception. (Id.) Below, the Court reviews all five requests and identifies several concerns with Dr. Kinlen's Declaration that

1  renders the Court unable to making any ruling as to what amount might be properly awarded as a
2  credit. The Court also reviews Dr. Kinlen's request for Good Cause Exceptions in his
3  Declaration concerning the February 2024 reporting period. (Declaration of Dr. Thomas J.
4  Kinlen—February 2024 Data and Contempt Report. ("Kinlen Feb. Decl.") (Dkt. No. 1105).)

5  **A.    Merits of Good Cause Requests**

6  The Court finds that Dr. Kinlen has identified only three valid requests for Good Cause
7  Exceptions. (See Kinlen Apr. Decl. Ex. I; Kinlen Feb. Decl. Ex. N.)

8  First, the Court finds adequate evidence of valid Good Cause Extension requests as to
9  Cruz Lee Garcia, John Wallace, and Richard Eric Nesbit that comply with Court's Modified
10 Permanent Injunction. As to Garcia, the trial court specifically found good cause for an extension
11 of the evaluation because defendant's expert was not available during the time period in
12 question. (Dkt. No. 1114-9 at 7.) This is an adequate finding supporting the Good Cause
13 Exception. As to Wallace, the trial court found good cause to extend the evaluation deadline
14 because the defendant needed a difficult-to-schedule interpreter and because defense counsel was
15 slated for surgery. (Dkt. No. 1114-9 at 31.) These are adequate findings supporting the Good
16 Cause Exception. And as to Nesbit, the court considered DSHS's request for an extension and
17 found good cause due to the unavailability of documents from a third party that were needed to
18 complete the evaluation. (Dkt. No. 1114-9 at 37.) This is an adequate finding supporting the
19 Good Cause Exception. As to all three of these requests, the Court GRANTS the requests for a
20 Good Cause Exception.

21 Second, the Court finds inadequate evidence of good cause as to the two remaining cases.
22 In the case involving Thue Thou Thi Ho, Defendants have failed to provide a court order
23 containing specific findings in support of a good cause extension of the evaluation. Dr. Kinlen's
24

Declaration provides DSHS's request, the docket sheet, an email exchange about the evaluation, and what appear an order setting over the case because the competency evaluation was not complete and a dismissal order. (Dkt. No. 1114-9 at 11-25.) Nowhere is there a court order explaining whether and why good cause was found to permit a late evaluation. And in the case involving Ryan P West-Ugartchea, the court's finding of good cause does not satisfy the Modified Permanent Injunction's standard. The municipal court extended the evaluation date because "[t]he County jail erroneously made Mr. West available for the one hour prior to the scheduled arrival time [of the evaluator] and when the evaluator arrived the County refused to bring Mr. West down." (Dkt. No. 1114-9 at 44.) The jail's interference with the timely evaluation is not a valid ground on which DSHS might claim a Good Cause Exception consistent with the Modified Permanent Injunction. Accordingly, the Court DENIES the requested exceptions as to these two individuals.

**B.      Problems with Dr. Kinlen's Supporting Materials as to Credit Amounts**

Although the Court agrees with Defendants as to three of the Good Cause Exception requests, it cannot determine the total amount that should be credited. The Court identifies three issues with Dr. Kinlen's declaration and supporting materials that prevent it from making this determination.

First, the first chart in Attachment J to Dr. Kinlen's April Declaration fails to provide sufficient information and clarity to allow the Court to identify the amounts being claimed as a reduction for Good Cause Exceptions. The first chart identifies the "Total Fine Amount For The District Court Orders Affirmatively Receiving GCE" as $27,000. (Id. Attach. J at 1.) This statement appears ambiguous and the Court cannot determine whether it identifies the amounts due for fines separate and above the amounts requested for a Good Cause Exception or the total

amount of fines being requested as a Good Cause Exception credit. A footnote to the chart states that the "Total Fine Amount represents the fine amount incurred even after the affirmatively granted GCE was applied." (Id.) This statement suggests that the total fine amount is not the total requested to be credited to Defendants, but is instead the amount of fines that are due even if the Court approved the Good Cause Exception credit request. Given the ambiguity and lack of clarity in the chart, the Court cannot use it to identify the amount that should be credited for the three valid Good Cause Exceptions.

Second, the second chart in Attachment J to Dr. Kinlen's April Declaration also fails to provide sufficient clarity to determine the amount of the credit. This chart purports to provide information about "Affirmatively Granted GCE Court Orders - Where Fines Were Incurred (by month)." (Id. at 2.) But this chart remains unclear as to whether it identifies the amount of fines Defendants seek as a credit for a Good Cause Exception or whether these are the total fines due. The Court also notes that the chart also provides a "ClientID" number and "CourtOrderID" number that cannot be readily linked to the documentation that Defendants provided to support their Good Cause Exception requests in Attachment I. Attachment I only uses a last name and does not include a ClientID or CourtOrderID number, as best the Court can decipher. So even if the chart identified credit amounts, the Court could not link them to the three valid Good Cause Exceptions except as to Mr. Wallace (for whom Dr. Kinlen has provided a matching ID number).

Third, Dr. Kinlen's April Declaration provides rather confusing information about a previously submitted Good Cause Exception request from Dr. Kinlen's February 2024 Declaration. (Kinlen Apr. Decl. ¶ 13.) Dr. Kinlen's April Declaration states that he has included in Attachment I a court order concerning a Good Cause Exception request in the case of John Wallace, who is identified as "client ID 62875." (Id.) Dr. Kinlen states that "[t]he information is

being provided to the court again as a matter of completeness because in the current accounting attached as Attachment J, the information regarding Mr. Wallace (client ID 62875) is updated from the February filing" and that "the Department is not seeking a second GCE credit for Mr. Wallace at this time[.]" (Id.) Attachment J identifies the "Total Fines" associated with Mr. Wallace's "ClientID" for January and February 2024, which totals $27,000. But, as the Court has explained above, the chart does not clearly explain whether these are fines due or that should be credited if the Court approves the Good Cause Exception. (Id.) Moreover, the Court cannot reconcile this chart with the one Dr. Kinlen provided with the February 2024 data that identified the same Good Cause Exception as to Mr. Wallace but reported a different credit due. (See Kinlen Feb. Decl. (Dkt. No. 1105).) In his February Declaration, Dr. Kinlen stated that DSHS was "claiming good cause extension credit" as to Wallace and he provided an accounting in Attachment O that identified a "Gross Fine Amount," defined as the "total fine incurred in a GCE request had not been affirmatively granted," and a "Net Fine Amount" defined as the "ongoing or residual fine amounts remaining after exhaustion of the locally granted GCE request and the In-Jail competency evaluation due date extension granted as a result." (Id. ¶ 18 & Attach O.) The chart identified the Gross Fine Amount as $25,500 and the Net Fine Amount as $4,500, reflecting a total amount of $21,000 as the requested Good Cause Exception. (Id.) Unlike Dr. Kinlen's April Declaration, this chart does allow the Court to understand and identify the total amount of requested reduction in fines for the Good Cause Exception. But Dr. Kinlen's April Declaration appears to identify this same "Net Fine Amount" of $4,500 identified in the February data as part of the $27,000 "Total Fines" reported in Attachment O. This confuses the Court as to what the April charts report and whether the amounts being requested are new, different, or duplicative. Indeed, the April chart appears to report on fines incurred in January

1  2024, but Dr. Kinlen's February 2024 Declaration already reported on that same time period.

2  The Court finds it improper to credit the $21,000 identified in February report which may need

3  to be reconciled with other unintelligible data Dr. Kinlen provided in the April report.

4  C.    **Additional Information and Limitations**

5  Although the Court believes that some amounts may be due as a credit for the three Good

6  Cause Exceptions it finds meritorious, it cannot order any specific credits on the record before it.

7  The Court also notes that neither Dr. Kinlen's February nor April report requests specific entry

8  of a judgment that reflects the Good Cause Exception the credits. Both the February and April

9  declarations propose in-jail fines that exclude any offset for Good Cause Exceptions. (See Kinlen

10 Feb. Decl. ¶ 21 (total in-jail fine excludes data from Attachment O); Kinlen Apr. Decl. ¶ 16 (total

11 in-jail fine excludes data from Attachment J).) And the Court has not included any credits in the

12 Amended Judgment re: February 2024. (Dkt. No. 1106.) Given the Court's concerns identified

13 above about Dr. Kinlen's April Declaration, the Court will not make any final determination as

14 to the total amount of credit due. The Court will consider a renewed request for these sums with

15 supporting materials that address the Court's concerns outlined in this Order. Any such renewed

16 request shall be due within 10 days of entry of this Order. Defendants' failure to comply with

17 this deadline will result in a waiver of these credits.

18 Additionally, going forward, the Court will only review and grant Good Cause

19 Exceptions requested for the same month on which Defendants provide their fine reporting data.

20 For example, if Dr. Kinlen files a declaration in May 2024 to report on the fines for April 2024,

21 he may only ask for Good Cause Exceptions that were ordered for the April 2024 time period.

22 The Court will not consider requests for Good Cause Exceptions for time periods that predate the

23 current reporting period. The only exception the Court will make is as to the three cases

24

Defendants have identified in the February and April 2024 data reports, given that it has not given prior warnings that Good Cause Exceptions cannot be claimed retroactively.

**CONCLUSION**

Defendants have provided sufficient evidence of only three Good Cause Exceptions consistent with the Court's Modified Permanent Injunction. But the supporting materials do not allow the Court to determine the proper amount of credit that may be due. Defendants may renew their request with additional supporting materials that address the Court's concerns, which shall be due within 10 days of entry of this Order. And, from this point forward, Defendants may only request Good Cause Exceptions for the month on which they are providing fine reporting data.

The clerk is ordered to provide copies of this order to all counsel.

Dated April 18, 2024.

Marsha J. Pechman
United States Senior District Judge