UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.B., by and through her next friend CASSIE CORDELL TRUEBLOOD, et al., <br><br>Plaintiffs, <br><br> v. <br><br> WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, et al., <br><br>Defendants. | CASE NO. C14-1178 MJP <br><br> ORDER ON MOTIONS FOR RELIEF FROM FINES |

This matter comes before the Court on Defendant Department of Social and Health Services' Requests for Relief from Fines. (Dkt. Nos. 1212, 1221.) Having reviewed the Requests, and all supporting materials, and having briefly discussed the Requests at the status conference held on June 4, 2025, the Court GRANTS the requested relief from fines.

ORDER ON MOTIONS FOR RELIEF FROM FINES - 1

# BACKGROUND

**A.    Procedural Background**

Under the Court's Modified Permanent Injunction ("Injunction"), the Department of Social and Health Services must complete in-jail competency evaluations within 14 days of the receipt of a court order or within 21 days of the date the court order was signed. (Modified Permanent Injunction at 32-34 (Dkt. No. 303); Order Adopting the Parties' Mediated Settlement Agreement ¶ 2 (Dkt. No. 408).) If DSHS fails to complete the in-jail competency evaluation within these time limits, it must pay, per Class Member: $750 for each of the first six days of non-compliance and $1,500 per day starting the seventh day and every day thereafter. (See Order on Plaintiffs' Second Motion for Civil Contempt at 13 (Dkt. No. 506).) But the Injunction allows for a "good cause exception" to these time limits (the Court refers to the exception as "GCE"). Under the Injunction, "[w]here an in-jail evaluation cannot be completed within fourteen days of a court order, Defendants must secure an extension from the ordering court for individualized good cause, or must immediately admit the individual to a state hospital to finish conducting the evaluation." (Modified Permanent Injunction at 32-33 (Dkt. No. 303). The Court defined "individualized good cause" as follows:

> Individualized good cause encapsulates both clinical good cause—meaning good cause based on the unique medical or psychiatric needs of the particular individual, including the continued presence of intoxicants but not including DSHS's lack of resources or the system's inability to administratively accommodate the needs of the individual within fourteen days—and good cause based on class members' non-clinical interests, i.e., where having their defense counsel, an interpreter, or an expert of their choosing present at the evaluation is not possible to arrange within the fourteen-day timeframe.

(Id. at 33.) The Court made clear that "in order to invoke the individualized good cause exception, Defendants must seek an extension from the ordering court." (Id.) The Court also ordered Defendants "to track each request for an individualized good cause extension made by

ORDER ON MOTIONS FOR RELIEF FROM FINES - 2

1  DSHS evaluators, and whether the request was granted or denied" and to include this
2  information "in Defendants' monthly reports to the Court Monitor." (Id.)

3        To satisfy the Court's good cause exception requirements, DSHS must apply for and
4  obtain a state court order that identifies individualized good cause to extend the 14-day period in
5  which to complete the in-jail competency evaluation. The individualized good cause finding
6  must be based on the Class Member's clinical and/or non-clinical interests. (See Modified
7  Permanent Injunction at 32-34.) Clinical reasons include "unique medical or psychiatric needs of
8  the particular individual, including the continued presence of intoxicants but not including
9  DSHS's lack of resources or the system's inability to administratively accommodate the needs of
10 the individual within fourteen days." (Id. at 33.) Non-clinical reasons include limited
11 circumstances where the Class Member's desire to have "their defense counsel, an interpreter, or
12 an expert of their choosing present at the evaluation is not possible to arrange within the
13 fourteen-day timeframe." (Id.)

14       For DSHS to obtain approval of a GCE from this Court, it must present a written order
15 from the state court documenting that court's individualized finding of good cause to extend the
16 14-day deadline. Only those state court orders that identify good cause consistent with the
17 Court's Permanent Injunction will entitle DSHS to a finding of compliance and an avoidance of
18 fines. As such, DSHS must request and a state court judge must issue written factual findings of
19 individualized good cause for the GCE to apply.

20 **B.      Requested Relief From Fines**

21       Through the two Requests, Defendants seek relief from fines incurred as to eighteen
22 Class Members for in-jail evaluations. The fines were incurred within six months of each
23 respective Request. Plaintiffs have indicated that they do not oppose any of the requested relief.
24

## ANALYSIS

### A. Relief From Fines Appropriate

The Court finds that DSHS is entitled to relief from fines incurred as to the eighteen Class Members. As to each Class Member, DSHS has provided evidence of a valid request for a good cause extension request and a court order finding individualized good cause. The Court also finds that the calculation of days for which relief is sought is accurate as to each Class Member. Accordingly, the Court GRANTS the Requests and finds that Defendants are entitled to $158,250 in a credit as to these in-jail fines. This results from adding the $140,250 sought in first Motion (Dkt. No. 1212) to the $18,000 sought in the second Motion (Dkt. No. 1221).

### B. Clarification

Defendants have expressed confusion over whether the Court's prior Order granting relief from fines included the sums specified in the filing at Docket Entry 1199. (See Second Mot. at 3.) The Court's Order at Docket Entry 1205 did include the sums sought in Docket Entry 1199, which is evident in the fact the Court permitted Defendants to claim $190,500 in credits. The Court's Order, unfortunately, included a typo, and referred to Docket Entry 1199 as Docket Entry "199." (Dkt. No. 1205 at 1.) The Court therefore clarifies that the prior Order entitles Defendants to a credit of $190,500, which includes the sums sought in Docket Entry 1199.

## CONCLUSION

The Court finds that the materials presented are adequate to support the requested relief from fines. The Court therefore GRANTS the Requests for Relief from the Fines identified in Docket Entries 1212 and 1221. DSHS may claim a credit of $158,250 for those in-jail fines in the next monthly fine declaration. DSHS may also claim a credit of $190,500, as previously specified in the Order at Docket Entry 1205, which includes the sums sought by Defendants'

filing at Docket Entry 1199. In total, Defendants may claim a total of $348,750 for in-jail fines in the next monthly fine declaration (the total permitted by the Order at Docket Entry 1205 and the amount permitted by this Order as to the two Requests at Docket Entries 1212 and 1221).

The clerk is ordered to provide copies of this order to all counsel.

Dated June 9, 2025.

Marsha J. Pechman
United States Senior District Judge