UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.B., by and through her next friend CASSIE CORDELL TRUEBLOOD et al., | CASE NO. 14-cv-01178-JHC |
| Plaintiffs, | ORDER |
| v. | |
| WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES et al., | |
| Defendants. | |

**I**

**INTRODUCTION**

This matter comes before the Court on Defendants' Motion for Reconsideration.  Dkt. # 1322.  The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law.  Being fully advised, for the reasons below, the Court GRANTS in part and DENIES in part the motion and VACATES Dkt. # 1314 (the Order).

ORDER - 1

## II

### BACKGROUND

In 2023, the Honorable Marsha J. Pechman found Defendants in contempt for breach of the Settlement Agreement based on Defendants' use of state hospital forensic beds for civil commitment patients instead of *Trueblood* class members.  *See* Dkt. # 1009 at 4 (describing bed capacity negotiations as a "key component" to meeting the Settlement Agreement's goals).  The Court ordered, in part:

> Defendants shall immediately cease admitting Civil Conversion patients to the state hospitals for ordered civil commitment treatment, except for patients who have been charged with a "violent offense" under RCW 9.94A.030(58).  Civil Conversion patients charged with a "violent offense" under RCW 9.94A.030(58) are referred to in this Order as "HB1114 patients."

Dkt. # 1033 at 2 (modifying Dkt. # 1009).  Regardless, Defendants continued to admit civil conversion patients in violation of the order.  *See* Dkt. # 1264 at 2.

The parties moved multiple times for approval of a stipulated agreement to modify the two orders cited above to resolve appeals from the orders, and to allow the state flexibility in treating civil conversion patients without violent felony findings while also timely treating class members.  *See* Dkt. # 1211, 1251, and 1272.  The Court continuously expressed concerns that an "occupancy-based threshold is an adequate means of ensuring that there will be beds available for Class Members while civil conversion patients occupy forensic beds at the state hospitals," and so the Court ordered the parties to consider, along with other factors, "a measure of demand and space that considers . . . current bed occupancy (438 beds at WSH and 213 at ESH)."[1]  Dkt. # 1264 at 2.

---

[1] During negotiations the redesignation (from civil to forensic) of unit E3 at WSH became a requirement of the agreement, adding 20 beds to the total.  *See* Dkt. # 1272 at 4.  After the inclusion of this unit, which occurred shortly after the Court approved the agreement, the bed capacity was 458 beds at WSH and 213 at ESH.  *See* Dkt. # 1330 at 5 n.1.

ORDER - 2

After months of negotiation between the parties and the Court Monitor, on December 4, 2025, the Court approved a stipulated agreement that set occupancy-based thresholds and parameters around Defendants' ability to use forensic beds.  *See* Dkt. # 1277.  That agreement states:

> Defendants may retain and treat in state hospitals civil conversion patients without a finding of violent offense under RCW 9.94A.030(58)--under civil commitment orders entered on completion of civil commitment hearings--so long as occupancy of the forensic beds as defined in Dkt. No. 1251 and Dkt. No. 1272 does not reach ninety-eight percent (98%) at either state hospital. If this occurs, the state shall immediately cease admissions to that state hospital for civil conversion patients without a finding of violent offense under RCW 9.94A.050(58).[2]

Dkt. # 1277 at 3.  This order was based on a finding that "the State has developed additional and material inpatient behavior health treatment bed space and improved community treatment options and availability since" the 2023 contempt order.  Dkt. # 1277 at 2-3.

This agreement was reached in part because of an addition to the joint motion; a promise to transition unit E3 at WSH from civil patient to competency patient use within six months of the Court's order approving the agreement, increasing the total bed capacity by 20 and "providing an important safeguard against reaching the noted occupancy rate."  *See* Dkt. # 1272 at 4.  In the joint motion to modify, the parties stated that there was a baseline number of forensic beds, 213 at Eastern State Hospital (ESH) and 438 at Western State Hospital (WSH) plus the additional 20 units from E3 at WSH.  *See* Dkt. # 1272 at 1.

It is undisputed that, on April 1, 2026, Defendants notified Plaintiffs and the Court Monitor that Defendants re-designated the forensic beds on ward 3N1 at ESH to house civil patients.[3]  Dkt. # 1330 at 3; Dkt. # 1322 at 3.  3N1 had been designated for forensic beds but

---

[2] These docket entries state, "Forensic beds include all beds at Eastern or Western State Hospital (ESH or WSH) that Defendants have designated for use by forensic patients."  Dkt. # 1272 at 4 n.1; Dkt. # 1272 at 5 n.1.

[3] This "notice" did not come from an attorney, and the "purpose" of the email was to share an update to changes on the occupancy dashboard (an online dashboard that provides daily updates on

ORDER - 3

historically has been used to house civil and NGRI patients.[4]  Dkt. # 1324-1.  Still, the 30 beds contained in 3N1 accounted for roughly 14% of ESH's total bed capacity and lowered the total forensic bed count from 213 to 183 at ESH.

On May 4, 2026, after the Court Monitor and Plaintiffs expressed concerns at the quarterly conference, the Court ordered Defendants to redesignate unit 3N1 ward at ESH back to forensic beds.  Dkt. # 1314; *see also* Dkt. # 1322 at 3.

### III
#### DISCUSSION

"Motions for reconsideration are disfavored.  The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence."  LCR 7(h).

Defendants challenge the Order, specifically raising concerns over the (1) Court restricting Defendants' ability to designate forensic units in state hospitals; and (2) the Order's inclusion of not guilty by reason of insanity (NGRI) patients.[5]  Plaintiffs say the Order does not create improper restrictions but enforces the "complex agreement negotiated by the parties."  Dkt. # 1330.

---

forensic bed occupancy rates), and the subject line of the email is "Eastern State Hospital Updates."  *See* Dkt. # 1324-1.

[4] Although the designation has not aligned with the use of the unit, changing the designation would have consequences beyond a mere administrative change to reflect the use.  As the parties explained in the May 1, 2026 hearing, a unit designated to house forensic patients has certain infrastructure requirements that are not needed for a civil unit, and once undone, these changes cannot necessarily be easily reversed.  Dkt. # 1313.

[5] The Court agrees with Plaintiffs that Defendants' arguments regarding a concession at the hearing is inapt as it does not change the analysis.  *See* Dkt. # 1330 at 8; Dkt. # 1322 at 7.

ORDER - 4

A.    Designating forensic units

Defendants cite *Younger v. Harris*, 401 U.S. 37 (1971), and *Spallone v. United States*, 493 U.S. 265, 280 (1990), for the proposition that federal courts are not to infringe on state functions.  And they say it was error for the Court to not apply the test laid out under *Stone v. City and County of San Francisco*, 968 F.2d 850, 864 (9th Cir. 1992).[6]  None of these cases are on point as they do not involve or consider the circumstance here where there has been a joint agreement by the parties.  The Court does not restrict Defendants from redesignating its facilities in general—it does restrict Defendants from lowering, without agreement from both parties, the total forensic bed count, which the parties were ordered to consider in agreeing on capacity threshold limits.

Defendants are correct that the order granting the parties' joint motion to modify did not specifically acknowledge that Defendants were required to maintain the current bed capacity. *See* Dkt. # 1277.  But it did acknowledge that the parties were negotiating based on the factors they were ordered to consider, including the bed capacity numbers of 438 beds at WSH and 213 at ESH.  Dkt. # 1277 at 2.  And regardless of Defendants' claim, the Court's previous action on this issue indicates that the total capacity number was a fundamental premise of the agreement. *See* Dkt. # 1264 (ordering the parties to consider the bed capacity because it "remain[ed] unconvinced that an occupancy-based threshold is an adequate means of ensuring that there will be beds available"); *see also* Dkt. # 1277 at 2-3 (granting the joint motion to modify based on good cause due to the State's compliance and the State having developed additional inpatient behavioral health treatment bed space).  The inclusion of the conversion of Unit E3 at WSH from

---

[6] The Court is not entirely sure what test Defendants seek the Court to apply because it is not stated or applied in their briefing, but the Court believes they mean the federalism analysis. *See Stone*, 968 F.2d at 861-864.

civil to forensic, which added 20 units to the total bed capacity, also indicates that capacity was an important consideration in determining and agreeing to thresholds. *See* Dkt. # 1272 at 4.

For these reasons, Defendants cannot redesignate forensic beds to civil without substantially altering the conditions upon which the agreement rests. Defendants imply that because they have maintained a forensic occupancy below the threshold that they may then lower the total bed capacity. Dkt. # 1322 at 4. If the parties believe the bed capacity is too high, subject to the Court's approval, they may agree to lower it, but Defendants' compliance with the agreement turns on the negotiated threshold percentages and the bed capacity numbers used to establish those thresholds: That is, 98% of the 213 beds at ESH and 458 beds at WSH.[7]

Still, Defendants are correct that the Court should not have restricted Defendants from taking forensic beds offline without being more specific. *See* LCR 7(h). Beds must often be taken temporarily offline for cleaning, when a roommate is not appropriate, for maintenance, etc. but those beds remain designated for their purpose even if not in use at any given moment. *See* Dkt. # 1324 at 2. A redesignation occurs when beds are no longer designated to house a specific type of patient. For this reason, the Court agrees with Defendants that the Order improperly restricted Defendants' ability to take beds offline. Plaintiffs agree and have suggested amended language. Dkt. # 1330 at 6. The Court clarifies that Defendants are allowed to take the designated forensic beds offline temporarily for safety reasons, repair, or renovation, without Court permission, so long as those forensic beds are not redesignated to civil or otherwise permanently removed from the designated forensic beds outlined in the December 4, 2025 Order.

---

[7] Notification requirements are also mandated at 97% capacity.

ORDER - 6

B.     NGRI patients

Defendants say, "NGRI patients have never been part of any restriction against placement of civil conversion statement [sic] in state hospitals." Dkt. # 1322 at 4.  That is still the case. The Order does not restrict placement of NGRI patients in state hospitals.  The mention of NGRI patients was only to make clear that Defendants could continue to house NGRI patients in 3N1; it does not restrict Defendants from housing NGRI patients or impose the restrictions related to certain civil conversion patients without a specific finding of violent felony onto NGRI patients. Plaintiffs do not object to the Court striking any reference to NGRI patients from the Order, and so to avoid confusion, the Court does so.  The Order's reference to NGRI patients at Dkt. #1314 at 2:14 is deleted.

## IV

### CONCLUSION

For the reasons above, the Court DENIES in part and GRANTS in part the motion, Dkt. # 1322.  The Court VACATES the previous Order, Dkt. # 1314, and will file an amended order.

Dated this 4th day of June, 2026.

John H. Chun
United States District Judge

ORDER - 7